Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al.;<br><br>Defendants. | Case No. 3:25-cv-08302<br><br>**DECLARATION OF EVERETT KELLEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |

Declaration of Everett Kelley ISO Motion for TRO and OSC; Case No: 3:25-cv-08302

**DECLARATION OF AFGE NATIONAL PRESIDENT EVERETT KELLEY**

I, Everett Kelley, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am the National President of the American Federation of Government Employees, AFL-CIO ("AFGE"), a labor organization and unincorporated association that represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States. AFGE's federal employee members include nurses, border patrol agents, correctional officers, health care workers, civilian employees in the Department of Defense, employees of the Social Security Administration, scientists in the Centers for Disease Control and Prevention, and employees in nearly every other federal department and agency.

3. AFGE represents employees working at each of the following federal departments and independent federal agencies:

Department of Agriculture

Department of Commerce

Department of Defense

Department of Education

Department of Energy

Department of Health and Human Services

Department of Homeland Security

Department of Housing and Urban Development

Department of Justice

Department of the Interior

Department of Labor

Department of State

Department of the Treasury

Department of Transportation

Department of Veterans Affairs

| | |
|---|---|
| 1 | Chemical Safety Board |
| 2 | Consumer Product Safety Commission |
| 3 | Court Services and Offender Supervision Agency |
| 4 | Environmental Protection Agency |
| 5 | Equal Employment Opportunity Commission |
| 6 | Federal Energy Regulatory Commission |
| 7 | Federal Trade Commission |
| 8 | General Services Administration |
| 9 | Inter-American Foundation |
| 10 | Institute of Museum and Library Services |
| 11 | Millennium Challenge Corporation |
| 12 | National Aeronautics and Space Administration |
| 13 | National Archives and Records Administration |
| 14 | National Endowment of Arts |
| 15 | National Endowment for the Humanities |
| 16 | National Gallery of Art |
| 17 | National Science Foundation |
| 18 | National Transportation Safety Board |
| 19 | Nuclear Regulatory Commission |
| 20 | Office of Personnel Management |
| 21 | Railroad Retirement Board |
| 22 | Small Business Administration |
| 23 | Smithsonian Institute |
| 24 | Social Security Administration |
| 25 | United States Agency for Global Media |
| 26 | United States Agency for International Development |
| 27 | United States Government Publishing Office |
| 28 | United States International Development Finance Corporation |

1  United States International Trade Commission

2  4. AFGE represents over 50,000 federal employees in the State of California at agencies including, but not limited to, the Department of Veterans Affairs, the Small Business Administration, the Environmental Protection Agency, and the Department of Defense. AFGE has several affiliates that represent employees in the San Francisco Bay Area, including employees at the San Francisco Veterans Health Care System, the Palo Alto VA Medical Center, and various Social Security Field Offices and military installations.

5. AFGE advocates on behalf of its members and seeks to promote dignity, safety, and fairness for government employees. Our core functions include providing support, guidance, and resources to our affiliates, which are the officially recognized exclusive representatives of federal employees in various bargaining units.

6. Membership in AFGE is voluntary.

7. AFGE's activities and staff are funded through our members' voluntary dues.

8. AFGE and the employees it represents have experienced significant harm since February 11, 2025, when President Trump issued an executive order directing all federal agencies to conduct large-scale terminations of federal employees through Reductions in Force ("RIFs"). Certain agencies where AFGE represents federal employees have been subjected to RIFs pursuant to that Executive Order (before and after injunctions obtained by AFGE in litigation). As those RIFs were being implemented, the employees represented by AFGE lost their jobs and health benefits and otherwise had their lives up-ended. AFGE devoted considerable resources to providing guidance and assistance to its members and local affiliates relating to the RIFs. Further RIFS will impose similar harms.

9. The current government shutdown has a significant impact on AFGE and the employees it represents throughout the government, as employees are either sent home or working without pay, only to be given back pay later under federal law. Now, since the news broke on September 24, 2025, that the Trump Administration was planning to conduct additional large-scale RIFs during the government shutdown, AFGE and the employees it represents are facing additional harm. On that day, news sources published and reported on a memorandum issued by the Office of

Management and Budget ("OMB") directing federal agencies to conduct large-scale RIFs during the shutdown ("OMB Lapse Memorandum").

10. In my experience, no Presidential Administration has ever attempted to parlay a government shutdown into mass layoffs. I am also aware, from reviewing the OMB directions issued to agencies that day, that OMB is directing agencies to first RIF large numbers of federal employees on the ground that they are no longer statutorily required, and then potentially revise or rescind RIF notices if funding is restored. I am also not aware of any prior Administration ever taking such action during a shutdown.

11. These actions will have very real and adverse impacts on the federal employees who receive these notices. Receiving a RIF notice informing you that your employment (and indeed career) are over is a very significant event in the lives of federal employees and their families. When the notice period is shortened to 30 days, employees immediately begin to spend time and often money determining their next steps in life. 30 days is not a very long time to secure additional employment, or even to sort what might be possible for some of these employees. Even if a RIF notice is later rescinded, the impact of that notice will be felt immediately by that employee and their family.

12. The intention from the start to overshoot is particularly cruel and arbitrary. Employees will have no certainty as to whether they are keeping their jobs or losing their income and benefits. Employees will not know whether to seriously plan for alternatives, or wait to see what happens when funding is restored. In my experience, given the objectives of this administration, this appears to be at best a callous, insensitive decision that disregards the impact on employees' lives, and at worse a concerted effort to drive more employees to quit.

13. As the National President of AFGE, I and my staff have direct experience with numerous federal employees affected by RIFs and the harm that they have experienced.

14. When employees are terminated as a result of RIFs, they lose their incomes, health insurance for themselves and for their spouses and dependents who are covered by their health plans, and other employment benefits. As mentioned, many AFGE members work in agencies that have been directed by OMB and OPM to conduct large-scale RIFs during the shutdown. These employees

will lose their incomes, health insurance coverage, and employment benefits because of the RIFs during the shutdown.  This will cause severe harm to the members, their families, and their communities.  For example, many members will lose health insurance coverage and be unable to cover medical costs for themselves and their families.  Some members will also lose the financial ability to pay their mortgages and face the foreclosure of their homes.

15.    Even if agencies issue RIF notices during the shutdown and revise or rescind those notices, those employees will still suffer significant harm.  We have members for whom the threat of losing their job and livelihood is causing severe emotional distress.  We have other members who are currently pregnant or have significant health conditions and are extremely concerned about losing health insurance coverage as a result of the RIFs during the shutdown.

16.    In addition, my understanding is that, under the OMB Lapse Memorandum, members who are subject to a RIF during the shutdown and later reinstated may not be eligible for the back pay to which they are statutorily entitled.

17.    The RIFs during the shutdown will also cause significant harm even to AFGE members who ultimately keep their jobs at federal agencies, either because the RIFs bypass them or because they are included in a RIF that is later revised.  Those members will be subject to a major reorganization after agencies conduct mass layoffs during the shutdown, which will make their jobs much more difficult.  Most federal agencies are under- not over-staffed.  Eliminating workers will only cause those who remain to have to do more with less support.  For example, the members who remain will have to take on a significant amount of work that was previously performed by colleagues subject to the RIFs, or have to do their important work without support staff or colleagues.

18.    In addition to the impacts on the employees we represent, since September 24, 2025, AFGE has devoted substantial time and resources to responding to questions and providing guidance regarding the RIFs that the agencies have been directed to carry out during the shutdown.  The threat of wide-spread layoffs during a government shutdown is a very significant event for federal employees and their labor representatives.  AFGE's staff members have received numerous calls and emails from members and local affiliates, seeking information and assistance relating to the RIFs. AFGE must answer these inquiries to represent our members and affiliates effectively.  AFGE staff

members have spent a significant amount of time responding to these calls and emails in the past week and will have to continue spending a significant amount of time responding to these inquiries in the coming weeks.

19. As a result, AFGE has been forced to divert resources that would have been devoted to other AFGE priorities, including representing employees facing adverse employment actions and other representational work. For example, AFGE staff members who would otherwise provide counseling and representation to our affiliates on other matters have been forced to respond to inquiries regarding the expected RIFs during the shutdown. Similarly, AFGE's field staff members have been required to divert their attention from typical representation and organizing work to respond to inquiries and assist affiliates with the impending RIFs.

20. I understand that OMB's instructions went to all federal agencies. AFGE has many members who work in agencies that have been shut down as a result of the lapse in appropriations and have been directed by OMB and OPM to implement large-scale RIFs during the shutdown. The RIFs during the shutdown will thus reduce the number of AFGE members and the size of AFGE bargaining units. AFGE has already been adversely impacted by this Administration's attempts to remove the ability of federal employees to be represented by their unions. This new action will further limit AFGE's bargaining power, revenue, and ability to provide services to its members and affiliates, and thereby interfere with AFGE's ability to effectively represent and provide services to its members and affiliates.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed October 3, 2025, in Washington, D.C.

_____
Everett Kelley