Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>Defendants. | Case No. 3:25-cv-08302-SI<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Complaint Filed: September 30, 2025<br>Hearing Date: October 15, 2025<br>Hearing Time: 10:30am<br>Courtroom: 1, 17th Floor |

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................1

ARGUMENT .................................................................................................................................3

II.    Violations of the Antideficiency Act Are Enforceable via the APA's
Prohibition on Conduct Contrary to Law ...............................................................4

III.   Defendants' Other Threshold Arguments Lack Merit...............................................7

    A.    This Court has jurisdiction ...........................................................................7

    B.    Plaintiffs challenge final agency action.......................................................8

    C.    Plaintiffs can bring an ultra vires claim....................................................11

IV.   Plaintiffs Will Suffer Extensive and Irreparable Harm Absent a TRO ...................11

V.    The Balance of Equities and Public Interest Strongly Favor a TRO........................15

VI.   Scope of Relief .....................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*AFGE v. OPM*,
    2025 WL 2633791 (N.D. Cal. Sept. 12, 2025)....................................................8, 9

5

6

*AFGE v. OPM*,
    771 F.Supp.3d 1127 (N.D. Cal. 2025)....................................................8

7

8

*AFGE v. Trump*,
    139 F.4th 1020 (9th Cir. 2025), *stay granted pending appeal on other grounds*,
    *Trump v. AFGE*, No. 24A1174 (U.S. July 8, 2025) ..................................7, 8, 10, 14

9

10

*AFGE v. Trump*,
    Case No. 25-cv-03698-SI, ECF Nos. 139, 162 (N.D. Cal. 2025) ...........................9

11

12

*Am. Hosp. Ass'n v. Becerra*,
    596 U.S. 724 (2022) ...........................................................................5

13

14

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ..........................................................................11

15

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................8, 10

16

17

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984) ............................................................................6

18

19

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) ...............................................................14

20

*Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*,
    840 F.2d 701 (9th Cir. 1988) ...............................................................12

21

22

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
    137 F.4th 932 (9th Cir. 2025) ..............................................................15

23

*Columbia Institutional S'holder Servs., Inc. v. SEC*,
    142 F.4th 757 (D.C. Cir. 2025) .............................................................6

24

25

*Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*,
    67 F.4th 1027 (9th Cir. 2023)................................................................3

26

27

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ....................................................................4, 5, 10

28

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ........................................................................................................ 4

*Diaz v. Brewer*,
   656 F.3d 1008 (9th Cir. 2011) .................................................................................. 14

*Dunlop v. Bachowski*,
   421 U.S. 560 (1975) ..................................................................................................... 5

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................................................... 13

*Global Health Council v. Trump*,
   2025 WL 2480618 (D.C. Cir. Aug. 28, 2025) .......................................................... 7

*Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*,
   512 F.3d 1112 (9th Cir. 2008) .................................................................................. 14

*Hemp Indus. Ass'n v. Drug Enf't Admin.*,
   333 F.3d 1082 (9th Cir. 2003) .................................................................................... 9

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) .................................................................................. 15

*La. Pub. Serv. Comm'n v. F.C.C.*,
   476 U.S. 355 (1986) ..................................................................................................... 4

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ...................................................................................... 15

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ................................................................................................... 11

*Mach Mining, LLC v. E.E.O.C.*,
   575 U.S. 480 (2015) ................................................................................................ 5, 6

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ..................................................................................................... 7

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
   775 F.Supp.3d 100 (D.D.C. 2025) ............................................................................. 9

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................... 15

*Nuclear Regulatory Comm'n v. Texas*,
   605 U.S. 665 (2025) ................................................................................................... 11

*Pangea Legal Servs. v. DHS*,
   501 F.Supp.3d 792 (N.D. Cal. 2020) ....................................................................... 15

*Sackett v. EPA*,
  566 U.S. 120 (2012) ................................................................................................ 5

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ................................................................................ 11

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020), *judgment vac'd on other grounds, sub nom. Biden v.*
  *Sierra Club*, 142 S. Ct. 46 (2021) ...................................................................... 11

*Taylor-Failor v. Cnty. of Haw.*,
  90 F.Supp.3d 1095 (D. Haw. 2015) ...................................................................... 15

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ................................................................................................ 8

*Vazquez-Burgos v. Rodriguez-Perez*,
  111 F.Supp.3d 135 (D.P.R. 2015) ........................................................................ 13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................................. 11

**Federal Statutes**

5 U.S.C. § 701(a)(1) .................................................................................................. 5

1

**INTRODUCTION**

2        As Defendants have now corroborated, on Friday, October 10, 2025, they began

3   implementing the directives of 1) OMB Director Russell Vought to impose widespread

4   reductions-in-force ("RIFs") across federal agencies during the government shutdown and 2)

5   OPM to designate "excepted" federal employees to perform that work, thereby using federal

6   employees as pawns to impose political pressure on the Administration's perceived opponents in

7   Congress.  As the President stated as these RIFs began, the layoffs are "Democrat oriented,

8   because … they started this thing, so they should be Democrat oriented…. These are largely

9   people that the Democrats want. Many of them will be fired."  ECF 42-2 ¶4 & Ex. A.

10       Defendants fail to make *any* effort to refute Plaintiffs' merits showing that these RIFs are

11   contrary to law and arbitrary and capricious under the Administrative Procedure Act ("APA"),

12   including because they are being done for improper reasons (political pressure and retribution),

13   while failing to consider a host of pertinent factors (including agency needs and functions and

14   employees' interests); are based on a mischaracterization of federal law (that a temporary

15   funding lapse eliminates statutory authorization); direct employees to work to implement the

16   RIFs in violation of the Antideficiency Act ("ADA"); and contradict and deviate from their own

17   guidance and instructions, without reasoned explanation.  Instead, Defendants invoke threshold

18   roadblocks, arguing that this Court lacks jurisdiction, that the ADA may not be enforced by

19   injured plaintiffs, that this Court lacks subject matter jurisdiction, that the agency actions are

20   nonfinal and so cannot be reviewed under the APA, and that employees sent RIF notices are not

21   irreparably injured.  Each of these arguments is wrong, as explained herein.

22       Given the commencement of RIFs, Plaintiffs expand their request for temporary relief

23   beyond halting any further RIF notices, to include enjoining further implementation of RIF

24   notices issued to date and stopping the clock on the RIF notice period.  Plaintiffs further request

25   that the Court set a schedule for resolution of a preliminary injunction within two weeks.

26

**BACKGROUND**

27       Since Plaintiffs submitted their Motion (ECF 17), the President and other administration

28   officials have made additional statements confirming Defendants' intent to use RIFs during the

government shutdown to exert political pressure on their perceived opponents, by aiming cuts at purportedly "Democrat" programs and people. *See* ECF 38-1, 42-2; Walls Decl. Exs. A-F. Administration officials have also repeated the legally incorrect rationale that the lapse in funding provides the authority to engage in these politically driven RIFs. *Infra* n.2.

As explained in Plaintiffs' October 10 Supplemental Motion, and confirmed by Defendants, RIFs began at OMB's direction on October 10, 2025. ECF 38, 40, 41, 42; *see also* Robinson Decl. ¶5; Gittleman Decl. ¶2; Jacobs Decl. ¶¶6-7; Schwartz Decl. Ex. A-U. Defendants provided a single declaration with incomplete information in response to this Court's Order (ECF 27), and have withheld much information regarding actual and planned RIFs. ECF 40.[1] The information provided in that Declaration is notably flawed. Mr. Billy implies that the eight agencies that commenced RIFs had completed issuing those notices, but that does not appear to be correct. *Compare* ECF 40 with ECF 42-2; Jacobs Decl. ¶¶6-7. The Declaration also failed to comply with this Court's Order by refusing to identify any other agencies with RIFs in progress, while the Administration confirms that is in fact happening. *Compare* ECF 40 *with* Walls Decl. Exs. A-D; Schwartz Decl. Ex. T. Mr. Billy represents that he is unaware of any decisions to issue RIFs beyond those eight agencies, but that is also contrary to record evidence. ECF 40; *see* Walls Decl. Exs. A-D. As Plaintiffs established, OMB required agencies to submit plans for approval and has been making the final decisions, ECF ¶¶26-28 &17-3 Ex. A, suggesting that any agency with a RIF in progress has therefore been authorized to proceed by OMB. In particular, EPA's own documents confirm that, contrary to the Billy Declaration, the decision to RIF has already been made. Schwartz Decl. Ex. T.

Plaintiffs file with this Reply a number of example RIF notices that Defendants did not provide, which contain language consistent with the rationales provided in the directives and statements by OMB and the President.[2] The Administration has also now confirmed significant

---

[1] *See, e.g.,* Walls Decl. Ex. E (Washington Post: "A White House official, speaking on the condition of anonymity to discuss the plans, confirmed that the RIFs were starting, and said "they will be substantial." The White House did not provide specifics on how many employees were affected, or at which departments.") (Oct. 10. 2025); *id.* at Ex. G.

[2] Schwartz Decl. Exs. A, E, L, N-O, S-T (Commerce: "This RIF action is based on the

"errors" in the that resulted in RIFs that were contrary to the agency's functions and interests, when it issued approximately 1,200 RIF notices at the U.S. Department of Health and Human Services (HHS), particularly with respect to the Centers for Disease Control and Prevention (CDC). Walls Decl. Exs. H-K; Jacobs Decl. ¶6. More than half of the hastily issued CDC notices have apparently been rescinded. Walls Decl. Ex. H; Jacobs Decl. ¶6. Implementation of RIFs requires labor, so HHS staff have been required to work not only to issue the (erroneous) RIF notices, but also to rescind notices, this past weekend. Walls Decl. Exs. H-K; Jacobs Decl. ¶¶6-7.

## ARGUMENT

### I.    Defendants Do Not Respond to Plaintiffs' Showing that RIFs Violate the APA's Prohibitions of Arbitrary and Capricious Action and Action Contrary to Law

To the extent Defendants acknowledge Plaintiffs' claims, they focus entirely on the ADA and neither address nor respond to the numerous other reasons why these RIFs are arbitrary and capricious and contrary to other law in violation of the APA. ECF 17-1 at 14-21.

As Plaintiffs' TRO Motion explained, the OMB Memorandum, OPM Guidance, and Defendants' decision to commence implementation of RIFs are each final agency actions that are arbitrary and capricious in numerous ways. ECF 17-1 at 21-22; *see also infra* 8-9 (addressing final agency action). Defendants' public statements since Plaintiffs filed that Motion have only underscored these APA violations, particularly by establishing beyond doubt that Defendants' decisionmaking has been grounded in improper partisan considerations and the false rationale that the shutdown justifies layoffs. *Supra* at 2.

It is a bedrock principle of administrative law that "[a]gency action is arbitrary and capricious when the agency 'relies on factors which Congress has not intended it to consider, entirely fails to consider an important aspect of the problem, or offers an explanation for its

---

Department's plan to eliminate the Tucson Contact Center (TCC) due to a lack of funding."; HHS: " This RIF is necessary to reshape the workforce of HHS."; EPA: "The decision to conduct a RIF has been made pursuant to the President's priority programs, projects and activities, and anticipated availability of funding."; HUD: "RIF determinations were made by identifying those programs not in alignment with the President's Management Agenda or the Administration's priorities."; Ed.: "[T]he continued lapse in funding has made it necessary to implement the RIF.").

decision that runs counter to the evidence before the agency.'"  *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 67 F.4th 1027, 1035 (9th Cir. 2023) (alterations omitted) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)).  Equally bedrock is the rule that a reviewing court assesses the "contemporaneous explanation" provided for the action.  *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) ("The basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted.").  Defendants therefore cannot disavow their publicly stated reasons for these shutdown layoffs, and those reasons—set forth in the OMB and OPM documents directing these actions, the President and OMB's contemporaneous explanations, and the notices now going out to employees (*supra* at 2)—demonstrate conclusively that these actions are unlawful because Defendants considered improper factors and failed to consider relevant ones (including agency functions, needs, and authorizations and employees' interests).  ECF 17-1 at 18-21.

Defendants offer no response to Plaintiffs' showing that the challenged agency actions are (1) arbitrary and capricious and (2) exceed statutory authority and are contrary to laws besides the ADA, ECF 17-1 at 15-16, including because OMB's directive instructs agencies to RIF based on the false premise that a temporary funding lapse eliminates statutory authorization for agencies' programs, a rationale that is echoed in agencies' RIF notices.  *See* ECF 17-3 Ex. A ("With respect to those Federal programs whose funding would lapse and which are otherwise unfunded, such programs are no longer statutorily required to be carried out."); *supra* at n.2. Defendants make no effort to defend the rationale that a lapse in funding eliminates agencies' statutorily required or authorized functions.  ECF 17-1 15-16; ECF 41.[3]

## II.     Violations of the Antideficiency Act Are Enforceable via the APA's Prohibition on Conduct Contrary to Law

---

[3] Defendants' Background section purports to describe, but greatly overstates, the statutory authority to conduct RIFs by invoking statutes that merely impose retention preference requirements in the event of a RIF.  ECF 41 at 3.  While this Court need not reach the issue of the scope of agencies' general authority to RIF in order to resolve this Motion or the question whether *these* RIFs are unlawful, no statute provides the President or OMB any such authority *or* federal agencies the unbounded authority Defendants invoke.  ECF 41 at 3, 18; *see La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 357 (1986) ("[A]n agency literally has no power to act ... unless and until Congress confers power upon it").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Similarly, Defendants make no attempt to defend the legality of their actions under the ADA.  Nor could they, including because the uncontroverted record establishes that Defendants have been and are continuing to direct federal employees to work illegally during the shutdown, preparing and issuing RIF notices to their fellow employees.  ECF 17-1 16-18; ECF 40.[4]

Instead, Defendants argue that the ADA is a "statute[] [that] preclude[s] judicial review" under APA section 701(a)(1).  5 U.S.C. §701(a)(1); ECF 41 16-17.[5]  But Defendants cannot overcome the "strong presumption" favoring judicial review of agency action, *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 733 (2022), and the Supreme Court's repeated warning against the use of implied doctrines to expand exceptions to the APA's "command" of judicial review, *New York*, 588 U.S. at 771-72; *see also Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) ("Congress rarely intends to prevent courts from enforcing its directives to federal agencies").  As the Supreme Court has explained, "judicial review of final agency action in an otherwise justiciable case is traditionally available unless 'a statute's language or structure'" precludes judicial review.  *Becerra*, 596 U.S. at 733.  This standard sets a very high bar: "[T]he agency bears a 'heavy burden' in attempting to show that Congress "prohibit[ed] all judicial review" *Mach Mining*, 575 U.S. at 486 (quoting *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975)).

As an initial matter, no ADA provision precludes judicial review.  *See Becerra*, 596 U.S. at 733 (starting analysis with statutory text); *Dunlop*, 421 U.S. at 567 (same).  Having no basis in the plain text, Defendants argue that, by providing for remedies for individual employee violations such as criminal penalties and administrative discipline, the ADA impliedly precludes judicial review under the APA.  ECF 41 at 17.  But the mere fact that separate remedies exist has never been held sufficient to overcome the presumption of APA review.  *See Sackett v. EPA*, 566

---

[4] The Billy Declaration suggests that employees of certain agencies who are working on (non-excepted) work of preparing and issuing RIF notices were already working on other excepted activities.  ECF 40 at 2 ¶7.  But Defendants themselves explain that this is unlawful: "A lapse-affected employee is allowed to perform work only to perform orderly shutdown of agency operations related to non-excepted activities or other work that has been identified as excepted under guidance issued by OMB."  Walls Decl. Ex. J at *5 (OPM Special Instructions for Agencies Affected by a Possible Lapse in Appropriations Starting on October 1, 2025).

[5] Defendants' argument that the ADA itself provides no private right of action, ECF 41 at 16, is beside the point.  Plaintiffs do not bring claims directly under the ADA.

U.S. 120, 129 (2012) ("[I]f the express provision of judicial review in one section of a … statute were alone enough to overcome the APA's presumption of reviewability … it would not be much of a presumption at all."); *cf. Columbia Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757 (D.C. Cir. 2025) (holding that SEC rule was contrary to law in violation of APA, even though SEC regulations provide a separate remedy).

Defendants argue that the ADA and APA provide *different* remedies, ECF 41 at 17, but that is also not evidence of Congressional intent where the remedies at issue are not mutually exclusive and one does not interfere with the other. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984), on which Defendants rely, does not support their argument. Rather, *Block* involved a textual indication of Congress' intent to limit review to certain parties and remedies that would conflict with immediate APA review. The law at issue in *Block* was held to intentionally preclude consumers from challenging milk pricing market orders under the APA because the statutory scheme created a comprehensive regulatory framework that permitted only milk handlers and producers to participate, specifically allowed for consumer input solely through notice and comment, and precluded injunctions. 467 U.S. at 348. By contrast, the ADA merely imposes a reporting requirement and authorizes penalties for individual violators that are in no way exclusive of APA review of the government-wide orders to engage in ADA violations. Additionally, *Block* reasoned that the milk handlers could reasonably be expected to challenge unlawful agency action and to advance the statute's objectives. *Block*, 467 U.S. at 352. By contrast, no comparable mechanism exists to ensure enforcement of the ADA. The Defendants that have ordered the violations will not realistically police themselves. *Cf. Mach Mining,* 575 U.S. at 488–89 ("Absent such review, the [agency's] compliance with the law would rest in the [agency's] hands alone. We need not doubt the [agency's] trustworthiness, or its fidelity to law, to shy away from that result. We need only know—and know that Congress knows—that legal lapses and violations occur, and especially so when they have no consequence. That is why this Court has so long applied a strong presumption favoring judicial review of administrative

1    action.").[6]

2        Finally, Defendants' only other authority, *Global Health Council v. Trump*, 2025 WL

3    2480618 (D.C. Cir. Aug. 28, 2025) (ECF 41 at 17), does not address the ADA or support the

4    conclusion that Congress intended the ADA to preclude review.  There, recipients of foreign-aid

5    assistance funds were precluded from enforcing the Impoundment Control Act (ICA) through the

6    APA "at least while the ICA's statutory processes run their course."  *Id*. at *12 n.18.  The court

7    concluded that the ICA's complex statutory enforcement scheme, including administrative

8    exhaustion requirements for particular parties with specific timeframes, would be inconsistent

9    with immediate APA review.  *Id*. at *9-11.  By contrast, the ADA contains no exhaustion or

10    other provisions that are inconsistent with immediate APA review.[7]

11    **III.     Defendants' Other Threshold Arguments Lack Merit**

12        **A.      This Court has jurisdiction**

13        Defendants' argument that this Court lacks jurisdiction over Plaintiffs' claims cites a

14    supposed "mounting body of decisions," ECF 41 at 11, while entirely ignoring the published,

15    binding, on-point Ninth Circuit precedent that rejects Defendants' administrative channeling

16    arguments.  *See AFGE v. Trump*, 139 F.4th 1020, 1033 (9th Cir. 2025) ("the district court below

17    correctly determined that Plaintiffs' claims were properly raised in that court"), *stay granted*

18    *pending appeal on other grounds*, *Trump v. AFGE*, No. 24A1174 (U.S. July 8, 2025).  As

19    Defendants are well aware, *AFGE v. Trump* also involves decisions by the Trump

20    Administration to impose RIFs across the government in excess of legal authority and in an

21    arbitrary and capricious manner, and holds that the Civil Service Reform Act does not impliedly

22    remove express federal jurisdiction over Plaintiff federal employee unions' APA and ultra vires

23    challenges to those actions. 139 F.4th at 1030-33; *see also id.* at 1031 ("Whether or not the

24    federal agencies' 'transformation[s]' and 'large-scale reductions in force' can be characterized as

25

---

26       [6] 2 U.S. Gov't Accountability Off., GAO-06 382SP, Principles of Federal Appropriations Law ch. 6, at 144 (3d ed. 2006) ("As far as GAO is aware, it appears that no officer or employee has ever been prosecuted, much less convicted, for a violation of the Antideficiency Act ....").

27       [7] *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012), cited by Defendants, Opp. 16-17, addresses the standard for statutory carve-outs to the APA's waiver of sovereign immunity, and is completely inapposite.

28

an 'agglomeration' of 'individual employment actions,' Plaintiffs are not challenging those employment decisions with respect to individual employees [but] … Defendants' constitutional and statutory authority to direct the federal agencies to take such actions in the first place."). The Court's further analysis of each of the factors under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), is directly on point and forecloses Defendants' contrary arguments. *Compare* 139 F.4th at 1030-33 *with* ECF 41 at 13-15.[8]

**B.**    **Plaintiffs challenge final agency action**

As Plaintiffs' Motion explained, Plaintiffs challenge final decisions that Defendants have already made, including the OMB and OPM directives to agencies to conduct RIFs during the shutdown and to have employees work through the shutdown to implement layoffs, as well as decisions made public last week regarding implementation of these directives, including as to timing and requiring specific employees to prepare and issue RIF notices. ECF 17-1 at 10-22; *see also* ECF 17-3 ¶16, Ex. M at 1 (Vought informing Congressional leaders that decision had been made to begin RIFs in "day or two"); *see also* ECF 17-3 ¶¶26-28 (OMB directing content and timing of RIFs); ECF 40 (confirming RIFs); Walls Decl. Ex. A-E (confirming more RIFs "will" happen). All of these actions qualify under the well-established *Bennett v. Spear* test, for reasons previously explained. 520 U.S. 154, 178 (1997); *see also AFGE*, 139 F.4th at 1039.

Defendants apparently concede (by making no contrary argument) that the eight agencies that have implemented OMB and OPM's orders by issuing RIF notices beginning October 10 have engaged in final agency action for APA purposes, but otherwise contend that Plaintiffs challenge only future "hypothetical" action. ECF 41 at 15. This is wrong. The record shows that the decision to implement these RIFs during the shutdown has been made, even if some agencies have yet to issue RIF notices.

---

[8] Defendants do acknowledge the contrary decision of *this* Court, ECF 41 at 13, but in dismissing this Court's sound analysis ignore that the Supreme Court's stay decision neither addressed or in any way undermined this Court's channeling analysis. Defendants likewise ignore other recent decisions by this Court rejecting Defendants' channeling arguments with respect to similar claims. *AFGE v. OPM*, 2025 WL 2633791, at *10 (N.D. Cal. Sept. 12, 2025) ("The district court has jurisdiction to hear these claims…. No statutory scheme channels them into an administrative body."); *AFGE v. OPM*, 771 F.Supp.3d 1127 (N.D. Cal. 2025) (same).

1    First, Defendants admit that agencies other than the identified eight have submitted plans

2    to OMB for approval pursuant to OMB's directive and that additional RIFs are being prepared.

3    ECF 41 6-7; ECF 40 ¶¶5, 9-10 .  Their only "evidence" that no final decision has been made

4    *whether* to engage in RIFs is from a declarant who lacks personal knowledge, and ignores

5    Defendants' numerous public statements and own documents.  ECF 40; *compare* Walls Decl. at

6    Ex. D (Oct. 11 senior Administration official: "*More RIFs will be coming*, and the court filing is

7    just a snapshot in time, a senior administration official said, speaking on the condition of

8    anonymity to discuss personnel matters.") (emphasis added); Ex. C (Vance: cuts "will only get

9    deeper"); Schwartz Decl. Ex. T (EPA Oct. 10 Notice of Intent to RIF: "*The decision to conduct a*

10    *RIF has been made*….") (emphasis added).[9]

11    Next, Defendants counter that federal agencies (not OMB, OPM, or even the President)

12    are the sole actual decision-makers, but to support this factual assertion cite only the OMB

13    directive's use of the permissive word "consider," ECF 41 at 15, and representations by an OMB

14    declarant who denies being "aware" of any such decisions (ECF 40 at ¶9) (which is not evidence

15    that no such decisions have been made).  We have been here before.  *See AFGE v. OPM*, 2025

16    WL 2633791, at *1 (N.D. Cal. Sept. 12, 2025); *AFGE v. Trump*, Case No. 35-cv-03698-SI, ECF

17    Nos. 139, 162 (N.D. Cal. 2025); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 775

18    F.Supp.3d 100, 115-16 (D.D.C. 2025); *cf. Hemp Indus. Ass'n v. Drug Enf't Admin*., 333 F.3d

19    1082, 1087 (9th Cir. 2003) ("[T]he court need not accept [OPM's] characterization at face

20    value.").  Notably, Defendants have not provided this Court with a single declaration from any

21    federal agency declarant under penalty of perjury stating that the agencies (rather than OMB,

22    OPM, or the President) are calling the shots with respect to these RIFs.

23    By contrast, the President's own statements make clear that OMB is in charge and that

24

25

---

26    [9] Notwithstanding this Court's unambiguous October 7, 2025 Order (ECF 27), Defendants did not provide the information required, and rely on their own declarant's *lack of knowledge* to

27    support their assertion that no agencies have made final decisions.  ECF 41 at 7 ("Nor is the declarant aware of …"; "to the knowledge of the declarant…").  This Court should reject

28    Defendants' unsupported contention that no final decision has been made with respect to any agencies other than the eight that began issuing RIF notices on October 10.

the decision to implement has been made.[10]  The available evidence thus supports the conclusion

that OMB directed agencies to engage in these RIFs, OPM directed agencies to use staff to

implement RIFs during the shutdown, OMB required agencies to submit their plans for advance

approval, and OMB made the final decisions with respect to which programs to target and

when—despite, as the press has reported, high-level agency objections that these actions are

illegal.  ECF 17-1 at 11-12 (citing evidence); Walls Decl. Ex. C ("The layoffs run counter to

recent internal warnings from senior government officials that such dismissals are legally

questionable … officials privately counseled agencies against conducting reductions in force

while the government lacks funding because it would probably violate the law ").[11]  That

agencies may work out the details of how to implement these directives and which employees

should actually prepare the RIF notices does not undermine the finality of OMB's decisions and

directives.  As the Supreme Court has observed, "[judges] are not required to exhibit a naivete

from which ordinary citizens are free."  *Dep't of Com.*, 588 U.S. at 785.  Federal agencies did not

spontaneously in concert decide to implement unprecedented RIFs during a shutdown, or to do

so starting on October 10:  as the President himself explained, he met with OMB Director

Vought to review which programs Vought decided to cut.  *Supra* at n.10.

The APA permits plaintiffs to challenge actions that are the consummation of a decision-

making process (*see Bennett*, 520 U.S. at 178), even when further implementing decisions must

be made, and it is simply not the case that, when the relevant decisions have already been made,

Defendants may delay judicial review until after every action implementing those decisions has

been taken.  *AFGE*, 139 F.4th at 1039 ([W]e have held that 'a federal agency's assessment, plan,

or decision qualifies as final agency action even if the ultimate impact of that action rests on

_____

[10] "I have a meeting today with Russ Vought, he of PROJECT 2025 Fame, to determine which of the many Democrat Agencies, most of which are a political SCAM, he recommends to be cut, and whether or not those cuts will be temporary or permanent."  ECF 17-3 Ex. O; *see also* ECF 17-3 ¶22; *supra* at 1 (President responding to October 10 question regarding how many layoffs had been authorized: "a lot.")

[11] These actions are consistent with OMB Director Vought's statements that OMB should be used to "tame the bureaucracy, the administrative state" and to "bend or break the bureaucracy to the presidential will."  Walls Decl. Ex. H; *see also id.* (quoting Vought in 2023: "The lawyers come in and say, 'It's not legal. You can't do that,'… I don't want President Trump having to lose a moment of time having fights in the Oval Office over whether something is legal.").

1   some other occurrence—for instance, a future site-specific application, [or] *a decision by another*

2   *administrative agency*....'") (emphasis in original; quotation omitted).

3          **C.      Plaintiffs can bring an ultra vires claim**

4          Defendants ignore the law of this Circuit, which plainly allows APA exceeds authority

5   claims and ultra vires claims to proceed in parallel.  *Sierra Club v. Trump*, 963 F.3d 874, 888-93

6   (9th Cir. 2020), *judgment vac'd on other grounds, sub nom. Biden v. Sierra Club*, 142 S. Ct. 46

7   (2021); *accord Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019).  Thus, even if APA

8   review were foreclosed (which it is not), ultra vires review would remain available as a critical

9   backstop to "protect and enforce" statutory rights.  *Leedom v. Kyne*, 358 U.S. 184, 190 (1958);

10  *see also id.* at 190-91 (courts retain "general jurisdiction" to safeguard rights that Congress

11  "intended . . . to be enforced").  Courts have long exercised equitable authority to enjoin agency

12  actions "made in excess of … delegated powers and contrary to a specific prohibition." *Id.* at

13  188; *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).  And the

14  Supreme Court's most recent discussion of this does not, as Defendants argue, foreclose

15  Plaintiffs' claims, for the simple reason that Plaintiffs *are* arguing that Defendants' actions are

16  directly contrary to statute.  *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681 (2025)

17  (agreeing that ultra vires review is available "when an agency has taken action entirely in excess

18  of its delegated powers and contrary to a specific prohibition in a statute") (cleaned up).

19  **IV.     Plaintiffs Will Suffer Extensive and Irreparable Harm Absent a TRO**

20         On October 10, 2025, Defendants began issuing more than 4,000 RIF notices, and

21  imminently more "will" be issued.  *Supra* at 2; Walls Decl. Ex. D.  These actions are causing and

22  will continue to cause Plaintiffs and their members extensive and irreparable injury without a

23  TRO.  Plaintiffs have more than satisfied their burden to show that the injury is "*likely* in the

24  absence of an injunction."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); ECF 41 at 8.

25         Defendants argue that Plaintiffs and the employees they represent will not suffer

26  irreparable harm from actual or imminent RIF notices because (1) there can be no harm prior to

27  separation, and (2) separation from employment is not irreparable harm.  ECF 41 at 9.

28  Defendants are wrong on both counts.  Even if employees are given advance notice, they suffer

1   real and significant injury during the time period between a RIF notice and actual separation.

2   Defendants ignore the real-world impact of their actions on the lives and work of the federal

3   employees these actions are impacting right now.

4       First, the imminent threat of layoff and attendant loss of health benefits causes significant

5   emotional stress for federal employees who have received RIF notices.  That distress is

6   particularly acute for those employees who (or whose family members) are facing serious health

7   issues or are pregnant.  Jacobs Decl. ¶9; Robinson Decl. ¶6; Gittleman Decl. ¶¶15-16; ECF 17-4

8   ¶15; ECF 17-6 ¶14.  As one federal employee who previously received a RIF notice observes,

9   "[t]he lives of the employees who received … initial RIF notices back in April were thrown into

10  significant turmoil," ECF 17-6 ¶11.  The emotional distress caused by having RIF notices

11  hanging over employees' heads is itself irreparable harm.  *Cf. Chalk v. U.S. Dist. Ct. Cent. Dist.*

12  *of Cal.*, 840 F.2d 701, 709-10 (9th Cir. 1988).

13      Second, employees who receive RIF notices during the shutdown will be deprived of the

14  information and assistance they should receive during the notice period.  Ordinarily, employees

15  and the Plaintiff unions that represent them work with human resources staff during a RIF notice

16  period to prepare for the employees' separations, which is a complex endeavor.  Jacobs Decl.

17  ¶¶10-15; Robinson Decl. ¶¶11-12; Gittleman Decl. ¶¶19-20.  For example, during the notice

18  period, agencies are supposed to "[c]onduct employee briefings, town halls, and one-on-one

19  meetings"; "[o]ffer reemployment priority and career transition assistance to eligible

20  employees";[12] and assist employees with severance pay, payment for unused leave,

21  unemployment compensation, health insurance, and other benefits available to employees upon

22  separation.[13]  Employees depend on those services to find other employment options and select

23  the most financially viable options for them and their families during their unemployment.

24

25  _____

26  [12] OPM, *Overview of Reduction in Force (RIF)*, available at: https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force-rif/rif-overview.pdf; *see also* OPM, *Workforce Reshaping Operations Handbook*, available at: https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force-rif/workforce_reshaping.pdf.

27

28  [13] OPM, *Employee Guide to Pay, Leave, and Other Benefits During a Reduction in Force*, available at: https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force-rif/#url=Pay-Leave-Other-Benefits.

Jacobs Decl. ¶¶10-15; Robinson Decl. ¶12; Gittleman Decl. ¶¶19-20.  None of this work can be done during the shutdown while these employees and other agency staff are furloughed, without violating the ADA.  Jacobs Decl. ¶¶11-15; Robinson Decl. ¶11-12; Gittleman Decl. ¶¶19-20.  Indeed, at least one agency, after issuing RIF notices to other employees, RIF'd *the human resources staff*, leaving it with no one left to inform employees about health insurance continuation, severance, retirement options, unemployment, or other civil service options, and unable to access relevant information itself.  Jacobs Decl. ¶7.  Plaintiffs and the employees they represent will therefore suffer irreparable harm from being deprived of the assistance and information they would ordinarily receive during this time period. Jacobs Decl. ¶21; Robinson Decl. ¶15; Gittleman Decl. ¶¶19-20.

Third, during a RIF notice period, Plaintiffs and federal employees must work with agency staff to review and correct errors in the notices or retention registers, which determine the order in which employees subject to a RIF are separated from civil service or reassigned to other positions, and correct other errors in how the RIF was conducted.  Jacobs Decl. ¶¶16-20; Robinson Decl. ¶¶13-14.  During previous rounds of RIFs earlier this year, Plaintiffs found numerous errors in the RIF process.  Jacobs Decl. ¶16.  The current round of RIFs were apparently riddled with errors, as publicly disclosed by HHS.  *Supra* at 2; *see also* Jacobs Decl. ¶¶6, 17-20; Robinson Decl. ¶14.

The time period between notice and separation is necessary to work to correct such errors.  But again, Plaintiffs and the employees they represent will be unable to do so during the shutdown period.  Jacobs Decl. ¶¶16-20; Robinson Decl. ¶¶13-14.  Further, Plaintiffs have learned that at least some agencies have instructed employees *not* to check their emails (and that they would be disciplined for doing so), while sending RIF Notices to those work emails.  Gittleman Decl. ¶3, Ex. A at 3, thereby depriving employees of notice and the ability to even start the process of reviewing for and correcting errors—including because some human resources staff themselves have been RIF'd, Jacobs Decl. ¶7.

Fourth, employees who receive RIF notices because of political targeting suffer irreparable harm from political discrimination that cannot be remedied by money damages.  *Cf.,*

*e.g.*, *Vazquez-Burgos v. Rodriguez-Perez*, 111 F.Supp.3d 135, 139 (D.P.R. 2015); *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Defendants' only response is to say this harm is "speculative and downstream." ECF 41 at 10; *see also id.* (asserting that Plaintiffs "offer nothing but speculation and scattered quotations").  But there is extensive evidence—including numerous recent admissions from the President himself—that Defendants' RIFs are targeting "Democrats" and "Democrat agencies."  *Supra* at 1,2.  Defendants fail to refute this evidence.

Fifth, once the separations take effect, the RIFs will cause extensive and irreparable harm.  *See AFGE*, 139 F.4th at 1040 (implementation of RIFs causes irreparable harm). Defendants ignore this precedent to argue that, as a general matter, job loss is not irreparable. ECF 41 at 9-10.  As the Ninth Circuit explained: "[I]t is obvious that 'back pay' is far from an adequate remedy… It cannot account for harms resulting from loss of income in the interim or for gaps in health-and childcare that accompany job loss." *AFGE*, 139 F.4th at 1040.  Federal employees who are separated from employment lose income, child care, health insurance and other benefits; are forced to look for other job opportunities in a crowded labor market; and some will need to relocate.  ECF 17-4 ¶¶11-15; ECF 17-5 ¶9; ECF 17-6 ¶¶11-14.  That some employees *may* be entitled to later remedies for the wrongful termination of benefits, *see* ECF 41 at 9, does not remedy the harm that ensues when the loss of coverage causes employees and their family members to be unable to pay for (and, therefore, to obtain) medical services at the time they lack such health insurance.  *See Diaz v. Brewer*, 656 F.3d 1008, 1012 (9th Cir. 2011); *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1125 (9th Cir. 2008).  Later damages are also not available in APA actions.  *See California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).

Sixth, Defendants do not deny that Plaintiffs' members who will remain at agencies after RIFs will also suffer irreparable harm from drastically increased workloads.  *See* ECF 17-1 (citing evidence).  Defendants contend that such employees lack standing, Opp. 10, but offer no reasoning or authority as to why such harm would not be cognizable for standing purposes.

Finally, Defendants fail to respond at all to Plaintiffs' showing that the Plaintiff unions themselves will suffer irreparable harm from expending significant time and resources to address

their members' concerns regarding RIFs from losing significant dues income and bargaining power as a result of the RIFs.  *See* ECF 17-1 at 14.

## V.    The Balance of Equities and Public Interest Strongly Favor a TRO

Defendants' assertion of harm to the government turns on their erroneous contention that the RIFs are lawful.  ECF 41 at 19-20.  There is no legitimate government interest in unlawful action. *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted); *see also Pangea Legal Servs. v. DHS*, 501 F.Supp.3d 792, 826-27 (N.D. Cal. 2020).  Defendants also assert, without any support, that the government would suffer harm from paying the "salaries and benefits" of employees subject to RIFs, totaling "millions of dollars each week," *during the TRO*.  ECF 41 at 20.  However, the government is not paying furloughed and excepted federal employees during the shutdown.  Once Congress ends the shutdown, Defendants will not suffer irreparable injury from "spending congressionally appropriated funds" on backpay, salaries, and benefits for employees at those agencies.  *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 943 (9th Cir. 2025).  Plaintiffs' evidence of extensive and irreparable injuries from RIFs outweighs Defendants' nonexistent showing of harm. *Supra* 11-15.

## VI.    Scope of Relief

As set forth in the Revised Proposed Order, Plaintiffs seek their original temporary relief staying further RIF notices, and also a halt to any further implementation of RIF notices already issued, including a stay on the running of the RIF notice period, necessitated by the inability of employees to resolve issues and receive assistance during the period between notice and separation.  Plaintiffs also request that Defendants' request to stay any TRO pending appeal be denied, because Plaintiffs are likely to succeed on the merits and will suffer irreparable injury if RIFs proceed , and the balance of the equities and public interest strongly favor Plaintiffs.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009).  Finally, the Court should exercise its discretion to waive the bond requirement.  *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  Defendants are unlikely to suffer harm given that their enjoined actions are unlawful, and this case implicates significant public interest.  *See Taylor-Failor v. Cnty. of Haw.*, 90 F.Supp.3d 1095, 1102-03 (D. Haw. 2015).

1

**CONCLUSION**

2

For all the foregoing reasons, Plaintiffs respectfully request the Motion be granted.

3

4

Respectfully submitted,

5

6

7

8

9

10

11

12

13

14

15

Dated: October 14, 2025

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Alice X. Wang
Robin S. Tholin
Talia Stender
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

16

By: */s/ Danielle Leonard*

17

*Attorneys for All Plaintiffs*

18

19

20

21

Elena Goldstein (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 322-1959
egoldstein@democracyforward.org

22

*Attorneys for All Plaintiffs*

23

24

25

26

27

Norman L. Eisen (pro hac vice)
Craig Becker (pro hac vice)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Craig@democracydefenders.org

28

*Attorneys for All Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

*Attorneys for Plaintiffs American Federation of
Government Employees, AFL-CIO (AFGE) and
AFGE locals*


Teague Paterson (SBN 226659)
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org

*Attorneys for Plaintiff American Federation of State
County and Municipal Employees, AFL-CIO
(AFSCME)*