UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>Defendants. | Case No. 25-cv-08302-SI<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER; ENJOINING SHUTDOWN-RELATED RIFS; AND SETTING SCHEDULE FOR HEARING ON MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 17, 38 |

On October 10, 2025, federal agencies began laying off thousands of employees in the midst of a government shutdown.[1] Dkt. No. 40 ("Billy Decl.") ¶ 7. This is unprecedented in our country's history. The President has publicly stated that the layoffs will be "a lot" and that they "will be Democrat oriented, because we figure, you know, they started this thing, so they should be Democrat-oriented." Dkt. No. 42-2 ("Walls Decl.") ¶¶ 2-4 & Ex. A.

What is becoming clear is that reductions in force ("RIFs") during a government shutdown are not "ordinary" RIFs in any sense of the word. Based on the record before the Court, some employees do not even know if they are being laid off because the RIF notices were sent to government e-mail accounts, and furloughed employees may not access their work e-mail during a shutdown. Dkt. No. 47-4 ("Gittleman Decl.") ¶ 4 & Ex. A; Dkt. No. 47-5 ("Robinson Decl.") ¶ 8.

---

[1] The government reports that the layoffs to date are as follows: Department of Commerce—approximately 600; Department of Education—466; Department of Energy—179, in a "general RIF notice" informing employees they may receive a RIF notice in the future; Environmental Protection Agency—28, in a general "intent to RIF notice; Department of Health and Human Services—982; Department of Housing and Urban Development—442; Department of Homeland Security—54; Department of Treasury—1377. Dkt. No. 49-2 ("Billy Suppl. Decl.").

1  Those who have received RIF notices cannot prepare for their upcoming terminations because the
2  human resources staff who would typically assist them are also furloughed.  One union president
3  representing workers at the Centers for Disease Control and Prevention described how human
4  resources staff were brought back into the office last weekend to work on issuing RIF notices, and
5  then, once they had completed this work, were told "to issue RIF notices to themselves."[2]  Dkt. No.
6  47-3 ("Jacobs Decl.") ¶¶ 2, 7.  Unions are hearing from members who have serious health conditions
7  or are in the late stages of pregnancy, and who worry that their health insurance will be impacted by
8  the RIFs, but there is no one in the office who can answer their questions during the shutdown.  *Id.*
9  ¶¶ 9, 14; Gittleman Decl. ¶ 16; Robinson Decl. ¶¶ 6, 12.

10  It is also far from normal for an administration to fire line-level civilian employees during a
11  government shutdown as a way to punish the opposing political party.  But this is precisely what
12  President Trump has announced he is doing, by taking to social media on the second day of the
13  shutdown to post: "I have a meeting today with Russ Vought,[3] he of PROJECT 2025 Fame, to
14  determine which of the many Democrat Agencies, most of which are a political SCAM, he
15  recommends to be cut, and whether or not those cuts will be temporary or permanent.  I can't believe
16  the Radical Left Democrats gave me this unprecedented opportunity."  Dkt. No. 15 ("Am. Compl.")
17  ¶ 176; Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 2, 2025, at 4:59 a.m.),
18  https://truthsocial.com/@realDonaldTrump/posts/115304455138824245 (last visited Oct. 15,
19  2025).  The memorandum from the Office of Management and Budget that appears to have initiated
20  the shutdown RIFs says the same.  *See* Dkt. No. 15-1, Am. Compl., Ex. A ("OMB Lapse Mem.")
21  (directing agencies to "use this opportunity" of the shutdown to consider RIF notices, including in
22  those areas that are "not consistent with the President's priorities" and stating the hope that the RIF

---

[2] Additionally, it appears that Health and Human Services, which houses the CDC, issued hundreds of RIF notices in error.  On October 10, 2025, the government filed a declaration that 1100-1200 employees at Health and Human Services had received RIF notices. Billy Decl. ¶ 7.  On October 14, 2025, the government filed another declaration explaining that "[a]s a result of data discrepancies and processing errors, RIF notices were issued on October 10, 2025, to approximately 1,760 employees instead of to the 982 employees who were intended to receive RIF notices." Dkt. No. 49-1 ("Nagy Decl.") ¶ 3.

[3] Vought is the director of the U.S. Office of Management and Budget ("OMB") and is a defendant in this case.

"steps outlined above will not be necessary" if "Democrats in Congress will not trigger a shutdown").

Plaintiffs are labor organizations and their local affiliates representing federal civilian employees. They move for a temporary restraining order to enjoin defendants from further implementing RIFs during or because of the shutdown. A party may seek a temporary restraining order to preserve the status quo and prevent irreparable harm until a preliminary injunction hearing may be held. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974)); Fed. R. Civ. P. 65(b). The standard for evaluating a temporary restraining order is "substantially identical" to the standard for evaluating injunctive relief. *Babaria v. Blinken,* 87 F.4th 963, 976 (9th Cir. 2023), *cert. denied sub nom. Babaria v. Jaddou*, 145 S. Ct. 160 (2024) (citations omitted). In order to obtain a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

The Court finds plaintiffs have met their burden at this stage. The Court has reviewed all of the filings in the case, including the briefs and declarations, and heard argument from both sides during a hearing on October 15, 2025.[4] The Court is satisfied that the union plaintiffs have standing to pursue their claims and that this Court has jurisdiction because the types of challenges plaintiffs bring here are not appropriately "channeled" to administrative bodies that hear challenges to individual employment actions. *See Am. Fed'n of Gov't Emps. v. Trump*, 139 F. 4th 1020, 1030-32 (9th Cir. 2025), *stay granted on other grounds sub nom. Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. ----, 145 S. Ct. 2635 (2025). Plaintiffs' claims are ripe for review: the challenged memorandum and guidance that triggered the RIFs have been issued and are final, even if not all defendant agencies have issued actual RIF notices as of this date. Nor is the Court persuaded by defendants' argument that plaintiffs cannot sue under the Antideficiency Act, 31 U.S.C. §§ 1341 et seq., the

---

[4] As noted below, at the hearing defense counsel declined to discuss the merits of the motion, despite being requested to do so several times by the Court.

1    statute that governs what the federal government may or may not do during a shutdown. Defendants
2    misconstrue plaintiffs' case. Plaintiffs sue to enjoin what they argue are unlawful agency actions,
3    where the agency did not comply with the Administrative Procedure Act. "The APA instructs a
4    reviewing court to 'hold unlawful and set aside' agency actions that are contrary to any law, 'not
5    merely those laws that the agency itself is charged with administering.'" *New York v. Kennedy*, No.
6    25-CV-196-MRD-PAS, 2025 WL 1803260, at *15 (D.R.I. July 1, 2025) (quoting 5 U.S.C.
7    § 706(2)(A); *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003)).

8          A temporary restraining order is appropriate because plaintiffs are likely to prevail on the merits of their claims under the APA. OMB's September 24, 2025 "Lapse Memorandum" and subsequent documents from the Office of Personnel Management ("OPM") represent "final agency action" within the meaning of the APA. *See* OMB Lapse Mem.; *see also* Am. Compl., Ex. B ("OPM Special Instructions"); Dkt. No. 17-3 ("Huddleston Decl."), Ex. C at 50-51 ("OPM Guidance"). If what plaintiffs allege is true, then the agencies' actions in laying off thousands of public employees during a government shutdown —and in targeting for RIFs those programs that are perceived as favored by a particular political party— is the epitome of hasty, arbitrary and capricious decisionmaking. The many snafus that plaintiffs detail in their papers, some of which are outlined above, are testament to this. In addition, plaintiffs are likely to succeed on their claim that OPM and OMB's direction that agencies consider RIFs during a shutdown rests on illegal grounds. In particular, OMB's Lapse Memorandum announces: "With respect to those Federal programs whose funding would lapse and which are otherwise unfunded, such programs are no longer statutorily required to be carried out." OMB Lapse Mem. at 1. The memorandum thus essentially seeks to overturn mandates that Congress has put in place. Neither the OMB/OPM documents themselves, nor defendants in their opposition papers, make any attempt to justify this position. At the hearing, counsel for defendants refused to answer the question of whether or not defendants' action are legal, instead saying that defendants were "not prepared" to address the merits today.

26         The rest of the factors weigh in favor of temporary relief. Plaintiffs face loss of income, loss of healthcare, and possible relocation from their homes, all constituting irreparable harm if they do not receive immediate injunctive relief. *See Am. Fed'n of Gov't Emps.*, 139 F. 4th at 1040. Indeed,

the irreparable harm in this case is distinct from prior RIFs because the record reflects that the shutdown is preventing some furloughed employees from even knowing that they are being RIF'd. *See* Gittleman Decl. ¶¶ 3-4; Robinson Decl. ¶ 8; *see also* Jacobs Decl. ¶¶ 16-17 (errors in RIF notices cannot be corrected because human resources staff are not working).  The harms suffered by federal employees affected by RIFs are having drastic and imminent public consequences, and "the government does not 'suffer by a temporary preservation of the status quo.'"  *Am. Fed'n of Gov't Emps.*, 139 F. 4th at 1030 (quoting *Am. Fed'n of Gov't Emps. v. Trump*, 782 F. Supp. 3d 793, 827 (N.D. Cal. 2025)).  Moreover, temporary relief as ordered below would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action." *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted).

To preserve the status quo and prevent irreparable harm, and because the Administrative Procedure Act requires this Court to "hold unlawful and set aside agency action" where an agency has violated the Act, 5 U.S.C. § 706(2)(A), (C), a temporary restraining order shall issue, pursuant to this Court's authority including but not limited to authority to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights" (5 U.S.C. § 705).

**TEMPORARY RESTRAINING ORDER**

**IT IS HEREBY ORDERED** that, pending an order by this Court as to whether further injunctive relief should issue,

OMB, OPM, and Federal Defendant Agencies;[5] their officers, agents,

---

[5] The "federal defendant agencies" are the departments of Agriculture ("USDA"), Commerce, Defense ("DoD"), Education, Energy, Health and Human Services ("HHS"), Homeland Security ("DHS"), Housing and Urban Development ("HUD"), Justice ("DOJ"), the Interior, Labor ("DOL"), State, Treasury, Transportation ("DOT"), Veterans Affairs ("the VA"), as well as the Consumer Product Safety Commission ("CPSC"), Environmental Protection Agency ("EPA"), Equal Employment Opportunity Commission ("EEOC"), Federal Trade Commission ("FTC"), General Services Administration ("GSA"), Institute of Museum and Library Services ("IMLS"), National Aeronautics and Space Administration ("NASA"), National Archives and Records Administration ("NARA"), National Endowment for the Arts ("NEA"), National Endowment for the Humanities ("NEH"), National Gallery of Art ("NGA"), National Science Foundation ("NSF"), National Transportation Safety Board ("NTSB"), Nuclear Regulatory Commission ("NRC"), Small Business Administration ("SBA"), Smithsonian Institute ("Smithsonian"), Social Security

servants, employees, and attorneys; and all persons acting by, through, under, or in concert with these Defendants are hereby enjoined and/or stayed, until further order of the Court, from:

    1) taking any action to issue any Reduction in Force ("RIF") notices to federal employees in any PPA (program, project, or activity) that includes any bargaining unit or member represented by any Plaintiff during or because of the federal government shutdown, including but not limited to by taking any action to implement or enforce the OMB Lapse Memorandum (dated September 24, 2025), the portions of the related OPM Guidance for Shutdown Furloughs (as revised September 28, 2025), the related OPM "Special Instructions for Agencies Affected by a Possible Lapse in Appropriations Starting on October 1, 2025" (dated September 28, 2025), or any other decision or directive that purports to authorize or require issuance of RIF notices during a shutdown;

    2) taking any further action to administer or implement any RIF notices already issued beginning on October 10, 2025 to federal employees in any PPA (program, project, or activity) that includes any bargaining unit or member represented by any Plaintiff, including but not limited to by requiring federal employees to perform work to further administer or implement RIF notices and by enforcing or counting any days towards any period of notice with respect to those notices (i.e., the effective date of the RIF shall be stayed and Defendants shall therefore toll the running of all RIF notice periods).

IT IS FURTHER ORDERED that, by 5:00 p.m. PDT on October 17, 2025, Defendants shall serve and file an accounting of all RIFs, actual or imminent, that are enjoined by this TRO, including but not limited to a description of the agency that imposed or is planning to impose the enjoined RIF, the number of employees included in the enjoined RIF, and description of the PPAs that Defendants included in the enjoined RIF.

IT IS FURTHER ORDERED that, by 5:00 p.m. PDT on October 17, 2025, each Defendant shall file a declaration(s) verifying that they have complied with this Order and the steps they have taken to do so.

IT IS FURTHER ORDERED that the Court GRANTS the order to show cause why a preliminary injunction shall not issue.

The Court will require that plaintiffs post a nominal bond of $10 total (not per plaintiff) by no later than October 23, 2025. The Court denies defendants' request for a stay of execution of the temporary restraining order or for an administrative stay.

## PRELIMINARY INJUNCTION SCHEDULE

Pursuant to stipulation among counsel, the Court sets the following schedule for briefing and

---

Administration ("SSA"), and the International Development Finance Corporation ("DFC").

6

hearing on the plaintiffs' motion for preliminary injunction:

    --Plaintiffs' moving papers due Tuesday, October 21, 2025;

    --Defendants' responsive papers due Friday, October 24, 2025;

    --Plaintiffs' reply papers, if any, due Monday, October 27, 2025 at 3:00 p.m.; and

    --Hearing at 10:30 a.m. on Tuesday, October 28, 2025 (in person).

**IT IS SO ORDERED**.

Dated: October 15, 2025

SUSAN ILLSTON
United States District Judge