Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle E. Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> Defendants. | Case No. 3:25-cv-08302-SI <br><br> **DECLARATION OF DANIEL T. RONNEBERG IN SUPPORT OF PRELIMINARY INJUNCTION MOTION** |

**DECLARATION OF DANIEL T. RONNEBERG**

I, Daniel T. Ronneberg, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am a member and the president of the Federal Aviation Administration Employees Union, Local 1653, District Council 20, American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME Local 1653" of the "Union"). AFSCME Local 1653 is affiliated with AFSCME District Council 20. District Council 20, through its constituent local unions like Local 1653, represents federal civilian employees in agencies and departments across the federal government.

3. I have been employed with the FAA for 15 years and I am a veteran, having previously served in the U.S. Air Force for 14 years as a pilot. I am currently employed by the FAA as a Regulation Analyst in the Office of Rulemaking for the U.S. Department of Transportation ("DOT"), Federal Aviation Administration ("FAA") and was previously an Aviation Safety Inspector for the FAA. The FAA's mission is to provide the safest, most efficient aerospace system in the world.

4. AFSCME Local 1653 represents a bargaining unit of over 1800 non-supervisory civil servants who work for the FAA. These employees include Air Trafic Safety Inspectors, Regulation Analysts, Accident Investigators, Economists, Computer Scientists, Regulation Attorneys, Enforcement Attorneys, Program Managers, Administrative Staff and Office Assistants, Operation Research Analysts, Policy Analysts, Technical Operations Specialists, Airport Inspectors, and others. Also in the bargaining unit are employees who work within the Air Traffic Organization and Aviation Safety departments at the FAA's headquarters. These bargaining unit members are highly technical policy experts who formulate FAA safety policy or provide analysis of safety data to recommend improvements to the nation aerospace operations.

5. AFSCME Local 1653 bargaining unit employees all report to the FAA headquarters, but some employees' duty stations are in other major cities in states including California, New Jersey, Oklahoma, Washington, Georgia, and others.

6. AFSCME Local 1653 represents the interests of the FAA's non-supervisory civil servants. Our core functions include providing support, guidance, and resources to bargaining unit

1 employees as the officially recognized exclusive representative of these employees under federal law.

2       7.      As the exclusive representative for the nonsupervisory FAA civil servants, AFSCME Local 1653 enters into collective bargaining negotiations with the FAA on a wide variety of terms and conditions of employment and represents bargaining unit employees through the negotiated grievance process. AFSCME Local 1653 and the FAA are parties to a collective bargaining agreement that memorializes negotiated terms and conditions of employment, benefits, rules, a grievance procedure, reduction in force ("RIF") procedures, and other procedures of the workplace.

      8.      On or around September 24, 2025, I learned through news reports of a memorandum sent to the White House by the Office of Management and Budget (OMB) Director, Russ Vought, stating that the Trump Administration is directing federal agencies to conduct RIFs during the government shutdown.

      9.      Immediately after the news broke about the Trump Administration's plans to RIF federal employees during the government shutdown, numerous Local 1653 bargaining unit employees contacted me by phone, email, and text to express their concerns about potentially being RIF'd and asking what the union could do to protect members. These employees are very distraught and in a panic at the thought of losing their jobs by being RIF'd during the shutdown when they are also not being paid. Many of them expressed to me that they were very concerned about losing their health insurance coverage for themselves and their families, being unable to make rent or mortgage payments, or not meeting the requirements to be able to retire with benefits. And they expressed that if no clarity or protection for their jobs was provided during the shutdown, they would need to leave the FAA and start looking for and accept other employment as soon as possible. This panic was exacerbated when President Trump gave a news conference and repeated the administration's plan to conduct RIFs en masse during the shutdown and then later stated that furloughed employees would also not receive backpay for the shutdown time period.

      10.     On October 1, 2025, the government shutdown began. The FAA did not immediately furlough employees and instead directed employees to continue working on non-exempt work. On October 3, 2025, the FAA began to furlough employees.

      11.     On October 3, 2025, FAA employees either received a furlough notice or a notice that

they were exempt from furloughs and should continue working without pay. For the first time ever in my experience with government shutdowns during my career as a union officer, I have seen our members panicking that they were furloughed versus being exempt from furloughs. Many employees who were furloughed have contacted the union and expressed to me that they are very concerned that they could be fired imminently. Those bargaining unit employees who received furlough notices began to contact the union because, they told me, under the Trump Administration's announced shutdown plans for RIFs, they interpreted this notice to mean that they would also likely be subject to a RIF during the shutdown.

12. I was furloughed on October 3, 2025, subject to recall at any moment. I continue to fulfill my duties and responsibilities as Local 1653 President to serve the membership and enforce Local 1653 and the FAA's collective bargaining agreement ("CBA") to the extent possible. However, I am significantly hampered in my ability to do so, because most of the FAA HR staff, with whom I would normally conduct labor relations, are furloughed, and HR is not working with the union to process our normal affairs; employees were directed not to use their work email accounts for anything other than for excepted work; and for many of the bargaining unit members Local 1653 represents, we only have work email addresses for the employees. I myself am not allowed to use the work equipment and information I normally would conduct union affairs, and the confusing information from the administration makes it exceedingly hard to provide union members with reliable advice.

13. FAA employees will miss their first paycheck on October 27, 2025, because of the government shutdown. To add to the extreme stress of not being paid during the shutdown, many FAA employees in Local 1653's bargaining unit have expressed to me that they are, as I am myself personally, particularly distraught and concerned about the potential permanent loss of income and health care coverage for themselves or their families due to a potential RIF during the shutdown. Many employees live paycheck-to-paycheck because of the high cost of living in the Washington D.C. area and other major cities and cannot afford to miss a paycheck they need to pay for housing and basic living expenses.

14. AFSCME Local 1653 bargaining unit employees have expressed to me that they are deeply concerned about losing health care coverage through their federal government health insurance.

Several employees have said that they or their family members covered under their insurance have serious medical conditions and, for both health and financial reasons, could not survive a lapse in health care coverage. It is particularly heartbreaking to hear bargaining unit members in tears about whether their family members' serious medical conditions are going to continue to be covered by their health insurance or whether they are going to lose that insurance at a time when they are also not being paid due to the government shutdown. For example, I have spoken to a member who is caring for a spouse that has multiple sclerosis (MS) and is covered under the member's health insurance. I have also spoken to members whose children have serious medical conditions who depend on the member's health insurance coverage.

15. This fear of losing health insurance is personal to me, too. I am terrified that I will lose my health care coverage due to a RIF because I have a serious medical condition and depend on my federal government health care insurance to provide coverage for me and my spouse. I was diagnosed with liver cancer in 2022 and, as a result, had a liver transplant in 2023. Due to the medications that I am required to take because of the transplant and complications with other medications that I was taking, this treatment that protected my transplanted liver also destroyed my kidney function. Between 2023 and now, I lost 90% of my kidney function.

16. Days before the partial government shutdown started on October 1, 2025, I received a kidney transplant that saved my life. If I lose my job and health care coverage due to a RIF during the ongoing shutdown, I will not be able to afford my post-surgery treatment for my kidney transplant that I could never pay without the assistance of health insurance. Based on the statements from my healthcare providers, the medications I currently take would cost me approximately $9,360 a month if I did not have health care insurance. In addition to the different medications I must take every day to live, I must also get laboratory tests done each week and must see my various physicians on a weekly basis to monitor the kidney function, as well as continuing monitoring of the transplanted liver. As part of this ongoing post-transplant treatment, I must see a nephrologist, a cardiologist, a hepatologist, and the transplant team every other week to maintain the health of the transplant kidney and the transplanted liver. Any gap in healthcare coverage, especially one caused by a RIF during the shutdown when I am also not being paid, is enough to put my life in serious jeopardy. If I am terminated, I will not be able

1    to simply budget my finances or miss medications and doctor's appointments. If I am terminated, my
2    life will be at risk and, at the very least, my family will face financial ruin.

3        17.    For this reason, if I were to receive a RIF notice, it would throw my life into complete upheaval. I cannot afford to live without my health insurance—literally. Therefore, if I were to receive a RIF notice, I would need to immediately try to find another job with comparable health insurance which would be extremely difficult to do in the current job market that is flooded with other skilled and highly educated former federal employees. I would also need to make immediate decisions about my personal health and course of treatment, planning how to front-load medical visits, ration medications, and so much more. And I would need to completely change how I and my family budget for our lives and expenses, making major life decisions around ensuring that I am able to treat my life-threatening chronic condition moving forward.

        18.    AFSCME Local 1653 members are also concerned about not being able to find other jobs in the current job market if they are RIF'd. Many will be unable to retire to receive retirement benefits because they do not yet qualify to retire. Generally, our members are highly educated and are skilled in the specialized and technical work of aviation safety and policy at its headquarters in Washington D.C. The current job market in this area is saturated with other highly educated and skilled former federal employees that have been RIF'd, taken the deferred resignation program ("DRP"), or are actively looking for other employment due to the instability of federal employment. Many of our members who are longtime employes of the FAA but not yet eligible to retire will be unable to find other federal jobs as they would need to in order to continue earning federal government retirement benefits until they reach retirement age.

        19.    FAA employees who have not been furloughed and the important work of the agency will also be harmed by a RIF. The federal workforce has been through a lot in the last 10 months since the inauguration and the employees of the FAA, and Local 1653 bargaining unit employees are no exception. Our members have already been the target of the unlawful termination of federal probationary employees (who were reinstated as a result of successful litigation by our union), the deferred resignation program meant to significantly reduce the federal workforce, the threat of large-scale RIFs and agency reorganizations, the demonization and politization of the federal workforce in

the press by the Trump Administration, and are now the partial government shutdown.

20. All of this has reduced the size of the FAA's workforce but has not reduced the amount of essential work the agency is responsible for. Local 1653's bargaining unit has lost 10% of its employees while there is also a hiring freeze imposed by the Trump Administration. The significant turnover of career FAA employees and managers in the last 10 months is creating chaos in an agency responsible for aviation safety in the United States. Employees are demoralized and are tasked with workloads that keep increasing in a very stressful environment. Prior to the shutdown, employees were being denied leave requests because of the significant workload of the agency and now those same employees are required to work without pay. These working conditions that are only getting worse severely harm the mental and physical health of FAA employees who perform essential aviation safety work. And if RIF notices go out for the FAA during the shutdown, our headcount will further plummet, without a doubt, leading any who remain to shoulder this increasingly impossible burden of keeping our aviation system operating safely.

21. For example, AFSCME Local 1653 represents Air Traffic Safety Inspectors, who are not furloughed but are working without pay. These FAA workers ensure compliance with aviation regulations and standards, conduct safety inspections, and provide oversight of air traffic controllers. They are currently flooded with work because there are not enough air traffic controllers in the United States and they cannot take a break from this work because the public's safety depends on them.

22. This year there has been a historically high number of aviation incidents, and our airports have had a number of major accidents. This is not the time to unjustifiably reduce the workforce that is charged with protecting the public through aviation safety. Our aviation system has safety cushions provided by the FAA, but as you stress the system, the safety cushion becomes smaller, and at some point, the system will break.

23. An unnecessary and politically motivated RIF during the government shutdown puts the public's safety at risk. Indeed, that risk is severely heightened even if a RIF notice goes out, regardless of whether the RIF ultimately occurs, because of the reduction in essential employees that will result from the threat posed by the RIF notices. Simply put, essential public servants will be forced to leave their jobs based on the RIF notice itself, those FAA employees who remain, and our country will suffer

the consequences.

24. The union will also be harmed by a RIF during the shutdown because it will be prejudiced in its ability to enforce its CBA and the many negotiated RIF procedures and employee protections. The government shutdown negatively impacts my ability to be fully effective as a union officer. During the shutdown, I am not allowed to use my government computer or use government resources to accomplish any union tasks. The union also does not have the ability to communicate with bargaining unit employees who have not provided the union with their personal contact information. The agency is also refusing to process grievances or to negotiate with the union on most subjects of bargaining that it does not deem essential during the shutdown despite contractual or statutory requirements to bargain over those subjects. If the FAA conducts a RIF under these conditions, the union will be prevented from being able to fully enforce the CBA and our members' rights will be harmed.

25. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 21, 2025, in Washington, D.C.

*/s/ Daniel T. Ronneberg*

Daniel T. Ronneberg