Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> Defendants. | Case No. 3:25-cv-08302-SI <br><br> **DECLARATION OF KENNETH BEYERSDORF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Decl. of Kenneth Beyersdorf ISO Motion for Preliminary Injunction, No. 3:25-cv-08302-SI

## DECLARATION OF KENNETH BEYERSDORF

I, Kenneth Beyersdorf, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge.

2. I am employed by the United States Census Bureau as a Bilingual Interviewer at the Tucson Contact Center. In addition to English, I speak German and understand several of its dialects. I have been employed in this position for 20 years. I am a member and Vice President of the American Federation of Government Employees Local 1207 ("AFGE Local 1207"). AFGE Local 1207 represents a bargaining unit of nonsupervisory employees at the Tucson Contact Center.

3. In my role, I work with Census Bureau field agents who go door to door to collect responses for survey projects. I assist field agents who are attempting to collect information from individuals who speak German, and I help German as well as English speakers who call our office with questions or who need help filling out census forms. I am also responsible for conducting research related to survey projects, such as obtaining phone numbers and addresses of individuals for the field agents to contact. I have also assisted in some German-language translations for the Decennial Census.

4. There are approximately 100 employees who work at the Tucson Contact Center. We work closely with the Census Bureau's other call center in Jeffersonville, Indiana, which has approximately 200 employees.

5. On October 1, 2025, I was placed on furlough due to the government shutdown. I understood that I was not supposed to check my work e-mail while I was furloughed, based on what I had been told during past government shutdowns. On October 10, 2025, I received a text message and an email to my personal email address from the Census Emergency Notification System instructing me to log into my work email the following day. When I did so, I discovered that I had received a Reduction in Force ("RIF") notice. According to the RIF notice, my last day of employment will be December 9, 2025. A true and correct copy of my RIF notice is attached hereto as Exhibit A. It states that "[t]his RIF action is based on the Department's plan to eliminate the

Tucson Contact Center (TCC) due to a lack of funding" and that "[t]he Department is abolishing all positions at the TCC."

6. The RIF has placed a tremendous amount of stress on myself, my wife, and my fourteen-year-old stepdaughter. My wife works in special education, and we share responsibility for paying our household expenses. With half of our household income gone due to the furlough, we have had to use our savings to cover our bills for October. But our savings will soon be exhausted, and I am not sure how we will pay our utility bills, make our monthly car payment, or afford groceries for November. I have a part-time retail job that provides a small amount of additional income, but we will likely need to take out loans or incur credit card debt to get by.

7. This financial strain combined with the news that I may permanently lose my job along with my income and benefits in less than two months has taken a tremendous psychological toll. Since receiving my RIF notice, every day I have woken up with a knot in my stomach, and that stress has followed me until I go to sleep at night. Both my wife and I have had difficulty sleeping due to the stress, often waking up in the middle of the night and finding ourselves unable to fall back asleep. I am also concerned about how this situation is impacting my 14-year-old stepdaughter. Although my wife and I have tried to hold it together in front of her, I know she can sense how worried we are.

8. The prospect of having to find another job has also contributed to my stress. I am 60 years old, and it has been 20 years since I last was on the job market. I am concerned that, given my age, many prospective employers will not seriously consider me for open positions. I do not expect that I will be able to find another position with comparable pay and benefits to my job at the Census Bureau.

9. Because the RIF occurred during the shutdown, I have been unable to access many of the resources that I ordinarily would be able to rely on. For example, I am eligible for retirement, although I had not planned on retiring for several more years. But the employees in our human resources department who would be able to give me information about retirement, such as the amount of my pension, and who would help me navigate that process have been furloughed. Further, because of the shutdown, I have no one who I can contact to ask questions about severance pay. My online

personnel portal currently lists two different amounts for my estimated severance pay. But I cannot resolve this inconsistency because, again, our human resources department and our other administrators are on furlough. For the same reason, I have not been able to get information about extending my health insurance, and I do not know what will happen to my insurance if the government is still shut down by the separation date in my RIF notice. The lack of information regarding these benefits and the status of my job has been extremely frustrating and has made it difficult to plan for what to do next.

10. I am also concerned about our agency's ability to survey non-English speakers following the RIFs. Approximately two thirds of the interviewers at the Tucson Contact Center are bilingual. Some of us speak languages that I do not believe anyone at the Jeffersonville facility speaks, and so the RIFs may prevent the Census Bureau from surveying members of the public who speak those languages.

11. Prior to the shutdown, the Census Bureau's call center operations were already short staffed. At the beginning of the current presidential administration, approximately 150 employees worked at the Tucson Contact Center. About one third of those employees left earlier this year and have not been replaced. As a result, many of our survey projects do not have adequate staff, which impacts our ability to collect data from enough people to produce reliable statistical findings. These staffing issues will only get worse if the Tucson Contact Center RIFs go into effect, and I am not sure how the Jeffersonville facility employees will be able to shoulder the increased workload.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed October 20, 2025, in Tucson, Arizona.

KENNETH BEYERSDORF

# Exhibit A

United States Census Bureau
U.S. Department of Commerce
U.S. CENSUS BUREAU
census.gov

October 10, 2025

To: ███████████████████████

From: Madiha D. Latif, Chief Administrative Officer

This is to inform you that you have been identified for release from your competitive level and your position with the U.S. Census Bureau through application of reduction-in-force (RIF) procedures. The effective date of the RIF and your release from the Federal service is December 9, 2025. Your separation through RIF procedures does not reflect on your service, performance, or conduct. This RIF action is based on the Department's plan to eliminate the Tucson Contact Center (TCC) due to a lack of funding. This constitutes your specific notice that your position of record as TELEPHONE INTERVIEWER (BILINGUAL), GS-0303-04/10, will be eliminated and you will be separated from the federal service effective December 9, 2025.

The Department is taking this action pursuant the Office of Personnel Management's RIF regulations under Title 5, Code of Federal Regulations (CFR), Part 351. The Department is abolishing all positions at the TCC. You do not have an assignment right to another position in another competitive area, in the local commuting area or in another office. You will remain in your current status during this specific 60-day notice period.[1]

You will be separated December 9, 2025, and your final salary payment will be received on the scheduled pay date. You will receive a partial salary payment for pay period 24 based on your date of separation. This payment will be subject to the same deductions taken from your salary in previous pay periods; however, payment for a partial pay period will have reduced tax withholdings. If applicable, you can expect payment for any unused annual leave or compensatory time earned in lieu of overtime after you separate.

We have included information about priority placement assistance programs such as the Career Transition Assistance Program (CTAP) designed to help employees find reemployment below. We will supplement this notice with additional information about rights, benefits (life, health, retirement, unemployment, etc.), leave, severance, outplacement/career transition resources, and other benefits available for employees separated by RIF. If you have any questions or need additional assistance, you may contact census.tcc@census.gov.

If you resign or retire on or before the RIF effective date of December 9, 2025, your separation will be considered voluntary. Please be advised that voluntary resignations or retirements may

---

[1] You are currently in a furlough status. If the government-wide furlough ends before the end of the 60-day notice period, you will be placed in a non-duty paid (administrative leave) status until your separation date. If, at the conclusion of the government-wide furlough, furloughed employees receive backpay pursuant to the Government Employee Fair Treatment Act of 2019, you will receive backpay for the period of time you were furloughed prior to your separation date.

affect your eligibility for Federal employment/placement assistance programs, severance pay, and/or your appeal rights.

You have the right to examine the retention preference register relating to this action. If you wish to review the retention register or regulations, please contact Clarice Floyd at Clarice.A.Floyd@census.gov.

**Notice of Rights**

You may challenge your separation through RIF procedures in one of the following forums: the Merit Systems Protection Board (MSPB), the Equal Employment Opportunity Commission, or through your Collective Bargaining Agreement, if applicable. Your election of remedy will be determined by whichever kind of appeal or complaint you file in writing first.

Merit Systems Protection Board (MSPB). You have a right to appeal your separation (through RIF procedures) to the Merit Systems Protection Board (MSPB) pursuant to 5 CFR Part 351.901. If you elect to appeal to the MSPB, you may submit an appeal during the period beginning with the calendar day after the effective date of the RIF action and ending with the thirtieth (30$^{1h}$) calendar day after the effective date of the RIF action. You may not file an appeal with MSPB until your separation has been effected. If you do not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless you show a good reason for the delay. Your appeal must be in writing and give the reasons for contesting the action, with any offer of proof and pertinent documents that you are able to submit. You may access a copy of the MSPB appeal form and regulations at https://e-appeal.mspb.gov/. You may submit an appeal to the MSPB electronically, by hardcopy via facsimile or by mail at the following address:

**U.S. Merit Systems Protection Board**

**Denver Field Office**

**165 South Union Boulevard**

**Lakewood, Colorado 80228-2211**

**Facsimile No: (303) 969-5109**

**Telephone No: (303) 969-5101**

**denver@mspb.gov**

If you file an appeal with the MSPB, the MSPB should send the Acknowledgement Order and copy of the appeal to the designated Agency Official as follows:

Christiann Burek
Acting Chief, Employment and Labor Division
Office of General Counsel Department of Commerce
14th and Constitution Ave., NW
Washington, DC 20230
Email: cburek@doc.gov

If you do not submit an appeal to the MSPB within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless good cause is shown.

If you allege that the above personnel action is being taken because you are a veteran and subject to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the Veterans Employment Opportunities Act ("VEOA") you may file an appeal with the MSPB and your claim will be subject to USERRA and governed by 5 C.F.R. § 1208.

<u>Union Negotiated Procedure</u>.  If you are a member of a Bargaining Unit, you may have the right to appeal your separation through RIF procedures pursuant to your Collective Bargaining Agreement (CBA).  Please consult your CBA to determine whether you may grieve the final decision.  If you elect to proceed pursuant to your negotiated grievance procedure, and a final grievance decision is made, you may petition the MSPB to review the final grievance decision.  If your negotiated grievance procedure permits allegations of discrimination, the Board will only review those claims of discrimination that were raised during the grievance process.  If the negotiated grievance procedure does not permit allegations of discrimination to be raised, you may raise any discrimination claims you have to the MSPB during its review of the final grievance decision.  Should you want the MSPB to review the decision, you must file an appeal of the final grievance decision to the MSPB within 35 days after the date of the issuance of the final grievance decision.  if you can demonstrate that you received the final grievance decision more than five days after issuance, you may file an appeal of the decision within 30 days after the date you received it.  If you elect to file a grievance under the negotiated grievance procedure, the time limit for filing an appeal to the MSPB will not be extended.

<u>Equal Employment Opportunity Commission.</u> If you allege that your separation is based on discrimination because of race, color, religion, sex, national origin, age (at least 40 years of age), physical or mental disability, or retaliation, you may contact an EEO Counselor within 45 days of the date of the alleged discrimination.  For more information on filing an EEO complaint, please contact the Department's Office of Civil Rights at (202)

482-4993. You can also find out more information at commerce.gov/cr. Please note, use of the EEO counseling process is **not** an election to proceed before the EEOC and does not suspend or extend any deadlines to challenge this action in any other forum. Rather, a written formal complaint of discrimination submitted to the Department of Commerce's Office of Civil Rights would constitute an election to proceed before the EEOC in this matter, as set forth below. There are three potential ways to raise allegations of discrimination in connection with this action. First, you may elect to file an Appeal to the MSPB pursuant to 5 U.S.C. 7702(a) and 5 C.F.R. 1201, Subpart E as set forth above and include any allegations of discrimination ("mixed-case appeal"). The MSPB will decide both the issue of discrimination and this action in accordance with the Board's appellate procedures under 5 U.S.C. § 7701. Alternatively, you may elect to file a grievance pursuant to your negotiated grievance procedure, as set forth above, if your CBA allows for complaints of discrimination. As a third alternative, you may elect to file a formal Complaint of Discrimination with the Department of Commerce Office of Civil Rights pursuant to the procedures set forth in 29 C.F.R. Part 1614 ("mixed-case complaint"). As stated above, an election to proceed under 29 C.F.R. Part 1614 is made when you file a formal complaint of discrimination in writing with the Department of Commerce, not when you contact an EEO Counselor. Whichever action you file first is considered an election to proceed in that forum.

Whistleblower Retaliation Complaints. In addition to the options set forth above, if you feel this action is the result of retaliation for "whistleblowing" activities, you may elect one of the following options: (a) appeal this action directly to the MSPB pursuant to 5 U.S.C. §7701 as set forth in Option 1 above and include any allegations of whistleblower retaliation, (b) file a grievance under the negotiated grievance procedure as set forth in Option 2 above, if such allegations are permitted by your CBA or (c) file a complaint with the Office of the Special Counsel (OSC) under 5 U.S.C. §1214. Whichever of the three actions you file first is considered an election to proceed in that forum with respect to your allegation of whistleblower retaliation. If you elect to file a complaint with the OSC, you may later bring an individual right of action (IRA) appeal to the MSPB pursuant to 5 U.S.C. §1221 if the OSC declines to seek corrective action. If you file an IRA appeal to the MSPB, your claims will proceed under 5 C.F.R. § 1209.2. Pursuant to § 1209.2, the MSPB will only consider whether you have demonstrated that one or more whistleblowing disclosures was a contributing factor in the Agency's taking this personnel action against you, and if so, whether the Agency has demonstrated by clear and convincing evidence that it would have taken this personnel action in the absence of the protected disclosure(s). You may not raise affirmative defenses other than reprisal for whistleblowing activities, such as claims of discrimination or harmful procedural error during an IRA appeal.

This RIF action does not reflect on your service, performance, or conduct. Please be assured your contributions to MBDA and the Department are appreciated.

**Career Transition Assistance Plan (CTAP)**

The Career Transition Assistance Plan (CTAP) is an intra-agency program that helps surplus or displaced federal employees improve their chances of finding a new job *in their agency,* by giving them selection priority over other applicants, as long as they're qualified for the job.

    You're eligible for CTAP if:
- You're a current federal employee who meets the definition of a surplus or displaced employee-you've received official notice that your job is no longer needed or that you will lose your job by Reduction in Force (RIF).
- You have a performance rating of at least fully successful or equivalent.
- DOC is accepting applications from within or outside of the permanent workforce.
- You meet the qualifications and other requirements of the job you're applying for.
- You occupy a position in the same local commuting area of job you're applying for.
- You are found "well qualified" for the position based on the Agency's criteria.

This priority placement is available for any position within DOC that has been publicly announced. Employees should apply to the vacancy through the announcement (USAJOBS.gov).

Eligibility for CTAP begins on the date DOC issues either a Reduction in Force (RIF) separation notice, related notice of proposed removal, or other official certification indicating that the position is surplus.

**Interagency Career Transition Assistance Plan (ICTAP)**

The Interagency Career Transition Assistance Plan (ICTAP) is an interagency program that helps surplus or displaced federal employees improve their chances of finding a new job *at another agency (not their current or former agency),* by giving them selection priority over other applicants from outside the agency.

    You're eligible for ICTAP if:
- You're a current federal employee who meets the definition of a surplus or displaced employee: you've received official notice that your job is no longer needed or that you will lose your job by Reduction-in-Force (RIF).
- You have a performance rating of at least fully successful or equivalent.
- The agency you're applying to is accepting applications from outside of their workforce.
- The job you're applying to is in the local commuting area.
- You meet the qualifications and other requirements of the job you're applying for.
- You are found "well qualified" for the position based on the Agency's criteria.

This priority placement is available for any position outside of DOC that has been publicly announced. Employees should apply to the vacancy through the announcement (USAJOBS.gov)

**Reemployment Priority List**
The Reemployment Priority List (RPL) is a list DOC uses to give reemployment priority to any *career and career-conditional competitive service* employees the agency separated by Reduction in Force (RIF). Employees will receive priority placement to positions at the same or lower grade/band with no greater promotion potential.

A separate RPL is created for each local commuting area in which employees have been separated based on the location of the employee's duty station; for example, all employees separated from positions with an official duty station in Washington, DC area will be on the same list and will receive priority placement over other candidates for any DOC position within Washington, DC; however, employees will not appear on the RPL for any other commuting area and will not have priority placement rights.

You're eligible for the RPL if:
- You're serving in an appointment in the competitive service in RIF Tenure Group I or II.
- You're a current federal employee who meets the definition of a surplus or displaced employee-you've received official notice that your job is no longer needed or that you will lose your job by Reduction-in-Force (RIF).
- You have a performance rating of at least fully successful or equivalent.
- You have not declined an offer of a position with the same type of work schedule and with a comparable grade/band level.

**Proof of Eligibility and Documentation:**

CTAP and ICTAP applicants must submit all of the required documents requested in the vacancy announcements such as:
- A copy of your RIF notice.
- Latest SF-50 noting current position, grade level, and duty location;
- Last performance appraisal; and
- Any documentation that shows your current promotion potential.
- Resume.

To be placed on the RPL you must submit the above documentation as well as a completed RPL registration form to your SHRO on or before your RIF separation date.

**Resources:**

- OPM's *The Employee's Guide to Career Transition* (CTAP, ICTAP, RPL)
- DOC CTAP/ICTAP   Career Transition Assistance Program
- Reduction in Force (RIF) SF-8 Unemployment Form