| | |
|---|---|
| 1 | Stacey M. Leyton (SBN 203827) |
| 2 | Barbara J. Chisholm (SBN 224656) |
|   | Danielle Leonard (SBN 218201) |
| 3 | Alice X. Wang (SBN 335224) |
|   | Robin S. Tholin (SBN 344845) |
| 4 | Talia Stender (SBN 341654) |
|   | ALTSHULER BERZON LLP |
| 5 | 177 Post Street, Suite 300 |
|   | San Francisco, CA 94108 |
| 6 | Tel.: (415) 421-7151 |
| 7 | sleyton@altber.com |
|   | bchisholm@altber.com |
| 8 | dleonard@altber.com |
|   | awang@altber.com |
| 9 | rtholin@altber.com |
|   | tstender@altber.com |
| 10 | |
| 11 | *Attorneys for Plaintiffs* |
| 12 | [Additional counsel not listed] |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-08302-SI |
| Plaintiffs, | **DECLARATION OF MAYRA MEDRANO** |
| v. | |
| UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., | |
| Defendants. | |

Decl. of Mayra Medrano, No. 3:25-cv-08302-SI

**DECLARATION OF MAYRA MEDRANO**

I, Mayra Medrano, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge.

2. I am a Program Analyst at the Minority Business Development Agency ("MBDA") within the Department of Commerce ("DOC"). I have worked for the federal government since June 2023. I provide technical assistance to our business centers, which have received federal grants from the agency to assist entrepreneurs. I am responsible for monitoring and compliance to ensure that the activities of the business centers are consistent with MBDA's mission.

3. I am a member of and represented by the National Federation of Federal Employees.

4. I was furloughed during the government shutdown, during which I received a notice of reduction-in-force ("RIF"). I received my RIF notice in my personal email on October 10, 2025. My RIF has an effective date of December 9, 2025. A true and correct copy of that RIF notice is attached hereto as Exhibit A.

5. Within my team, under the Office of Business Centers, I believe that approximately eight of us have received RIF notices.

6. This is the second time that I have received a RIF notice. In March of this year, along with several other employees at the MBDA, I was put on administrative leave. While I was on administrative leave, in early April, I received a RIF notice with an effective termination date of May 9. I was reinstated in June, however, because of a court ruling that prevented the administration from terminating myself and my colleagues.

7. The constant threat of being fired, which has persisted for months, has caused me tremendous physical and mental distress. I first began feeling stressed about losing my job at the beginning of this year, and my anxiety rose with each team meeting or news article indicating that my job was in jeopardy. In early April, while I was on administrative leave, I experienced a severe stress-induced seizure and had to be hospitalized.

8. I received my 30-day RIF notice in April when I was in the hospital. The RIF felt like a nail in the coffin.

9. In the months following my stress-induced seizure, I had to assemble a whole care team. I am seeing a neurologist and taking medication for treatment. My primary care physician also referred me to a therapist. I have been so stressed that I have been unable to eat, and in or around July or August, I fainted. My therapist recommended that I see a nutritionist for my weight loss. When I was reinstated in June, I sought and received a reasonable accommodation to work from home because of my health issues.

10. When I lost my job in the April RIF, I could no longer afford to pay rent. I had to break my lease and live on my sister's couch. When we were reinstated in June, I began looking for housing again and I signed a new lease in July.

11. When the government shutdown began, I tried to remind myself that the financial distress of losing my paycheck is just temporary and that I would be okay once I received backpay. But with this new RIF, that's not true anymore. I am reliving the nightmare of the first RIF. I am worried about whether I will have to break my lease again and move back in with my sister, just months after relocating. I am planning to forgo paying my student loans and to seek support from a food pantry so I can try and keep my food and shelter. I don't feel like I can plan my life more than one week at a time.

12. I am extremely concerned about the impact of this financial stress and anxiety on my physical health given that I have a history of stress-induced seizures. I rely on my care team and my medication to keep me healthy, but if I lose my health insurance, which I obtain through my federal employment, I don't know how I'm going to be able to afford that care anymore.

13. One major source of my emotional distress is that it feels as though keeping my job is beyond my control. If my manager had told me that my performance was below expectations, we would have had a conversation, and I would have done my best to improve my performance. But this RIF has nothing to do with my performance, so there is nothing I can do to keep my job.

14. Receiving a RIF notice during the government shutdown, on top of the previous RIF, has been traumatic and it will have a lasting impact on my health. It doesn't feel as though the administration thought about or cared about that long-lasting impact.

15. My job allows me to house and feed myself. But it is also a way for me to give back. Growing up, my family relied on public-private partnerships to access resources like housing, jobs, and food pantries. I started working for the DOC because I want to help people in the middle class have a better life, and I know that economic vitality drives the middle class. I wish I could have kept working in this job and giving back.

16. I will apply for new jobs, but I am worried that potential employers will incorrectly assume that I must have been terminated because of poor performance, especially since I have only been with the MBDA for two years. But my termination has nothing to do with my performance. I am also worried about finding a job in this competitive market. I love working in D.C. because I enjoy supporting public-private partnerships, but the D.C. job market is flooded with people like me trying to feed themselves and pay their bills.

17. I think that the administration targeted the MBDA because it has the word "minority" in the title. But we help anybody. We do a lot of work for economic underrepresentation. I am worried about retaliation from the administration for speaking up. But I decided to speak up because right now I am more worried about food and housing than I am worried about retaliation. Those are my immediate priorities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed October 21, 2025, in Washington, D.C.

*Mayra Medrano*
Mayra Medrano

# Exhibit A

**UNITED STATES DEPARTMENT OF COMMERCE**
Chief Financial Officer
Assistant Secretary for Administration
Washington, D.C. 20230

October 10, 2025

To: ███████████████

From: Jeremy Pelter  JEREMY PELTER  *Digitally signed by JEREMY PELTER Date: 2025.10.10 12:49:37 -04'00'*
Acting Chief Financial Officer and Assistant Secretary for Administration
Department of Commerce

This is to inform you that you have been identified for release from your competitive level and your position with the Minority Business Development Agency (MBDA) through the application of reduction-in-force (RIF) procedures. The effective date of the RIF and your release from the Federal service is December 9, 2025. Your separation through RIF procedures does not reflect on your service, performance, or conduct. This RIF action is based on the Department's plan to eliminate the discretionary functions of MBDA due to a lack of funding and because the discretionary functions of MBDA are not consistent with the Secretary's priorities. This constitutes your specific notice that your position of record as a ███████████████, will be eliminated and you will be separated from the federal service effective December , 2025.

The following information was used to determine your retention standing as of the RIF effective date:

- Competitive Area: ███████████████
- Competitive Level: ███████████████
- Tenure Group and Subgroup: ███
- Service Computation Date (Leave): ███████
- Service Computation Date (Adjusted): ███████
- Three Most Recent Performance Ratings During the Last Four Years:



The Department is taking this action pursuant the Office of Personnel Management's RIF regulations under Title 5, Code of Federal Regulations (CFR), Part 351. The Department is abolishing all non-statutorily required positions performing discretionary functions within MBDA. You do not have an assignment right to another position in another competitive area, in the local commuting area or in another office. You will remain in your current status during this specific 60-day notice period.[1]

---

[1] You are currently in a furlough status. If the government-wide furlough ends before the end of the 60-day notice period, you will be placed in a non-duty paid (administrative leave) status until your separation date.


UNITED STATES DEPARTMENT OF COMMERCE
Chief Financial Officer
Assistant Secretary for Administration
Washington, D.C. 20230

You will be separated December 9, 2025, and your final salary payment will be received on the scheduled pay date. You will receive a partial salary payment for pay period 24 based on your date of separation. This payment will be subject to the same deductions taken from your salary in previous pay periods; however, payment for a partial pay period will have reduced tax withholdings. If applicable, you can expect payment for any unused annual leave or compensatory time earned in lieu of overtime after you separate.

We have included information about priority placement assistance programs such as the Career Transition Assistance Program (CTAP) designed to help employees find reemployment below. We will supplement this notice with additional information about rights, benefits (life, health, retirement, unemployment, etc.), leave, severance, outplacement/career transition resources, and other benefits available for employees separated by RIF. If you have any questions or need additional assistance, you may contact Tracie Pringle at TPringle@doc.gov.

If you resign or retire on or before the RIF effective date of December 9, 2025, your separation will be considered voluntary. Please be advised that voluntary resignations or retirements may affect your eligibility for Federal employment/placement assistance programs, severance pay, and/or your appeal rights.

You have the right to examine the retention preference register relating to this action. If you wish to review the retention register or regulations, please contact Valerie Smith at VSmith@doc.gov or (202) 482-0272.

**Notice of Rights**

You may challenge your separation through RIF procedures in one of the following forums: the Merit Systems Protection Board (MSPB), the Equal Employment Opportunity Commission, or through your Collective Bargaining Agreement, if applicable. Your election of remedy will be determined by whichever kind of appeal or complaint you file in writing first.

Merit Systems Protection Board (MSPB). You have a right to appeal your separation (through RIF procedures) to the Merit Systems Protection Board (MSPB) pursuant to 5 CFR Part 351.901. If you elect to appeal to the MSPB, you may submit an appeal during the period beginning with the calendar day after the effective date of the RIF action and ending with the thirtieth (30$^{1h}$) calendar day after the effective date of the RIF action. You may not file an appeal with MSPB until your separation has been effected. If you

---

If, at the conclusion of the government-wide furlough, furloughed employees receive backpay pursuant to the Government Employee Fair Treatment Act of 2019, you will receive backpay for the period of time you were furloughed prior to your separation date.



do not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless you show a good reason for the delay. Your appeal must be in writing and give the reasons for contesting the action, with any offer of proof and pertinent documents that you are able to submit. You may access a copy of the MSPB appeal form and regulations at https://e-appeal.mspb.gov/. You may submit an appeal to the MSPB electronically, by hardcopy via facsimile or by mail at the following address:

**U.S. Merit Systems Protection Board**
**Washington DC Regional Office**
**1901 S. Bell Street, Suite 950**
**Arlington, Virginia 22202**
**Facsimile No: (703) 756-7112**
**Telephone No: (703) 756-6250**
washingtonregionaloffice@mspb.gov

If you file an appeal with the MSPB, the MSPB should send the Acknowledgement Order and copy of the appeal to the designated Agency Official as follows:

Christiann Burek
Acting Chief, Employment and Labor Division
Office of General Counsel Department of Commerce
14th and Constitution Ave., NW
Washington, DC 20230
Email: cburek@doc.gov

If you do not submit an appeal to the MSPB within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless good cause is shown.

If you allege that the above personnel action is being taken because you are a veteran and subject to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the Veterans Employment Opportunities Act ("VEOA") you may file an appeal with the MSPB and your claim will be subject to USERRA and governed by 5 C.F.R. § 1208.

<u>Union Negotiated Procedure</u>. If you are a member of a Bargaining Unit, you may have the right to appeal your separation through RIF procedures pursuant to your Collective Bargaining Agreement (CBA). Please consult your CBA to determine whether you may grieve the final decision. If you elect to proceed pursuant to your negotiated grievance procedure, and a final grievance decision is made, you may petition the MSPB to review the final grievance decision. If your negotiated grievance procedure permits allegations of discrimination, the Board will only review those claims of discrimination that were raised during the grievance process. If the negotiated grievance procedure does not permit allegations of discrimination to be raised, you may



raise any discrimination claims you have to the MSPB during its review of the final grievance decision.  Should you want the MSPB to review the decision, you must file an appeal of the final grievance decision to the MSPB within 35 days after the date of the issuance of the final grievance decision.  if you can demonstrate that you received the final grievance decision more than five days after issuance, you may file an appeal of the decision within 30 days after the date you received it.  If you elect to file a grievance under the negotiated grievance procedure, the time limit for filing an appeal to the MSPB will not be extended.

Equal Employment Opportunity Commission. If you allege that your separation is based on discrimination because of race, color, religion, sex, national origin, age (at least 40 years of age), physical or mental disability, or retaliation, you may contact an EEO Counselor within 45 days of the date of the alleged discrimination.  For more information on filing an EEO complaint, please contact the Department's Office of Civil Rights at (202) 482-4993.  You can also find out more information at commerce.gov/cr.  Please note, use of the EEO counseling process is **not** an election to proceed before the EEOC and does not suspend or extend any deadlines to challenge this action in any other forum.  Rather, a written formal complaint of discrimination submitted to the Department of Commerce's Office of Civil Rights would constitute an election to proceed before the EEOC in this matter, as set forth below.  There are three potential ways to raise allegations of discrimination in connection with this action.  First, you may elect to file an Appeal to the MSPB pursuant to 5 U.S.C. 7702(a) and 5 C.F.R. 1201, Subpart E as set forth above and include any allegations of discrimination ("mixed-case appeal").  The MSPB will decide both the issue of discrimination and this action in accordance with the Board's appellate procedures under 5 U.S.C. § 7701.  Alternatively, you may elect to file a grievance pursuant to your negotiated grievance procedure, as set forth above, if your CBA allows for complaints of discrimination.  As a third alternative, you may elect to file a formal Complaint of Discrimination with the Department of Commerce Office of Civil Rights pursuant to the procedures set forth in 29 C.F.R. Part 1614 ("mixed-case complaint").  As stated above, an election to proceed under 29 C.F.R. Part 1614 is made when you file a formal complaint of discrimination in writing with the Department of Commerce, not when you contact an EEO Counselor.  Whichever action you file first is considered an election to proceed in that forum.

Whistleblower Retaliation Complaints.  In addition to the options set forth above, if you feel this action is the result of retaliation for "whistleblowing" activities, you may elect one of the following options: (a) appeal this action directly to the MSPB pursuant to 5 U.S.C. §7701 as set forth above and include any allegations of whistleblower retaliation, (b) file a grievance under the negotiated grievance procedure as set forth above, if such allegations are permitted by your CBA or (c) file a complaint with the Office of the Special Counsel (OSC) under 5 U.S.C. §1214.  Whichever of the three actions you file first is considered an election to proceed in that forum with respect to your allegation of whistleblower retaliation.  If you elect to file a complaint with the OSC, you may later bring an individual right of action (IRA) appeal to the MSPB pursuant to 5 U.S.C. §1221 if the OSC declines to



seek corrective action. If you file an IRA appeal to the MSPB, your claims will proceed under 5 C.F.R. § 1209.2. Pursuant to § 1209.2, the MSPB will <u>only</u> consider whether you have demonstrated that one or more whistleblowing disclosures was a contributing factor in the Agency's taking this personnel action against you, and if so, whether the Agency has demonstrated by clear and convincing evidence that it would have taken this personnel action in the absence of the protected disclosure(s). You may <u>not</u> raise affirmative defenses other than reprisal for whistleblowing activities, such as claims of discrimination or harmful procedural error during an IRA appeal.

This RIF action does not reflect on your service, performance, or conduct. Please be assured your contributions to MBDA and the Department are appreciated.

**Career Transition Assistance Plan (CTAP)**
The Career Transition Assistance Plan (CTAP) is an intra-agency program that helps surplus or displaced federal employees improve their chances of finding a new job *in their agency,* by giving them selection priority over other applicants, as long as they're qualified for the job.

    You're eligible for CTAP if:
- You're a current federal employee who meets the definition of a surplus or displaced employee-you've received official notice that your job is no longer needed or that you will lose your job by Reduction in Force (RIF).
- You have a performance rating of at least fully successful or equivalent.
- DOC is accepting applications from within or outside of the permanent workforce.
- You meet the qualifications and other requirements of the job you're applying for.
- You occupy a position in the same local commuting area of job you're applying for.
- You are found "well qualified" for the position based on the Agency's criteria.

This priority placement is available for any position within DOC that has been publicly announced. Employees should apply to the vacancy through the announcement (USAJOBS.gov).

Eligibility for CTAP begins on the date DOC issues either a Reduction in Force (RIF) separation notice, related notice of proposed removal, or other official certification indicating that the position is surplus.

**Interagency Career Transition Assistance Plan (ICTAP)**
The Interagency Career Transition Assistance Plan (ICTAP) is an interagency program that helps surplus or displaced federal employees improve their chances of finding a new job *at another agency (not their current or former agency),* by giving them selection priority over other applicants from outside the agency.

UNITED STATES DEPARTMENT OF COMMERCE
Chief Financial Officer
Assistant Secretary for Administration
Washington, D.C. 20230

You're eligible for ICTAP if:
- You're a current federal employee who meets the definition of a surplus or displaced employee: you've received official notice that your job is no longer needed or that you will lose your job by Reduction-in-Force (RIF).
- You have a performance rating of at least fully successful or equivalent.
- The agency you're applying to is accepting applications from outside of their workforce.
- The job you're applying to is in the local commuting area.
- You meet the qualifications and other requirements of the job you're applying for.
- You are found "well qualified" for the position based on the Agency's criteria.

This priority placement is available for any position outside of DOC that has been publicly announced. Employees should apply to the vacancy through the announcement (USAJOBS.gov)

**Reemployment Priority List**
The Reemployment Priority List (RPL) is a list DOC uses to give reemployment priority to any *career and career-conditional competitive service* employees the agency separated by Reduction in Force (RIF). Employees will receive priority placement to positions at the same or lower grade/band with no greater promotion potential.

A separate RPL is created for each local commuting area in which employees have been separated based on the location of the employee's duty station; for example, all employees separated from positions with an official duty station in Washington, DC area will be on the same list and will receive priority placement over other candidates for any DOC position within Washington, DC; however, employees will not appear on the RPL for any other commuting area and will not have priority placement rights.

You're eligible for the RPL if:
- You're serving in an appointment in the competitive service in RIF Tenure Group I or II.
- You're a current federal employee who meets the definition of a surplus or displaced employee-you've received official notice that your job is no longer needed or that you will lose your job by Reduction-in-Force (RIF).
- You have a performance rating of at least fully successful or equivalent.
- You have not declined an offer of a position with the same type of work schedule and with a comparable grade/band level.

**Proof of Eligibility and Documentation:**
CTAP and ICTAP applicants must submit all of the required documents requested in the vacancy announcements such as:
- A copy of your RIF notice.
- Latest SF-50 noting current position, grade level, and duty location;



- Last performance appraisal; and
- Any documentation that shows your current promotion potential.
- Resume.

To be placed on the RPL you must submit the above documentation as well as a completed RPL registration form to your SHRO on or before your RIF separation date.

**Resources:**
OPM's *The Employee's Guide to Career Transition (CTAP, ICTAP, RPL)*
https://www.opm.gov/policy-data-oversight/workforce-restructuring/employee-guide-to-career-transition/ctap_guideline.pdf
DOC CTAP/ICTAP
https://www.commerce.gov/hr/practitioners/workforce-reduction/ctap