1  Stacey M. Leyton (SBN 203827)
2  Barbara J. Chisholm (SBN 224656)
   Danielle Leonard (SBN 218201)
3  Alice X. Wang (SBN 335224)
   Robin S. Tholin (SBN 344845)
4  Talia Stender (SBN 341654)
   ALTSHULER BERZON LLP
5  177 Post Street, Suite 300
   San Francisco, CA 94108
6  Tel.: (415) 421-7151
7  sleyton@altber.com
   bchisholm@altber.com
8  dleonard@altber.com
   awang@altber.com
9  rtholin@altber.com
   tstender@altber.com
10

11 *Attorneys for Plaintiffs*

12 [Additional counsel not listed]

13                    UNITED STATES DISTRICT COURT

14                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                          SAN FRANCISCO DIVISION

16 | AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-08302-SI |
17 | | **DECLARATION OF DR. WILSON WASHINGTON** |
18 | Plaintiffs, | |
19 | v. | |
20 | UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., | |
21 | | |
22 | Defendants. | |
Declaration of Dr. Wilson Washington, No. 3:25-cv-08302-SI

# DECLARATION OF DR. WILSON WASHINGTON

I, Dr. Wilson Washington, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information and belief. I am providing this declaration in my capacity as a union officer.

2. I am the President of Chapter 286 of the National Treasury Employees Union, which is the exclusive representative of approximately 334 bargaining unit employees of the Department of Health and Human Services, Substance Abuse and Mental Health Services Administration ("SAMHSA") whose official workstations are located in the District of Columbia, Maryland, Virginia and West Virginia.

3. The employees represented by NTEU Chapter 286 are highly skilled and dedicated to SAMHSA's mission to advance behavioral health across the United States, including by offering resources for mental health, substance use, and community well-being. They include many Public Health Advisors and Public Health Analysts, Grants Management Specialists, Statisticians, Social Scientists, IT Specialists, Contract Specialists, Policy Analysts, Budget Analysts, and other employees. The programs on which we work are dedicated to preventing substance misuse, abuse and addiction; addressing serious mental illness; expanding crisis intervention care and services; improving access to evidence-based treatment for mental illness, substance abuse and co-occurring disorders; helping individuals achieve long-term recovery and sobriety; and identifying and addressing emerging behavioral health threats.

4. On or around September 24, 2025, NTEU Chapter 286 learned through news reports that the Trump Administration was directing federal agencies to conduct reductions in force (RIFs) during the government shutdown. On October 1, 2025, the government shutdown began, and most employees of SAMHSA were furloughed.

5. On October 10, 2025, I received an individual RIF notice, notifying me that I will be separated from the Federal service effective December 8, 2025. The notice stated that all employees in my competitive area, the Office of Performance Analysis in the Center for Substance Abuse Treatment, will be separated.

6. I did not receive any notice from SAMHSA about the RIF, including the number of employees impacted, in my capacity as a union officer.

7. As a union officer, I have heard from many members who received individual RIF notices either on October 10 or in the following days. Because SAMHSA did not issue RIF notices until after 7:00 p.m. on Friday, October 10 and then cut access to the SAMHSA email system to any employee who had been sent a notice at midnight that same day, many employees did not receive their RIF notices until their management emailed it to them at their personal email addresses the following week. SAMHSA employees, including union members, learned that they were likely subject to the RIF after seeing news reports of over 100 SAMHSA employees being terminated, and then logging into their work email only to find that they could not access it.

8. The employees who were issued RIF notices are devastated, myself included. Employees are very concerned about the sudden loss of income, health insurance coverage for themselves and dependents, and other employment benefits in 60 days, when they will be separated. I have heard from members who are undergoing cancer treatment and similar medical treatments who will be heavily impacted by the loss of their health insurance. They have immediate concerns about how to avoid a potential lapse in health care coverage. I have heard from employees who are in treatment for severe anxiety and depression and have been immediately and seriously impacted by this RIF notice.

9. I am a veteran of the United States Navy, a retired Navy lieutenant commander, and I honorably served my country for 24 years prior to my civilian federal service. I am also a 100% service-connected disabled veteran. Because of my military service, I will not be in the same position of losing my healthcare as many other SAMHSA employees. However, I will suffer approximately a 50% percent reduction in my annual income, which will create a severe financial crisis for me. I will have to relocate my life to an area I can afford better than the Washington, D.C. area.

10. The RIF notices issued on or after October 10 have come at an extraordinarily difficult time for federal employees in an extraordinarily difficult year. The employees who remain at SAMHSA have already survived the termination of probationary employees, the pressure of the "deferred resignation program", as well as several rounds of proposed RIFs or actual RIFs earlier this

Declaration of Dr. Wilson Washington No. 3:25-cv-08302-SI                                    2

year. We are currently not being paid, going into the fourth week of the shutdown. We have been targeted for termination not because of anything we have done ourselves, but because of decisions made by elected officials that were driven by politics. The RIFs are directed at work that is important to the mission, function, and effectiveness of SAMHSA as an organization.

11. Ordinarily, after our members receive a RIF notice, the Union and our members would work extensively with human resources staff at SAMHSA and HHS during the notice period to prepare for our separations and help ease the transition process. However, because of the government shutdown and because our members were locked out of the agency's email system at midnight on October 10, employees currently do not have access to our employment records, including paystubs and performance records, that we need for processing our separations. Normally, employees who are subject to a RIF are able to access their records during the notice period and not immediately placed on administrative leave and locked out of the computer system when they are sent a RIF notice.

12. I am also very concerned that HHS and SAMHSA will not be able to correct mistaken RIF notices before employees are separated. I have already heard from multiple employees with mistakes in their individual RIF notices, which can not only impact their severance pay, but also whether they were supposed to receive a RIF notice in the first place. For example, I have heard from an employee in the Division of Primary Prevention (DPP) who received a RIF notice despite DPP not being listed on the competitive areas list publicized by HHS. Instead, this employee's RIF notice incorrectly listed their competitive area as the Division of Targeted Prevention (DTP), which is a competitive area that is being completely separated. I have also heard from employees who have received a second version of their RIF notice in the U.S. mail with changes to their employment data from the original RIF notice. The errors in this data suggest that SAMHSA may not be conducting the current round of RIFs based on correct employment data. These errors can result in SAMHSA employees being released from service in an order that does not comply with federal law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed October 20, 2025, in _Ocala, FL_.

Dr. Wilson Washington