STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

MICHAEL K. VELCHIK
Senior Counsel to the Assistant Attorney General
ELIZABETH HEDGES (DC No. 1657707)
Counsel to the Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Branch Director
BRAD P. ROSENBERG
Special Counsel
R. CHARLIE MERRITT
Senior Counsel
STEVEN M. CHASIN
PIERCE J. ANON
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530
Phone: (202) 616-0929
E-mail: elizabeth.t.hedges@usdoj.gov
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., <br> Defendants. | Case No. 3:25-cv-08302-SI <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: October 28, 2025 <br> Time: 10:30 a.m. <br> Judge: Hon. Susan Illston <br> Place: San Francisco Courthouse <br> Courtroom 01 |

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

**TABLE OF CONTENTS**

INTRODUCTION................................................................................................................1

ISSUES TO BE DECIDED ................................................................................................2

BACKGROUND .................................................................................................................3

I.      Legal Framework.......................................................................................................3

II.     Factual And Procedural Background ........................................................................3

III.    The Government's Compliance Actions ..................................................................6

LEGAL STANDARD .........................................................................................................7

ARGUMENT.......................................................................................................................7

I.      Plaintiffs Will Not Suffer Irreparable Harm Absent A Preliminary Injunction. ...................7

II.     This Court Lacks Jurisdiction. .................................................................................9

III.    Plaintiffs' Claims Are Not Likely To Succeed On The Merits. ............................10

IV.     The Balance Of The Equities Weighs In The Government's Favor. ......................14

V.      Plaintiffs' Proposed Injunctive Relief, Including The Disclosure Requirements,
        Is Grossly Overbroad, Legally Inappropriate, and Unnecessary...........................14

VI.     Any Injunctive Relief Should Be Stayed Pending Appeal And Be Accompanied
        By A Bond..............................................................................................................24

CONCLUSION .................................................................................................................24

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Am. Cargo Transp., Inc. v. United States,*
    625 F.3d 1176 (9th Cir. 2010) ................................................................................................ 21

*Am. Fed'n of Gov't Emps. v. Trump,*
    148 F.4th 648 (9th Cir. 2025) ................................................................................................ 16

*Am. Fed'n of Gov't Emps., AFL-CIO v. OPM,*
    No. C 25-01780 WHA, 2025 WL 2633791 (N.D. Cal. Sept. 12, 2025) ................................ 15

*Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.,*
    840 F.2d 701 (9th Cir. 1988) .................................................................................................. 8

*Cross v. Dep't of Transp.,*
    127 F.3d 1443 (Fed. Cir. 1997) .............................................................................................. 11

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .............................................................................................................. 17

*Doe #1 v. Trump,*
    957 F.3d 1050 (9th Cir. 2020) ................................................................................................ 21

*Dong v. Smithsonian Inst.,*
    125 F.3d 877 (D.C. Cir. 1997) ................................................................................................ 13

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) .............................................................................................................. 16

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education,*
    82 F.4th 664 (9th Cir. 2023) .................................................................................................. 21

*Gandola v. FTC,*
    773 F.2d 308 (Fed. Cir. 1985) ................................................................................................ 12

*Garcia v. United States,*
    680 F.2d 29 (5th Cir. 1982) .................................................................................................... 8

*Hartikka v. United States,*
    754 F.2d 1516 (9th Cir. 1985) ................................................................................................ 8

*Markland v. OPM,*
    140 F.3d 1031 (Fed. Cir. 1998) .............................................................................................. 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Missouri v. Biden*,
114 F.4th 406 (5th Cir. 2024) ............................................................................. 14

*Munaf v. Geren*,
553 U.S. 674 (2008) ............................................................................................. 7

*Murthy v. Missouri*,
603 U.S. 43 (2024) ......................................................................................... 14, 15

*Nat'l Wildlife Federation v. U.S. Forest Serv.*,
861 F.2d 1114 (9th Cir. 1988) ........................................................................ 19, 20

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................. 7

*Sampson v. Murray*,
415 U.S. 61 (1974) ........................................................................................... 7, 8

*Smith v. Dep't of Army*,
89 M.S.P.R. 82 (2001) .......................................................................................... 8

*Smith v. Dep't of Army*,
458 F.3d 1359 (Fed. Cir. 2006) ............................................................................ 8

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ........................................................................... 7, 9

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025), *denying stay pending appeal*, 148 F.4th 1096
    (9th Cir. 2025) ............................................................................................. 15

*Trump v. Am. Fed'n of Gov't Emps.*,
606 U.S. __, 2025 WL 1873449 (July 8, 2025) ................................................. 10

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .................................................................................. 2, 15, 17

*Winter v. Nat'l Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................................. 7

**Statutes**

5 U.S.C. § 552 .......................................................................................................... 13

5 U.S.C. § 701 .......................................................................................................... 13

5 U.S.C. § 704 ................................................................................................................. 13

5 U.S.C. § 1204 ................................................................................................................. 8

5 U.S.C. § 7112 ................................................................................................................. 16

5 U.S.C. § 7701 ................................................................................................................. 8

31 U.S.C. § 1341 ......................................................................................................... 3, 13

31 U.S.C. § 1342 ............................................................................................................... 3

Consolidated Appropriations Act, 2024,
    Pub. L. No. 118-42, 138 Stat. 25 (2024) ................................................................... 22

Full-Year Continuing Appropriations & Extensions Act, 2025,
    Pub. L. No. 119-4, 139 Stat. 9 (2025) ....................................................................... 22

**Rules**

Fed. R. Civ. P. 65(c) ........................................................................................................ 23

**Regulations**

5 C.F.R. § 351.201 ........................................................................................................... 11

Executive Order 14251 ............................................................................................ 5, 15, 16

Executive Order 14343 ............................................................................................ 5, 15, 16

1

**INTRODUCTION**

2      Evolving by the day, with new Plaintiffs and Defendants added weekly, Plaintiffs' lawsuit

3   is a moving target.  By now, they demand not only almost government-wide relief, but also near-

4   instantaneous, detailed updates in advance of any federal employment decisions involving

5   Reductions in Force (RIFs)—whether or not related to the current lapse in federal appropriations.

6   This Court should deny Plaintiffs' motion.  Their claims do not belong in this Court; they have not

7   shown any irreparable harm, as the more developed record makes even more clear than at the

8   temporary-restraining-order (TRO) stage; and they are not likely to succeed on their claims.  Even

9   if all of Plaintiffs' legal theories and alleged harms were credited, moreover, their requested relief

10  sweeps far too broadly.

11     The essence of Plaintiffs' preliminary-injunction motion is their disagreement with how

12  and why the government is addressing the lapse in appropriations with respect to RIFs within

13  certain agency workforces.  But Plaintiffs' arguments fail across the board because even if all their

14  other legal theories were correct, they have not shown the irreparable harm that is the *sine qua non*

15  of preliminary equitable relief.  Plaintiffs have not shown that, even before the Court entered a

16  TRO, any employee was (or is) subject to immediate termination via a RIF because the notices

17  issued by the small number of defendant agencies that have announced RIFs during the lapse gave

18  60 days' notice.  Plaintiffs' irreparable-harm theories all rest on alleged injuries insufficient under

19  decades-old controlling authority, potential downstream harms, or harms to non-parties of the sort

20  squarely rejected by the Supreme Court just months ago as a predicate for equitable relief.

21     For reasons explained in the government's brief opposing the TRO, Defs.' Opp'n to Pls.'

22  Mot. for TRO, ECF No. 41, this lawsuit does not even belong in federal district court because it

23  concerns employment decisions, that Congress channeled to agency adjudicators under the Civil

24  Service Reform Act (CSRA) and the Federal Service Labor-Management Relations Statute

25  (FSLMRS).  Likewise, Plaintiffs cannot invoke the Antideficiency Act (ADA) because it does not

26  provide them with a cause of action.  Although the Court disagreed with those arguments in the

27

28

emergency posture of the TRO briefing, with a more developed record before it, the Court should take the opportunity to reconsider and correct course.

Plaintiffs also fail to prove they are likely to succeed on the merits of their claims. RIFs are permitted by law and are within the authority of the defendant agencies. And the law expressly contemplates funding shortages as a basis for RIFs. Plaintiffs' arbitrary-and-capricious arguments against conducting RIFs in a lapse ignore those ground rules. The involvement of the Office of Personnel Management (OPM) and the Office of Management and Budget (OMB) in providing guidance does not change things. Those offices provide comprehensive budgetary and personnel advice; their role in addressing the lapse in appropriations, and how that lapse affects federal employment, is appropriate. Even if the Court disagrees, it could and should reject all of Plaintiffs' claims—for which they cite only the Administrative Procedure Act (APA) as a statutory path into federal court—for the other reasons thoroughly discussed in the government's TRO briefing.

This case does not present a need for preliminary equitable relief—certainly not the extraordinarily burdensome and overbroad relief requested by Plaintiffs. Plaintiffs' request for relief that extends to non-parties starkly violates the Supreme Court's instructions in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). The disclosure requirements Plaintiffs ask this Court to impose are unnecessary and unjustified. And their request that rescissions be ordered is tantamount to an ask for final relief; it is not appropriate for a preliminary injunction. Plaintiffs' motion should be denied.

## ISSUES TO BE DECIDED

1. Whether Plaintiffs carried their burden to establish that they are likely to suffer irreparable harm in the absence of preliminary injunctive relief.

2. Whether Plaintiffs carried their burden of establishing the Court's jurisdiction over claims arising out of the federal employment relationship.

3. Whether Plaintiffs established that their challenges to hypothetical future agency actions are ripe.

4. Whether Plaintiffs have a cause of action to assert claims based on alleged violations of the Antideficiency Act, 31 U.S.C. §§ 1341-42.

5. Whether Plaintiffs challenge final agency action justiciable under the APA.

6. Whether Plaintiffs are likely to succeed on the merits of their arbitrary-and-capricious claim.

7. Whether the equities favor preliminary injunctive relief.

8. Whether the scope of relief requested by Plaintiffs is overbroad and violates limitations on district courts' equitable authority.

<strong>BACKGROUND</strong>

**I. Legal Framework**

The government incorporates its explanation of the legal framework from its briefing on the TRO motion, ECF No. 41 at 3-5.

**II. Factual And Procedural Background**

The government incorporates the background provided in its Opposition to Plaintiffs' TRO motion, ECF No. 41 at 5-8. The additional background below accounts for events taking place since the TRO briefing.

On October 10, Defendants filed their Opposition to Plaintiffs' Motion for a Temporary Restraining Order, ECF No. 41, with a declaration by Stephen Billy, a Senior Advisor at OMB, addressing the information sought by the Court in its October 7, 2025, Order. ECF No. 40. The same day, Plaintiffs also filed a supplemental motion requesting an immediate TRO halting OMB from ordering agencies to implement RIFs and halting the issuance of RIF notices by any Defendant pending a scheduled October 16 hearing. Pls.' Suppl. Mot. for Immediate TRO, ECF No. 38. The Court then advanced the hearing to October 15—at Plaintiffs' suggestion, *id.*—and directed Defendants to "file a supplemental declaration by October 14" and "updat[e] as needed the information provided in the [Stephen] Billy Declaration . . . , in response to the questions the Court previously issued." Order Advancing TRO Hr'g & Requiring Suppl. Information at 1–2, ECF No. 43. Defendants filed a second Declaration from Stephen Billy on October 14,

1    "provid[ing] an updated accounting of the agencies that have begun issuing RIFs." Suppl. Decl.

2    of Stephen Billy ¶4, ECF No. 49-2.

3         During the October 15 hearing, the Court issued a TRO from the bench. The Court then

4    issued a written order enjoining Defendants from:

> 1) taking any action to issue any Reduction in Force ("RIF") notices to federal employees in any PPA (program, project, or activity) that includes any bargaining unit or member represented by any Plaintiff during or because of the federal government shutdown, including but not limited to by taking any action to implement or enforce the OMB Lapse Memorandum (dated September 24, 2025), the portions of the related OPM Guidance for Shutdown Furloughs (as revised September 28, 2025), the related OPM "Special Instructions for Agencies Affected by a Possible Lapse in Appropriations Starting on October 1, 2025" (dated September 28, 2025), or any other decision or directive that purports to authorize or require issuance of RIF notices during a shutdown;
>
> 2) taking any further action to administer or implement any RIF notices already issued beginning on October 10, 2025 to federal employees in any PPA (program, project, or activity) that includes any bargaining unit or member represented by any Plaintiff, including but not limited to by requiring federal employees to perform work to further administer or implement RIF notices and by enforcing or counting any days towards any period of notice with respect to those notices (i.e., the effective date of the RIF shall be stayed and Defendants shall therefore toll the running of all RIF notice periods).

15    Order Granting Mot. for TRO; Enjoining Shutdown-Related RIFS; & Setting Schedule for Hr'g

16    on Mot. for Prelim. Inj. at 6, ECF No. 56 (TRO Order). The Court also ordered the government

17    to

> [S]erve and file an accounting of all RIFs, actual or imminent, that are enjoined by this TRO, including but not limited to a description of the agency that imposed or is planning to impose the enjoined RIF, the number of employees included in the enjoined RIF, and description of the PPAs that Defendants included in the enjoined RIF. . . . [and] file a declaration(s) verifying that they have complied with this Order and the steps they have taken to do so.

22    *Id*.

23         Shortly afterward, Plaintiffs, based on allegations of imminent RIFs at the Department of

24    the Interior, moved to expedite Defendants' obligations to provide information. The Court

25    advanced the "disclosure[s] of planned RIFs and the manner in which defendants intend to comply

26    with the TRO" from October 17 at 5:00 p.m. PDT to October 17 at 11:00 a.m. PDT. Order Re

27    Pls.' Urgent Request, ECF No. 60. To comply with that order, Defendants filed declarations from

28

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

each of the thirty-five Defendant agencies on October 17.  Defs.' Notice of Filing of Agency Decls., ECF No. 62; Defs.' Suppl. Notice of Filing of Agency Decls., ECF No. 66; Defs.' Second Suppl. Notice of Filing of Agency Decls., ECF No. 67.  On the same day, Plaintiffs moved to add three unions, the National Federal of Federal Employees ("NFEE"), Service Employees International Union ("SEIU"), and the National Association of Government Employees, Inc. ("NAGE") as Plaintiffs. Pls.' Urgent *Ex Parte* Mot. to Modify TRO to Add Pls. NFFE, SEIU & NAGE, ECF No. 64.

Following a status conference on Friday, October 17—at the Plaintiffs' "urgent" request, Pls.' Urgent Req. for Status Conference Re: Compliance with TRO & for Further Relief, ECF No. 59—the Court issued a modified TRO extending relief to the new proposed plaintiffs, Order Clarifying TRO & Granting Pls.' Mot. to Modify, ECF No. 70.  The Court also added language defining terms used in the TRO:

> 1) The phrase "federal employees in any PPA (program, project, or activity) that includes any bargaining unit or member represented by any Plaintiff" includes (a) "federal employees in any PPA" in which Plaintiffs have any members, regardless of whether those members are employed in a bargaining unit that is represented by a Plaintiff; and (b) "federal employees in any PPA" in which any Plaintiff is or was a recognized collective bargaining representative of a bargaining unit prior to or after the issuance of Executive Orders 14251 and 14343, the effect of which is the subject of legal dispute.
>
> 2) The reference to issuance of RIF notices "during or because of the federal government shutdown" or "during a shutdown" applies to any RIF notices issued on or after October 1, 2025 and before the end of the federal government shutdown, regardless of whether that RIF was planned to occur independent of or before the shutdown.

*Id.* at 1.

The following Monday, October 20, the government submitted supplemental declarations from three defendant agencies: DOI, HHS, and Commerce.  Suppl. Decl. of Crystal Taylor (Second Supplemental Interior Declaration), ECF No. 71-1; Second Suppl. Decl. of Rachel Borra, ECF No. 71-2; Decl. of Thomas J. Nagy Jr., ECF No. 71-3.  The government also confirmed that the remaining defendant agencies determined that "to the best of their knowledge and based on their

investigation to date, that they have no additional information to provide in response to the Court's October 17, 2025, modified TRO, that was not already provided in their October 17, 2025, declarations." Defs.' Notice of Filing of Agency Decls., ECF No. 71.

In a still pending motion, Plaintiffs seek leave to amend the complaint again and add three more prospective union plaintiffs: the National Treasury Employees Union ("NTEU"), the International Federal of Professional and Technical Engineers ("IFPTE"), and American Federation of Teachers ("AFT"). Pls.' Revised Notice of Mot. & Mot. for Leave to Amend Compl., ECF No. 76. Plaintiffs have also moved to add six agencies as defendants: the Peace Corps, CFTC, FCC, FEC, SEC, and MSPB. *Id.*

On October 21, Plaintiffs filed an *ex parte* motion asking that the TRO be extended to the new proposed plaintiffs and defendants. Pls.' Second Ex Parte Mot. to Modify TRO to Add Pls. NTEU, IFPTE & AFT, ECF No. 78. Although the Court had not yet granted the Plaintiffs' motion to add those entities as parties, the Court granted the *ex parte* motion to extend the TRO—without waiting for a response from the government. Order Granting Second Mot. to Modify TRO, As Am. By Court, ECF No. 82. On October 22, Plaintiffs filed their Notice of and Motion for Preliminary Injunction, ECF No. 79, and brief in support, ECF No. 79-1 ("PI Br.").

**III.    The Government's Compliance Actions**

Since entry of the TRO on October 15, the dozens of federal agencies who are defendants in this case submitted declarations confirming that they have ceased implementation of any actual or imminent RIFs enjoined by the TRO. They have also complied with the Court's disclosure orders. Operating with limited staffing and resources during the lapse in appropriations, they have filed detailed declarations on very short timelines, including in response to an order entered the night before a deadline that accelerated that deadline by six hours at Plaintiffs' request. ECF No. 60. Defendants have also worked through weekends to compile required information. *See* ECF No. 70 (Friday order requiring disclosure on Monday at 9:00 am PDT). In each instance, Defendants have sought to provide the most accurate information available, notwithstanding the

1    operational constraints imposed by the lapse.  In some cases, operational challenges included

2    calling employees back from furlough to gather information.

3                                    **LEGAL STANDARD**

4           "A preliminary injunction is an extraordinary and drastic remedy[.]"  *Munaf v. Geren*, 553

5    U.S. 674, 689 (2008) (citation omitted).  A district court should enter preliminary relief only "upon

6    a clear showing that the [movant] is entitled to such relief."  *Winter v. Nat'l Res. Def. Council,*

7    *Inc.*, 555 U.S. 7, 22 (2008).  The moving party must demonstrate (1) that it is likely to succeed on

8    the merits of its claims; (2) that it is likely to suffer irreparable harm in the absence of injunctive

9    relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the

10   public interest.  *Id.* at 20.  Finally, when "the Government is the opposing party," the assessment

11   of "harm to the opposing party" and "the public interest" merge.  *Nken v. Holder*, 556 U.S. 418,

12   435 (2009).

13                                        **ARGUMENT**

14   **I.      Plaintiffs Will Not Suffer Irreparable Harm Absent A Preliminary Injunction.**

15          The Court should not issue a preliminary injunction because Plaintiffs have not shown that

16   they face a risk of irreparable harm without one.  The irreparable-harm standard requires Plaintiffs

17   to "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter*, 555 U.S.

18   at 22.  A "possibility" of irreparable harm is not enough.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109,

19   1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20-22).  Although the government briefed this

20   issue in its opposition to the TRO motion, ECF No. 41 at 8-11, the record developed in the ensuing

21   weeks makes ever clearer that Plaintiffs rely on exactly the sorts of classically reparable harms

22   that do not justify preliminary equitable relief.  The government respectfully disagrees with the

23   Court's conclusion otherwise in ruling on the TRO motion.

24          First, the employment-related harms Plaintiffs assert—up to and including loss of federal

25   employment—are generally not irreparable.  *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 88-91

26   (1974) (rejecting notion "that either loss of earnings or damage to reputation might afford a basis

27   for a finding of irreparable injury and provide a basis for temporary injunctive relief"); *Hartikka*

28

*v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985) (treating "loss of income, loss of retirement and relocation pay, and damage to . . . reputation" as "insufficient under the *Sampson* standard to justify injunctive relief"); *Garcia v. United States*, 680 F.2d 29, 31-32 (5th Cir. 1982) ("It is practically universal jurisprudence in labor relations in this country that there is an adequate remedy for individual wrongful discharge after the fact of discharge."). That is because the MSPB may make employees with meritorious claims (if any) whole through reinstatement, backpay, and attorney's fees. 5 U.S.C. §§ 1204(a)(2), 7701(g); *see also Smith v. Dep't of Army*, 458 F.3d 1359, 1366 (Fed. Cir. 2006) ("Reinstatement, back pay, and benefits are routinely awarded by the Board[.]"). And although Plaintiffs rely on employees' possible losses of wages and benefits, the Supreme Court has explained that these sorts of burdens common to most losses of government employment are insufficient. *See Sampson,* 415 U.S. at 92 n.68 ("insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury"); *see also Smith v. Dep't of Army*, 89 M.S.P.R. 82, 83 (2001) (noting remedial actions for life and health insurance for federal employee reinstated after RIF). Given the availability of these remedies, Plaintiffs' injuries are remediable.

The same goes for "emotional stress," PI Br. at 20; the sole contrary case Plaintiffs cite dealt with the situation (not presented here) of an employee who alleged that he was subject to adverse employment-related actions because of stigma associated with a health condition. *See Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 709-10 (9th Cir. 1988). Just as feared or actual job loss is not irreparable harm that can justify preliminary equitable relief, neither is emotional distress related to such feared or actual job loss. Moreover, if Plaintiffs' decision to style their claims as being brought under the APA means that damages are not available, that is a result of their litigation strategy—not the government's actions. Plaintiffs cannot make otherwise reparable injuries irreparable by choosing to proceed under the APA.

Plaintiffs' assertion that "employees who receive RIF notices because of political targeting suffer irreparable harm from political discrimination and its accompanying chilling effect, which

cannot be remedied by money damages," PI Br. at 20, is also wrong.  There is no evidence that individuals are being discriminated against for political beliefs or affiliations.  On the contrary, the guidance documents Plaintiffs challenge do *not* contemplate targeting individuals based on political affiliation.  And defendant agencies that have initiated RIFs during or related to the lapse have made RIF decisions without regard to employees' political viewpoints.  *See* Decl. of Thomas J. Nagy Jr. ¶ 3, ECF No. 85-1 (Nagy Decl.); Decl. of Anne Mendez ¶ 10, ECF No. 85-2 (Mendez Decl.); Decl. of Jacqueline Clay ¶¶ 5-6, ECF No. 85-3 (Clay Decl.); Suppl. Decl. of Rebecca Keiser ¶ 11, ECF No. 85-4 (Keiser Suppl. Decl.).  Without evidence that the harm they describe is imminently likely to occur, Plaintiffs cannot establish irreparable harm.  Indeed, Plaintiffs do not even explain the kind of political-discrimination claim that their alleged harm, if actually suffered, would support.  And in any event, such harm would not be irreparable because, as discussed above, the MSPB may make wrongly removed employees whole through reinstatement, backpay, and attorney's fees.

As to all agency defendants *except* the Department of Energy, Department of Housing and Urban Development, Department of Treasury, Department of Commerce, Department of Education, Department of Homeland Security, Department of Interior, and Department of Health and Human Services—where RIFs had been or soon would have been noticed, during or related to the lapse, but for the TRO—Plaintiffs' irreparable-harm theories fail for an additional reason. Specifically, for employees of the remaining agencies at which RIFs were neither noticed nor imminent during or related to the lapse, any cognizable harms would occur only after a decisionmaking process by each individual agency that is not currently final and may or may not result in a decision to conduct RIFs of indeterminate scope.  The non-final nature of these agencies' decisionmaking process is discussed further in the government's briefing on the TRO motion, ECF No. 41 at 18-19.  In addition to defeating Plaintiffs' motion on APA final-action grounds as to employees at the remaining agencies, *see id.*, the lack of finality also gives the Court an

independent basis to reject Plaintiffs' irreparable-harm theory as to those employees, *see Selecky*, 586 F.3d at 1138.

## II.     This Court Lacks Jurisdiction.

As did Plaintiffs, *see* PI Br. at 18-19, the government incorporates its arguments on this issue from its briefing on the TRO motion, ECF No. 41.  In sum, Plaintiffs' claims are centered on the terms and conditions of federal employment, and they must be channeled to agency adjudication in the MSPB and FLRA, not in district court.  *See id.* at 11-15.  Plaintiffs may seek further review of any agency adjudication in the courts of appeals.  *See id*.  But they cannot avoid these comprehensive statutory schemes simply because they prefer to litigate before this Court.

## III.    Plaintiffs' Claims Are Not Likely To Succeed On The Merits.

Even if Plaintiffs' motion did not fail for lack of irreparable harm or for the other defects addressed above, Plaintiffs are unable to make the requisite "clear showing" that they are likely to succeed on the merits of their claims.

Agencies have broad authority to conduct RIFs.  Courts should afford agencies "wide discretion in conducting a reduction in force; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision."  *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998) (citation omitted).  The President determined that government efficiency is a priority and directed agencies to consider steps to continue to optimize workforces in light of the lapse in appropriations. *See* OMB Mem. at 1 (Sept. 24, 2025), ECF No. 15-1 ("[U]se this opportunity to consider [RIF] notices for all employees in [PPAs] . . . [where, among other stated conditions,] the PPA is not consistent with the President's priorities.").  The RIFs at issue therefore reflect the agencies seeking to accomplish the President's goal by conducting RIFs of programs that are not an Administration priority during a lapse of funding.  Pursuing that goal is lawful and appropriate. *See Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. __, 2025 WL 1873449, at *1 (July 8, 2025) (Mem.).

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

**A.** Plaintiffs have not shown likelihood of success on the merits of their arbitrary-and-capricious APA claim. Indeed, they make barely any effort to do so. They primarily cite their previous briefing and rely on the Court's determination at the TRO stage—in an emergency posture, after a hearing that was accelerated by a day at Plaintiffs' suggestion and considered only the very limited evidence available at that time—that "[i]f what plaintiffs allege is true, then the agencies' actions in laying off thousands of public employees during a government shutdown—and in targeting for RIFs those programs that are perceived as favored by a particular political party—is the epitome of hasty, arbitrary and capricious decisionmaking." *See* TRO Order at 4; PI Br. at 18. But the record (including facts developed in the nine days since the TRO hearing) shows why the Court should revisit that preliminary ruling.

As a threshold matter, Plaintiffs fail to show why a lapse in appropriations cannot provide a legitimate basis for a RIF. An agency's "shortage of funds" is one of the explicit regulatory predicates for a RIF. *See* 5 C.F.R. § 351.201(a)(2). Although a lapse is expected to be temporary, future funding is not guaranteed after the lapse ends. Correlation between a lack of funding and an agency's decision to initiate a RIF does not show arbitrary and capricious action. In fact, the Federal Circuit—where challenges to RIFs by adversely affected employees are properly channeled following required MSPB review—has held that an agency may justify a RIF on even the *anticipation* of a budget cut or shortage. *See Cross v. Dep't of Transp.*, 127 F.3d 1443, 1447 (Fed. Cir. 1997) ("Conducting a RIF because of an anticipated shortage of funds does not require that the shortage exist at the time of the RIF."). To the extent that Plaintiffs allege that the RIFs were inadequately explained or reasoned, their argument fails because the evidence shows (even in this preliminary posture) that agencies considered various factors while planning RIFs. *See, e.g.*, Clay Decl. ¶¶ 4, 6; Mendez Decl. ¶¶ 4-6.

Plaintiffs also fail to provide authority to show that the alleged "targeting" of certain federal programs, pursuant to policy priorities, is a basis to invalidate a RIF. *See* PI Br. at 20. Plaintiffs identify no cases where the Federal Circuit has scrutinized an agency's underlying reasons for initiating a RIF, beyond a showing of the reasons specified in the OPM's regulations. As noted,

conducting employment actions consistent with Administration priorities is generally lawful.  And Plaintiffs cite no authority for their contention that conducting RIFs across PPAs or competitive areas is unlawful. On the contrary, the "decision on the composition and structure of the workforce reflects the kind of managerial judgment that is the essence of agency discretion"; it "is not meant for judicial reevaluation."  *Gandola v. FTC*, 773 F.2d 308, 311 (Fed. Cir. 1985).

To the extent Plaintiffs argue that defendant agencies are seeking to discriminate against individuals based on their political views or affiliation, *see* PI Br. at 20, any such suggestion fails because their complaint contains no cause of action for such a theory.  Just as fatal to their theory, Plaintiffs have provided no evidence that RIFs at defendant agencies target particular employees for political retaliation or discrimination.  Indeed, the record shows the contrary.  *See* Nagy Decl. (HHS) ¶ 3; Mendez Decl. (USPTO) ¶ 10; Clay Decl. (Education) ¶¶ 5-6; Keiser Suppl. Decl. (NSF) ¶ 11.

The factual record also refutes the notion that the RIFs were the result of a "hasty" effort bereft of individualized decisionmaking and explanation.  Agencies took time to consider whether and what areas to RIF.  *See, e.g.*, Decl. of Rachel Borra Decl. ¶ 8 (Department of Interior), ECF No. 62-11 (explaining that the agency has been working on potential RIF plans since early 2025); Mendez Decl. ¶ 3-10 (explaining that the agency had been at work on RIF plans for months); Keiser Suppl. Decl. ¶ 3-10 (similar).  And most agencies have not made a decision to conduct a RIF during the lapse in divisions or offices containing Plaintiffs' members or bargaining units. *See, e.g.,* Decl. of Florence Felix-Lawson (Social Security Admin.), ECF No. 62-33; Decl. of Peter A. Feldman (U.S. Consumer Product Safety Comm'n), ECF No. 62-17; Decl. of Kelly Elliot (NASA), ECF No. 62-23.  Plaintiffs' depiction of a monolithic decision-making process is simply inconsistent with the factual record, which manifests marked variation across agencies.  The oversimplification of the facts distorts the arbitrary-and-capricious analysis and would result in an overly broad, inappropriate injunction across all agencies regardless of the facts specific to each. *See also* Section V, *infra*.  And allegations of mistakes or "snafus" (see TRO Order at 4, ECF No. 56) at some agencies during the RIF process do not indicate arbitrary and capricious agency

conduct, given the enormity and complexity of the federal bureaucracy. Notably, where agencies discovered errors, they quickly made corrections. *See, e.g.*, Nagy Decl. ¶ 5.

**B.**    More broadly, Plaintiffs also fail to make a "clear showing" that they are likely to succeed on the merits of any of their claims.[1] Defendants already explained why in their opposition to the TRO, and they incorporate those arguments by reference.    ECF No. 41 at 16-19. Specifically, as Defendants already explained, Plaintiffs cannot predicate their contrary-to-law APA claim on the Antideficiency Act, because of the exception in the APA precluding review where other "statutes preclude judicial review." *See id.* at 16-17.    Plaintiffs also cannot make the "clear showing" necessary to meet the stringent standard for an *ultra vires* claim, which is not cognizable here. *See id.* at 17-18 (quoting 5 U.S.C. § 701(a)(1)).

Moreover, Plaintiffs fail to establish final agency action to support their APA claims against agency defendants that have not yet made a decision whether, and to what extent if at all, to conduct RIFs. *See id.* at 18-19.    Under the APA, only "final agency action" is subject to judicial review. 5 U.S.C. § 704.    Neither the OMB Lapse Email nor the OPM Special Instructions constitute final agency action subject to challenge.    First, they do not bind agencies and in fact instruct agencies to "use this opportunity to consider Reduction in Force (RIF) notices." *See id.*    Second, individual agencies decide whether to conduct any RIFs.    And even if Plaintiffs could challenge the guidance materials, their claims would fail, because those materials are within the range of appropriate activities for OPM and OMB.    Statutory provisions confirm the important functions these Executive Branch agencies fulfill during a lapse in appropriations. *See, e.g.*, 31 U.S.C. § 1341(c)(1)(D) ('the term "excepted employee" means an excepted employee or an employee

---

[1] Further, Plaintiffs bear the burdens of establishing subject-matter jurisdiction and showing a likelihood of success on the merits of each of their claims, among their other obligations at this or any stage of the litigation.  Those burdens in particular require them to establish that each of the defendants they name in their operative complaint is subject to the APA, which they have not done. *See, e.g., Dong v. Smithsonian Inst.*, 125 F.3d 877, 878-79 (D.C. Cir. 1997) (Smithsonian not "agency" under Privacy Act, 5 U.S.C. § 552a(a)(1)).

performing emergency work, as such terms are defined by the Office of Personnel Management or the appropriate District of Columbia public employer, as applicable.'").

Plaintiffs therefore fail to make a "clear showing" that they are likely to succeed on the merits.

## IV.   The Balance Of The Equities Weighs In The Government's Favor.

As did Plaintiffs, *see* PI Br. at 20, the government incorporates its arguments on this issue from its briefing on the TRO motion, ECF No. 41 at 19-20.  In summary, Plaintiffs' requested injunction would irreparably harm the government, including by substituting Plaintiffs' preferred policies for those chosen by the Executive Branch and by requiring agencies to retain employees they might otherwise have discharged or reassigned. *See id.* at 19.  Plaintiffs' alleged harms, which are not irreparable, cannot outweigh the government's irreparable harms here. *See id.* at 19-20.

## V.   Plaintiffs' Proposed Injunctive Relief, Including The Disclosure Requirements, Is Grossly Overbroad, Legally Inappropriate, and Unnecessary.

Plaintiffs purportedly brought this lawsuit, and their requests for emergency injunctive relief, to enjoin RIFs arising from the lapse in appropriations.  Yet the past two weeks have made clear that what Plaintiffs really want is to obtain substantive relief going far beyond the employees they represent, to involve the Court in wide-ranging aspects of agency employment decisions, to obtain pre-decisional and deliberative information to which they are not entitled and which has no relationship to their alleged harms, and to invoke the Court's equitable powers to grant them the equivalent of final relief.  Even if the Court is inclined to grant Plaintiffs some relief, it should stop short of the breathtakingly broad and demonstrably unnecessary injunction Plaintiffs are seeking.

**A.**  As a threshold matter, Plaintiffs are not entitled to relief against agencies for which Plaintiffs cannot establish standing.  "Plaintiffs must demonstrate standing for each claim that they press against *each* defendant, and for each form of relief that they seek.  Here, for *every* defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (emphases added) (citation modified), *remanded sub nom. Missouri v. Biden*, 114 F.4th 406 (5th Cir. 2024).  As noted above, only a limited number of agencies had actual or

imminent lapse-related RIFs before this Court's TRO was entered, but (as sworn declarations explain) most agencies did not.  No relief should be granted as to these latter agencies because Plaintiffs cannot establish any actual or imminent injury.  *See Murthy*, 603 U.S. at 61; *Thakur v. Trump*, 787 F. Supp. 3d 955, 1003 (N.D. Cal. 2025) (Lin, J.) (no preliminary relief as to agencies that plaintiffs "ha[d] not been injured by"), *denying stay pending appeal*, 148 F.4th 1096 (9th Cir. 2025); *Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*, No. C 25-01780 WHA, 2025 WL 2633791, at *10, *21 (N.D. Cal. Sept. 12, 2025) (Alsup, J.) (no injunctive relief against agencies for which plaintiffs had not shown standing), *appeal filed*, No. 25-5875 (9th Cir. Sept. 18, 2025).

**B.**  The substantive relief that Plaintiffs seek is far broader than necessary to redress their alleged injuries. Specifically, Plaintiffs' proposed preliminary injunction applies to non-parties— a type of relief that the Supreme Court recently rejected.  "The equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties*." *CASA*, 606 U.S. at 851 (citation omitted). "While party-specific injunctions sometime advantage nonparties, they should do so *only incidentally*." *Id.* (emphasis added) (citation modified). Plaintiffs' proposed injunction explicitly seeks relief for nonparties in a way directly contrary to *CASA*.

Specifically, just as they did with their proposed TRO, Plaintiffs define "federal employees in any PPA" to include any PPA "in which Plaintiffs have any members, regardless of whether those members are employed in a bargaining unit that is represented by a Plaintiff," and any PPA "in which any Plaintiff is or was a recognized collective bargaining representative of a bargaining unit prior to or after the issuance of Executive Orders 14251 and 14343, the effect of which is the subject of legal dispute."  Proposed Order at 4, ECF No. 79-19.  Although the Court entered that language as part of the modified TRO in the rapid-fire posture of Plaintiffs' "urgent" October 16 motion, *see* ECF No. 59, 70, it now has a more developed record and additional briefing before it.

1    And it should take the opportunity to enter relief (if any) that is more closely tailored to the parties

2    and alleged harms in this case.

3         It is improper for the relief to extend to individuals who are not members of recognized

4    bargaining units represented by the Plaintiffs.  Executive Order 14343 expressly excludes certain

5    bargaining unit members from participation in the Federal Labor-Management Relations Program,

6    and Executive Order 14251 excludes some agencies and subdivisions from collective-bargaining

7    requirements.  Accordingly, under those Executive Orders, not all bargaining units possess union

8    representation by Plaintiffs.  Separate, currently pending litigation will determine the validity of

9    those Executive Orders.  *See Am. Fed'n of Gov't Emps. v. Trump*, No. 3:25-cv-03070 (N.D. Cal.).

10   Indeed, the Ninth Circuit held that the government was likely to prevail on the merits of a challenge

11   by one of the Plaintiffs here to Executive Order 14251.  *Am. Fed'n of Gov't Emps. v. Trump*, 148

12   F.4th 648, 654-55 (9th Cir. 2025).  It therefore stayed the district court's injunction.  *Id.* at 656.

13   To put a fine point on it: the theory of Executive Order invalidity that Plaintiffs are attempting to

14   leverage as a means to broaden the injunctive relief in this case—and already leveraged to obtain

15   a broader TRO—is inconsistent with the Ninth Circuit's published opinion.  The Court should not

16   enter relief that perpetuates that error.

17        Relatedly, Plaintiffs' proposed order seeks relief for individuals that they no longer

18   represent or that they never represented.  The proposed preliminary injunction appears to apply to

19   any federal employee, whether or not he or she is a union member or is covered by an active FLRA

20   certificate, as long as any plaintiff union is or was a collective bargaining representative for

21   individuals in that employee's PPA.  Plaintiffs' proposed preliminary injunction even appears to

22   sweep in employees who are ineligible from being represented for the purposes of collective

23   bargaining per statute.  *See* 5 U.S.C. § 7112 (*e.g.*, supervisors, managers, or confidential

24   employees).  But as explained in the government's TRO briefing, ECF No. 41 at 10, Plaintiffs

25   have not established standing to seek relief on behalf of those with whom they have no relationship.

26   *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("when (as here) a plaintiff

27   challenges the government's unlawful regulation . . . of *someone else*, standing is not precluded,

28   

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

16

but it is ordinarily substantially more difficult to establish" (citation omitted)); *CASA*, 606 U.S. at 841 (injunctions prohibiting government action as to non-plaintiffs are generally not an available remedy). It is Plaintiffs' burden to establish standing, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006), and they have not done so for non-members of the plaintiff unions (or for those who are not subject to a RIF notice).

Indeed, Plaintiffs' only alleged justification for sweeping relief to non-parties appears to be that terminating employees who are not Plaintiffs' members would cause those members to have to work more or would alter their work environment. *See* Pls.' Mem. of P. and A. in Supp. of Mot. for TRO at 23-24, ECF No. 17-1. Again, though, as already explained, that potential downstream harm does not justify entering relief that explicitly extends beyond the parties to the litigation. ECF No. 41 at 10. Thus, to the extent the Court enters a preliminary injunction, it should limit relief to Plaintiffs' members—or, at bare minimum, to PPAs that contain bargaining unit members of the Plaintiffs.

**C.** Plaintiffs' proposal that Defendants file a series of reports with the Court regarding their compliance with the preliminary injunction is both inappropriate and unnecessary. Plaintiffs do not merely seek compliance information—although even that would be inappropriate—instead, they seek to embark on an information-gathering safari regarding the internal deliberations of more than three dozen federal agencies about RIF plans that they may or may not have made. For example, Plaintiffs want, within a mere two business days of the Court's entering of their requested preliminary injunction, an "accounting" of RIFs "that were in preparation at the time of this Court's TRO." PI Br. at 21. Remarkably, that intrusive accounting would go beyond even the information about "imminent" RIFs that Plaintiffs sought at the TRO stage. It raises numerous intractable questions. For instance, what does "in preparation" mean? Does it sweep in RIFs completely unrelated to the lapse? Would an agency have to provide an "accounting" if it were merely evaluating the possibility of RIFs but had not decided to move forward with them? What if the agency had (pre-lapse or during the lapse) begun the process of identifying potential RIFs but had not yet settled on the scope of any RIFs? Or what if an agency was contemplating the possibility

1   of RIFs at a future date, but only if the lapse in appropriations continued for an extended period—

2   at which point the agency may choose to revisit whether to conduct the RIF and, if so, might re-

3   evaluate its scope?  If the number of employees or PPAs were uncertain (because these types of

4   decisions are internal, deliberative, and subject to change), would all of this information need to

5   be provided?[2]  Such an extraordinary disclosure order would surely not withstand review.

6        Moreover, Plaintiffs fail to explain why any such disclosure filing should be due within

7   two business days of the Court entering its preliminary injunction.  That deadline would be

8   extremely burdensome.  This matter involves more than forty separate agencies that Plaintiffs have

9   now named as defendants and proposed defendants (following two motions to amend the

10  complaint).  The difficulty in coordinating the production of accurate information from that many

11  entities is compounded by the lapse in appropriations that affects operations across the board.

12  (Gathering the information also requires, in some instances, recalling furloughed employees to

13  perform that information-gathering work—activity in tension with Plaintiffs' position that RIF-

14  related work should not take place in a lapse.)

15       Even if it were not burdensome, Plaintiffs' requested reporting requirements should not be

16  ordered because they are plainly unnecessary.  Conducting a RIF is a transparent process.

17  Employees subject to RIFs receive formal notice, which starts a 30-, 60-, or 90-day process prior

18  to separation from service.  It would not be possible for Defendants to conduct a *stealth* RIF, as

19  Plaintiffs seem to fear.  Further, the information Plaintiffs want, *e.g.*, how many employees are

20  within each affected PPA, is irrelevant for purposes of ensuring compliance.  PI Br. at 21.  Not

21  only would Plaintiffs almost certainly already have such information; the disclosure of such

22  information would not aid in determining compliance at all.

23

24

25       [2] Plaintiffs would also have the parties confer regarding a letter to be sent to employees
    subject to a RIF, formally notifying them that the RIF has been rescinded. For the reasons set forth
26  below, there is no basis to rescind the RIFs and, therefore, no basis to require Defendants to send
    letters, or for Defendants to file declarations regarding those letters.
27

28  Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
    3:25-cv-08302-SI

Even more importantly, as the defendant agencies have stated in declarations, they are complying and intend to comply with this Court's TRO. They are doing so even though Plaintiffs have rendered compliance extraordinarily challenging by constantly shifting their view of what the TRO should say—two modifications have occurred in barely a week—and adding parties on an allegedly urgent basis—even where the representatives of those parties *affirmatively disclaim* knowledge of any RIF notices directed to their members. *See* Decl. of Matthew S. Biggs ¶ 12, ECF No. 78-3 (representative of new proposed plaintiff IFPTE attesting that he is "*not* aware of any RIF notices" to workers represented by IFPTE (emphasis added)); Suppl. Decl. of Samuel L. Lieberman ¶ 11, ECF No. 78-4 (representative of new proposed plaintiff AFT attesting similar). Yet despite the difficulty of doing so, the defendant agencies have complied with the Court's orders, including to update the record with new or corrected information. *See, e.g.*, ECF No. 71-1 (Second Supplemental Interior Declaration).[3] What is more, Plaintiffs have failed to show how providing them with information about RIFs that were planned but have now been enjoined, or RIFs that were contemplated but not actualized within an agency, would remedy any cognizable injury. That is their burden, and they have not carried it.

Moreover, the detailed information sought—particularly an accounting of RIFs "that were in preparation"—would in many cases likely be privileged, pre-decisional, and deliberative agency planning material for activities that may never become final agency actions. Such information should be shielded from disclosure. *See, e.g., Nat'l Wildlife Federation v. U.S. Forest Serv.*, 861

---

[3] The Court should update its prior oral ruling, issued on October 17, that Interior may not conduct RIFs until it provides information to the Court about compliance with the TRO. With its filing of its most recent declaration, Interior confirmed its compliance with the TRO. As that declaration makes clear, Interior's proposed RIFs "predated the October 1, 2025 lapse in appropriations and were in no way motivated by or pursuant to the September 24, 2025 Office of Management and Budget or September 28, 2025 Office of Personnel Management guidance on RIFs during a lapse in appropriations." ECF No. 71-2, ¶ 12. Interior stopped work on RIF notices for competitive areas that include bargaining unit members represented by Plaintiffs, *id.* ¶ 13. As Interior has now provided the information requested by the Court, it should be permitted to move forward with RIFs that are not implicated by the Court's TRO or any preliminary injunction that the Court may issue as to these Plaintiffs. It should go without saying that any equitable relief that purports to extend beyond the parties and subject matter of this case violates not only the Supreme Court's decision in *CASA* but also practically every other bedrock principle of equitable relief.

F.2d 1114, 1118-20 (9th Cir. 1988) (stating that the deliberative process privilege applies to documents which would "prematurely disclose the views of the agency" and that "whenever the unveiling of factual materials would be tantamount to the 'publication of the evaluation and analysis of the multitudinous facts' conducted by the agency, the deliberative process privilege applies" (citations omitted)).  Plaintiffs would not be able to overcome the privilege based on any alleged need for these materials, given their lack of relevance to any issue currently before the Court.  At a bare minimum, any information that Defendants are ordered to produce should be subject to a protective order.

Plaintiffs' purported justification for the extreme disclosure requirements they seek, that it has allegedly been difficult for them to obtain accurate information from the government, *see* PI Br. at 21, is meritless for at least three reasons. First, requiring *more* information—on an expedited timeline—does not result in *better* information.  (In fact, likely the opposite.)

Second, Plaintiffs' allegations that Defendants have failed to disclose required information are incorrect.  For example, Defendants' October 17 filings affirmed that no defendant agencies would proceed with any RIF prohibited by the Court's TRO for as long as that Order remained in effect.  *See, e.g.*, ECF No. 62 and attachments.  In addition, agencies with actual or planned RIFs disclosed required details of those RIFs.  *See id.*  And after the Court issued its modified TRO on October 17, the defendant agencies that had new information to provide under the new version of the TRO submitted updated declarations.  ECF No. 71 and attachments.  Those filings complied with the Court's direction that Defendants provide "an accounting of all RIFs, actual or imminent, that are enjoined by this TRO."  TRO Order at 6.  Plaintiffs' dissatisfaction with the government's disclosures is beside the point: there is no ongoing affirmative duty to provide rolling productions of information in a pre-discovery posture.

Third, when Plaintiffs have raised compliance concerns (usually based on incomplete or outdated information), Defendants have responded expeditiously.  For example, when Plaintiffs raised an issue by email regarding HHS's compliance with the TRO, counsel for the government investigated the issue and provided information the next day that showed HHS's continued

compliance.[4]  Plaintiffs did not ask for follow-up, yet in their motion, they describe the same alleged issue while omitting the context—necessitating the government's filing here of another declaration from HHS explaining the circumstances that government counsel already explained to Plaintiffs' counsel.  *Compare* PI Br. at 11 (alleging that "HHS continued to issue revised RIF notices through October 15") *with* Nagy Decl. ¶¶ 3-7 (explaining that mailed notices were simply confirmatory of emailed notices and were placed in the mail before the TRO issued).

In short, the government has shown not only that it will comply with the Court's orders but also that it will act to address concerns about compliance when raised by Plaintiffs.  Babysitting compliance by requiring near-immediate declarations is uncalled for.  Instead, if the Court orders relief, the Court should presume the government will comply with any such order, as it has been doing.  *See Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) ("[W]e presume the government is acting in good faith.").

**D.**  Plaintiffs would have this Court order Defendants to rescind RIF notices by providing individual notice to federal employees covered by the injunction. *See* PI Br. at 21; Proposed Order ¶ 2, ECF No. 79-19.  This request, too, should be rejected out of hand: Rather than preserving the status quo, Plaintiffs' proposed relief would provide them with the equivalent of final relief on the merits.  As things stand, the effective dates of RIF notices enjoined by the TRO are stayed, and the government is not proceeding with RIFs enjoined by the TRO.  If Defendants were to ultimately prevail in this litigation, they would need to begin any process of issuing or implementing RIFs anew.

Plaintiffs cite *Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020), and *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664, 682 (9th Cir. 2023), for the proposition that the "status quo" represents the state of affairs before OMB's Lapse Memorandum, OPM's instructions, and the issuance of RIFs. But in those cases, the Ninth Circuit simply addressed whether enforcement of the challenged action (a Presidential Proclamation in

---

[4] The government's counsel will provide a copy of the email chain if desired.

*Doe #1* and a school district policy in *Fellowship of Christian Athletes*) represented the status quo for purposes of determining whether an injunction enjoining its implementation should be subject to a higher standard. The panels did not hold that it would be appropriate on a programmatic level to reach and attempt to unwind the challenged action.   Under the broad language in ¶¶ 1-2  of Plaintiffs' Proposed Order, no further action could take place regarding the enjoined RIFs as long as the preliminary injunction remains in place, and employees subject to the RIFs would continue to be employed by Defendants during that period. And if Plaintiffs ultimately prevail on the merits, the Court can then address appropriate final relief—including the rescission of RIFs. In fact, if RIFs were rescinded now, it is unclear what other substantive relief Plaintiffs would be entitled to or could obtain in this litigation—it would seem to permanently resolve Plaintiffs' claims on the merits and moot any further district-court proceedings.  Thus, ordering rescissions at this stage is inappropriate.

**E.**  Finally, any relief should exclude agencies whose contemplated or actual RIFs have nothing to do with the lapse or that are not operating in a funding lapse.  The government provides non-exhaustive examples here and requests the opportunity, should the Court order relief, to fully brief these scope issues and ensure that the Court does not enjoin RIFs as to which Plaintiffs' legal and equitable theories—even if found meritorious—would not justify relief.

***U.S. Patent and Trademark Office.***  Following months of planning, the United States Patent and Trademark Office ("USPTO") (a component of the Department of Commerce) implemented a RIF on October 1, 2025.  Mendez Decl. ¶ 6.  The RIF reflected a deliberate effort to refocus USPTO on core examination activities, and its development was independent of the later lapse in funding and related guidance.  *Id.* ¶¶ 4-6.  At the time of the RIF notices, as today, the USPTO was fully funded and operational.  Decl. of Sean M. Mildrew ¶¶ 5-6, ECF No. 85-5 (Mildrew Decl.).  As a fully fee-funded agency, the USPTO's annual appropriations bills provide it with "no-year funds," allowing it to save prior-year appropriated collections in an "operating reserve" that can be spent during a lapse.  *See* Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25 (2024) (USPTO's appropriations "to remain available until expended"); Full-

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

1  Year Continuing Appropriations & Extensions Act, 2025, Pub. L. No. 119-4, 139 Stat. 9 (2025)

2  (FY 2025 Continuing Resolution); *see also* Mildrew Decl. ¶ 4.  Moreover, the USPTO anticipates

3  sufficient funds to fully operate through at least December 24, 2025.  *Id.* ¶ 6.  The Antideficiency

4  Act is therefore not implicated.  And the months of planning belie Plaintiffs' arbitrary-and-

5  capricious theory.

6        The Plaintiffs' request for injunctive relief focuses on RIF actions taken during and because

7  of the lapse in appropriations.  As the USPTO's RIF-related actions have been and will continue

8  to be taken at a time when the Agency is fully funded and operational, the USPTO should be

9  excluded from the TRO and any injunctive relief.

10        ***Department of Interior.*** As explained in the first Borra declaration, ECF No. 62-11, DOI's

11  RIFs were planned beginning months before the lapse and became arguably relevant to this case

12  only once the passage of time made clear that the contemplated timeline for DOI RIFs would

13  coincide with the continued lapse.  The rationale and planning for those RIFs was extensive and

14  thoughtful, was made at the Agency level, and was independent of the lapse.  DOI has been

15  complying with the TRO, but continued injunctive relief against its RIFs is not warranted,

16  including because no RIF notices have been issued during the lapse, and any planned RIFs were

17  not motivated by the lapse in appropriations.

18        ***National Science Foundation.*** NSF also planned and noticed RIFs before the lapse in

19  appropriations.  It has not planned or noticed any RIFs during the lapse and has complied with the

20  Court's TRO.  *See* ECF No. 62-28; Keiser Suppl. Decl. ¶¶ 3-10.  However, Plaintiffs continue to

21  inaccurately assert that NSF issued RIF notices during the lapse.  PI Br. at 10 n.10.  While the

22  TRO plainly does not apply to NSF's pre-lapse RIF notices, the Court should make explicit in any

23  preliminary-injunction order that pre-lapse RIF notices at NSF and any similarly situated agencies

24  are excluded from the order.

25

26

27

28  Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
    3:25-cv-08302-SI

**VI.     Any Injunctive Relief Should Be Stayed Pending Appeal And Be Accompanied By A Bond.**

If the Court issues any injunctive relief, the government respectfully requests that such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor General, or at a minimum, administratively stayed for a period of seven days to allow the government to consider whether to seek an emergency, expedited stay from the court of appeals if an appeal is authorized.

The government also respectfully requests that any injunctive relief be accompanied by a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Here, an appropriate bond would be commensurate to the salaries and benefits the government must pay—to the extent injunctive relief might extend beyond the lapse—to any employees it would prefer to separate from service, but would be prevented from doing so for the duration of any preliminary relief.  The government is prepared to submit evidence concerning the appropriate amount of a bond.

## CONCLUSION

The Court should deny Plaintiffs' motion.

1    Dated: October 24, 2025                        Respectfully Submitted,

2                                                   STANLEY E. WOODWARD, JR.
3                                                   Associate Attorney General

4                                                   BRETT A. SHUMATE
5                                                   Assistant Attorney General
                                                    Civil Division
6
                                                    ERIC J. HAMILTON
7                                                   Deputy Assistant Attorney General

8                                                   MICHAEL K. VELCHIK
9                                                   Senior Counsel to the Assistant Attorney
                                                       General
10                                                  Civil Division

11                                                  CHRISTOPHER R. HALL
                                                    Assistant Branch Director
12                                                  BRAD P. ROSENBERG
                                                    Special Counsel
13                                                  R. CHARLIE MERRITT
                                                    Senior Counsel
14                                                  STEVEN M. CHASIN
                                                    PIERCE J. ANON
15                                                  Trial Attorneys
16                                                  Civil Division, Federal Programs Branch

17                                                  */s/ Elizabeth Hedges*
18                                                  ELIZABETH HEDGES (DC No. 1657707)
                                                    Counsel to the Assistant Attorney General
19                                                  Civil Division
                                                    U.S. Department of Justice
20                                                  950 Pennsylvania Ave NW
21                                                  Washington, DC 20530
                                                    Phone: (202) 616-0929
22                                                  E-mail: elizabeth.t.hedges@usdoj.gov

23                                                  *Attorneys for Defendants*

24

25

26

27

28
      Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
      3:25-cv-08302-SI
                                              25