Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO (AFGE), et al.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al.<br><br>Defendants. | Case No. 3:25-cv-08302-SI<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

1. **Defendants' Shutdown RIFs Are Very Likely Unlawful** ...................................................1

    A.    Defendants Concede Claims on the Merits .................................................................1

    B.    The Decision to Impose Shutdown RIFs Exceeds and is Contrary to Authority..................................................................................................................2

    C.    Defendants Cannot Redeem Their Arbitrary and Capricious Decisionmaking .........4

2. **Defendants' Threshold Arguments Still Lack Merit** ........................................................7

3. **Defendants Largely Ignore the Irreparable Harm They Are Causing** ...........................8

4. **Defendants' Interest in Continuing Unlawful Acts Does Not Tip the Equities** ............11

5. **Plaintiffs' Proposed Injunction Protects Plaintiffs and the Employees They Represent and Is Not Overbroad or Otherwise Improper** ...........................................11

    A.    Plaintiffs' Proposed Injunction is Not Overbroad .................................................11

    B.    The Rescission of RIF Notices is Necessary to Protect the Status Quo ..................13

    C.    Compliance Reporting Is Warranted by Defendants' Conduct to Date ..................14

    D.    Defendants' Agency-Specific Arguments and Request to Re-brief the Scope of Any Injunction Should be Denied.........................................................................15

6. **The Court Should Deny the Stay and Bond** ....................................................................15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4
5

*AFGE v. Trump*,
139 F.4th 1020 (9th Cir. 2025) ............................................................................... 7

6
7

*AFGE v. Trump*,
No. 25-4014 (9th Cir.) ............................................................................................ 13

8

*Am. Foreign Serv. Ass'n v. Trump*,
2025 WL 1742853 (D.C. Cir. Jun. 20, 2025) ........................................................ 13

9
10

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ............................................................................... 13

11
12

*Angeles v. U.S. Airways, Inc.*,
2013 WL 622032 (N.D. Cal. Feb. 19, 2013) ........................................................... 1

13

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ............................................................................................... 11

14
15

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ................................................................................. 10

16

*Chalk v. U.S. District Court*,
840 F.2d 701 (9th Cir. 1988) ............................................................................... 8, 9

17
18

*Cross v. Dep't of Transp.*,
127 F.3d 1443 (Fed. Cir. 1997) ............................................................................... 3

19
20

*Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*,
67 F.4th 1027 (9th Cir. 2023) .............................................................................. 5, 7

21

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .......................................................................................... 1, 3, 12

22
23

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .............................................................................................. 5, 7

24
25

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ......................................................................... 11, 14

26

*Doe v. Trump*,
__ F.Supp.3d __, 2025 WL 2430494 (N.D. Cal. Aug. 22, 2025) .......................... 12

27
28

*Drs. for Am. v. Off. of Pers. Mgmt.*,
2025 WL 1836009 (D.D.C. July 3, 2025) ............................................................ 2, 5

*E. Bay Sanctuary Covenant v. Garland*,
    994 F.3d 962 (9th Cir. 2020) ...................................................................................... 10

*EEOC v. Chrysler Corp*,
    546 F. Supp. 54 (E.D. Mich. 1982), *aff'd*, 733 F.2d 1183 (6th Cir. 1984) ................................ 9

*EEOC v. Hawaii*,
    764 F. Supp. 158 (D. Haw. 1991) ................................................................................ 9

*Elrod v. Burns*,
    427 U.S. 347 (1976) ................................................................................................ 9

*Fed. Educ. Ass'n v. Trump*,
    2025 WL 2738626 (D.C. Cir. Sept. 25, 2025) ................................................................ 13

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) ...................................................................................... 14

*Garcia v. United States*,
    680 F.2d 29 (5th Cir. 1982) ...................................................................................... 10

*Hartikka v. United States*,
    754 F.2d 1516 (9th Cir. 1985) .................................................................................... 10

*Haw. Disability Rts. Ctr. v. Kishimoto*,
    122 F.4th 353 (9th Cir. 2024) .................................................................................... 13

*Heraldez v. Bayview Loan Servicing, LLC*,
    2016 WL 10834101 (C.D. Cal. Dec. 15, 2016) ................................................................ 1

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) .................................................................................... 15

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) ................................................................................................ 2

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ................................................................................................ 2

*Michigan v. EPA*,
    576 U.S. 743 (2015) ................................................................................................ 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................................................... 5, 7

*National TPS Alliance v. Noem*,
    150 F.4th 1000 (9th Cir. 2025) .................................................................................. 12

*Nelson v. Nat'l Aeronautics & Space Admin.*,
    530 F.3d 865 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) .......................... 8

*Nken v. Holder,*
    556 U.S. 418 (2009) .................................................................................. 15

*NTEU v. Trump,*
    2025 WL 1441563 (D.C. Cir. May 16, 2025) ......................................... 13

*Or. Advoc. Ctr. v. Mink,*
    322 F.3d 1101 (9th Cir. 2003) ................................................................ 13

*Oregon v. Ashcroft,*
    368 F.3d 1118 (9th Cir. 2004), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006) ...... 4

*Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.,*
    512 F.Supp.3d 966 (N.D. Cal. 2021) ...................................................... 10

*Regents of Univ. of Cal. v. Dep't of Homeland Sec.,*
    908 F.3d 476 (9th Cir. 2018), *vacated in part on other grounds*, 591 U.S. 1 (2020) ............ 12

*Safe Air For Everyone v. EPA,*
    488 F.3d 1088 (9th Cir. 2007) ............................................................ 4, 5

*Sampson v. Murray,*
    415 U.S. 61 (1974) .............................................................................. 9, 10

*Sea-Land Serv., Inc. v. Dep't of Transp.,*
    137 F.3d 640 (D.C. Cir. 1998) .................................................................. 4

*Sec. & Exch. Comm'n v. Chenery Corp.,*
    318 U.S. 80 (1943) .................................................................................... 2

*Stanley v. Univ. of S. Cal.,*
    13 F.3d 1313 (9th Cir. 1994) ..................................................................... 9

*Taylor-Failor v. Cnty. of Haw.,*
    90 F.Supp.3d 1095 (D. Haw. 2015) ........................................................ 15

*Trump v. AFGE,*
    145 S. Ct. 2635 (2025) ............................................................................. 4

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ......................................................................... 11, 12

*Vazquez-Burgos v. Rodriguez-Perez,*
    111 F.Supp.3d 135 (D.P.R. 2015) ............................................................ 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Federal Statutes**

5 U.S.C.
   §§ 705-706 ............................................................................................................ 12
   § 3101 ...................................................................................................................... 3
   §§ 3501-3504 ........................................................................................................... 2

31 U.S.C.
   §§ 1341-42 ........................................................................................................... 1, 2

1    Plaintiffs submit this brief reply to address arguments made by Defendants in opposition to

2    Plaintiffs' Motion for Preliminary Injunction.

3    **1.    Defendants' Shutdown RIFs Are Very Likely Unlawful**

4    Plaintiffs have shown that actual and imminent reductions in force ("RIFs") during the federal

5    government shutdown are unlawful for many independent reasons:  they violate the Antideficiency

6    Act ("ADA"), 31 U.S.C. §1341 (ECF 17-1 at 14-18; ECF 47 at 4-7; ECF 79-1 at 18-19); contravene

7    the law by equating a lapse in appropriations with the elimination of statutory authority for programs

8    and positions (ECF 17-1 at 14-21; ECF 47 at 3-4; ECF 79-1 at 18-19); and are arbitrary and

9    capricious in numerous ways (ECF 17-1 at 18-21; ECF 47 at 3-4; ECF 79-1 at 18-19).  In response,

10   Defendants fail to address certain of Plaintiffs' claims entirely, and for those they do address, offer

11   arguments based on incorrect characterizations of the law and the factual record.

12   **A.    Defendants Concede Claims on the Merits**

13   Defendants fail to respond to at least two of Plaintiffs' claims and thus, for purposes of this

14   motion, concede that Plaintiffs are likely to succeed on the merits of those claims.[1]

15   First, by requiring employees to work during a shutdown to prepare and issue RIF notices and

16   otherwise implement RIFs, Defendants are plainly violating the ADA.  ECF 17-1 at 14-18; ECF 47 at

17   4-5; ECF 79-1 at 18-19; *see also* ECF 40, 49-2 (admitting Defendants required employees to work on

18   RIFs during shutdown).  Defendants fail to respond to this claim at all.  ECF 85.

19   Second, Defendants offer no defense for their failure to account for reliance interests, which is

20   arbitrary and capricious.  *See* ECF 17-1 at 19.  Defendants are "not writing on a blank slate" when it

21   comes to eliminating the positions of thousands of federal employees, and the APA therefore requires

22   them "to assess whether there were reliance interests, determine whether they were significant, and

23   weigh any such interests against competing policy concerns."  *Dep't of Homeland Sec. v. Regents of*

24   *the Univ. of Cal.*, 591 U.S. 1, 33 (2020).  There is no indication anywhere that Defendants ever

25   considered the considerable reliance interests of any affected federal employee, or the public that

26

27   _____

     [1] *See, e.g.*, *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032 at *4 (N.D. Cal. Feb. 19, 2013) ("The
     failure to respond amounts to a concession."); *accord Heraldez v. Bayview Loan Servicing, LLC*,
28   2016 WL 10834101 at *2 (C.D. Cal. Dec. 15, 2016).

relies on their services, let alone properly weighed and balanced them: not in the OMB Lapse Memorandum (ECF 17-3 Ex. A); the RIF notices issued to Plaintiffs' members (ECF 47-1 Exs. A, E, L, N, O, S, T); Defendants' public explanations for their actions (ECF 79-1 at 9-10); or even in any of Defendants' hindsight declarations (*see, e.g.*, ECF 40; 49-2; 62-1-34; 66-1; 67-1; 71-1-3; 85-1-5).[2] Rather, as reflected in public statements by Administration officials about the RIFs, the interests of the federal civil service workforce are not deemed worthy of consideration.  ECF 79-1 at 3-11, 14-18 (collecting evidence); ECF 47-2 Exs. A-F, H.  Having offered no response, Defendants also concede Plaintiffs' likely success in showing Defendants' actions are arbitrary and capricious because of the complete failure to consider reliance interests.  *Cf. Drs. for Am. v. Off. of Pers. Mgmt.*, 2025 WL 1836009 at *21 (D.D.C. July 3, 2025) ("The reliance interests here are staggering.").

**B.    The Decision to Impose Shutdown RIFs Exceeds and is Contrary to Authority**

Defendants argue that the Court must presume the lawfulness of the shutdown RIFs because, they contend, agencies have some general authority to impose RIFs.  ECF 85 at 10.  But this misses the point:  Defendants lack lawful authority to impose *these* RIFs during the government shutdown on the ground that the funding lapse eliminates statutory requirements, ECF 17-3 Ex. A at 1, or for the purpose of targeting political opponents.  *See* ECF 17-1 at 19-20; ECF 47 at 3-4; ECF 79-1 at 9-10, 18.[3]  Where, as here, "action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law."  *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943).

Defendants argue that agencies may engage in RIFs because of budget shortfalls, but that also

---

[2] The absence of any discussion at all of employees' reliance interests in the OMB Lapse Memorandum is glaring when it orders that "RIF notices should be issued to all employees working on the relevant PPA, *regardless* of whether the employee is excepted or furloughed during the lapse in appropriations."  ECF 17-3 Ex. A (emphasis added).

[3] Plaintiffs do not agree that Congress has delegated carte blanche authority to eliminate statutorily authorized positions.  The limited RIF retention preference statutes do not provide such authority, 5 U.S.C. §§3501-3504, and contrary to Defendants' arguments, ECF 85 at 10-11, regulations cannot expand agency authority beyond what Congress has authorized.  *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374-75 (1986).  Indeed, this Administration takes the position that any regulations not expressly required by statute are null and void.  Exec. Order No. 14219 (Feb. 19. 2025); Presidential Memorandum, Directing the Repeal of Unlawful Regulations (April 9, 2025).  Nor does the ADA authorize OPM to exempt employees beyond what is permitted by statute, 31 U.S.C. §§1341-42.  Defendants' actions are far beyond the "range of appropriate activities for OPM and OMB."  ECF 85 at 13.

does not support *these* RIFs.  ECF 85 at 11.  OMB directed agencies to conduct RIFs based on a *temporary* lapse in appropriations, on the legally erroneous ground that the lapse eliminated the statutory authority for any affected federal programs.  ECF 17-3 Ex. A.  Defendants make no attempt to show that Congress has (or is about to) actually cut the budget of any of the agencies at issue, nor that it otherwise eliminated any statutory authority for agency programs.[4]  Nor was OMB's contemporaneous reasoning based on any determination that Congress had or was likely to cut funding for certain programs in the appropriations process: it was that the temporary lapse of funding alone renders programs "no longer statutorily required."  ECF 17-3 Ex. A.  Courts may not credit hindsight justifications offered by counsel when they are inconsistent with an agency's contemporaneous explanation.  *See Regents of the Univ. of Cal.*, 591 U.S. at 24 ("An agency must defend its actions based on the reasons it gave when it acted."); *Michigan v. EPA*, 576 U.S. 743, 758 (2015) (describing "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action").

     For this reason, *Cross v. Department of Transportation*, 127 F.3d 1443 (Fed. Cir. 1997) (cited ECF 85 at 11), which concerned a RIF in anticipation of imminent congressional budget cuts, is inapposite.  There, the agency in question had been "abolished on January 1, 1996 by an act of Congress," *id*. at 1445, and the court heard evidence that the RIF was issued once the "demise of the agency" was "imminent" and "agency officials reasonably and genuinely believe that the agency's abolition is inevitable and its funding is to be terminated," *id*. at 1447.  No such evidence exists here, and OMB's Lapse Memorandum does not even purport to rely on imminent appropriations reducing any agency's budget.  ECF 17-3 Ex. A.  In fact, OMB's directive expressly recognized the likelihood that Congress would *not* likely cut funding for all of the programs the Administration was going to RIF by stating that RIFs could be revised once the lapse in funding ended.  *Id.* ("Once fiscal year 2026 appropriations are enacted, agencies should revise their RIFs as needed to retain the minimal number of employees necessary to carry out statutory functions.").

---

[4] *See* 5 U.S.C. §3101 (authorizing federal agencies to "employ such number of employees … as Congress may appropriate for from year to year").  Plaintiffs do not list the myriad statutes that authorize federal agencies, given that Defendants make no effort to defend the notion that any agency's statutory authorization has been modified, much less repealed.

Defendants argue that the RIFs are being implemented to effectuate the President's "priorities." ECF 85 at 10. When those "priorities" include targeting political opponents for partisan gain, that is not lawful. And further, Defendants selectively quote OMB's Memorandum and ignore the fundamentally erroneous legal justification on which it rests, as well as the record evidence confirming the improper reasons for these actions. *See, e.g.*, ECF 17-3 Ex. A; ECF 47 at 2 n.2 (collecting cites blaming RIFs on funding lapse); ECF 79-1 at 9-10 (collecting statements confirming partisan purposes). Thus, even setting aside the question whether invocation of the "President's priorities" could provide a legal basis for unilaterally eliminating programs that Congress created and authorized,[5] Defendants may not ignore their own contemporaneous stated rationales.

Where, as here, Defendants base their actions on a "legally erroneous ... premise [that] is fundamental" to the agency action, that action is "otherwise not in accordance with law" in violation of the APA. *Safe Air For Everyone v. EPA*, 488 F.3d 1088, 1101 (9th Cir. 2007) (cleaned up); *see also Oregon v. Ashcroft*, 368 F.3d 1118, 1129 (9th Cir. 2004), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006) ("We must, of course, set aside agency decisions which rest on an erroneous legal foundation.") (cleaned up); *Sea-Land Serv., Inc. v. DOT*, 137 F.3d 640, 646 (D.C. Cir. 1998) ("An agency action, however permissible as an exercise of discretion, cannot be sustained 'where it is based not on the agency's own judgment but on an erroneous view of the law.'" (quotation omitted)).

### C.    Defendants Cannot Redeem Their Arbitrary and Capricious Decisionmaking

Plaintiffs previously established, and this Court agreed, that the OMB Lapse Memorandum and the shutdown RIFs are arbitrary and capricious in violation of the APA. ECF 17-1 at 18-21; ECF 47 at 3-4; ECF 56 at 4. Defendants provide no reason to doubt that conclusion.

First, Defendants' argument that a funding shortage may justify a RIF, ECF 85 at 11, fails for the reasons explained *supra* at 2-3. Further, as Plaintiffs have explained, the ADA seeks to ensure that employees will *remain* in their positions and receive back pay after a shutdown ends

---

[5] Defendants cite the Supreme Court's stay order in *AFGE v. Trump,* which stated that Executive Order 14210 and the OMB/OPM implementing memorandum were likely "lawful," ECF 85 at 10, but ignore the Court's statement that it was *not* addressing whether implementation of any particular "Agency RIF and Reorganization Plan" was lawful. *Trump v. AFGE*, 145 S. Ct. 2635 (2025). Whatever its precedential value, that stay decision certainly cannot be read to state that RIFs are always lawful simply because they effectuate a President's priorities.

1    notwithstanding the funding lapse.  ECF 17-1 at 16.  As the Ninth Circuit has explained, agency

2    action predicated on an erroneous legal foundation not only exceeds legal authority but is necessarily

3    arbitrary and capricious.  *Safe Air*, 488 F.3d at 1101; *see also Drs. for Am.*, 2025 WL 1836009 at *20.

4         Second, Defendants generically argue that "agencies" imposed these RIFs after considering

5    "various factors."  ECF 85 at 11.  Even if that broad assertion were supported by the record (it is not)

6    and any proper factors were considered, evidence showing Defendants' reliance on improper factors

7    would render the actions arbitrary and capricious.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*

8    *Auto. Ins. Co*., 463 U.S. 29, 43 (1983); *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*,

9    67 F.4th 1027, 1035 (9th Cir. 2023).  Moreover, Defendants present no evidence that the agencies

10   were in fact the decision-makers,[6] or that the agencies actually considered factors Congress directed

11   them to consider in making decisions about staffing statutorily authorized functions.  *State Farm*, 463

12   U.S. at 43 (agency action is "arbitrary and capricious if the agency has relied on factors which

13   Congress has not intended it to consider").  Defendants' new argument is akin to the "contrived"

14   post-hoc rationales rejected in *Department of Commerce v. New York*, 588 U.S. 752, 784 (2019).[7]

15        Third, Defendants argue that targeting programs for elimination based on policy priorities is

16   not an abuse of discretion.  ECF 85 at 11-12.  But even assuming that the President could direct such

17   cuts without Congressional approval, the uncontroverted record establishes that the targeting at issue

18   is not based on policy priorities:  the RIFs have been expressly for the purpose of *partisan* political

19

20   _____

     [6] Defendants' counsel's assertion that the agencies are the decision-makers (rather than OMB
     Director Vought) ignores the record evidence to the contrary.  *See* ECF 79-1 at 8 (collecting
21   evidence).  The President and OMB Director Vought have both stated that *OMB* is making the
     decisions.  ECF 17-3 ¶22 & Exs. J, M, O; ECF 47-2 Exs. A-E; ECF 79-18 Ex. B.  Numerous courts
22   have rejected similar assertions that OMB's directives amount to mere "guidance."  ECF 47 at 9
     (collecting cases); *see also Drs. for Am.*, 2025 WL 1836009 at *14 ("Although 'should' is typically
23   permissive, the context in which it is used can show that it is mandatory.... Here, the context shows
     that the memo is a directive."); Supp. Shively Decl. Ex. B (quoting "Senior agency official who
24   regularly deals with the O.M.B" stating:  "We work for the President of the United States … [but] it
     feels like we work for Russ Vought. He has centralized decision-making power to an extent that he is
25   the Commander-in-Chief.").

26   [7] The Court there explained*:* "Altogether, the evidence tells a story that does not match the
     explanation the Secretary gave for his decision.  In the Secretary's telling, Commerce was simply
27   acting on a routine data request from another agency.  Yet the materials before us indicate that
     Commerce went to great lengths to elicit the request from DOJ (or any other willing agency).  And
     unlike a typical case in which an agency may have both stated and unstated reasons for a decision,
28   here the … the sole stated reason [DOJ's request]—seems to have been contrived."  *Id*. at 784.

goals.  Defendants fail to respond to this, other than to imply that the Court should not take the President at his word and that he does not mean what he says.

Fourth, Defendants argue the shutdown RIFs were carefully planned, citing three agencies or subagencies that claim to have been preparing RIFs prior to the shutdown, and ignoring that the majority of the agencies that implemented OMB's October 10 directive make no such claim.  ECF 85 at 12 (ignoring Education, Energy, HUD, HHS, EPA, and DHS).  Further, Plaintiffs have shown that, at OMB's express direction, the timing and content of the shutdown RIFs were based on improper factors.  Defendants also argue that "most agencies" have decided not to RIF during the shutdown, citing three declarations (from SSA, NASA and the Consumer Product Safety Commission).  ECF 85 at 12.  But neither these declarations nor any other evidence actually supports this claim.  What SSA and others *have* stated is only that "[t]he agency will not proceed with any RIFs prohibited by the TRO for as long as the TRO remains in force, absent an order from a higher court providing relief."  ECF 62-33 ¶8; *see also* ECF 62-17 ¶8; ECF 62-23 ¶8.  And OMB Director Vought stated expressly on October 15 that the RIFs are not finished and that Defendants aim to fire 10,000 employees.  ECF 79-18 Ex. B.  Defendants cannot hide behind their failure to disclose where additional RIFs are planned and then claim through counsel that "most" agencies have decided not to issue RIFs.

Finally, Defendants attempt to portray a few select RIFs (including the large RIF at the Department of the Interior ("DOI")) as unrelated to the government shutdown and the President and OMB's stated rationales.  ECF 85 at 12, 19 n.3.  But Defendants do not deny that these agencies are subject to the OMB Lapse Memorandum, which requires them to engage in RIFs (and submit plans to OMB) on an unlawful basis during the shutdown, or submit any evidence showing that these agencies were not required to or did not in fact comply by submitting these plans for approval.  ECF 17-3 Ex. A.  Nor have Defendants submitted any evidence showing that OMB, in fact, was not making decisions regarding the timing and content of these RIFs.  The record evidence establishes that DOI was preparing to issue large-scale RIFs when OMB Director Vought publicly announced on October 15 the target of 10,000 additional shutdown RIFs (beyond the agencies that started on October 10).  *See* ECF 79-18 Ex. B; ECF 62-11 ¶9 (Oct. 17 DOI Decl. confirming ongoing preparation of imminent RIFs).  And even if DOI was planning to RIF employees separate from the shutdown, it

1  had not done so in the months since the Supreme Court's July 8, 2025 order staying the preliminary

2  injunction in *AFGE v. Trump*, Case No. 24A1174.  Defendants would have this Court believe DOI's

3  actions are a mere coincidence of timing, but the Court is not required to dispose of its common sense

4  (or "exhibit a naiveté from which ordinary citizens are free," *Dep't of Commerce*, 588 U.S. at 785)

5  when evaluating Defendants' representations.  Moreover, the decision to impose RIFs *now* during the

6  shutdown, even if made in conjunction with other factors, still "relies on factors which Congress has

7  not intended it to consider," *Ctr. for Biological Diversity*, 67 F.4th at 1035 (cleaned up; quoting *State

8  Farm*, 463 U.S. at 43), and therefore violates the APA.

9  **2.  Defendants' Threshold Arguments Still Lack Merit**

10  Defendants incorporate their threshold arguments without adding any support or correcting

11  the errors and weaknesses Plaintiffs previously identified.  *See* ECF 47 at 4-7 (no implied preclusion

12  of APA claims predicated on ADA violations); *id.* at 7-8 (no "channeling");[8] *id.* at 8-11 (OMB and

13  OPM directives and the RIFs are all final agency action); *id.* at 11 (no barrier to ultra vires claim).

14  Defendants briefly re-argue final agency action.  ECF 85 at 13.  They again mischaracterize

15  the OMB Lapse Memorandum as mere guidance and deny OMB's role as decision-maker, which

16  ignores record evidence.  *Id.*  They also never address the directly applicable holding in *AFGE v.

17  Trump* "that 'a federal agency's assessment, plan, or decision qualifies as final agency action even if

18  the ultimate impact of that action rests on some other occurrence—for instance, a future site-specific

19  application [or] *a decision by another administrative agency* ....'"  139 F.4th 1020, 1039 (9th Cir.

20  2025) (emphasis in original; quotation omitted); *see* ECF 85 at 13; ECF 41 at 18-19.  Defendants also

21  argue that Plaintiffs cannot establish final agency action as to the Defendant agencies that have not

22  yet revealed any planned RIFs.  This is wrong, however, because the OMB Lapse Memorandum is an

23  unlawful directive and this Court may stay or enjoin the implementation of that directive by any

24  agency acting in concert with OMB.  Further, the President and OMB Director Vought have stated

25  that the RIFs will continue, ECF 79-18 ¶4 & Ex. B; ECF 47 at 11, and Defendants' refusal to disclose

26  RIF plans does not excuse them from injunctive relief staying their unlawful actions.

27  ────────────────────

28  [8] As to channeling, Defendants do not even correct their failure to acknowledge the binding, on-point decision in *AFGE v. Trump,* 139 F.4th at 1030-33.  ECF 85 at 10; *see also* ECF 41 at 11-15.

### 3.    Defendants Largely Ignore the Irreparable Harm They Are Causing

Defendants make no effort to refute Plaintiffs' showing that if RIFs proceed during the government shutdown, the employees Plaintiffs represent will be deprived of the career counseling, transitional resources, access to employment records, and human resources assistance they are entitled to during a lawful RIF, and that this will cause irreparable harm.[9] ECF 85 at 7-9. Nor do they address the evidence that such employees will lose the opportunity to correct errors in RIF notices, retention registers, and employment records—errors that may cause them to be wrongfully subjected to a RIF.[10] *Id.* These harms are irreparable and on their own support injunctive relief.

Similarly, Defendants do not deny the emotional stress Plaintiffs' members will suffer upon receiving RIF notices; instead, their sole argument is that the facts were different in *Chalk v. U.S. District Court*, 840 F.2d 701 (9th Cir. 1988). ECF 85 at 8.[11] But it is well-established that irreparable injury can be found in "emotional and psychological" injuries. *Chalk*, 840 F.2d at 710; *see also Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) ("[T]he loss of one's job does not carry merely monetary consequences; it carries emotional damages and stress, which cannot be compensated by mere back

---

[9] *See, e.g.*, ECF 79-1 at 16-17; ECF 47-4 ¶19 ("Normally, when an employee receives a RIF notice, the employee has time to collect benefits documentation, performance evaluation documentation, and writing samples for use in applying to other jobs. Furloughed employees who have been subject to a RIF are unable to do any of those things because they are not permitted to log on to their work systems. As a result, as of now, their ability to apply for jobs, maintain their insurance and benefits, and otherwise move forward with their lives will be negatively impacted."); ECF 79-12 ¶9 ("Because the RIF occurred during the shutdown, I have been unable to access many of the resources that I ordinarily would be able to rely on…. I am eligible for retirement…[b]ut the employees in our human resources department who would be able to give me information about retirement, such as the amount of my pension, and who would help me navigate that process have been furloughed.").

[10] *See, e.g.*, ECF 79 at 17-18; ECF 47-3 ¶20 ("Many members have informed me of errors on forms with their employment data that affect their retention standing…. The errors on these forms suggest that the CDC may not be conducting the current round of RIFs based on correct employment data. The Union and its members would like to request a retention register from the agency and correct any errors. However, that is not possible right now because the human resources staff that would otherwise create the retention register are not currently working. This will likely result in CDC employees being released from service in an order that does not comply with federal law.").

[11] Defendants attempt to distinguish *Chalk* because it involved an employee with a health condition and associated stigma who was subject to an adverse employment action. ECF 85 at 8. But many of Plaintiffs' members face comparable circumstances including, for example, a blind employee who will be forced to relocate away from family and community, ECF 79-11 ¶13, and older individuals who will face stigma in the job market, *id.* ¶12; ECF 79-12 ¶8.

payment of wages."); *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1324 n.5 (9th Cir. 1994) (emotional

distress may constitute irreparable injury); *EEOC v. Hawaii*, 764 F.Supp. 158, 161 (D. Haw. 1991)

("Tanaka's emotional and psychological health will suffer as a result of being forced to retire while

he is still fully competent to perform his duties."). In *Chalk*, the Ninth Circuit found irreparable harm

where the plaintiff had been transferred to a less personally satisfying job. And in *EEOC v. Chrysler

Corporation*—upon which *Chalk* relied—the court held that involuntarily retired employees

experienced irreparable harm based on emotional injuries including "decrease in feelings of a useful

and contracted social life" and "a reduced sense of well-being." 546 F.Supp. 54, 70 (E.D. Mich.

1982), *aff'd*, 733 F.2d 1183 (6th Cir. 1984). Here, Plaintiffs' members face emotional stress from

"concern that they will be unable to pay essential bills and forced to uproot their lives," ECF 79-1 at

14 (citing evidence), and "serious anxiety causing physical effects including inability to sleep," *id.* at

15 (same). These emotional harms are exacerbated for vulnerable employees, including those with

post-traumatic stress disorder, new mothers, and veterans. *Id.* (same).

Employees who receive RIF notices because of express political targeting also suffer

irreparable harm from political discrimination and its accompanying chilling effect, which cannot be

remedied by money damages. *Cf., e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Vazquez-Burgos v.

Rodriguez-Perez*, 111 F.Supp.3d 135, 139 (D.P.R. 2015). Defendants' only response (ECF 85 at 8-9)

is to deny what the President has expressly proclaimed to the world. ECF 79-1 at 9-10.

Defendants' argument that separations will not be effective for 60 days is inapposite as to

these types of immediate injuries. Further, a preliminary injunction is needed to prevent the serious

additional irreparable harms that would result before the final resolution of this case, including loss of

income and healthcare (ECF 79-1 at 14-16), relocation and separation from family and friends (*id.* at

14), and delaying or foregoing medical treatment due to financial strain (*id.* at 15-16).

Even if they were sufficient, economic injuries are irreparable in APA cases where plaintiffs

cannot recover money damages.[12] *See E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984

(9th Cir. 2020); *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018); *Pangea Legal Servs. v. U.S.

---

[12] Defendants' argument that Plaintiffs' members must seek relief through the MSPB, ECF 85 at 8, ignores binding Ninth Circuit authority regarding channeling, *supra* at 7.

*Dep't of Homeland Sec.*, 512 F.Supp.3d 966, 976 (N.D. Cal. 2021).

These harms are also irreparable. Defendants, relying on *Sampson v. Murray*, 415 U.S. 61 (1974), wrongly contend that these harms are all, as a matter of law, reparable, and that Plaintiffs are employing a "litigation strategy" to evade *Sampson*. ECF 85 at 7-8. But *Sampson* concluded that the income loss of the single employee in that case was remediable because "adequate compensatory or other corrective relief w[ould] be available at a later date." 415 U.S at 90. It did not establish a categorical rule holding that "employment-related" harms may never be irreparable. *Id.* at 8. Indeed, the *Sampson* plaintiff had provided no evidence of irreparable injury. *Id.* at 88-89 ("[T]he affidavit [plaintiff] submitted to the District Court did not touch in any way upon considerations relevant to irreparable injury.'"); *id.* at 952 n.60 (quoting the plaintiff's entire five-paragraph affidavit). And the Court expressly recognized that "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Id.* at 92 n.68; *see also id.* at 63, 84. [13]

This is precisely such a case. As this Court has recognized, "[RIFs] during a government shutdown are not 'ordinary'…in any sense of the word." ECF 56 at 1. "It is also far from normal for an administration to fire line-level civilian employees during a government shutdown as a way to punish the opposing party." *Id.* at 2. And as Plaintiffs have demonstrated, the harms to their members have been and will continue to be extraordinarily severe. *Supra* at 8-11; *see Sampson*, 415 U.S. at 92 n.68. Thus, unlike in *Sampson*, both the severity of harm and the unavailability of corrective relief establish irreparable injury.

Finally, Defendants contend that employees at agencies other than Energy, HUD, Treasury, Commerce, Education, DHS, Interior, and HHS face no imminent harm because these agencies have revealed no imminent RIFs. ECF 85 at 9-10.[14] This argument fails for reasons previously explained,

---

[13] The other authorities Defendants cite do not help them. ECF 85 at 7-8. In *Hartikka v. United States*, the Ninth Circuit required a "stronger showing" than in *Sampson* because of "the magnitude of the interests weighing against judicial interference in the internal affairs of the armed forces." 754 F.2d 1516, 1518 (9th Cir. 1985). In *Garcia v. United States*, the Fifth Circuit found no irreparable injury in "a typical discharge situation" where monetary damages were available. 680 F.2d 29, 31-32 (5th Cir. 1982). Neither circumstance is present here.

[14] Defendants omit EPA's Notices of Intent to RIF from their list. *See* ECF 62-18.

including that OMB Director Vought has publicly announced his goal to RIF over 10,000 employees, creating a concrete threat of receiving a RIF notice for employees across all agencies. *Supra* at 6. Further, Defendants fail to acknowledge or address the harm suffered by employees who have not yet received a RIF notice but who are living under the threat of receiving one.[15] And finally, Defendants' factual assertion that no RIFs are imminent at other agencies is undermined by those agencies' declarations, which fail to state that they have no plans to issue RIFs in the near term. *Supra* at 6; *see, e.g.*, ECF 62-15-17 (Transportation, VA, Consumer Products Safety Commission).

### 4.     Defendants' Interest in Continuing Unlawful Acts Does Not Tip the Equities

While Defendants again assert that "Plaintiffs' requested injunction would irreparably harm the government," they submit no *evidence* supporting their assertion. ECF 85 at 14. And the Ninth Circuit has rejected the argument that this type of supposed interference with government authority is irreparable: "the harm of such a perceived institutional injury is not 'irreparable,' because the government 'may yet pursue and vindicate its interests in the full course of this litigation.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) (quotations omitted). The court explained: "Indeed, if we were to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction. That cannot be so." *Id*.

### 5.     Plaintiffs' Proposed Injunction Protects Plaintiffs and the Employees They Represent and Is Not Overbroad or Otherwise Improper

#### A.     Plaintiffs' Proposed Injunction is Not Overbroad

Defendants argue that relief cannot benefit non-parties. ECF 85 at 15. But an injunction may be as broad as "necessary to provide complete relief to the plaintiffs," even if it may benefit non-parties. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

*Trump v. CASA, Inc.* confirms this principle: "The equitable tradition has long embraced the rule that courts generally 'may administer complete relief between the parties,'" even when such relief may "sometimes advantage nonparties." 606 U.S. 831, 851 (2025) (cleaned up); *see also* ECF

---

[15] These emotional harms include fear of being unable to afford life-sustaining healthcare, *e.g.*, ECF 79-10 ¶¶15-17, and mental and physical suffering from anxiety that they may soon be unable to provide for their families, *e.g.*, ECF 79-04 ¶¶15-16; *see also* ECF 79-1 at 15 (collecting cites).

79-1 at 22-25.  And *CASA* left undisturbed the "ordinary result" under the APA—namely, "that the rules are vacated—not that their application to the individual petitioners is proscribed."  *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018), *vacated in part on other grounds*, 591 U.S. 1 (2020) (cleaned up); *see CASA*, 606 U.S. at 847 n.10; *id.* at 869 (Kavanaugh, J., concurring); *Doe v. Trump*, __ F.Supp.3d __, 2025 WL 2430494 at *3 (N.D. Cal. Aug. 22, 2025) (noting that *CASA* left open the scope of APA relief).  Thus, the relief requested is also authorized by APA provisions that give this Court authority to stay agency action and preserve rights pending its review, even if that affects persons beyond the parties.  *See* 5 U.S.C. §§705, 706(2); *Regents of the Univ. of Cal.*, 591 U.S. at 9.

Plaintiffs' requested relief, consistent with these principles, fully protects Plaintiffs and the employees they represent in the context of the way that Defendants have implemented these RIFs.  ECF 79-1 at 24-25.  Plaintiffs' motion explained why the piecemeal recission of only those RIF notices of union-represented employees in a given PPA would be unworkable in light of the constraints and procedures that apply to RIFs.  ECF 79-1 at 24-25.  Defendants fail to respond at all to this argument and therefore concede it.  *Cf. Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1028-29 (9th Cir. 2025), *stayed on other grounds*, 145 S. Ct. 2728 (Mem.) ("limiting the relief to individual plaintiffs and [association] members is not a workable solution" because it "would effectively mean rewriting [agency's action] in a way that does not comply with the [relevant] statute"). [16]

Defendants concede that relief would properly be granted to all members of the Plaintiff unions.  ECF 85 at 17.  But they argue that relief should not extend to PPAs containing bargaining units as to which Defendants rescinded collective bargaining agreements pursuant to recent Executive Orders.  ECF 85 at 16.  This is wrong, for a number of reasons.  First, Defendants ignore the evidence that every Plaintiff still has *members of the union* in every former bargaining unit.  ECF 79-1 at 24 (citing ECF 79-02-79-08).  Thus, the list of PPAs that contain Plaintiffs' members is no broader than the list of PPAs containing former bargaining units.  Second, Defendants do not (and

---

[16] Defendants' suggestion that Plaintiffs' "only alleged justification" for relief that incidentally benefits other employees is that those terminations would require employees represented by Plaintiffs to work harder (ECF 85 at 17), ignores Plaintiffs' explanation of the structure of the RIFs and the need to enjoin the RIFs conducted by PPA.  ECF 79-1 at 24-25.

1   could not) refute that Plaintiffs continue to provide services and representation to employees while

2   the legality of the rescission of their bargaining rights is being resolved through litigation.[17]

3          Finally, Defendants argue that Plaintiffs lack standing to seek relief against Federal Agency

4   Defendants that have not to date revealed existing or imminent RIFs.  ECF 14-15.  But as previously

5   discussed, Defendants submit no evidence to dispute Plaintiffs' showing that these agencies are

6   subject to the OMB and OPM directives.  Both the President and OMB Director Vought have

7   announced that more RIFs are imminent.  ECF 79-18 ¶¶4 & 8, Exs. B & F.  Defendants submit no

8   evidence to refute this either.[18]  And yet Defendants have repeatedly refused to disclose the identity

9   of those additional agencies at which RIFs will take place.  ECF 79-1 at 11-14 (summarizing history).

10  On this record, Plaintiffs properly seek an order staying and enjoining OMB, OPM, and the Federal

11  Agency Defendants subject to the OMB/OPM directives from implementing the unlawful scheme to

12  RIF employees during the shutdown.  The APA does not require this Court to allow Defendants to

13  benefit from their failure to disclose their actions.[19]

14         **B.     The Rescission of RIF Notices is Necessary to Protect the Status Quo**

15         Rescission of RIF notices that Defendants have issued during the shutdown is necessary to

16

17  [17] Defendants selectively discuss the status of those issues.  In the many lawsuits challenging those
    Executive Orders, district courts have enjoined the rescission of bargaining rights, while circuit courts
18  have divided on the question whether to stay those injunctions.  *See, e.g.*, *Fed. Educ. Ass'n v. Trump*,
    2025 WL 2738626 (D.C. Cir. Sept. 25, 2025) (denying stay pending appeal); *NTEU v. Trump*, 2025
19  WL 1441563 (D.C. Cir. May 16, 2025) (granting stay pending appeal); *Am. Foreign Serv. Ass'n v.
    Trump*, 2025 WL 1742853 (D.C. Cir. June 20, 2025) (granting stay pending appeal).  The Ninth
20  Circuit has sua sponte called for briefing on whether to rehear en banc the panel decision on which
    Defendants rely.  ECF 57, *AFGE v. Trump*, No. 25-4014 (9th Cir.).  Further, Defendants do not
21  dispute that Plaintiffs continue to provide representational services to employees in these disputed
    bargaining units, which itself supports associational standing.  *Cf., e.g.*, *Am. Unites for Kids v.
22  Rousseau*, 985 F.3d 1075, 1107 (9th Cir. 2021) (non-membership organization that advocates for
    public employees concerned with environmental issues in the workplace had standing to sue over
23  contaminated school district buildings); *Haw. Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353, 366
    (9th Cir. 2024) (similar, for organization representing individuals with developmental disabilities);
24  *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1108-1116 (9th Cir. 2003) (similar).
    [18] Defendants' declarants do not deny that agencies are preparing such RIFs; they simply state that
25  the agencies will comply with the TRO as long as it is in effect by forgoing RIFs that impact
    Plaintiffs.  *See supra* at 6.  And OMB declarant Billy revealed that agencies were preparing further
26  RIFs, but refused to identify which ones.  ECF 40.
    [19] Remarkably, having three times failed to comply with this Court's orders to disclose planned or
27  anticipated RIFs, Defendants now contend there would be no benefit from such disclosure, *and* that it
    is Plaintiffs' "burden" to prove Defendants' still-secret actions.  ECF 85 at 19.  As discussed *infra* at
28  14-15, Plaintiffs need the requested compliance reporting to prevent further irreparable injury.

restore the status quo.  Contrary to Defendants' description, *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education* did not merely address the "standard" for "an injunction enjoining … implementation" of a challenged policy.  ECF 85 at 21-22.  Rather, the Ninth Circuit reversed the denial of injunctive relief and ordered reinstatement of the plaintiff student group—the equivalent relief to which the plaintiffs would have been entitled at the conclusion of the case.  82 F.4th 664, 696 (9th Cir. 2023).  No rule of law precludes granting preliminary relief that would have the same scope as final relief, where necessary to prevent harm.  And while *Doe #1 v. Trump*, 957 F.3d at 1050, involved a prohibitory injunction, its analysis of the status quo for injunctive relief remains on point.  *Id.* at 1068-69.  Nor do Defendants cite any contrary authority.

While Defendants suggest that the fact "the government is not proceeding with RIFs enjoined by the TRO" should fully remedy injuries to Plaintiffs, ECF 85 at 21, this ignores the ongoing stress, anxiety, and other harm documented by Plaintiffs that arises from the continued pendency of these RIF notices, during a time when employees cannot access their records, obtain services, or correct errors.  *Supra* at 8-11; ECF 79-1 at 19-20.  That harm can only be remedied by rescinding those RIFs.

### C.    Compliance Reporting Is Warranted by Defendants' Conduct to Date

As previously explained, ECF 79-1 at 11-13, Defendants have repeatedly failed to comply with this Court's orders requiring disclosure of imminent RIFs.  Defendants have also construed the TRO narrowly and erroneously to exclude employees from coverage—which was only uncovered as a result of the requirement that they submit compliance declarations.  ECF 81, 82.  Further, Defendants have filed *multiple* inaccurate declarations and failed to reveal accurate information until Plaintiffs objected.  *Compare*, *e.g.*, ECF 40 & 49-2 (Billy Declarations revealing no imminent RIFs at DOI), *with* ECF 62-11, 67-1 & 71-2 (DOI confirming imminent RIFs); *compare* ECF 71-3 (HHS, Nagy, all RIFs issued Oct. 10), *with* ECF 85-1, correcting statements).  Given this record, Defendants' objections to providing Plaintiffs and the Court with complete and accurate information regarding Defendants' actions, ECF 85 at 17-21, lack any force.  The burden this imposes is a problem of Defendants' own making:  they embarked on an unlawful scheme to lay off federal employees during a shutdown and then failed to provide accurate information about upcoming RIFs.

Underlying Defendants' objections is an unsupported and overly broad assertion of the

qualified deliberative process privilege, which must give way to litigation need.  ECF 85 at 19-20.  In particular, given Defendants' protestations that Plaintiffs have not shown RIFs are imminent at certain agencies, the relevance of this information strongly overrides the vague privilege assertion.

Finally, allowing Plaintiffs' counsel to review and the Court to approve any communications with employees effectuating the recission of RIF notices is appropriate and Defendants' objections are not well-taken.  *See AFGE v. OPM*, 2025 WL 2633791, at *21 (N.D. Cal. Sept. 12, 2025) ("corrective notices shall not contain further statements from each agency concerning the validity of this Court's ruling or the agency's opinions on this Court's ruling").

### D.     Defendants' Agency-Specific Arguments and Request to Re-brief the Scope of Any Injunction Should be Denied

Defendants' request to exclude DOI should be denied for the reasons previously explained.  ECF 85 at 23; *supra* at 6-7.  Plaintiffs do not ask this Court to enjoin any RIFs issued prior to the shutdown (ECF 79-19), so Defendant NSF's concerns regarding pre-shutdown RIF notices are misplaced.  ECF 85 at 23.  Defendants' argument that some (but not all) employees of Commerce subject to RIFs issued during the shutdown work in a program that is separately funded (and so is not subject to ADA claims), overlooks that those RIFs are contrary to law and arbitrary and capricious for multiple other reasons as well.  *See supra* at 1, 2, 4; ECF 85 at 22-23.  And as with DOI, even if the representation that these RIFs were planned before the shutdown is credited, that fails to negate Plaintiffs' evidence that they were implemented at this time at OMB's direction and for impermissible purposes.  *See supra* at 1,4.  Finally, for similar reasons, and because Defendants have had ample opportunity to brief and present evidence as to these issues, the Court should deny their request for a further opportunity "to fully brief these scope issues."  ECF 85 at 22.

### 6.     The Court Should Deny the Stay and Bond

Defendants do not meet their burden of supporting any stay factor under *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  And the Court should exercise its discretion to waive the bond requirement.  *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  Defendants are unlikely to suffer harm given that their enjoined actions are unlawful, and this case implicates significant public interest.  *See Taylor-Failor v. Cnty. of Haw.*, 90 F.Supp.3d 1095, 1102-03 (D. Haw. 2015).

Dated: October 27, 2025

Stacey M. Leyton

Barbara J. Chisholm
Danielle E. Leonard
Alice X. Wang
Robin S. Tholin
Talia Stender
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
Fax: (415) 362-8064
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com
awang@altshulerberzon.com
rtholin@altshulerberzon.com
tstender@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Plaintiffs*


Elena Goldstein (pro hac vice)
Jennie L. Kneedler (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 322-1959
egoldstein@democracyforward.org
jkneedler@democracyforward.org

*Attorneys for All Plaintiffs*


Norman L. Eisen (pro hac vice)
Craig Becker (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Craig@democracydefenders.org

*Attorneys for All Plaintiffs*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

*Attorneys for Plaintiffs American Federation of
Government Employees, AFL-CIO (AFGE) and AFGE
locals*


Teague Paterson (SBN 226659)
AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org

*Attorneys for Plaintiff American Federation of State
County and Municipal Employees, AFL-CIO (AFSCME)*


Yvette M. Piacsek*
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, IAM, AFL-CIO
1225 New York Ave. N.W., Suite 450
Washington, D.C. 20005
Tel: (202)216-4428
ypiacsek@nffe.org

*Attorneys for Plaintiff National Federation of Federal
Employees, IAM, AFL-CIO*


Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION,
AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

*Attorneys for Plaintiff Service Employees International
Union, AFL-CIO (SEIU)*


Sarah E. Suszczyk*
NATIONAL ASSOCIATION OF GOVERNMENT
EMPLOYEES, INC.

159 Thomas Burgin Parkway
Quincy, MA 02169
Tel: (617) 376-7239
ssuszczyk@nage.org

*Attorneys For Plaintiff National Association of
Government Employees, Inc. (NAGE)*

*\*Pro hac vice application forthcoming*