Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN ˙845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>Defendants. | Case No. 3:25-cv-08302-SI<br><br>**DECLARATION OF SHALEEN BRUNSDALE IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

Decl. of Shaleen Brunsdale ISO Mot. for Temporary Restraining Order, No. 3:25-cv-08302-SI

**DECLARATION OF SHALEEN BRUNSDALE**

I, Shaleen Brunsdale, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge.

2. I am a member of the American Foreign Service Association.

3. I am an FO-03 Foreign Service Officer in the U.S. Department of State ("Department") focusing on economic issues (i.e., "Econ-coned" under Department terminology). I have served multiple tours of duty including in Melbourne, Djibouti, Mexico City, and most recently as an International Relations Officer for the Office of African Affairs in the Bureau of Conflict and Stabilization Operations. Although my position in the Office of African Affairs was located in Washington, D.C., because my husband is also a Foreign Service Officer and was assigned to an overseas post at U.S. Embassy Paris, France, in May 2024, I was granted permission to join him and do my work remotely.

4. On July 11, 2025, while overseas, I received a reduction-in-force (RIF) notice with an effective termination date of November 10, 2025.

5. During the government shutdown, on October 30, 2025, I received a "TMONE" notice, which is a form of official Department notice regarding assignments and any adjustment to assignments, which referenced my upcoming separation from the Department with an official separation date of November 10, 2025.

6. On November 7, 2025, also during the government shutdown, I received from the State Department an SF-50 form, officially known as a Notification of Personnel Action and intended to be a record of all employment events, in advance of the impending separation. That personnel document was riddled with errors. I emailed the Department twice the same day pointing out that the address on my SF-50 was incorrect and that the notice cited an incorrect statutory provision referencing civil servants rather than the Foreign Service Act.

7. On November 8, 2025, I received an email asking me to "please disregard" the SF-50 sent on November 7, 2025, and advising that corrected SF-50 will be sent within a week. A true and correct copy of that email is attached hereto as Exhibit A.

8. On November 11, 2025, I received an email from the Department acknowledging that there were errors in my SF-50 and stating that my administrative leave was extended. That email did not reference the now-expired RIF Notice or the separation date that had now passed. A true and correct copy of that November 11, 2025, email is attached hereto as Exhibit B.

9. Between November 11, 2025, and December 1, 2025, I received no communications or information from the State Department regarding my employment status.

10. On December 1, 2025, I received a short email from the State Department to my personal email address that stating that "completing" the RIFs issued prior to the government shutdown do not violate either the Antideficiency Act or H.R. 5371 ("Continuing Resolution"). That email told me for the first time that I was therefore being terminated in four days, on December 5, 2025.

11. I was shocked and very upset to receive the December 1, 2025 email, including because I recently gave up a job opportunity in anticipation of the fact that I would no longer be terminated, consistent with the protections against RIFs in the Continuing Resolution. As I stated, my spouse is also a Foreign Service Officer and since May 2024, I have been teleworking from Paris, where my husband's posting is located. Being co-located made sense when we both worked at the Department, but now that I am being terminated, being overseas makes finding another job very difficult. Host-country laws, language requirements, and embassy restrictions severely limit the types of work I can pursue while overseas.

12. With great difficulty, I identified a potential job opportunity at U.S. Embassy Paris for which I would be eligible only following the November separation. I successfully interviewed and received a conditional offer for an Eligible Family Member job at U.S. Embassy Paris on October 3, 2025. Eligible Family Member jobs are typically administrative positions at embassies and consulates available only to spouses of diplomats. These jobs are designed to fill staffing gaps at missions overseas in a budget-efficient way, drawing from a pool of security-cleared U.S. citizens. Even though this position would not have been professionally fulfilling and would have paid significantly less than my salary as an FSO, it would have at least provided my family with some economic security following my noticed separation.

13. But I was never able to start that job. Only spouses of diplomats can work in the Eligible Family Member positions—not diplomats themselves. So, when I conditionally accepted the position on October 3 I was explicitly told by the Embassy that I could not begin the job until after my official separation from the Department. At the time I received the job offer, I thought that official separation would occur on November 10, 2025. When my separation from the Department did not occur on November 10, and when the Continuing Resolution was enacted, I understood that, consistent with the email communication from the Department continuing my leave and the language of the Continuing Resolution, I would either be reinstated as an FSO or be placed on administrative leave until January 30. I emailed U.S. Embassy Paris with the Continuing Resolution stating that it seemed like my RIF would be halted or cancelled, and the Embassy agreed that that seemed correct—because of which I would accordingly not be eligible for the Eligible Family Member post for months. I realized that I could not continue holding on to the Eligible Family Member position, and withdrew my candidacy.

14. Because the Department has now suddenly chosen not to comply with the Continuing Resolution, I have now lost one of the few work opportunities overseas that I was qualified to have, and I will be left with nothing if I am separated on December 5.

15. My spouse is an entry-level Foreign Service Officer and as such is required to serve overseas. A domestic assignment is therefore not currently possible for my spouse. I am distressed that for me to have any kind of job prospects, and for my family to stay together, my spouse would have to resign from the Foreign Service so that we could both return to the United States and seek alternative employment—in other words, we could end up losing both incomes. But most importantly, even that is not a possibility for us because I am in treatment for breast cancer and extremely reliant on our current healthcare plan through the Department.

16. The brief hope created by the Continuing Resolution, followed by the out of the blue notification that the Department intends to violate the Continuing Resolution, have caused me to feel a constant sense of instability and anxiety. I am struggling with the stress of not knowing whether I will have a job, whether the Department will follow the CR, and whether the decisions I made in good faith, including withdrawing from the Eligible Family Member position, will ultimately leave

1  me and my family without any path forward. This rollercoaster has been especially difficult because,
2  as a diagnosed breast cancer patient, I am already in a medically and emotionally vulnerable position;
3  the added uncertainty has affected my sleep, focus, and overall wellbeing.

5      I declare under penalty of perjury under the laws of the United States that the foregoing is true
6  and correct.  Executed December 3, 2025, in Paris, France.

    _____

    Shaleen Brunsdale

# Exhibit A

 Outlook

**Fwd: SF-50s**

**From** Shaleen Brunsdale <████████████████>
**Date** Wed 12/3/2025 12:33 AM
**To** ████████████████████████

You don't often get email from shaleenpatanwala@gmail.com. Learn why this is important

A few days later (Nov 8) most of us got something like this … telling us to ignore the first SF-50.

And then after that (Nov 11) we got the email telling us we had been extended on admin leave so the Department could fix SF-50 errors.

Sent from my iPhone

Begin forwarded message:

> **From:** ████████████████████████████████████
> **Date:** November 8, 2025 at 12:05:51 AM GMT+1
> **To:** ████████████████████████████████
> **Subject: SF-50s**

Good evening,

Please disregard the SF-50 we sent to you on November 7, 2025. A new SF-50 with corrected language will be uploaded to eOPF shortly and sent to you within a week.  For additional guidance, please see our list of FAQs at
https://www.state.gov/rifqs/

Thank you,
Yvette

*Yvette C. Estrada-Wanner*

Branch Chief, Foreign Service Processing Team, PERT/OTA/SOD
2401 E Street, NW (SA-01 - H719), Washington, D.C. 20037



# Exhibit B

 Outlook

**Fwd: Extended Administrative Leave**

| | |
|---|---|
| **From** | Shaleen Brunsdale < ▮▮▮▮▮ > |
| **Date** | Wed 12/3/2025 8:43 AM |
| **To** | ▮▮▮▮▮ |

Here is the notice of extended admin leave… ---------- Forwarded message --------- From: GTMNotifications Date: Tue, Nov 11, 2025 at 2:21 AM Subject: Extended Administrative Leave To: The Department has extended administrative leave for all Foreign Service employees who were scheduled for separation as part of the reduction in force on November 10. We are reviewing the administrative errors in all SF-50s issued on Friday, November 7, to ensure that all information is accurate. Updated guidance will be issued with the correct details We appreciate your patience and understanding in the meantime.