Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*
[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO (AFGE); AFGE LOCAL 1236; AFGE LOCAL 3172; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO (AFSCME); NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO (NFFE); SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO (SEIU); NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC. (NAGE); NATIONAL TREASURY EMPLOYEES UNION (NTEU); INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS (IFPTE); AMERICAN FEDERATION OF TEACHERS (AFT); and AMERICAN FOREIGN SERVICE ASSOCIATION, <br><br> Plaintiffs, <br><br> v. | Case No. 3:25-cv-08302-SI <br><br> **PLAINTIFFS' SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> ADMINISTRATIVE PROCEDURE ACT CASE |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES OFFICE OF
MANAGEMENT AND BUDGET;
RUSSELL VOUGHT, in his official capacity
as Director of U.S. Office of Management and
Budget; UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT;
SCOTT KUPOR, in his official capacity as
Director of the U.S. Office of Personnel
Management; UNITED STATES
DEPARTMENT OF AGRICULTURE;
BROOKE ROLLINS, in her official capacity
as Secretary of the U.S. Department of
Agriculture; UNITED STATES
DEPARTMENT OF COMMERCE;
HOWARD LUTNICK, in his official capacity
as Secretary of the U.S. Department of
Commerce; UNITED STATES
DEPARTMENT OF DEFENSE;  PETE
HEGSETH, in his official capacity as
Secretary of the U.S. Department of Defense;
UNITED STATES DEPARTMENT OF
EDUCATION; LINDA McMAHON, in her
official capacity as Secretary of the U.S.
Department of Education; UNITED STATES
DEPARTMENT OF ENERGY; CHRIS
WRIGHT, in his official capacity as Secretary
of the U.S. Department of Energy; UNITED
STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES;  ROBERT F.
KENNEDY JR., in his official capacity as
Secretary of the U.S. Department of Health
and Human Services; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, in her official
capacity as Secretary of the U.S. Department
of Homeland Security; UNITED STATES
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT; SCOTT
TURNER, in his official capacity as Secretary
of the U.S. Department of Housing and Urban
Development; UNITED STATES
DEPARTMENT OF JUSTICE; PAM BONDI,
in her official capacity as Attorney General of
the U.S. Department of Justice; UNITED
STATES DEPARTMENT OF THE
INTERIOR; DOUG BURGUM, in his official
capacity as Secretary of the U.S. Department
of the Interior; UNITED STATES

DEPARTMENT OF LABOR; LORI
CHAVEZ-DEREMER, in her official capacity
as Secretary of the U.S. Department of Labor;
UNITED STATES DEPARTMENT OF
STATE; MARCO RUBIO, in his official
capacity as Secretary of the U.S. Department
of State; UNITED STATES DEPARTMENT
OF TREASURY; SCOTT BESSENT, in his
official capacity as Secretary of U.S.
Department of Treasury; UNITED STATES
DEPARTMENT OF TRANSPORTATION;
SEAN DUFFY, in his official capacity as
Secretary for the U.S. Department of
Transportation; UNITED STATES
DEPARTMENT OF VETERANS AFFAIRS;
DOUG COLLINS, in his official capacity as
Secretary of Veterans Affairs; CONSUMER
PRODUCT SAFETY COMMISSION; PETER
FELDMAN, in his official capacity as Acting
Chairman of the U.S. Consumer Product
Safety Commission; UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY; LEE ZELDIN, in his official
capacity as Administrator of U.S.
Environmental Protection Agency; EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION; ANDREA LUCAS, in her
official capacity as Acting Chair of the Equal
Employment Opportunity Commission;
FEDERAL TRADE COMMISSION;
ANDREW N. FERGUSON, in his official
capacity as the Chairman of the Federal Trade
Commission; UNITED STATES GENERAL
SERVICES ADMINISTRATION; MICHAEL
RIGAS, in his official capacity as Acting
Administrator for U.S. General Services
Administration; INSTITUTE OF MUSEUM
AND LIBRARY SERVICES; KEITH E.
SONDERLING, in his official capacity as
Acting Director of the Institute of Museum and
Library Services; NATIONAL
AERONAUTICS AND SPACE
ADMINISTRATION; SEAN DUFFY, in his
official capacity as Acting Administrator for
the National Aeronautics and Space
Administration; NATIONAL ARCHIVES
AND RECORDS ADMINISTRATION;
MARCO RUBIO, in his official capacity as

Acting Archivist of the United States;
NATIONAL ENDOWMENT FOR THE
ARTS; MARY ANNE CARTER, in her
official capacity as Acting Chair of the
National Endowment for the Arts;
NATIONAL ENDOWMENT FOR THE
HUMANITIES; MICHAEL MCDONALD, in
his official capacity as Acting Chairman for
the National Endowment for the Humanities;
NATIONAL GALLERY OF ART; Kaywin
Feldman, in her official capacity as Director of
the National Gallery of Art; NATIONAL
SCIENCE FOUNDATION; BRIAN STONE,
in his official capacity as Acting Director of
the National Science Foundation; NATIONAL
TRANSPORTATION SAFETY BOARD;
JENNIFER L. HOMENDY, in her official
capacity as Chairwoman of the National
Transportation Safety Board; NUCLEAR
REGULATORY COMMISSION; David A.
Wright, in his official capacity as Chairman of
the Nuclear Regulatory Commission; UNITED
STATES SMALL BUSINESS
ADMINISTRATION; KELLY LOEFFLER, in
her official capacity as Administrator of the
U.S. Small Business Administration;
SMITHSONIAN INSTITUTION; LONNIE G.
BUNCH III, in his official capacity as
Secretary of the Smithsonian Institution;
UNITED STATES SOCIAL SECURITY
ADMINISTRATION; FRANK BISIGNANO,
in his official capacity as Commissioner of the
U.S. Social Security Administration; UNITED
STATES INTERNATIONAL
DEVELOPMENT FINANCE
CORPORATION; DEV JAGADESAN, in his
official capacity as Acting Chief Executive
Officer of the U.S. International Development
Finance Corporation; PEACE CORPS; PAUL
SHEA, in his official capacity as Chief
Executive Officer of the Peace Corps;
COMMODITY FUTURES TRADING
COMMISSION; CAROLINE D. PHAM, in
her official capacity as Acting Chairman of the
Commodity Futures Trading Commission;
FEDERAL COMMUNICATIONS
COMMISSION; BRENDAN CARR, in his
official capacity as Chairman of the Federal

Communications Commission; FEDERAL
ELECTION COMMISSION; SHANA M.
BROUSSARD, in her official capacity as
Chair of the Federal Election Commission;
U.S. SECURITIES AND EXCHANGE
COMMISSION; PAUL ATKINS, in his
official capacity as Chairman of the U.S.
Securities and Exchange Commission; U.S.
MERIT SYSTEMS PROTECTION BOARD;
HENRY J. KERNER, in his official capacity
as Acting Chairman of the U.S. Merit Systems
Protection Board,

                    Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

This filing supplements Plaintiffs' operative Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(d), by asserting claims challenging Defendants' implementation of Reductions in Force ("RIFs") in violation of federal legislation that ended the federal government shutdown, prohibited implementation of RIFs through January 30, 2026, and required the rescission of previously noticed RIFs.

# SUPPLEMENTAL PARTIES

247.    Plaintiff American Foreign Service Association ("AFSA") is a labor organization and unincorporated association headquartered at 2101 E Street, NW, Washington, DC 20037.  AFSA was founded in 1924 as a professional association and advocate for the Members of the United States Foreign Service.  AFSA has been certified by the Foreign Service Labor Relations Board as the exclusive representative of active duty members of the Foreign Service employed by the U.S. Department of State and the U.S. Agency for International Development ("USAID"), as well as the Foreign Commercial Service in the Department of Commerce, Foreign Agricultural Service, Animal and Plant Health Inspection Service in the Department of Agriculture, and U.S. Agency for Global Media.  AFSA has members and represents employees who live and work throughout the world, including members and employees who live and work within the Northern District of California.

# SUPPLEMENTAL FACTUAL ALLEGATIONS

## I.     Legislation Ending the 2025 Government Shutdown

248.    On November 11, 2025, the United States Senate passed legislation to end the shutdown of the federal government that began on October 1, 2025.  On November 12, 2025, the United States House of Representatives passed the same legislation as H.R. 5371 (the "Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026," referred to as the "Continuing Resolution" or "CR").  On November 12, 2025, President Trump signed the Continuing Resolution into law.

249.    The CR provides partial government funding through January 31, 2026, allowing the "shutdown" of the government to end.  Federal agencies that had furloughed employees pursuant to

the Anti-Deficiency Act generally brought employees back to work on November 13, 2025, in light of the enactment of this legislation.

250.    The CR contains Section 120, which prohibits federal agencies from issuing or implementing RIFs through January 30, 2026, and required agencies to rescind previous RIFs.  The operative language provides:

> SEC. 120. (a) PROHIBITION.—Notwithstanding section 106(1), during the period between the date of enactment of this Act and the date specified in section 106(3) of this Act, no federal funds may be used to initiate, carry out, implement, or otherwise notice a reduction in force to reduce the number of employees within any department, agency, or office of the Federal Government.
>
> (b) APPLICABILITY.—The prohibition under subsection (a) shall apply to all civilian positions, whether permanent, temporary, fulltime, part-time, or intermittent, and without regard to the source of funding for such positions.
>
> (c) EXCEPTION.—The prohibition under subsection (a) shall not apply to—
>
>> (1) voluntary separations or retirements;
>>
>> (2) actions necessary to comply with a court order; or
>>
>> (3) actions taken, beginning only on the first day of a lapse in appropriations, necessary to implement or maintain an orderly shutdown of government operations.
>
> (d) DEFINITIONS.—For purposes of this section, the term ''reduction in force'' means actions taken by an agency pursuant to section 3501 through 3504 of title 5, United States Code or section 3595 of such title, or any similar reduction of positions at any department, agency, or office of the Federal Government, unless such reduction has been provided for in this Act.
>
> (e) Notwithstanding section 106(1), any reduction in force proposed, noticed, initiated, executed, implemented, or otherwise taken by an Executive Agency between October 1, 2025, and the date of enactment, shall have no force or effect.
>
>> (1) Any employee who received notice of being subject to such a reduction in force shall have that notice rescinded and be returned to employment status as of September 30, 2025, without interruption. Such employees shall receive all pay to which they otherwise would have been entitled in the absence of receiving such notice, including backpay in accordance with section 116 of this Act.
>>
>> (2) Within 5 days of date of enactment of this Act, each Federal agency shall send notice to all affected employees and the chairs and ranking members of the Appropriations Committees of the Senate and House of Representatives of the withdrawal of the reduction in force notice and the affected employee's reinstatement, if applicable.
>>
>> (3) Notices must include reinstatement date and the amount of back pay determined in paragraph (1), if applicable.

SUPPLEMENTAL COMPLAINT, No. 3:25-cv-08302-SI                                                    2

## II.    The Administration's Misinterpretation of Section 120

251.    On November 12, 2025, Defendant OPM issued a memorandum to all federal agencies regarding the CR and the reopening of the government, which addressed Section 120 and RIFs.  That memorandum (entitled "Employee Pay, Leave, Benefits, and Other Human Resources Programs Affected by the Lapse in Appropriations," attached to this Supplemental Complaint as **Exhibit A**) instructed agencies as follows:

> Additionally, Section 120(e) of the Continuing Appropriations Act of 2026 requires any agencies that issued Reduction in Force (RIF) notices between October 1, 2025 and November 12, 2025 to issue notices to rescind the RIF notices within 5 days. Agencies should issue those notices and confirm to OPM the rescissions have been issued at employ@opm.gov. OPM will provide additional guidance separately. (Ex. A at *1).

252.    The November 12 OPM memorandum is underinclusive, because it instructs federal agencies to rescind only those RIFs issued since October 1, 2025 rather than "any reduction in force proposed, noticed, initiated, executed, implemented, or otherwise taken by an Executive Agency between October 1, 2025, and the date of enactment," as required by the statute.

253.    On November 13, 2025, OPM issued a further memorandum to all federal agencies addressing Section 120 and RIFs ("Reduction in Force Actions Affected by Continuing Appropriations Act, 2026," attached hereto as **Exhibit B**).  That memorandum repeats the underinclusive instruction to federal agencies:

> Agencies must review all RIF notices issued between October 1, 2025, and November 12, 2025; rescind those notices; and restore each affected employee affected by a RIF notice issued between October 1, 2025 and November 12, 2025 to their September 30, 2025 employment status…. (Ex. B at *2).

254.    The November 13 OPM memorandum further instructs:

> Agencies must submit to OPM at employ@opm.gov confirmation that the agency has issued a notice to rescind any RIFs that were noticed between October 1, 2025 and November 12, 2025, no later than **November 19, 2025** (Ex. B at *3, emphasis in original).

255.    In addition, Defendant OMB, along with the Department of Justice's Office of Legal Counsel ("OLC"), provided the Department of State with what that Department on December 1, 2025 revealed was "formal written guidance" regarding RIFs that had been issued prior to the October 1, 2025 shutdown but further implemented during or after the shutdown.  In that memorandum, according to the State Department, OMB instructed the State Department that Section 120 does not

prohibit "completing" RIFs that were noticed prior to the October 1, 2025 shutdown, including by imposing and implementing the separation of employees.

256.    The OPM and OMB directions to federal agencies, like the prior OPM and OMB directives challenged in this case with respect to the treatment of RIFs during the shutdown (and other OPM and OMB directives to agencies challenged in other prior litigation), are directives to the agencies as to how they must interpret Section 120, and are not permissive or mere suggestions, notwithstanding the use of the term "guidance."

257.    OPM's spokesperson issued a statement to the New York Times confirming the agency's under-inclusive interpretation:  "Congress was specific in the bill it wrote that it was concerned with RIF notices issued during the shutdown, not RIFs that were noticed before Oct. 1, 2025… RIFs that were noticed before the shutdown but happened to have a separation date that fell later were not 'implemented or executed' during the shutdown, but rather before."[1]

258.    A November 14, 2025 statement by Senator Tim Kaine of Virginia, one of the primary architects of the Senate compromise and bill language that ended the shutdown, directly contravened this narrow OPM/OMB interpretation.  Senator Kaine's statement explained that *in addition* to restoring the jobs and benefits to employees affected by RIFs issued after October 1, Section 120 halts the implementation of "ongoing" RIFs issued prior to October 1:  "[A]ny ongoing RIFs as of October 1, 2025, at minimum will be paused through the CR authority because the Trump Administration cannot take any action to facilitate the RIF process after the enactment of this law (November 12, 2025).  This includes processing of SF-50s, emails and other correspondence to advance the RIF process…"  Senator Kaine explained further:

> The provision fully restores employees who were RIF'd during the shutdown, pauses ongoing RIFs, and prohibits future RIFs. Already, RIFs that were previously noticed and that are ongoing, have been paused. Employees have been provided notices of their administrative leave being indefinitely extended. Any end RIF date that is stated after October 1, 2025, at minimum will be paused.

---

[1] https://www.nytimes.com/2025/11/25/us/politics/gsa-fired-employees-shutdown.html (Nov. 25, 2025).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    Further Administration Actions in Violation of Section 120**

259.    Pursuant to Section 120(a), Defendants may not issue, implement, or carry out any RIFs, regardless of when they were originally noticed, through January 30, 2026.  However, pursuant to the underinclusive OPM and OMB directives described above, certain Defendants have implemented and/or announced further imminent actions to implement RIFs that are covered by Section 120(a).  In addition, the deadline for federal agencies to rescind RIFs pursuant to Section 120(e) was November 17, 2025.  But pursuant to the underinclusive OPM and OMB directives described above, Defendants have rescinded only some, and not all, RIFs covered by Section 120(e).  The actions that violate Section 120 include:

      **A.    <u>Department of Education</u>**

260.    This Court previously enjoined the further implementation of RIFs by Defendant Department of Education, including RIFs directed at employees of the Office of Civil Rights ("OCR").  ECF 56, 94, 109.  The enjoined RIFs included 136 employees who received RIF notices for the first time on October 10, 2025, and 247 employees who been subject to previously enjoined and expired March and April 2025 RIF notices, and who received renewed RIF notices on October 14, with a new separation date in November 2025.  *See* ECF 117-2.

261.    On November 21, 2025, Defendant Department of Education confirmed in a declaration filed with this Court that pursuant to Section 120 of the CR it rescinded the 136 October 10 notices, but has *not* rescinded the October 14 renewed RIF notices to 247 employees.  ECF 117-2.  Defendants explained:  "the Department of Education has not rescinded the RIF notices issued to certain Office for Civil Rights employees in April, 2025, *as those RIFs do not fall within the scope of the Continuing Resolution*."  ECF 117 (emphasis added); *see also* ECF 117-2 ¶19 ("ED has not rescinded the RIF notices to OCR employees for the March 2025 RIF.").

262.    Defendant Department of Education further confirmed that "[t]he notice period for that RIF is tolled and the separation dates for those employees are stayed, pending clarification from this Court that the current preliminary injunction does not encompass that pre-shutdown RIF."  ECF 117-2 ¶19.  The Department of Education has thus stated that it intends to seek clarification that any injunctive relief from this Court excludes the 247 Department of Education OCR employees.  On

information and belief, if this Court provides the clarification sought by the Department of Education, then the department will, notwithstanding and in violation of Section 120, proceed to further implement and execute the renewed RIF by separating the OCR employees.

**B.    State Department**

263.    On July 11, 2025, Defendant State Department issued RIF notices to approximately 1,300 foreign service and civil service employees.  Many of the civil service employees who received these RIF notices were fully separated from federal employment pursuant to the notices prior to the commencement of the shutdown on October 1, 2025.  The foreign service employees and some civil service employees, however, were subject to separation dates that fell within the shutdown period.  Still other civil service employees were provided extended separation dates that fall after November 12, 2025.

264.    For approximately 250 foreign service employees, all of whom are represented by Plaintiff AFSA, the initial July 11, 2025 RIF notices provided a separation date of November 10, 2025.  As that date approached during the shutdown, Defendant State Department took action to implement that RIF, including but not limited to sending employees materials related to their impending separations, including SF-50 personnel forms.

265.    On November 10, 2025, foreign service employees were informed that they would remain on administrative leave.  The November 10, 2025 RIF separation date expired without execution by the State Department.

266.    On December 1, 2025, foreign service employees received the following notice by e-mail from the State Department:

> Following formal written guidance from both the Office of Management and Budget and Department of Justice Office of Legal Counsel, the Department of State's Office of the Legal Adviser has determined that completing the reductions in force (RIFs) noticed prior to the lapse in appropriations does not violate the Antideficiency Act (ADA) or any other restriction within HR 5371.  Given this determination, the Department will finalize your separation or involuntary retirement on Friday, December 5.

267.    The December 1, 2025 email was the first notice to any of these employees of the renewal of the previously expired RIF, and of a December 5, 2025 separation date.

268.    The State Department publicly explained that the renewal of the previously expired RIF was dependent on the OPM and OMB directives discussed above: "[S]ince the State Department's lawful reduction in force (RIF) process was commenced and initiated well before the lapse in appropriations, the eliminated positions are not impacted by the language in the recent continuing resolution."[2]

269.    Certain civil service employees of the State Department represented by Plaintiff AFGE who had previously received July 2025 RIF notices had negotiated extended separation dates in light of circumstances including recent childbirth and significant medical problems.  The State Department continued to process personnel paperwork and take action to implement these RIFs during the shutdown.  The RIFs for some of these employees were executed to separate the employees from federal employment between October 1 and November 12, and others were executed after November 12.  Still others received separation dates extended into December 2025 (including at the earliest December 5, 2025).

270.    On December 1 and 2, 2025, AFGE-represented employees who had been separated during the shutdown or had imminent separation dates received e-mail communications about those RIFs entitled "Notice of Employment Action."  That notice stated:

> Following formal written guidance from both the Office of Management and Budget and Department of Justice Office of Legal Counsel, the Department of State's Office of the Legal Adviser has determined that completing the reductions in force (RIFs) noticed prior to the lapse in appropriations does not violate the Antideficiency Act (ADA) or any other restriction within HR 5371. Given this determination, the Department will not rescind the separation that was finalized during the lapse in appropriations.

271.    Some of these December 1 and 2 notices to AFGE-represented employees did not include any updated separation dates; others included the new December 5, 2025 separation date (with as little as three days' notice).  On information and belief, Plaintiffs understand that the State Department intends to separate these employees on either their previously issued dates, starting as early as December 8, or the new December 5 date.

---

[2] https://federalnewsnetwork.com/workforce/2025/12/state-dept-finalizes-mass-layoffs-says-employees-wont-be-reinstated-under-shutdown-ending-deal/ (Dec. 2, 2025).

**C.     Department of Defense**

272.    On November 21, 2025, Defendant Department of Defense ("Defense") confirmed in a declaration filed in this case that it had taken steps to implement two RIFs during the shutdown (ECF 118-1).

273.    First, in August 2025, Defense issued RIF notices to employees in the Defense Technical Information Center, including employees represented by AFGE, with an original separation date of October 24, 2025, which fell during the shutdown.  Defense did not execute the RIF during the shutdown.  Defense states that it has extended the separation date to "January 31, 2026" (without issuing a new notice, after the prior date expired).  ECF 118-1.

274.    Next, on August 5, 2025, Defense issued RIF notices to employees in the Defense Contract Audit Agency, including employees represented by AFGE, with a separation date of October 4, 2025.  Defense confirms that it executed those separations during the shutdown on October 4, 2025, terminating those employees' federal employment.  ECF 118-1.  Notwithstanding and in violation of Section 120, Defense has not rescinded these separations.

**D.     General Services Administration**

275.    Defendant GSA did not reveal any prior RIFs to this Court in its compliance declarations, including any RIFs implemented or executed during the shutdown.  ECF 62-21, 112-20.

276.    Approximately 200 GSA employees received RIF notices prior to October 1, 2025 but with separation dates after October 1, 2025 during the shutdown period, including employees represented by AFGE and NFFE.  GSA implemented and executed those separations after October 1, 2025.

277.    Notwithstanding and in violation of Section 120, GSA has not rescinded these separations.

**E.     Small Business Administration**

278.    On September 29, 2025, Defendant Small Business Administration ("SBA") issued RIF notices to 73 employees, with a separation date of October 29, 2025, including employees represented by AFGE.  SBA had obtained a waiver of the usual 60-day notice from OPM, to provide

only 30 days' notice.  On October 29, 2025, during the shutdown, SBA further implemented and executed those RIFs, separating the employees from federal employment.

279.    On November 17, 2025, the SBA Chief Human Capital Officer sent a letter to previously separated employees titled "Rescission of Reduction in Force Notice."  That letter stated:

> **This letter is to formally rescind the Reduction in Force (RIF) notice dated 9/29/2025 per Public Law No: 119-37 - Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026**. You are being reinstated to your position of record with the Small Business Administration (SBA). You will receive all retroactive pay through Pay Period 22. (Emphasis added.)

280.    On the next day, the SBA Chief Human Capital Officer sent the same employees a further communication *retracting the rescission.*  That letter stated: "**Notwithstanding any prior communication from the U.S. Small Business Administration, the September RIF Notice and termination affecting your position remain in effect**."  The letter provided no explanation of the reversal of position, or how this new position was consistent with the statute that SBA admitted, the prior day, required rescission.

281.    Notwithstanding and in violation of Section 120, SBA has not since rescinded these separations.

IV.    **Harm to Plaintiffs**

282.    Plaintiffs AFGE, AFSA, and NFFE each represent and have as members federal employees who work at the above-named Federal Agency Defendants that have implemented and executed RIFs, and/or refused to rescind other RIFs, in violation of the language Congress enacted and the President signed into law.  As a result of these actual and imminent separations from federal employment those federal employees have lost and will lose their income, their health benefits, and other incidents of employment, causing severe irreparable harm to them, their families, and their communities.  For many of these employees, they will lose their careers built as dedicated public servants in federal employment.

283.    Plaintiffs AFGE, AFSA, and NFFE also each represent and have as members federal employees who, if they keep their job, will face impacts from the unlawful separations of their fellow employees that include having their jobs made more difficult as result of those separations.  Each

federal employee who remains will be required to do more to meet the employing agency's statutory mission and obligations, without the support of colleagues.

284.    AFGE, AFSA, and NFFE also are unions with the core function of representing employees, including those in federal bargaining units, in collective bargaining and providing counseling, advice, and representation to employees in the event of adverse employment actions. These unions have been and will imminently be prevented, as a result of the unlawful RIF actions directed by OPM and OMB in contravention of the recently enacted CR, from exercising their core functions as employee representatives.

285.    AFGE, AFSA, and NFFE has each expended time and resources in the wake of the government shutdown and OPM, OMB, and the Federal Agency Defendants' announced defiance of the language of the CR, addressing member concerns and attempting to provide employees with effective representation.  These unions have been forced and will be forced to divert resources that would otherwise be devoted to representing employees who have, will, or may experience adverse employment actions and/or other representational work.  AFGE, AFSA, and NFFE have also been harmed in multiple other ways by the actual and imminent termination of their members, including by the loss of dues income and bargaining power.

## SUPPLEMENTAL CLAIMS FOR RELIEF

### Claim V
**by Plaintiffs AFGE,AFSA, and NFFE:**
**Administrative Procedure Act, 5 U.S.C §706(2)(A), (B) and (C)**
**Against Defendants OPM, OMB, Departments of Education,**
**Defense, and State, GSA and SBA and their Agency Heads**
**(Action Not in Accordance With Law and Exceeding Statutory Authority)**

286.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

287.    Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §§706(2)(A), (B), and (C).

288.    If an "action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." *Sec. & Exch. Comm'n v. Chenery Corp*., 318 U.S. 80, 94 (1943).

289.    OMB, OPM, and Federal Agency Defendants the Departments of Education, State, and Defense, GSA, and SBA, are agencies subject to the APA.  5 U.S.C. §701.

290.    OPM's November 12 and 13 memoranda, OMB's directive, and associated instructions to Federal Agency Defendants regarding the interpretation of Section 120 and application of that interpretation to agency RIFs, and the Federal Agency Defendants' continued implementation of RIFs and failure to rescind prior RIFs, are all final agency actions for the purposes of APA review.

291.    OPM's November 12 and 13 memoranda, OMB's directive, and associated instructions to Federal Agency Defendants regarding the interpretation of Section 120 and application of that interpretation to agency RIFs, and the Federal Agency Defendants' continued implementation of RIFs and failure to rescind prior RIFs, are all are contrary to the law and exceed statutory authority set forth in Section 120 of the CR.

292.    OPM's November 12 and 13 memoranda, OMB's directive, and associated instructions to Federal Agency Defendants regarding the interpretation of Section 120(a) and application of that interpretation to agency RIFs, and the Federal Agency Defendants' continued implementation of RIFs, direct the spending of federal funds for purposes prohibited by Congress and violates the Appropriations Clause.

293.    OMB and OPM have no authority to direct other agencies to apply a misinterpretation of federal law.  Federal Agency Defendants likewise have no authority to violate Section 120 of the CR or the Constitution.

294.    The actions of OMB, OPM, and these Federal Agency Defendants therefore violate the Administrative Procedure Act because they are inconsistent with law in violation of 5 U.S.C. §706(2)(A), contrary to the Constitution in violation of 5 U.S.C. §706(2)(B), and exceed statutory authority in violation of 5 U.S.C. §706(2)(C).

**Claim VI**
**by Plaintiffs AFGE  AFSA, and NFFE:**
***Ultra Vires* Unlawful Governmental Action**
**Against Defendants OPM, OMB, Departments of Education,**
**Defense, and State, GSA and SBA and their Agency Heads**

.

295.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

296.    Plaintiffs have a non-statutory right of action to enjoin and declare unlawful official action that is *ultra vires*.

297.    OPM's November 12 and 13 memoranda, OMB's directive, and associated instructions to Federal Agency Defendants regarding the interpretation of Section 120 and application of that interpretation to agency RIFs, and the Federal Agency Defendants' continued implementation of RIFs and failure to rescind prior RIFs, are all are contrary to the law and exceed statutory authority set forth in Section 120 of the CR.

298.    OMB and OPM have no authority to direct other agencies to apply a misinterpretation of federal law.  Federal Agency Defendants likewise have no authority to violate Section 120 of the CR.

299.    The actions of OMB, OPM, and these Federal Agency Defendants therefore exceed OMB, OPM, and the Federal Agency Defendants' authority and are contrary to statute and are therefore *ultra vires*.

**Claim VII**
**by Plaintiffs AFGE,AFSA, and NFFE:**
**Appropriations Clause**
**Against Defendants OPM, OMB, Departments of Education,**
**Defense, and State, GSA and SBA and their Agency Heads**

300.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

301.    The Appropriations Clause of the Constitution provides in part that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. Art. I, §9, cl. 7.  The clause "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress."  *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)).  Congress has not

appropriated funds to administer RIFs in a manner prohibited by federal law, and has specifically prohibited the use of federal funds for the implementation of RIFs covered by Section 120 of the CR.

302.    The actions of OMB, OPM, and these Federal Agency Defendants and their Agency Heads spending funds to implement RIFs prohibited by Section 120 violate the Appropriations Clause of the Constitution.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that this Court:

1. Declare that OMB, OPM, and Federal Agency Defendants Departments of Education, Defense, and State, GSA and SBA and their Agency Heads have exceeded statutory authority, acted contrary to statutory law and the Constitution, by implementing and executing RIFs in violation of Section 120 of the CR;

2. Vacate, hold unlawful, set aside, and stay the OPM and OMB Memoranda that purport to authorize administration of RIFs in violation of Section 120 of the CR, as well as any and all actions taken by OPM, OMB, and any Federal Agency Defendants to implement RIFs and to refuse to rescind RIFs in contravention of Section 120 of the CR, under 5 U.S.C. §§705 and 706;

3. Enter preliminary and permanent injunctive relief;

4. Award Plaintiffs their costs, reasonable attorneys' fees, and other disbursements as appropriate; and

5. Grant such other relief as this Court may deem proper.

Dated: December 4, 2025

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Alice X. Wang
Robin S. Tholin
Talia Stender
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
Fax: (415) 362-8064
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com
awang@altshulerberzon.com
rtholin@altshulerberzon.com
tstender@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Plaintiffs*


Elena Goldstein (pro hac vice)
Jennie L. Kneedler (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 322-1959
egoldstein@democracyforward.org
jkneedler@democracyforward.org

*Attorneys for All Plaintiffs*


Norman L. Eisen (pro hac vice)
Craig Becker (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Craig@democracydefenders.org

*Attorneys for All Plaintiffs*


Rushab Sanghvi (SBN 302809)

1

2    AMERICAN FEDERATION OF GOVERNMENT
     EMPLOYEES, AFL-CIO
3    80 F Street, NW
     Washington, D.C. 20001
     Tel: (202) 639-6426
4    Sanghr@afge.org

5    *Attorneys for Plaintiffs American Federation of*
     *Government Employees, AFL-CIO (AFGE) and AFGE*
6    *locals*

7

8    Teague Paterson (SBN 226659)
     AMERICAN FEDERATION OF STATE, COUNTY,
9    AND MUNICIPAL EMPLOYEES, AFL-CIO
     1625 L Street, N.W.
10   Washington, D.C. 20036
     Tel: (202) 775-5900
11   TPaterson@afscme.org

12
     *Attorneys for Plaintiff American Federation of State*
13   *County and Municipal Employees, AFL-CIO (AFSCME)*

14

15   Yvette M. Piacsek (pro hac vice)
     NATIONAL FEDERATION OF FEDERAL
16   EMPLOYEES, IAM, AFL-CIO
     1225 New York Ave. N.W., Suite 450
17   Washington, D.C. 20005
     Tel: (202)216-4428
18   ypiacsek@nffe.org

     *Attorneys for Plaintiff National Federation of Federal*
19   *Employees, IAM, AFL-CIO*

20

21   Steven K. Ury (SBN 199499)
     SERVICE EMPLOYEES INTERNATIONAL UNION,
     AFL-CIO
22   1800 Massachusetts Ave., N.W.
     Washington, D.C. 20036
23   Tel: (202) 730-7428
     steven.ury@seiu.org
24
     *Attorneys for Plaintiff Service Employees International*
25   *Union, AFL-CIO (SEIU)*

26   Sarah E. Suszczyk*
     NATIONAL ASSOCIATION OF GOVERNMENT
27   EMPLOYEES, INC.
     159 Thomas Burgin Parkway
28   Quincy, MA 02169
     Tel: (617) 376-7239

ssuszczyk@nage.org

*Attorneys For Plaintiff National Association of Government Employees, Inc. (NAGE)*

*\*Pro hac vice application forthcoming*

Exhibit A



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
**Washington, DC 20415**

November 12, 2025
CPM 2025-14

Memorandum for Chief Human Capital Officers

From:      Veronica E. Hinton
             Associate Director
             Workforce Policy and Innovation

**Subject:      Employee Pay, Leave, Benefits, and Other Human Resources Programs Affected by the Lapse in Appropriations**

The President has signed legislation restoring appropriations through January 30, 2026, for most agencies, along with full-year appropriations for others. (See divisions A through D of the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, enacted on November 12, 2025.) Section 116 of Division A (the Continuing Appropriations Act of 2026) provides retroactive pay pursuant to 31 U.S.C. 1341(c) to Federal employees affected by the lapse in appropriations that began on October 1, 2025. This includes Federal employees who were furloughed, as well as Federal employees who were required to perform excepted work activities during the lapse. The U.S. Office of Personnel Management (OPM) is committed to ensuring that retroactive pay is provided as soon as possible. As a result, we appreciate the support of all human resources offices, payroll providers, and shared service centers in working towards this goal. The attached guidance is intended to assist agencies in administering pay, leave, and benefits for employees affected by the lapse in appropriations and provide guidance on other human resources programs that may have been impacted by the lapse.

The legislation allows all Federal civilian employees who had been affected by the lapse in appropriations that began on October 1, 2025, to return to duty. Agencies should provide direction to their employees on resumption of operations and reporting expectations. For employees who face legitimate circumstances that prevent them from immediately returning to work due to the length of the lapse, agencies may consider the use of appropriate flexibilities (e.g., adjustment of work schedules or approval of personal leave at the employee's request) consistent with agency policies and missions and operational needs.

Additionally, Section 120(e) of the Continuing Appropriations Act of 2026 requires any agencies that issued Reduction in Force (RIF) notices between October 1, 2025 and November 12, 2025 to issue notices to rescind the RIF notices within 5 days. Agencies should issue those notices and confirm to OPM the rescissions have been issued at employ@opm.gov. OPM will provide additional guidance separately.

**Additional Information**

For additional guidance, agency headquarters-level human resources offices may contact the OPM contacts listed in the attachment. Employees should contact their agency human resources offices for assistance.

cc: Deputy Chief Human Capital Officers and Human Resources Directors

**Attachment: Guidance on Employee Pay, Leave, Benefits, and other Human Resources Programs Affected by the Lapse in Appropriations**

Note: This guidance applies to employees affected by a lapse in appropriations who were either furloughed or performed excepted work activities and addresses human resources programs affected by the lapse. Unless expressly addressed below, this guidance does not apply to employees and programs designated as "exempt" from furlough (not affected by the lapse in appropriations because there was an other-than-annual source of funds (e.g., supplemental appropriation, carryover) that was used for those functions in the absence of annually appropriated funds).

To facilitate making retroactive payments as quickly as possible, payroll providers may have to make some adjustments. Thus, the initial retroactive pay that an employee receives after the lapse in appropriations has ended may not fully reflect application of all the guidance in this document regarding the treatment of hours for pay, leave, and other purposes. Payroll providers will work with agencies to make any necessary adjustments as soon as practicable. Employees should follow the guidance of their respective agencies and payroll providers for the recording of time and attendance during the lapse of appropriations. Employees may be required to code furlough time as regular duty to ensure that they are paid properly and promptly.

**Pay**

- Under Section 116 of Division A (the Continuing Appropriations Act of 2026), Federal employees who did not receive pay because of the lapse in appropriations that began on October 1, 2025, must receive retroactive pay at the employee's standard rate of pay for the lapse period as soon as possible after the lapse ends, pursuant to 31 U.S.C. 1341(c).

- An excepted employee who performed work during the lapse in appropriations must be paid for that work. The "standard rate of pay" for excepted hours of work is the pay the employee is entitled to for actual hours of work under the normally applicable pay rules. For example, if an excepted employee performed additional overtime work beyond the normal requirements for his or her job, he or she would be paid for that actual overtime work to the extent that employee is eligible for such overtime payment. All excepted hours of work are time in a pay status for pay, leave, and benefits purposes.

- For periods of time during which an employee was furloughed during the lapse in appropriations, the "standard rate of pay" is the pay the employee would have received for the furlough hours had the lapse in appropriations not occurred and the employee had performed work.

Therefore—

- A furloughed employee is entitled to receive his or her rate of basic pay for the furlough time to the extent that he or she would have been in a basic pay status but for the lapse of appropriations.

- An excepted employee who had intermittent furlough periods is entitled to retroactive pay for that furlough time without being charged paid leave. (However, see the section entitled "Leave and Other Paid Time Off Use and Charge" regarding the possible use by excepted employees of paid leave in place of furlough time.)

- All furlough hours for which retroactive pay is received are treated as time in a pay status for pay, leave, and benefits purposes. For example, for the purpose of applying General Schedule waiting periods associated with within-grade increases, the furlough time during the lapse in appropriations is treated as time in a pay status.

- A furloughed employee who, before the lapse in appropriations, had been regularly scheduled to perform, during the period subsequently covered by the lapse, overtime work or to perform work at night or during a period for which any other form of premium pay would otherwise be payable is entitled to receive overtime pay, night pay, or other premium pay as if the work had been performed.

- Allowances, differentials, and other payments otherwise payable on a regular basis (e.g., administratively uncontrollable overtime pay and law enforcement availability pay) must be paid as if the furloughed employee continued to work.

- All periods of time during which a furloughed employee would, but for the lapse in appropriations, have been in a pay status (including regularly scheduled overtime hours and standby duty) must be considered "hours of work" for pay administration purposes under the Fair Labor Standards Act.

- A furloughed employee is not entitled to retroactive pay for furlough periods if the employee had been previously (before the lapse) scheduled to be in a nonpay status during those periods. For example, an employee may have scheduled leave without pay (LWOP) for an extended period or be in a suspension status (i.e., pay suspended based on adverse action). In effect, those already-in-place periods of nonpay status override the furlough status. The standard rate of pay for previously scheduled periods of nonpay status is zero. In addition, excepted employees placed in absent-without-leave (AWOL) status

for missed assigned work hours, in accordance with agency policy and procedures, will not be paid.

**Garnishments**

Some paychecks are normally susceptible to garnishment pursuant to a variety of court orders. If a payroll provider is unable to effectuate the garnishment, it should provide a notice to that effect to affected employees and indicate how the provider intends to handle the missed garnishments going forward. Some payroll providers will need to confer with counsel about how much to collect at any given time in any make-up payments.

**Leave and Other Paid Time Off Use and Charge**

- Under 31 U.S.C. 1341(c)(3), an excepted employee is permitted to use paid leave under 5 U.S.C. chapter 63 (or other applicable law, if the employee is not covered by chapter 63) during a lapse in appropriations—but payment for that leave cannot not be made until after the lapse has ended. Such use of paid leave during a lapse in appropriations is subject to the normally applicable leave request and approval procedures. While excepted employees have the option of requesting paid leave during a lapse, they are not required to use paid leave to cover an absence from duty. The default approach is to treat any authorized absence from duty during a lapse as a furlough period. As explained in the "Pay" section, retroactive pay at the standard rate of pay is provided for furlough periods without charge to leave. Based on the above, if an excepted employee requested and was authorized to use paid leave during the lapse that commenced on October 1, 2025, the employee will be charged for that leave.

- Consistent with the normal leave rules, an excepted employee may not use paid leave under section 1341(c)(3) during periods when the employee was in an AWOL status.

- An employee previously approved to be on advanced annual and/or advanced sick leave during the lapse in appropriations would have been furloughed instead, and the scheduled leave cancelled. Because these employees were furloughed because of the lapse, and otherwise would have been in a pay status during the advanced leave period, they will receive retroactive pay provisions in 31 U.S.C. 1341(c) and will not be charged advanced annual and/or sick leave for that time.

- Just as with other paid leave, any donated leave that is scheduled to be used during a lapse in appropriations must be canceled and converted to furlough status time—unless the employee performs excepted work or is granted leave under 31 U.S.C. 1341(c)(3). If the employee is furloughed during periods when the employee had been scheduled to use donated annual leave, the employee is

entitled to retroactive pay for the furlough periods under 31 U.S.C. 1341(c) and will not be charged the donated leave for that time.

**Leave Accrual**

- An employee furloughed during the lapse in appropriations must now be considered to have been in a pay status because of entitlement to retroactive pay. Annual and sick leave will accrue in accordance with the normal rules that apply to employees in a pay status.

- Excepted employees earned pay and accrued leave during the periods they performed excepted work activities, even though no payments could be made during the lapse. With the payment of retroactive pay, agencies must properly credit excepted employees' leave accrual.

**Scheduling and Restoration of Use or Lose Annual Leave**

Some lapse-affected employees have use-or-lose annual leave—that is, their projected balance of annual leave at the end of the leave year on January 10, 2026 (sum of current balance plus future annual leave accrual during the remainder of the leave year), exceeds the applicable annual leave carryover limit. Use-or-lose annual leave must be used by the end of the leave year to avoid forfeiture of that leave. Some use-or-lose annual leave may have been previously approved but then canceled during the lapse in appropriations. Other use-or-lose annual leave may not be scheduled yet. Lapse-affected employees should make every effort to properly schedule their use-or-lose annual leave in writing (including rescheduling previously approved annual leave that was canceled during the lapse in appropriations) by November 29, 2025, for use by January 10, 2026. As allowed by agency policies and procedures, the "in writing" requirement may be met in various ways, including electronic communications such as email, electronic calendar scheduling, or submissions to a time and attendance system. Supervisors should make every effort to respond to such leave requests. Use-or-lose annual leave that is scheduled in writing by November 29, 2025, but is forfeited because an exigency of the public business prevented use of the scheduled leave, may be restored.

Some employees may have been unable to take leave during the lapse that began on October 1, 2025, either because they could not be excused from excepted work, or because they were placed on furlough, and their previously scheduled leave was cancelled. Because the lapse in appropriations ended well before the November 29 scheduling deadline, there is a reasonable opportunity for an employee to reschedule before the deadline any use-or-lose leave that was canceled during the lapse. Thus, all employees should schedule the entirety of their use-or-lose leave by the November 29 deadline to protect their ability to seek restoration of any annual leave forfeited at the end of the leave year. If the properly scheduled annual leave is forfeited at the end of

the leave year, the employee may seek restoration of forfeited leave under the normal rules. (See 5 CFR 630.305 and 630.308.)

If an agency anticipates that all employees in a given category will generally not be allowed to take annual leave for the remainder of the leave year, in particular to support activities to re-open the government following the lapse, the agency may consider ways to streamline the leave restoration process. Instead of considering each request individually, it may be possible for the agency head (or designee) to issue a memo in January that restores annual leave for all employees whose leave was forfeited because of particular exigency of the public business (as determined by an authorized agency official), as long as the employee properly scheduled the leave by November 29, 2025.

Any previously restored annual leave that was due to expire at the end of the 2025 leave year under 5 CFR 630.306, 630.309, or 630.310 must be used by January 10, 2026, or be permanently forfeited, with no opportunity for restoration.

**Preapproved Leave Without Pay (LWOP)**

In the case of an employee who was on preapproved LWOP during the lapse in appropriations, the employee must continue to be charged LWOP for all periods of such preapproved LWOP that occurred during the lapse.

**Family and Medical Leave Act (FMLA)**

Under FMLA, an employee is entitled to 12 weeks of unpaid leave during any 12-month period and may elect to substitute certain types of paid leave (sick leave, annual leave, advanced leave, annual leave donated under the Voluntary Leave Transfer Program or the Voluntary Leave Bank Program, or paid parental leave), consistent with current laws and OPM's regulations. During the lapse in appropriations, affected employees who would otherwise be in a pay status must be (1) furloughed; (2) at work performing excepted activities; or (3) excepted and on paid leave granted under 31 U.S.C. 1341(c)(3). Any previously scheduled paid leave (including paid leave substituted for FMLA LWOP) during a furlough period must be automatically canceled and converted to a furlough period.

Furloughed Federal employees are entitled to their "standard rate of pay" for the entire period of the lapse in appropriations. For employees who were otherwise scheduled to be in nonpay status, the standard rate of pay is zero. Accordingly, an employee on FMLA leave during the furlough period should be treated as follows:

- For any hours during the lapse in appropriations for which an employee was previously scheduled to be in FMLA LWOP, the employee will remain in LWOP status, but the LWOP will not be considered FMLA leave and will not count

against the FMLA 12-week limit. The employee is not entitled to receive retroactive pay.

- For any hours during the lapse in appropriations for which the employee was scheduled to be in paid leave status by substituting paid leave for FMLA LWOP, the employee will be provided retroactive pay and will not be charged paid leave, consistent with the treatment of other employees who had previously scheduled paid leave that was canceled due to the lapse in appropriations. The canceled periods of unpaid leave substitution (converted to furlough time) will not be considered FMLA leave and will not count against the FMLA leave 12-week limit.

**Alternative Work Schedules**

There are two types of alternative work schedules (AWS)—a flexible work schedule and a compressed work schedule. Normally, once a compressed work schedule is established, the days and hours are fixed and cannot be changed; however, changes in an employee's flexible work schedule may be made under agency policies and collective bargaining obligations (if applicable). For example, in appropriate circumstances, the AWS day off for an employee with a flexible work schedule may be changed to a different day in the same biweekly pay period.

Once a lapse in appropriations begins, a furloughed employee is not permitted to reschedule an AWS day off under a flexible work schedule that was scheduled to occur during the lapse—except when rescheduling is related directly to the timing of the employee's orderly shutdown activities. Thus, since the lapse has ended in the middle of a pay period, a furloughed employee may not move an AWS day off that was scheduled to occur during the portion of the pay period covered by the lapse. Retroactive pay at the standard rate of pay is based on each employee's established (standard) schedule. No retroactive pay is provided for an AWS day off. An employee cannot move an AWS day off to obtain retroactive pay for a normal day off under the employee's established schedule.

However, if a furloughed employee's AWS day off was scheduled to occur during the portion of the pay period that falls after the lapse in appropriations has ended, it may be possible for the employee to move the AWS day off to a later date in that same pay period. For example, an employee may want to move an AWS day off scheduled to occur after the lapse has ended to a later date because the employee needs more time to reestablish child-care arrangements. Any changes to an employee's AWS day off are subject to agency policies and collective bargaining agreements, as applicable.

**Compensatory Time Off "in-lieu-of" Overtime Premium Pay**

While there is no authority to extend the 26-pay-period time limit for using compensatory time off earned for overtime work, payment for the unused

compensatory time off must be made (at the overtime rate in effect when earned) in the following circumstances:

- For FLSA-exempt (i.e., not covered) employees, under 5 CFR 550.114(d)(2), payment must be made if an exigency of the service beyond the employee's control prevented the employee from using the compensatory time off within the regulatory time limits. OPM considers a lapse in appropriations an exigency of the service for purposes of compensatory time off. Thus, if an agency determines that the lapse prevented the employee from using the compensatory time off that would otherwise be forfeited, the agency must provide payment for the unused compensatory time off.

- For FLSA-nonexempt (i.e., covered) employees, under 5 CFR 551.531(d), if, for any reason, earned compensatory time off is not taken within 26 pay periods during which it was earned, the employee must be paid for overtime work.

**Compensatory Time Off for Travel**

If an employee fails to use his or her accrued compensatory time off for travel before the end of the 26th pay period after the pay period during which it was earned due to an exigency of the service beyond the employee's control under 5 CFR 550.1407(e), the head of an agency, at his or her sole and exclusive discretion, may extend the time limit for using compensatory time off for travel for up to an additional 26 pay periods.

OPM considers a lapse in appropriations to be an exigency of the service beyond the employee's control for purposes of compensatory time off for travel. Thus, an agency may extend the time limit for using such compensatory time off for lapse-affected employees.

**Time Off Awards**

If an employee fails to use a time-off award before the expiration date established by their agency policy due to the lapse in appropriations, the agency may extend the expiration date. OPM does not set governmentwide limits on the amount of time off an employee may receive or timeframes within which employees must use an award. However, a time-off award may not be converted to cash (5 CFR 451.104(f)).

**Military Leave**

- An employee who had previously scheduled military leave under any of the provisions under 5 U.S.C. 6323 for absences from October 1, 2025, until the end of the lapse in appropriations would have been in a pay status but for the lapse in appropriations. Accordingly, an employee is entitled to receive retroactive pay at the employee's "standard rate of pay." This may include the day before or after the holiday(s) occurring during the lapse.

- Employees may not retroactively substitute military leave for LWOP during the furlough period because furloughed employees generally may not use any form of paid leave (i.e., annual leave, sick leave, or other paid leave), compensatory time off in lieu of overtime, compensatory time off for travel, religious compensatory time off, or credit hours under a flexible work schedule during the furlough period. This would mean that, unless they were previously scheduled to use military leave on a day before or after a holiday, employees cannot retroactively substitute military leave for LWOP to receive pay for a holiday.

- As a result of the cancelation of scheduled military leave during the lapse in appropriations, agencies must recredit an employee's military leave account. This recredited military leave may be used after the end of the lapse in appropriations.

**Holidays**

- Except as provided below, an employee affected by the lapse in appropriations will receive his or her regular pay for a holiday that occurred during the lapse in appropriations. If an employee was regularly scheduled to work on these holidays and was instead furloughed, the employee is now entitled to holiday premium pay, as discussed in the "Pay" section above. An excepted employee who performed work on a holiday will be paid according to the normal rules governing pay for work on a holiday. For example, under 5 U.S.C. 5546(b), a covered employee would receive his or her rate of basic pay, plus holiday premium pay at a rate equal to the employee's rate of basic pay. In addition, if such an employee performs officially ordered or approved overtime work on a holiday (i.e., work in excess of his or her basic non-overtime work requirement for that day), the employee would receive overtime pay (or compensatory time off) for that work. Please note that holiday premium pay and overtime pay are subject to applicable premium pay caps and are not available to certain employees, such as heads of agencies and members of the Senior Executive Service.

- If an employee was on preapproved LWOP during the lapse in appropriations, he or she must continue to be charged LWOP for the duration of the period approved as LWOP, including holidays.

**Other Delayed Payments**

- During the lapse, some agencies may have paused the processing of severance payments for eligible employees who were involuntarily separated from Federal service. Processing of those payments may resume, and severance payments owed to former employees must now be paid.

- Voluntary Separation Incentive Payments (VSIPs) for lapse-affected employees who separated from Federal service on or after October 1, 2025, must now be paid. (For employees who were eligible for VSIPs based on a separation before October 1, 2025, agencies were authorized to make those payments during the lapse in appropriations using FY 2025 funds.)

- Annual leave lump-sum payments for lapse-affected employees who separated from Federal service on or after October 1, 2025, must now be paid. (For employees who were eligible for annual leave lump-sum payments based on a separation before October 1, 2025, agencies were authorized to make those payments during the lapse in appropriations using FY 2025 funds.)

**Retirement Actions and Deductions**

- For employees who, on or before the requested retirement date, submitted some notice of their desire to retire, agencies should make the retirement effective as of the date requested. The retirement request may be informal (such as a letter requesting retirement) and can be either mailed or personally submitted to the agency. No time spent by the retiree on such actions after the effective date of the retirement may be considered as duty time, since the individual would no longer be an employee of the agency.

- Retirement deductions under the Civil Service Retirement System or the Federal Employees Retirement System must be deducted from the employee's retroactive basic pay for the lapse in appropriations. The employing agency must also contribute to the Retirement Fund its corresponding share for the retroactive payment. The total retirement deductions and agency contributions for each employee should equal the amount that would have been withheld and contributed had the employee not been affected by the lapse in appropriations. The amounts should be remitted to OPM using the normal procedures for retroactive adjustments.

- A furlough period for which retroactive pay is received is fully creditable for retirement purposes and is not considered LWOP.

- If any retirement application has been delayed because of the lapse in appropriations, it should be quickly processed and submitted to OPM so that OPM will be able to begin annuity payments as soon as possible.

**Voluntary Separations – Employee Requests to Change Effective Date**

The effective date of a voluntary separation (e.g., retirement, resignation) is determined by the employee. An agency may permit an employee to withdraw his or her voluntary separation at any time before it has become effective, but the agency is

not obligated to accept changes after the effective date has passed (see 5 CFR 715.202 and the CSRS and FERS Handbook).

**Unemployment Compensation for Federal Employees**

- The UCFE Instructions to Federal Agencies advise that, whenever a retroactive payment is made, the Federal agency must check the agency file of Forms ES-931 received to determine if the recipient of the retroactive payment filed a claim for unemployment benefits within the last 52 weeks and, if so, the agency should inform the state unemployment insurance (UI) agency of the amount and period covered by the retroactive payment.

- The state UI agency will determine whether an overpayment exists. Generally, the recovery of the UCFE overpayment is a matter for state action under state law; however, some state UI laws require the employer to recover such overpayment by collecting the overpayment amount from the employee. Federal and state agencies will need to coordinate to determine the required action in accordance with the individual state UI law. Federal agencies are encouraged to develop lists or spreadsheets that can be provided to the state(s) containing the employees' names, social security numbers, and the amounts and periods of time covered by the retroactive payment.

**Open Season**

- The Federal Benefits Open Season is November 10-December 8. Following the lapse in appropriations, OPM encourages agencies to prioritize communicating Open Season information with employees using available channels, including email and intranet. Agencies should place special emphasis on promptly notifying employees who are impacted by plan changes detailed in Benefits Administration Letter 25-401, 2025 Federal Benefits Open Season: Significant Plan Changes—FEHB and FEDVIP.

- OPM is not adjusting Open Season dates at this time. Open Season runs from November 10 to December 8. OPM will provide notice should it determine that modifications to Open Season dates are necessary. OPM encourages agencies to use their belated enrollment authority to accept requests for enrollment or change in enrollment if the employee is unable to make the request before Open Season ends.

**Health Benefits, including the Federal Employees Health Benefits (FEHB) Program and the Postal Service Health Benefits (PSHB) Program**

- FEHB and PSHB coverage continues through a lapse in appropriations even if premium payments are not made during the lapse. Following the lapse, each employee who returns to pay status will repay their share of FEHB premiums

that accumulated during the lapse through payroll withholding. If FEHB premiums are not withheld from retroactive pay, one additional payment in addition to the current pay period amount will be withheld in each subsequent pay period until the employee's accumulated share of premiums has been paid. These amounts should be remitted to OPM using the normal procedures for any retroactive adjustments as necessary.

- Employees can make health benefits enrollment changes due to a qualifying life event during a lapse in appropriations even if excepted or furloughed. However, if the 60-day period for an employee to submit an enrollment or change in enrollment ended during the period from October 1, 2025, until the end of the lapse in appropriations, agencies may use their belated enrollment authority to extend the period for the employee to submit the request for enrollment or change in enrollment.

**Federal Employees Dental and Vision Insurance Program (FEDVIP), Federal Long Term Care Insurance Program (FLTCIP), and Federal Flexible Spending Account (FSAFEDS) Program**

- Since the lapse in appropriation has ended, FEDVIP premiums will be paid from retroactive pay. If FEDVIP premiums are not withheld from retroactive pay, no more than one additional payment will be withheld in each subsequent pay period until all premiums have been paid.

- Since the lapse in appropriations has ended, FLTCIP premiums will be paid from retroactive pay or may be paid back from another source (i.e., automatic bank withdrawal) for FLTCIP enrollees who elected to make payments directly to the Carrier. After the shutdown ends, if the enrollee elected to pay his or her premium via automatic bank withdrawal, past due premiums will be collected by withdrawing up to two months of premiums from the enrollee's bank account each month until it is current.

- Agencies should process deductions for FEDVIP and FLTCIP and allotments for FSAFEDS in accordance with the billing file and instructions received from BENEFEDS and Long Term Care Partners.

- FSAFEDS will resume processing claims for eligible health care expenses incurred during nonpay status. Claims based on dates of service prior to the start of nonpay status will be paid up to the balance of the employee's annual election.

- Upon return to pay status, the remaining FSAFEDS allotments for the year will be recalculated over the remaining pay periods to match the participant's annual election amount. Allotments will not be deducted from retroactive pay.

- Employees who have questions may obtain more information at:

  - www.BENEFEDS.gov (for FEDVIP deductions and FSAFEDS allotments)
  - www.LTCFEDS.gov (for FLTCIP)
  - www.FSAFEDS.gov (for FSAFEDS claims)

**Federal Employees' Group Life Insurance (FEGLI) Program**

Since the lapse has ended, FEGLI premiums may be withheld from retroactive pay. If FEGLI premiums are not withheld from retroactive pay, up to one additional payment will be withheld in each subsequent pay period until all premiums have been paid.

**Executive Resources**

Full executive resources functions, to include operation of the Senor Executive Service (SES) Qualifications Review Board (QRB), are resumed. Additional guidance on open executive resources deliverables will be addressed separately to the executive resources community. For general executive resources questions, headquarters-level executive resources staff may email: SERS@opm.gov.

**Performance Management**

- Agencies should adjust timelines to ensure timely completion of FY 2025 performance close out activities.

- For agencies whose Senior Executive Service (SES) and Senior Professional (SP) Performance Appraisal System certification expired during the lapse period, OPM grants an extension of 90 days from the date of this guidance to allow agencies time to fully prepare and submit certification packages.

- Agencies must confirm implementation of their new SES and SP performance management system within 30 days from the date of this guidance.

- For agency-specific questions, please email: performance-management@opm.gov.

**Performance-based Actions under 5 CFR Part 432**

Agencies who have taken an action for unacceptable performance are limited to extending the 30-calendar day advance notice period by an additional 30 calendar days due to a lapse in appropriations under 5 CFR 432.105(a)(4)(i)(B). Under normal circumstances, agencies would need to request additional extensions from OPM under 5 CFR 432.105(a)(4)(i)(C). However, OPM is authorizing agencies impacted by the lapse in appropriations to extend the advance notice period up to 30 calendar days beginning on the first business day after the end of the shutdown. Agencies seeking additional time beyond this period may request an additional extension by email at employeeaccountability@opm.gov.

**Probationary and Trial Periods**

Normally, when an employee in a probationary or trial period has more than a total of 22 workdays of absence in nonpay status (other than for compensable injury or military duty) the time in a nonpay status will extend the probationary period. The furlough time for which retroactive pay is received does not extend the probationary or trial period.

There may be instances where an agency extended the duration of a probationary or trial period and the individual gained adverse action appeal rights under 5 U.S.C. 7511(a)(1)(A)-(C). Retroactive pay does not divest these employees of such adverse action appeal rights.

Agencies are required to certify that finalizing a probationary or trial employee's appointment advances the public interest. Such certification must be made during the 30-day period prior to the last day of the probationary or trial period; otherwise, the employee's service terminates at the end of his or her scheduled tour of duty on the last workday of the probationary or trial period unless the individual meets the definition of "employee" under 5 U.S.C. 7511(a)(1)(A)-(C). If an agency fails to make a certification under Civil Service Rule 11 due to administrative error, the agency head may petition the Director of OPM within 30 days from the date of termination to reinstate the employee. If the petition is approved, the employee will be reinstated retroactively. The deadlines for issuing a certification, effecting a termination, or submitting a petition as described above are not affected by a lapse in appropriations.

**Career Tenure**

The lapse in appropriations will not have an impact on a furloughed employee's completion of requirements for career tenure because furloughed employees will be deemed, retroactively, to have been placed into a pay status as of the beginning of the lapse in appropriations.

**Career Ladder Promotions**

As a general matter, a career ladder promotion must be approved by an authorized management official prior to its effective date. Absent a specific agency policy or lawful collective bargaining agreement on setting promotion effective dates, a career ladder promotion may not be retroactively authorized (see Comptroller General decisions 3 Comp. Gen. 559 and 9 Comp. Gen. 20 (A-27284)). However, if an HR office was prevented from processing a properly authorized career ladder promotion in a timely manner, the HR office is required to process the action retroactively to honor its authorized effective date. To the extent that applicable collective bargaining agreements address career ladder promotions, please consult with your labor relations office and agency general counsel.

**Time-in-Grade**

The time an individual spends in furlough status counts towards time-in-grade requirements for purposes of promotion.

**Extensions of Time-Limited Appointments**

An agency cannot extend a temporary or term appointment that was scheduled to expire during the furlough. This is because the duration of temporary or term appointments is based on calendar time, so there is no basis to extend such appointments if they expired during the lapse period.

**Pathways Programs**

Pathways Interns:
There are no provisions for an agency to extend the 180-day conversion period for a participant in the Pathways Internship program due to a lapse in appropriations. However, OPM will consider requests from agencies for a variation that would allow the conversion to occur. Please contact employ@opm.gov for more information.

Pathways Recent Graduates:
If an agency chooses to noncompetitively convert a recent graduate who otherwise meets all requirements, the conversion is effective on the date the service requirement is met. To the extent that the furlough period prevented a recent graduate from meeting a requirement in the agency's Recent Graduates Program, the agency may, at its discretion, choose to extend the program/appointment for up to 120 days.

**Documentation of Personnel Actions**

Prior to the lapse in appropriations, agencies were instructed not to prepare an SF-50 "Notification of Personnel Action" (or a List Form of Notice for a group of employees who were to be furloughed on the same day or days each pay period) at the outset of the furlough. OPM advised agencies that further instructions on the appropriateness of preparing an SF-50 would be provided once appropriations were signed. Accordingly, agencies do not have to process an SF-50 to document the shutdown furlough, nor should the furlough be recorded with any document designated for long-term filing in the Official Personnel Folder. If SF-50s were processed in error documenting the furlough, such SF-50s must be canceled citing 001/Cancelation with legal authority ATM/5 U.S.C. 301.

**Additional Information**

For additional guidance, agency headquarters-level human resources offices may contact the OPM contacts listed below. Employees should contact their agency human resources offices for assistance.

- Pay: PayPolicy@opm.gov
- Leave: LeavePolicy@opm.gov
- Labor Relations and Adverse Action Furlough Procedures: awr@opm.gov
- Executive Resources: SERS@opm.gov
- Performance Management: performance-management@opm.gov
- Hiring: employ@opm.gov
- Documentation of Personnel Actions: OPMDataHelpDesk@opm.gov
- Retirement: benefits@opm.gov
- Federal Employees' Group Life Insurance Program: fegli@opm.gov
- Federal Employees Health Benefits Program: fehb@opm.gov
- Federal Long Term Care Insurance Program: ltc@opm.gov
- Flexible Spending Accounts for Federal Employees: fsa@opm.gov
- Federal Employees Dental and Vision Insurance Program: fedvip@opm.gov

Exhibit B



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

November 13, 2025

Memorandum for Chief Human Capital Officers

From:       Veronica E. Hinton
            Associate Director
            Workforce Policy and Innovation

**Subject:       Reduction in Force Actions Affected by Continuing Appropriations Act, 2026**

The Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act of 2026 (i.e., the Act) enacted on November 12, 2025 includes provisions that limit the use of reductions in force only through the period of the short-term continuing resolution. (See Section 120 of Division A of the Act). The attached guidance is provided to assist agencies with complying with these provisions.

The legislation provides that no Federal funds may be used to initiate, provide notice of, carry out, or otherwise implement a reduction in force to reduce the number of Federal employees during the period between the date of enactment and January 30, 2026.  The Act also requires agencies to rescind certain RIF notices and declares that certain RIF actions taken between October 1, 2025 and November 12, 2025 have no force or effect.

**Additional Information**

For additional guidance, agency headquarters-level human resources offices may contact the OPM contacts listed in the attachment. Employees should contact their agency human resources offices for assistance.

cc: Deputy Chief Human Capital Officers and Human Resources Directors

**Attachment: Guidance on Reduction in Force Actions Affected by the Continuing Appropriations Act, 2026**

Under section 120 of the Continuing Appropriations Act of 2026 (i.e., division A of the Act), and notwithstanding section 106(1) of the Act, no Federal funds may be used to initiate, provide notice of, carry out, or otherwise implement a reduction in force through January 30, 2026. This prohibition applies to all civilian positions—permanent, temporary, term, full-time, part-time, or intermittent—without regard to the source of funding for those positions.  For purposes of section 120, "reduction in force" means actions taken under 5 U.S.C. 3501–3504 (competitive service and excepted service) and 5 U.S.C. 3595 (Senior Executive Service), as well as any similar reduction of positions, unless expressly provided for in the Act. The prohibition does not apply to (1) voluntary separations or retirements; (2) actions necessary to comply with a court order; or (3) actions taken, beginning only on the first day of a lapse in appropriations, necessary to implement or maintain an orderly shutdown of government operations.

Any RIF proposed, initiated, executed, implemented, or otherwise taken by an Executive agency between October 1, 2025 and November 12, 2025 has no force or effect. Employees who received notice of a RIF during that period must have the notice rescinded.

**Required Actions—**

- Agencies must immediately cease issuing RIF notices pursuant to 5 CFR parts 351 and 359 until January 31, 2026.

- Agencies must review all RIF notices issued between October 1, 2025, and November 12, 2025; rescind those notices; and restore each affected employee affected by a RIF notice issued between October 1, 2025 and November 12, 2025 to their September 30, 2025 employment status (appointment type, grade/step, salary, duty station, work schedule, and other conditions of employment) without interruption.

- If, at the time of a RIF notice, an employee was already in a valid non-pay status (e.g., pre-scheduled LWOP or suspension), rescission under section 120 does not create entitlement to retroactive pay for that previously scheduled non-pay status period. Agencies must reconstruct pay and benefits only for the periods the employee would have been in a pay status but for the RIF (e.g., beginning on the date the employee would otherwise have returned from LWOP). Time charged to AWOL remains non-pay status time.

- Within 5 calendar days of enactment, agencies must notify all affected employees of the withdrawal of the RIF notice and the employee's reinstatement, including the reinstatement date for any employee who was

separated via a RIF. The notice to employees must include information on the amount of retroactive pay the employee will receive, which must equal the pay to which the employee would have otherwise been entitled but for the now-canceled RIF. For employees whose positions were affected by a lapse in appropriations (whether excepted or furloughed), retroactive pay is provided under section 116. For lapse-exempt employees whose RIF notice is rescinded, any retroactive pay for periods after a canceled RIF separation is provided under section 120.

- Non-RIF adverse actions based on performance or conduct (5 U.S.C. chapters 43 and 75) and probationary or trial period terminations under Civil Service Rule 11 may proceed.

- The natural expiration of time-limited appointments at their established not-to-exceed (NTE) date may proceed.

- Within 5 calendar days of enactment, agencies must notify the Chairs and Ranking Members of the House and Senate Appropriations Committees of the withdrawal of RIF notices issued between October 1, 2025 and November 12, 2025, and the reinstatement of any affected employees who had been separated via RIF.

**Data Call**

Agencies must submit to OPM at employ@opm.gov confirmation that the agency has issued a notice to rescind any RIFs that were noticed between October 1, 2025 and November 12, 2025, no later than **November 19, 2025**.

**Additional Information**

For additional guidance, agency headquarters-level human resources offices may contact the OPM contacts listed below. Employees should contact their agency human resources offices for assistance.

- Pay: PayPolicy@opm.gov
- Leave: LeavePolicy@opm.gov
- Labor Relations and Adverse Action Furlough Procedures: awr@opm.gov
- Executive Resources: SERS@opm.gov
- Hiring: employ@opm.gov
- Documentation of Personnel Actions: OPMDataHelpDesk@opm.gov
- Retirement: benefits@opm.gov