1  STANLEY E. WOODWARD, JR.
   Associate Attorney General
2
3  BRETT A. SHUMATE
   Assistant Attorney General
4  ERIC J. HAMILTON
5  Deputy Assistant Attorney General

6  MICHAEL K. VELCHIK
   Senior Counsel to the Assistant Attorney General
7
8  ELIZABETH HEDGES
   Counsel to the Assistant Attorney General
9  Civil Division

10 CHRISTOPHER R. HALL
   Assistant Branch Director
11
12 BRAD P. ROSENBERG
   Special Counsel
13
   STEVEN M. CHASIN (DC Bar No. 495853)
14 PIERCE J. ANON
   Trial Attorneys
15 Civil Division, Federal Programs Branch
   U.S. Department of Justice
16 1100 L Street, NW
   Washington, DC 20005
17 Phone: (202) 305-7573
   E-mail: pierce.anon@usdoj.gov
18 *Attorneys for Defendants*

19            **UNITED STATES DISTRICT COURT FOR THE**
20            **NORTHERN DISTRICT OF CALIFORNIA**
                 **SAN FRANCISCO DIVISION**
21

| | |
|---|---|
| 22  AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-08302-SI |
| 23                    Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| 24         v. | |
| 25  UNITED STATES OFFICE OF | Hearing Date: December 17, 2025 |
| 26  MANAGEMENT AND BUDGET, et al., | Time: 10:30 a.m. |
|                    Defendants. | Judge: Hon. Susan Illston |
| 27 | Place: San Francisco Courthouse |

28

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

ISSUES TO BE DECIDED.................................................................................................2

BACKGROUND.................................................................................................................2

I.    Statutory And Regulatory Background. ......................................................................2

     a.    Agency Authority to Engage in RIFs. ...........................................................2

     b.    The CSRA Is the Exclusive Review Scheme for Federal Employees.............................3

II.   Factual and Procedural Background..........................................................................6

LEGAL STANDARD .........................................................................................................7

ARGUMENT .......................................................................................................................8

I.    Plaintiffs Will Not Suffer Irreparable Harm Absent a Preliminary Injunction...............................8

II.   This Court Lacks Jurisdiction Over Plaintiffs' Claims....................................................10

     a.    Plaintiffs' Claims Are Precluded by the CSRA And FSLMRS, Thus
        Depriving This Court of Jurisdiction...........................................................10

     b.    Plaintiff AFSA Lacks Standing....................................................................13

III.  Plaintiffs' Claims Are Not Likely to Succeed on The Merits.............................................16

     a.    The Agencies Have Not Violated Section 120(e)...........................................16

     b.    The Agencies Have Not Violated Section 120(a)...........................................18

IV.   The Balance of The Equities And Public Interest Weighs in The Government's Favor. ..............21

V.    Plaintiffs' Proposed Relief Is Final, Not Preliminary......................................................22

VI.   Any Injunctive Relief Should Be Stayed Pending Appeal and Be Accompanied by A
     Bond, And No Declarations Should Be Required................................................24

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alder v. Tennessee Valley Auth.*,

    43 F. App'x 952 (6th Cir. 2002) ........................................................................................ 11

*Alpern v. Ferebee*,

    949 F.3d 546 (10th Cir. 2020) ......................................................................................... 19

*Am. Fed'n of Gov't Emps. v. Trump*,

    2025 WL 1482511(N.D. Cal. May 22, 2025), *stay granted*, 606 U.S. ----,

    2025 WL 1873449 (July 8, 2025) (Mem.), *and injunction vacated*,

    --- F.4th ---, 2025 WL 2716266 (9th Cir. Sept. 19, 2025) ............................................... 12

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*,

    716 F.3d 633 (D.C. Cir. 2013) .................................................................................... 10, 11

*Am. Fed'n of Gov't Emps. v. Trump*,

    2025 WL 1482511 (N.D. Cal. May 22, 2025) ................................................................. 12

*Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*,

    No. 25-cv-10276, 2025 WL 470459 (D. Mass. Feb. 12, 2025) ....................................... 12

*Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*,

    No. C 25-01780 WHA, 2025 WL 2633791 (N.D. Cal. Sept. 12, 2025) ........................... 14

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,

    929 F.3d 748 (D.C. Cir. 2019) ................................................................................*passim*

*Am. Foreign Serv. Ass'n v. Trump*,

    768 F. Supp. 3d 6 (D.D.C. 2025) ................................................................................ 10, 11

*American Foreign Service Association v. Trump (AFSA)*,

    2025 WL 1742853 (D.C. Cir. June 20, 2025) ................................................................. 15

*Axon Enterprise, Inc. v. Fed. Trade Comm'n,*

    598 U.S. 175 (2023) ............................................................................................ 13

*Barton v. Barr,*

    590 U.S. 222 (2020) ............................................................................................ 20

*Colorado River Water Conservation Dist. v. United States,*

    424 U.S. 800 (1976) ............................................................................................ 16

*Crawford v. Bell,*

    599 F.2d 890 (9th Cir. 1979) ............................................................................ 15

*Cross v. Dep't of Transp.,*

    127 F.3d 1443 (Fed. Cir. 1997) ......................................................................... 3

*Elgin v. Department of Treasury,*

    567 U.S. 1 (2012) ....................................................................................... *passim*

*Facebook, Inc. v. Duguid,*

    592 U.S. 395 (2021) ..................................................................................... 17, 20

*Fed. L. Enf't Offs. Ass'n v. Ahuja,*

    62 F.4th 551 (D.C. Cir. 2023) .......................................................................... 13

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education,*

    82 F.4th 664 (9th Cir. 2023) ............................................................................ 22

*Filebark v. U.S. Dep't of Transp.,*

    555 F.3d 1009 (D.C. Cir. 2009) ....................................................................... 12

*Fischer v. United States,*

    603 U.S. 480 (2024) ..................................................................................... 18, 19

*Food & Drug Admin. v. All. for Hippocratic Med.,*

    602 U.S. 367 (2024) ............................................................................................ 15

*Free Enter. Fund v. PCAOB,*

    561 U.S. 477 (2010) ............................................................................................ 11

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) ........................................................................... 23

*Garcia v. United States,*
    680 F.2d 29 (5th Cir. 1982) ..................................................................... 8, 9, 22

*Hartikka v. United States,*
    754 F.2d 1516 (9th Cir. 1985) ........................................................................... 8

*Higher Educ., Inc.,*
    908 F.3d 610 (10th Cir. 2018) ......................................................................... 17

*Keim v. United States,*
    177 U.S. 290 (1900) .......................................................................................... 3

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,*
    342 U.S. 180 (1952) ......................................................................................... 16

*Lyons v. Dep't of Veteran's, Affs.,*
    273 F. App'x 929 (Fed. Cir. 2008) .................................................................. 13

*Markland v. OPM,*
    140 F.3d 1031 (Fed. Cir. 1998) ......................................................................... 3

*Marshall v. HHS,*
    587 F.3d 1310 (Fed. Cir. 2009) ....................................................................... 13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
    571 F.3d 873 (9th Cir. 2009) ........................................................................... 23

*Maryland v. U.S. Dep't of Agriculture,*
    No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) ........................... 11, 22

*Medkirk v. United States,*
    45 Ct. Cl. 395 (Ct. Cl. 1910) ............................................................................. 3

*Missouri v. Biden,*
    114 F.4th 406 (5th Cir. 2024) .......................................................................... 13

*Munaf v. Geren*,

    553 U.S. 674 (2008) .......................................................................................... 7

*Murthy v. Missouri*,

    603 U.S. 43 (2024) ...................................................................................... 13, 14

*Nat'l Treasury Employees Union v. Vought*,

    149 F.4th 762 (D.C. Cir. 2025) ........................................................................ 12

*Nat'l Treasury Emps. Union v. Trump*,

    770 F. Supp. 3d 1 (D.D.C. 2025) ..................................................................... 12

*Nat'l Treasury Emps. Union v. Trump*,

    No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ........................... 15

*Pugin v. Garland*,

    599 U.S. 600, (2023) ........................................................................................ 20

*Regents of Univ. of Cal. v. Am. Broad. Cos.*,

    747 F.2d 511 (9th Cir. 1984) ........................................................................... 24

*Rimini Street, Inc. v. Oracle USA, Inc.*,

    586 U.S. 334 (2019) ......................................................................................... 20

*S. Mills, Inc. v. Nunes*,

    586 Fed. Appx. 702 (11th Cir. 2014) .............................................................. 15

*Sampson v. Murray*,

    415 U.S. 61 (1974) ............................................................................... 8, 9, 21, 22

*Smith v. Dep't of Army*,

    89 M.S.P.R. 82 (2001) ....................................................................................... 8

*Smith v. Dep't of Army*,

    458 F.3d 1359 (Fed. Cir. 2006) .......................................................................... 8

*Stanley v. Univ. of S. Cal.*,

    13 F.3d 1313 (9th Cir. 1994) ........................................................................... 23

*Stormans, Inc. v. Selecky*,

   586 F.3d 1109 (9th Cir. 2009) ................................................................. 8

*Thakur v. Trump*,

   787 F. Supp. 3d 955, 1003 (N.D. Cal. 2025) (Lin, J.), *denying stay pending appeal*,

   148 F.4th 1096 (9th Cir. 2025) ................................................................. 14

*Nken v. Holder*,

   556 U.S. 418 (2009) ............................................................................ 7, 21

*Thunder Basin Coal Co. v. Reich*,

   510 U.S. 200 (1994) ............................................................................ 5, 12

*United States v. Fausto*,

   484 U.S. 439 (1998) ............................................................................ 4, 5

*United States v. Wilkins*,

   25 F.4th 596 (8th Cir. 2022) ................................................................. 17

*Widakuswara v. Lake*,

   No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ............................ 12

*Winter v. Nat'l Res. Def. Council, Inc.*,

   555 U.S. 7 (2008) ............................................................................... 7, 8

**STATUTES**

5 U.S.C. § 3502(a)(1)-(4) ........................................................................... 3

5 U.S.C. § 7103(b)(1) ................................................................................ 14

5 U.S.C. § 7105(a) ..................................................................................... 4

5 U.S.C. § 7121 ......................................................................................... 3

5 U.S.C. § 7123 ..................................................................................... 5, 13

5 U.S.C. § 7511(a)(1) ................................................................................. 4

5 U.S.C. § 7512 ......................................................................................... 4

5 U.S.C. § 7701(a) .................................................................................... 11

5 U.S.C. §§ 7103(a)(9), 7121(a)(1)..................................................................................... 11

5 U.S.C. §§ 1204(a)(2), 7701(g)............................................................................................ 8

22 U.S.C. § 4010a(c)............................................................................................................. 11

22 U.S.C. § 4131(a)(1)........................................................................................................... 10

28 U.S.C. § 1295(a)(9)...................................................................................................... 4, 13

28 U.S.C. § 1331................................................................................................................... 11

Title VII of the Civil Service Reform Act of 1978 ("CSRA"),

    Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (codified at 5 U.S.C. §§ 7101-35)................... 4

Pub. L. No 119-37, §120(a), 120(e), 139 Stat 495 (2025) .................................................. 16

**FEDERAL RULE**

Fed. R. Civ. P. 65(c)............................................................................................................. 25

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

5 C.F.R. § 351.201 ................................................................................................................. 3

5 C.F.R. § 351.901.......................................................................................................... 3-4, 11

5 C.F.R. §§ 315.801, 301.806................................................................................................. 4

**OTHER AUTHORITIES**

Exclusions From Federal Labor-Management Relations Programs ("Executive Order"),

    Exec. Order No. 14251, 90 Fed. Reg. 14,553 (Mar. 27, 2025)............................. 13, 14, 15

Execute, Marriam-Webster Dictionary (12th ed. 2025),

    https://www.merriam-webster.com/dictionary/execute............................................ 16-17

**INTRODUCTION**

Plaintiffs, in seeking to unwind reductions in force (RIFs) planned, initiated, and noticed substantially before and independent of the recent lapse in appropriations, advance a broad reading of the Continuing Resolution (CR) that ended the lapse.  On that reading, they seek sweeping, mandatory preliminary injunctive relief that would require to roll back multiple RIFs to their posture in some cases as far back as April.  This Court should deny Plaintiffs' motion.  District court review of their claims is statutorily precluded; beyond that, Plaintiffs fail to show irreparable harm, standing, and a likelihood of success on their claims.  And even if Plaintiffs could meet their burdens on all those fronts, their requested relief sweeps far too broadly.

The essence of Plaintiffs' preliminary-injunction motion is their disagreement with how certain federal agencies responded to the lapse in appropriations in managing their workforces.  But Plaintiffs' arguments fail across the board because even if all their other legal theories were correct, they have not shown the irreparable harm required to warrant preliminary injunctive relief.  Plaintiffs' irreparable harm theories all rest on alleged injuries insufficient under decades-old controlling authority, potential downstream harms, or harms to non-parties of the sort squarely rejected by the Supreme Court just months ago as a predicate for equitable relief.

As a threshold matter, Plaintiffs' claims do not even belong in federal district court because they concern employment decisions, review of which Congress channeled away from district court in favor of the comprehensive, reticulated administrative-judicial review schemes created by the Civil Service Reform Act (CSRA) and the Federal Service Labor-Management Relations Statute (FSLMRS).  What is more, at least the union Plaintiff AFSA lacks standing.  After being decertified as an exclusive bargaining representative for foreign service employees, AFSA is no longer the recognized bargaining representative of the affected State Department employees and thus has no stake in this litigation that would give it standing.

Jurisdictional preclusion aside, Plaintiffs also fail to prove they are likely to succeed on the merits of their claims.  The centerpiece of Plaintiffs' merits theory, the assertion that Defendants violated Section 120 of the CR, lacks merit.  Nothing in the statutory language suggests that

Congress intended RIFs initiated months before the lapse in appropriations to be swept into the political compromise that ended the lapse.  To the contrary, the provision was added to address RIFs initiated *during* the lapse, not those predating it.  The involvement of the Office of Personnel Management (OPM) and the Office of Management and Budget (OMB) in providing guidance does not change things.  Consistent with their organic statutes and their broader role within the Executive Branches, OPM and OMB provide comprehensive budgetary and personnel advice; there is nothing legally objectionable about their role in addressing the lapse in appropriations, and how that lapse affects federal employment.

Finally, this case does not present a need for preliminary equitable relief—certainly not the extraordinarily burdensome and overbroad relief requested by Plaintiffs.  Plaintiffs' request for relief amounts to *final* relief, not *preliminary* relief.  If Plaintiffs' proposed order is granted, there would be no remaining relief that this Court could provide Plaintiffs regarding their Section 120(e) claims.  Plaintiffs' motion should be denied.

## ISSUES TO BE DECIDED

1.  Whether Plaintiffs have carried their burden to establish that they are likely to suffer irreparable harm in the absence of preliminary injunctive relief.

2.  Whether Plaintiffs have carried their burden of establishing the Court's jurisdiction over claims arising out of the federal employment relationship.

3.  Whether Plaintiffs have established standing.

4.  Whether Plaintiffs are likely to succeed on the merits.

5.  Whether the equities favor preliminary injunctive relief.

6.  Whether Plaintiffs' proposed relief is overly broad.

## BACKGROUND

I.    **Statutory And Regulatory Background.**

a.    **Agency Authority to Engage in RIFs.**

For approximately 150 years, Congress has recognized federal agencies' authority to engage in RIFs.  Over the decades, courts repeatedly recognized that such reductions were a matter

of executive discretion. *See, e.g.*, *Keim v. United States*, 177 U.S. 290, 295 (1900); *Cross v. Dep't of Transp.*, 127 F.3d 1443, 1447 (Fed. Cir. 1997); *Medkirk v. United States*, 45 Ct. Cl. 395, 401 (Ct. Cl. 1910). Currently applicable law maintains a large role for the exercise of that discretion. It provides that OPM "shall prescribe regulations for the release of competing employees in a reduction in force which give due effect to—(1) tenure of employment; (2) military preference, subject to section 3501(a)(3) of this title; (3) length of service; and (4) efficiency or performance ratings." 5 U.S.C. § 3502(a)(1)-(4). Under current regulations, agencies may invoke RIF authority "when the release is required because of lack of work; shortage of funds; insufficient personnel ceiling; reorganization; the exercise of reemployment rights or restoration rights; or reclassification of an employee's position due to erosion of duties." 5 C.F.R. § 351.201. A "reorganization" is defined as "the planned elimination, addition, or redistribution of functions or duties in an organization." *Id*. § 351.203.

The regulations acknowledge agencies' discretion when deciding that a RIF is necessary. "Each agency is responsible for determining the categories within which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated." *Id.* § 351.201(a)(1). "This includes determining when there is a surplus of employees at a particular location in a particular line of work." *Id.* The regulations further emphasize that "[e]ach agency covered by this part is responsible for following and applying the regulations in this part when the agency determines that a reduction [in] force is necessary." *Id.* § 351.204. Generally, federal employees may challenge RIFs at the MSPB. *Id.* §§ 351.901, 1201.3(a)(6); *see also* 5 U.S.C. § 7121. The MSPB's decision can be appealed to the Federal Circuit. *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998).

### b. The CSRA Is the Exclusive Review Scheme for Federal Employees.

Before 1978, federal employees could challenge agency actions regarding their employment in district courts nationwide under various statutes and regulations. *Elgin* v. *Department of Treasury*, 567 U.S. 1, 13-14 (2012). But that "outdated patchwork" produced "wide variations" in outcomes and a "wasteful and irrational" "double layer of judicial review." *Ibid.* (quoting

1   *United States v. Fausto*, 484 U.S. 439, 444-445 (1998)).  Congress therefore enacted the CSRA to

2   "establish[] a comprehensive system for reviewing personnel action taken against federal employ-

3   ees."  *Id.* at 5 (quoting *Fausto*, 484 U.S. at 455).

4           The CSRA "establishe[s] a comprehensive system for reviewing personnel action taken

5   against federal employees."  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (citation omitted).

6   If an agency takes a final adverse action against an employee no longer in his or her probationary

7   period—including removal, suspension for more than 14 days, reduction in grade or pay, or

8   furlough for 30 days or less, 5 U.S.C. § 7512—the employee may appeal to the MSPB.  *Id.*

9   § 7513(d).  The MSPB may order relief to prevailing employees, including reinstatement, backpay,

10  and attorney's fees. *Id*. §§ 1204(a)(2), 7701(g).  Non-probationary employees may appeal final

11  MSPB decisions to the Federal Circuit, which generally has "exclusive jurisdiction" over such

12  appeals. 28 U.S.C. § 1295(a)(9).  This statutory review scheme, too, is "exclusive, even for

13  employees who bring constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 13.[1]

14          The FSLMRS, set forth in Title VII of the Civil Service Reform Act of 1978 ("CSRA"),

15  Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (codified at 5 U.S.C. §§ 7101-35), governs

16  labor relations between the Executive Branch and its employees.  The statute "establishes a scheme

17  of administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d

18  748, 752 (D.C. Cir. 2019) ("*AFGE*").  Under that scheme, the Federal Labor Relations Authority

19  ("FLRA") reviews matters including negotiability and "unfair labor practice[]" disputes or claims.

20  *See* 5 U.S.C. § 7105(a).  When reviewing unfair labor practice complaints, it is "the FLRA [that]

21

22  [1] Federal employees serving in their probationary periods (for the Competitive Service) or trial
    periods (for the Excepted Service) generally are not considered "employee[s]" for purposes of the
23  CSRA's Chapter 75, 5 U.S.C. § 7511(a)(1), but remain properly considered as "applicants" for
    employment under an extended hiring and evaluation period.  *See* 5 U.S.C. § 7511(a)(1)(A)-(B)
24  (one-year trial period), (C) (two-year trial period); 5 C.F.R. §§ 315.801, 301.806.  However, many
    of the protections of the CSRA's Chapter 23 extend to both "applicants and employees." *See, e.g.*,
25  5 U.S.C. § 2302(a)(2)(A)(i)–(xii) (identifying "personnel action[s]" that may form the basis for
    alleged prohibited personnel practices "with respect to an employee in, or applicant for, a covered
26  position in an agency").  And probationers have appeal rights under 5 C.F.R. § 351.901, *see id.*
27  § 351.501(b)(2).

28  Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
    3:25-cv-08302-SI

                                                    4

1  resolves whether an agency must bargain over a subject, violated the duty to bargain in good faith,

2  or otherwise failed to comply with the Statute." *AFGE*, 929 F.3d at 752 (citing 5 U.S.C. §§

3  7105(a)(2)(G), 7116(a), 7118)).  Direct review of the FLRA's decisions on unfair labor practice

4  and negotiability issues is available in the courts of appeals. 5 U.S.C. § 7123(a).

5       Given that "'elaborate' framework," *Elgin*, 567 U.S. at 11 (quoting *Fausto*, 484 U.S. at

6  443), the Supreme Court has repeatedly held that the CSRA precludes other courts' jurisdiction

7  over claims falling within the CSRA's purview.

8       In *Fausto*, the Supreme Court held that the CSRA precluded the Claims Court's jurisdiction

9  over a backpay suit even though the federal employee in question was excepted from the compet-

10  itive service and lacked the right to appeal an adverse personnel action to the MSPB.  484 U.S. at

11  442-443, 455.  Looking to the "statutory language" and "structure," the Court held that the exclu-

12  sion of some employees (including the *Fausto* respondent) from the CSRA reflected "a considered

13  congressional judgment that they should not have statutory entitlement to review for adverse action

14  of the type governed by" the statute.  *Id.* at 448-449.  That scheme enables "a unitary and consistent

15  Executive Branch position on matters involving personnel action," "avoids an 'unnecessary layer

16  of judicial review' in lower federal courts," and promotes "more consistent judicial decisions."  *Id.*

17  at 449 (citation omitted).

18       In *Elgin*, the Supreme Court reaffirmed *Fausto*, applying the framework for jurisdictional

19  channeling from *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200 (1994).  That framework asks

20  first whether Congress's intent "to preclude initial judicial review" "is 'fairly discernible in the

21  statutory scheme'" and second whether the claims brought are "of the type Congress intended to

22  be reviewed within this statutory scheme."  *Id.* at 207, 212 (citation omitted).  *Elgin* first held that

23  "the CSRA provides the exclusive avenue to judicial review when a qualifying employee chal-

24  lenges an adverse employment action," even when the employee alleges "that a federal statute is

25  unconstitutional."  567 U.S. at 5.  Since the CSRA "entirely foreclose[s] judicial review [for] em-

26  ployees to whom the CSRA *denies* statutory review," "employees to whom the CSRA *grants* ad-

27  ministrative and judicial review" cannot bypass the CSRA.  *Id.* at 11.  *Elgin* then held that the

28

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

employees' claims were of the type that Congress intended to channel to the MSPB. *Id.* at 15-23. "[T]he MSPB routinely adjudicates some constitutional claims," and the employees were challenging a "CSRA-covered employment action" at the heartland of the MSPB's jurisdiction. *Id.* at 12, 22.

**II.    Factual and Procedural Background.**

The government incorporates the background provided in its Opposition to Plaintiffs' TRO Motion, ECF No. 41, and in its Opposition to Plaintiffs' First Preliminary Injunction Motion, ECF No. 85. Defendants also incorporate all of their prior filings and declarations in this case. In so doing, Defendants note two issues in particular.

First, regarding the Department of Education's Office for Civil Rights, and as set forth in detail in the Declaration of Jacqueline Clay Pursuant to Order Issued at November 14, 2025 Status Conference, "[o]n October 14, 2025, ED emailed the OCR employees who had received RIF notices in April stating that their separation dates had been recalculated from June to November." ECF No. 117-2 ¶ 18. A copy of the October 14 email is attached to the declaration as Exhibit A.

Second, and as relevant to Plaintiffs' Preliminary Injunction Motion, DoD is submitting a supplemental declaration noting that RIFs at the Defense Contract Audit Agency ("DCAA") were rescinded on December 12, 2025.

On December 3, Plaintiffs filed their latest Motion for a Temporary Restraining Order, which related to impending RIFs at the Department of State. ECF No. 123-1. The same day, Plaintiffs also filed a motion for leave to file a supplemental complaint, ECF No. 121, and a motion to shorten the time to hear that motion for leave. ECF No. 122. The next day, the Court granted the latter two motions. ECF No. 124.

On December 4, the Court entered a Temporary Restraining Order. ECF No. 125. The Court ordered that OPM, OMB, and State are stayed and enjoined from taking any action to "implement, carry out, or effectuate RIFs of employees of the Department of State, including any actions to separate employees from federal employment." *Id.* at 3. The Court ordered each of those Defendants to submit a declaration verifying compliance with the Order and detailing the

steps taken to comply. *Id*. The Court also scheduled an in-person hearing on December 17 for arguments on the preliminary injunction motion. *Id*. Defendants filed those responsive declarations on December 8. ECF Nos. 129, 129-1–129-3.

On December 9, Plaintiffs filed their Motion for a Preliminary Injunction. Plaintiffs' Motion for a Preliminary Injunction ("Pls.' Mot."), ECF No. 130-12. That motion seeks relief as to OMB, OPM, the U.S. Department of Education ("Education"), the U.S. Department of Defense ("Defense"), the U.S. Department of State ("State"), the General Services Administration ("GSA"), and the Small Business Administration ("SBA"). Plaintiffs' proposed injunction, if granted, would (1) enjoin Defendants from taking any action to separate employees from federal employment "through at least January 30, 2026," (2) mandate that the Defendants give notice of the injunction to all employees at Education and State who were previously sent communication informing them of a RIF or intent to RIF after November 12, (3) have OMB, OPM, State, GSA, and SBA rescind RIFs that were implemented or executed between October 1 and November 12 as well as reinstate those employees to their September 30 status and provide back pay, and (4) mandate that Defendants file declarations verifying compliance with an injunction order. Plaintiffs' Proposed Order ("Pls.' Prop. Ord."), ECF No. 130-13.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy[.]" *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted). A district court should enter preliminary relief only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id*. at 20. When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**ARGUMENT**

I.      <u>**Plaintiffs Will Not Suffer Irreparable Harm Absent a Preliminary Injunction.**</u>

The Court should not issue a preliminary injunction because Plaintiffs have not shown that they face a risk of irreparable harm without one. The irreparable harm standard requires Plaintiffs to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. A "possibility" of irreparable harm is not enough. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20-22). Here, Plaintiffs rely on the sorts of classically reparable harms that do not justify preliminary equitable relief.

The employment-related harms Plaintiffs assert—up to and including loss of federal employment—are generally not irreparable. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 88-91 (1974) (rejecting notion "that either loss of earnings or damage to reputation might afford a basis for a finding of irreparable injury and provide a basis for temporary injunctive relief"); *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985) (treating "loss of income, loss of retirement and relocation pay, and damage to . . . reputation" as "insufficient under the *Sampson* standard to justify injunctive relief"); *Garcia v. United States*, 680 F.2d 29, 31-32 (5th Cir. 1982) ("It is practically universal jurisprudence in labor relations in this country that there is an adequate remedy for individual wrongful discharge after the fact of discharge."). That is because the MSPB may make employees with meritorious claims whole through reinstatement, backpay, and attorney's fees. 5 U.S.C. §§ 1204(a)(2), 7701(g); *see also Smith v. Dep't of Army*, 458 F.3d 1359, 1366 (Fed. Cir. 2006) ("Reinstatement, back pay, and benefits are routinely awarded by the Board[.]"). And although Plaintiffs rely on employees' possible losses of wages and benefits, the Supreme Court has explained that these sorts of burdens common to most losses of government employment are insufficient. *See Sampson,* 415 U.S. at 92 n.68 ("insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself— will not support a finding of irreparable injury"); *see also Smith v. Dep't of Army*, 89 M.S.P.R. 82, 83 (2001) (noting remedial actions for life and health insurance for federal employee reinstated

after RIF). Given the availability of these remedies, Plaintiffs' injuries are remediable.

The same goes for "stress and anxiety." Just as feared or actual job loss is not irreparable harm that can justify preliminary equitable relief, neither is emotional distress related to such feared or actual job loss. Pls.' Mot. at 11; *see e.g.* Decl. of Maria Asturias, ECF No. 130-2 ¶20; Decl. of Pace Schwarz, ECF No. 130-11 ¶27; Decl. of Rosa Garcia, ECF No. 130-3 ¶16; Decl. of Patricia Salcedo, ECF No. 130-9 ¶15; Decl. of Adam Sheffler, ECF No. 130-10 ¶15. Moreover, if Plaintiffs' decision to style their claims as being brought under the APA means that damages are not available, that is a result of their litigation strategy—not the government's actions. Plaintiffs cannot make otherwise reparable injuries irreparable by choosing to proceed under the APA.

Finally, this Court's prior Preliminary Injunction Order, ECF No. 94, posited the existence of an exception to *Sampson v. Murray*'s broad holding that employment-related harms are not irreparable as the basis for its finding of irreparable harm from RIFs initiated during the lapse in appropriations. *Id.* at 37-40; 415 U.S. 61, 63, 89-90, 92 (1974). The Court reasoned that such an exception applies as "RIFs during a government shutdown are not 'ordinary' RIFs. . . ." *Id.* at 37. But even if any such carve-out from the *Sampson v. Murray* rule could be said to exist, it would be facially inapplicable to many of the RIFs at issue in Plaintiff's new motion, as they were not initiated *during* the lapse, but months before, for reasons unrelated to any future lapse. Abrogating *Sampson v. Murray*'s holding as to those RIFs would be unwarranted here because they cannot be said to fall within any narrow exception the Supreme Court contemplated for extraordinary (and undefined) employment-related scenarios.

For these reasons, Plaintiffs have failed to show irreparable harm, and their motion should be denied on this basis alone.

## II.    This Court Lacks Jurisdiction Over Plaintiffs' Claims.

### a.    Plaintiffs' Claims Are Precluded by the CSRA And FSLMRS, Thus Depriving This Court of Jurisdiction.

Plaintiffs' claims are centered on the terms and conditions of federal employment, and thus must be channeled to agency adjudication in the MSPB and FLRA under the CSRA and the

FSLMRS, respectively, not in district court.[2]  *See* Pls.' Mot. at 13-17.  Under either scheme, Plaintiffs may seek judicial review of adverse decisions by the MSPB or FLRA in the courts of appeals.  But they cannot avoid these comprehensive statutory schemes simply because they prefer to litigate before this Court.  Plaintiffs seek to enjoin the defendant agencies from "taking any action to implement, carry out, or effectuate reductions in force ("RIFs").  Proposed Order at 2, ECF No. 130-13.  No matter how Plaintiffs style their claims, they concern the federal employer-employee relationship and thus must be channeled through the avenues created by Congress under the CSRA and the FSLMRS under a longstanding and mounting body of precedent.

Congress has "established a comprehensive system" as the "exclusive means" for reviewing the federal agency employment decisions challenged by Plaintiffs here.  *Elgin*, 567 U.S. at 5, 8 (citation omitted).  The CSRA, together with the FSLMRS, "creates an integrated scheme of administrative and judicial review, wherein the Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims."  *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) ("*Air Force*") (cleaned up).  Congress allowed certain employees to challenge agency personnel decisions "by litigating their claims through the statutory scheme in the context of [a] concrete" dispute, limited to the claims and remedies provided by Congress.  *See AFGE*, 929 F.3d at 757.  Such an exclusive alternative scheme displaces district-court jurisdiction under 28 U.S.C. § 1331 if "the claims at issue are of the type Congress intended to be reviewed within the statutory structure."  *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 489 (2010) (cleaned up).

Plaintiffs' claims are of the type Congress intended to be reviewed in the first instance by agency adjudicators—not federal district courts.  *See AFGE*, 929 F.3d at 755.  Plaintiffs challenge

---

[2]  The CSRA and the FSLMRS apply broadly to the claims Plaintiffs assert on behalf of their civil service members. A different statutory scheme similarly channels the claims that they assert on behalf of foreign service employees of the State Department.  Claims by or on behalf of foreign service employees are channeled to the Foreign Service Grievance Board ("FSGB") under the Foreign Service Act.  *See Am. Foreign Serv. Ass'n v. Trump*, 768 F. Supp. 3d 6, 22 (D.D.C. 2025) (noting that the FSA contains a "sweeping definition of 'grievance'" that "would permit a foreign USAID employee or union representative to challenge before the FSGB or FSLRB the whole range of actions to which plaintiffs [ ] object") (citing 22 U.S.C. § 4131(a)(1)).

the agencies' past RIF decisions.  But federal employees (such as Plaintiffs' members) who believe a RIF has violated a statute or regulation may seek redress only through the MSPB, *see* 5 U.S.C. § 7701(a); 5 C.F.R. § 351.901, or another specialized scheme for administrative review.  *See, e.g.*, 22 U.S.C. § 4010a(c); *see also Alder v. Tennessee Valley Auth.*, 43 F. App'x 952, 956 (6th Cir. 2002) ("[A] challenge to [a] reduction-in-force decision" is "a fundamental employment claim subject to MSPB review.").

Plaintiffs may not evade this scheme by bringing claims as unions asserting harms to their members or asserting a loss of membership dues.  Otherwise, any unionized employee "could circumvent the CSRA's strictures."  *See Air Force*, 716 F.3d at 639.  Moreover, the FSLMRS "establishes a comprehensive scheme to deal with labor relations in federal employment," which channels adjudication to the FLRA followed by direct review in the courts of appeals.  *Id.* at 636 (citation omitted).  Under the FSLMRS, unions may file a grievance under preexisting collective bargaining agreements "concerning any matter relating to the employment of any employee," "the effect or interpretation, or a claim of breach, of a collective bargaining agreement," or "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment."  5 U.S.C. §§ 7103(a)(9), 7121(a)(1).

These comprehensive provisions foreclose Plaintiffs' attempt to raise their labor dispute in district court.  Indeed, numerous courts have recently applied the same preclusion principle to similar federal employment suits brought by both employees and unions (including Plaintiff AFGE).  *See, e.g.*, *AFGE*, 929 F.3d at 753, 761 (challenge to three executive orders governing collective bargaining and grievance processes); *Maryland v. U.S. Dep't of Agriculture*, No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) (termination of probationary employees); *Am. Foreign Serv. Ass'n v. Trump*, No. 25-cv-352, 2025 WL 573762, at *8-*11 (D.D.C. Feb. 21, 2025) (challenge to employees' placement on administrative leave); *Nat'l Treasury Emps. Union v. Trump*, 770 F. Supp. 3d 1, 7-11 (D.D.C. 2025) (challenge to terminations of probationary employees, anticipated RIFs, and deferred-resignation program); *Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, No. 25-cv-10276, 2025 WL 470459, at *1-*3 (D. Mass. Feb. 12, 2025) (challenge to

deferred-resignation program); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025) (noting that "'[w]e have long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions.'" (quoting *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009))); *Nat'l Treasury Employees Union v. Vought*, 149 F.4th 762, 775 (D.C. Cir. 2025) ("*NTEU*") (holding that "the claims seek redress for allegedly unlawful terminations—the heartland of CSRA coverage" and "the CSRA precludes district-court jurisdiction over the claims of the" unions). Although this Court disagreed when issuing an injunction in a different employment-related case (an injunction that was subsequently stayed, then vacated), *see Am. Fed'n of Gov't Emps. v. Trump*, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025), *stay granted*, 606 U.S. ----, 2025 WL 1873449 (July 8, 2025) (Mem.), *and injunction vacated*, --- F.4th ---, 2025 WL 2716266 (9th Cir. Sept. 19, 2025), and similarly disagreed during prior proceedings in this case, more recent appellate decisions like *NTEU* make clear that channeling precludes district-court jurisdiction.

As these decisions show, it is well settled that claims like Plaintiffs' are channeled to agency adjudication. To the extent the Court specifically considers the *Thunder Basin Coal Co. v. Reich* factors anew, they reinforce that Plaintiffs are required to channel the claims asserted here. *See* 510 U.S. 200 (1994). The first step under *Thunder Basin*—Congress's intent to preclude—is satisfied: Congress established a detailed scheme for adjudicating federal labor disputes. The FSLMRS provides for "administrative and judicial review" regarding disputes between employees and their federal employers and disputes between unions representing those employees and the government. *AFGE*, 929 F.3d at 752. The factors considered under the second step—(i) "could precluding district court jurisdiction foreclose all meaningful judicial review of the claim"; (ii) "is the claim wholly collateral to the statute's review provisions"; and (iii) "is the claim outside the agency's expertise," *Axon Enterprise, Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023) (cleaned up)—also support channeling.

Here, as in the 2019 *AFGE* case, parties can bring certain claims through the administrative process "in the context of concrete . . . disputes." 929 F.3d at 757. Specifically, if any Plaintiff

thinks particular RIFs conflict with the CR, they may assert that claim within one of the review schemes. *See, e.g., Marshall v. HHS*, 587 F.3d 1310, 1318 (Fed. Cir. 2009) (reversing based on an erroneous statutory interpretation); *Lyons v. Dep't of Veteran's Affs.*, 273 F. App'x 929, 931 (Fed. Cir. 2008) (considering whether regulation was violated); *Fed. L. Enf't Offs. Ass'n v. Ahuja*, 62 F.4th 551, 560 (D.C. Cir. 2023) (noting challenges to OPM guidance through the MSPB system). If dissatisfied with a ruling of the MSPB or FLRA, Plaintiffs or their members may obtain judicial review in the courts of appeals. 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7123.

Nor are Plaintiffs' claims "wholly collateral" to the CSRA and FLRA scheme. What matters for this inquiry is whether the subject of Plaintiffs' challenge is a matter covered by the CSRA and FSLMRS, not how Plaintiffs describe their claims. *See Elgin*, 567 U.S. at 22. Here, the subject of Plaintiffs' claims is RIFs and related federal employment and labor matters; their contention that agencies have violated the CR or that the OMB and OPM guidance regarding the CR is unlawful is simply the "vehicle" by which they seek to stop RIFs from taking place. *See id.*

### b. Plaintiff AFSA Lacks Standing.

Further, Plaintiffs are not entitled to relief against agencies they lack standing to sue. "Plaintiffs must demonstrate standing for each claim that they press against *each* defendant, and for each form of relief that they seek. Here, for *every* defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (emphases added) (citation modified), *remanded sub nom. Missouri v. Biden*, 114 F.4th 406 (5th Cir. 2024).

On March 27, 2025, President Trump issued an executive order titled "Exclusions from Federal Labor-Management Relations Programs." Exec. Order No. 14251, 90 Fed. Reg. 14,553 (Mar. 27, 2025) ("Executive Order"). The Executive Order states that "[t]he agencies and agency subdivisions set forth in section 2 of this order are hereby determined to have as a primary function intelligence, counterintelligence, investigative, or national security work," and that it has been "determined that Chapter 71 of title 5, United States Code, cannot be applied to these agencies and agency subdivisions in a manner consistent with national security requirements and considerations." Executive Order § 1(a). The designated agencies include, *inter alia*, the

Departments of State and Defense, Federal Communications Commission, and Environmental Protection Agency, along with subdivisions of the Departments of Treasury, Energy, Agriculture, Justice, and Health and Human Services. *Id.* Pertinent here, the Executive Order excludes from the FSLMRS the subdivisions of departments employing foreign service officers, as well as subdivisions of the Department of State. *Id.* at § 3(c).

Section 7103(b)(1) makes clear that the President may exclude an agency from the FSLMRS whenever he "determines" that the conditions statutorily specified exist.[3] Because Union Plaintiff AFSA no longer has a collective bargaining agreement with the agency and is no longer certified representative of affected State Department employees, AFSA does not retain a stake in this litigation. Any theoretical harm from the RIF of State Department foreign service officers would go to the individual employees themselves, not to the union.

No relief should be granted as to AFSA because it cannot establish Article III standing. *See Murthy*, 603 U.S. at 61; *Thakur v. Trump*, 787 F. Supp. 3d 955, 1003 (N.D. Cal. 2025) (Lin, J.) (no preliminary relief as to agencies that plaintiffs "ha[d] not been injured by"), *denying stay pending appeal*, 148 F.4th 1096 (9th Cir. 2025); *Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*, No. C 25-01780 WHA, 2025 WL 2633791, at *10, *21 (N.D. Cal. Sept. 12, 2025) (Alsup, J.) (no injunctive relief against agencies for which plaintiffs had not shown standing), *appeal filed*, No. 25-5875 (9th Cir. Sept. 18, 2025). Standing requires more than "mere bystander[s]" and instead requires a "personal stake in the dispute"—a hurdle AFSA can no longer clear. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quotations omitted).

Two D.C. Circuit cases (one granting interim relief and one pending) hold the keys to this

---

[3] In relevant part, Section 7103(b)(1) reads:

(b)(1) The President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that--

(A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and

(B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations.

5 U.S.C. § 7103(b)(1).

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

14

issue.  In *Nat'l Treasury Emps. Union v. Trump*, the D.C. Circuit panel stayed pending appeal a lower court decision to enjoin the decertification of Union Plaintiffs pursuant to Executive Order 14251.  *See* No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025).  And in *American Foreign Service Association v. Trump (AFSA),* the court held that the government is likely to prevail because the executive order is likely consistent with the governing statute under appropriately deferential review of the President's national-security determinations, and the injunction's irreparable harm to the government outweighs any potential non-monetary harm to the plaintiff union.  No. 25-5184, 2025 WL 1742853, at *2-3 (D.C. Cir. June 20, 2025).  AFSA filed a petition for rehearing en banc on July 14, 2025, on which the court has not yet ruled.

Given this procedural context, it would be inappropriate to confer standing on AFSA as if it remained a certified bargaining representative for Department of State employees.  Principles of federal comity between the federal sister and superior courts should hold sway in this matter.  As the issue of decertification was properly before the D.C. Circuit, deference should be granted to the earlier case.  *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979) (noting that it is "imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties" and that "[a] court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result."); *see also S. Mills, Inc. v. Nunes,* 586 Fed. Appx. 702, 705 (11th Cir. 2014) (*per curiam*) ("[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.") (citation omitted).  These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation."). So too here.

**III.    Plaintiffs' Claims Are Not Likely to Succeed on The Merits.**

Even if Plaintiffs could establish jurisdiction, they cannot make the requisite "clear showing" that they are likely to succeed on the merits. Their claims are centered on Section 120(a) and (e) of the CR.[4] But their reading of those provisions is flawed in several respects.[5]

### a. The Agencies Have Not Violated Section 120(e).

Plaintiffs argue that State, DoD, GSA, and SBA violated Section 120(e) by separating employees during the lapse in appropriations. Pls.' Mot. at 20. Section 120(e), as with Section 120(a), is focused on undoing the effects of RIFs initiated during the lapse, not the completion of RIFs unconnected to, and initiated long before, the lapse. Section 120(a) works in tandem with Section 120(e) to invalidate any lapse-related RIFs and prevent any new RIFs from taking place while the CR remains in effect.

The text confirms as much. Section 120(e) identifies a string of prohibited actions (e.g. RIFs that are *proposed*, *noticed*, *initiated*, *executed*, *implemented*) but then qualifies that series to prohibit administrative actions that were "otherwise taken by an Executive Agency" between

---

[4] Section 120(a) and 120(e) of the CR provide that:

> 120(a): Notwithstanding section 106(1), during the period between the date of enactment of this Act and the date specified in section 106(3) of this Act, no federal funds may be used to initiate, carry out, implement, or otherwise notice a reduction in force to reduce the number of employees within any department, agency, or office of the Federal Government.

> 120(e): Notwithstanding section 106(1), any reduction in force proposed, noticed, initiated, executed, implemented, or otherwise taken by an Executive Agency between October 1, 2025, and the date of enactment [November 12, 2025] shall have no force or effect.

Pub. L. No 119-37, §120(a), 120(e), 139 Stat 495 (2025).

[5] Plaintiffs also contest OPM's and OMB's guidance regarding Section 120's application to RIFs. Plaintiffs frame the guidance documents as "directives"—but these documents were advisory in nature. Pls.' Mot. at 13-15. It is unclear why Plaintiffs believe them to be commands demanding adherence. Indeed, Plaintiffs' citation, Pls.' Mot. at 5, of these "directives" links back to their first preliminary injunction motion, ECF No. 79-1. Plaintiffs' brief shows their expansive attempt at reframing and calls OPM's documents for what they are—"OPM Guidance," *id*. at 6, 7, "recommend[ation]," *id*. at 7, "Special Instructions," *id*. at 7. Defendants' opposition to Plaintiffs' first preliminary injunction motion more expansively addresses the impermissibility of challenging OMB and OPM's actions. Defs.' Prelim. Inj. Opp'n, ECF No. 13-14.

October 1 and November 12. This is commonly understood as the series-qualifier canon. The canon instructs that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 615 (10th Cir. 2018) (alteration in original) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012). Far from being an arcane method of statutory interpretation, the Supreme Court has found that the canon "generally reflects the most natural reading of a sentence," *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), and the Eighth Circuit has noted that it can "reinforce[]" plain meaning, *United States v. Wilkins*, 25 F.4th 596, 600 (8th Cir. 2022). Here, the canon necessarily qualifies the preceding prohibited actions to be forbidden only if they were "otherwise taken"—*i.e.* the government acted on the RIFs during the October 1 to November 12 lapse period. But because the RIFs in question were effectively self-executing once the notice was issued, section 120(e) does not bar the challenged agency actions.

Underscoring the flaws of Plaintiffs' reading, they argue that the term "execute" along with "implemented" captures a prohibition of ministerial, downstream administrative actions related to finalizing a RIF. Pls.' Mot. at 20-21. Plaintiffs argue that is the case even as to RIFs noticed more than three months before the lapse in appropriations. *Id.* At most, Plaintiffs are only partially correct. And even then, only if the series-qualifier canon would not apply to limit the terms' meanings. Indeed, the word "execute" is most readily attached to operationalizing an administrative action. That is, it refers to the front-end administrative mechanics of a RIF. Among other definitions, execute means "to perform what is required to give validity to (something)." Execute, Marriam-Webster Dictionary (12th ed. 2025), https://www.merriam-webster.com/dictionary/execute. Like executing a document. Or executing a plan. Here, the agency "executes" a RIF when it takes formal action that sets the separation in motion. It does not naturally encompass every later administrative consequence of a RIF until the final day of the administrative clean-up.

The statutory context also bolsters that view. Section 120(e)(1) says, "Any employee who received *notice* of being subject to such a reduction in force shall have that *notice* rescinded and be returned to employment status as of September 30, 2025, without interruption." (emphasis added). Similarly, Section 120(e)(2) provides that agencies must "send notice to all affected employees … of the withdrawal of the reduction in force *notice* and the affected employee's reinstatement, if applicable. " (emphasis added). That context, which frames the RIF notice as the temporal anchor of Congress's concern, supports that later clerical or administrative actions occurring outside the self-executing RIF notice were not contemplated as prohibited by the statute.

### b. The Agencies Have Not Violated Section 120(a).

Plaintiffs likewise contend that the Departments of Education and State will violate Section 120(a) by completing the separation of employees pursuant to pre-lapse RIF notices. *See* Pls.' Mot. at 18-20. Plaintiffs reason that Section 120(a) prohibits even these ministerial actions, taking place months after the RIFs were originally noticed, because the finalizing of clerical SF-50 documents is the "carry[ing] out" or "implement[ation]" of a RIF. *Id.* at 18. Not so.

Start with the text. The meaning of the verbs "initiate," "carry out," and "implement" are all modified by the phrase "otherwise notice a reduction in force." The thing that is prohibited is the initiation, implementation, or carrying out of new RIF notices. To read "implement" as capturing any action of any form regarding RIFs would render the surrounding terms meaningless. Established canons of statutory construction reinforce this reading. Under the canon of *noscitur a sociis*, "a word is 'given more precise content by the neighboring words with which it is associated.'" *Fischer v. United States*, 603 U.S. 480, 487 (2024). Meaning that the surrounding terms inform the scope and meaning of any disputed language here. Reading the word "implement" as referring to implementing a new RIF notice "avoids ascribing to one word"— implement—"a meaning so broad that it is inconsistent with the company it keeps." *Id.* (internal quotation marks omitted).

Under *noscitur a sociis*, the word "implemented" should track to the same neighborhood of meanings that surround it; that is, the first-order act of carrying the plan into operation (decision

and issuance), not the eventual downstream "effective date" event. Otherwise, the list becomes oddly lopsided. Congress would have used three out of the four words enumerated in the list to cover planning and notice steps and one word of the list to cover final personnel separation events. All without *ever actually* saying the words "separate"—"release"—"terminate." That is a red flag.

Indeed, Plaintiffs' Proposed Order gives away their strained reading. Plaintiffs ask the Court to enjoin actions to "implement, carry out, or effectuate the RIFs" as well as actions "to separate employees." Pls.' Prop. Ord. at 2. That is Plaintiffs adding language that Congress did not use. And it goes to show that their reading is not the most natural reading of the text if they have to graft their own language onto the statute to obtain the relief they are seeking. If Congress meant to add language prohibiting the purely ministerial and administrative act of separating employees, it would have said "separate." Plaintiffs are asking this Court to add words that Congress did not use. *Id.*

As was the case with Section 120(e), the series-qualifier canon confirms that a more limited understanding of the series, applying only to front-end administrative actions, is the correct import of the text. Applied here, the three verbs in sequence: "initiate," "carry out", and "implement," operate in parallel, with two of the three activities unmistakably applying to front-end administrative personnel actions, such as the issuance of a RIF notice. To resolve any ambiguity, the postpositive modifier catch-all—"or *otherwise notice* a reduction in force"—applies to the preceding sequence. The narrow catch-all necessarily cabins the previously listed verbs as only prohibiting front-end administrative RIF actions.

The separation of the listed acts by a comma evidences the qualifier's modification of the previous terms. *Alpern v. Ferebee*, 949 F.3d 546, 550 (10th Cir. 2020) (holding that the terms "along roads or trailsides" modified the entire series of activities enumerated in a statute, including "parking" and "picnicking," as "[e]ach element is separated only by a comma, and no words or punctuation interrupt the series' nouns . . . [and] [n]o odd punctuation breaks up the series' flow."); *cf. Facebook*, 141 S. Ct. at 1170 ("[A] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the

1    immediately preceding one.").

2         Plaintiffs argue that the terms in the prohibited series of RIF actions would be mere sur-

3    plusage if they were not differentiated in meaning. Pls.' Mot. at 14. But the words used in the CR

4    are not readily fungible. Indeed, different front-end work exists and differentiates the terms. "In-

5    itiate" is the start of the process. "Notice" is the formal notice issuance. "Implement" means

6    carrying the decision into initial operation like issuing retention registers. These are real distinc-

7    tions even if all actions occur before the technical separation date.

8         And even if the meanings were not readily distinguishable, lawmakers often approach leg-

9    islation with a belt-and-suspenders style of drafting. The Supreme Court has recognized that

10   "'[s]ometimes the better overall reading of the statute contains some redundancy,'" and that

11   "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of

12   the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini Street,*

13   *Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)); *see also Pugin v. Garland*, 599 U.S. 600, 609,

14   (2023) (explaining that sometimes Congress wants "to be doubly sure"). This is such a case here,

15   where the claimed redundancy concerns the series of verbs that Plaintiffs oddly concede do at least

16   have some overlap. Pls.' Mot. at 14. Plaintiffs' argument that the terms must be distinguished in

17   a manner of their preference is not enough to justify expanding the statute into a sweeping freeze

18   on all downstream RIF actions.

19        Finally, the purpose of Section 120 was to prevent new RIF from being initiated while the

20   CR is in effect and to undo RIF notices initiated during the lapse. Part of the grand bargain to end

21   the lapse in appropriations was to halt and reverse any RIF that happened because of or during the

22   shutdown. RIFs initiated prior to the lapse are not readily part of that statutory purpose to void the

23   lapse RIFs and protect the employees affected by them from separation.

24

25

26

27

28

Defendants' construction of Section 120 is a reasonable interpretation of the statutory framework. Plaintiffs therefore fail to make a "clear showing" that they are likely to succeed on the merits.[6]

## IV.    The Balance of The Equities And Public Interest Weighs in The Government's Favor.

A preliminary injunction also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken*, 556 U.S. at 435 (holding that "[t]hese factors merge when the Government is the opposing party"). Plaintiffs' requested injunction would irreparably harm the government, including by substituting Plaintiffs' preferred policies for those chosen by the Executive Branch and by requiring agencies to retain employees they would otherwise have discharged or reassigned. The RIFs in question predate the lapse in appropriations, with some in the works for months. *See* Pls.' Mot. at 7-8 (describing RIFs noticed at Department of State on July 11, as well as those noticed by Department of Defense in August). Plaintiffs' alleged injuries cannot outweigh the government's harms here.

First, the requested preliminary injunction (PI) would irreparably harm the government. The President, through OMB, has determined that agencies should operate more efficiently and has directed them to consider steps to optimize their workforces. A PI would prevent agencies from taking steps to implement this policy priority and determining how best to organize their workforces, even though the government has "traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83. And it would halt agencies from engaging in the kind of RIF proceedings suggested by OMB, with implications across the Executive Branch.

Moreover, a PI would require agencies to retain employees they would otherwise have discharged (or reassigned) via RIF or rescind RIF notices for employees already separated. The government will not be able to recover the cost of those salaries and benefits, even if the Court's

---

[6] Plaintiffs argue that State's and Education's actions to implement the RIFs violate the Appropriations Clause. *See* Pls.' Mot. at 19-20. That argument is contingent on Plaintiffs' improper reading of Section 120(a). Because Defendants' actions are consistent with Section 120(a), there can be no Appropriations Clause violation.

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI

1   order is vacated.  *See Maryland*, 2025 WL 1073657, at *1.  Such an order could cost the

2   government millions of dollars each week.  And would disregard the time, resources, and effort

3   already invested in substantially finalizing RIFs that have been underway, in some instances for

4   many months.  Finally, a district court's exercise of jurisdiction over a federal employment

5   dispute—in the face of a comprehensive remedial scheme for resolving such issues—has a

6   "disruptive effect on the administrative processes established by the government to handle cases

7   such as these."  *Garcia*, 680 F.2d at 32.

8          On the other side of the ledger, Plaintiffs have not established irreparable injury.  As

9   discussed above, in the ordinary course, employment disputes rarely justify preliminary relief

10  because there are procedures by which a terminated employee may obtain backpay following final

11  judgment.  *See, e.g.*, *Sampson*, 415 U.S. at 92 & n.68.  And Plaintiffs' irreparable-harm arguments

12  fail for the additional reasons discussed above.  Moreover, Plaintiffs would need to establish

13  standing to seek the full scope of relief that they seek.  *See supra* Section II(b).

14         For these reasons, this Court should deny Plaintiffs' motion for a preliminary injunction.

15  Nonetheless, if the Court grants Plaintiffs' motion, it should limit or narrow the scope of any

16  preliminary injunction as set forth below.

17  **V.    Plaintiffs' Proposed Relief Is Final, Not Preliminary.**

18         Among other things, Plaintiffs would have this Court enforce Section 120(e) of the

19  Continuing Resolution by ordering Defendants to (1) rescind RIF notices by providing individual

20  notice to federal employees covered by the injunction and (2) reinstate employees who were

21  separated pursuant to RIFs during the lapse in appropriations.  *See* Pls.' Mot at 1, 17, 20, 24;

22  Proposed Order § 3(a)-(c), ECF No. 130-13.  This request should be rejected out of hand: Rather

23  than preserving the status quo, Plaintiffs' proposed relief would provide them with the equivalent

24  of final relief on the merits.

25         In support, Plaintiffs cite *Fellowship of Christian Athletes v. San Jose Unified School

26  District Board of Education*, 82 F.4th 664, 682 (9th Cir. 2023), but in that case, the Ninth Circuit

27  simply addressed whether enforcement of the challenged action (a school district policy)

28

represented the status quo for purposes of determining whether an injunction enjoining its implementation should be subject to a higher standard. The panel did not hold that it would be appropriate on a programmatic level to reach and attempt to unwind the challenged action—the relief that Plaintiffs seek here—and that the Ninth Circuit has cautioned against. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (finding that mandatory injunctive relief is "'particularly disfavored'" because the relief "'goes well beyond simply maintaining the status quo *pendente lite*.'"); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)).

Plaintiffs' preferred remedy is far closer to the overturned district court decision in *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, than in any of the cases in which they rely. 571 F.3d 873 (9th Cir. 2009).[7] In *Marlyn,* the enjoined company had distributed a health supplement prior to the lawsuit. *Id.* The district court ordered that the company recall its products and pay restitution to customers who bought the company's products. *Id.* The Ninth Circuit disagreed, finding that the district court order "did not operate simply to preserve the status quo" or to "restrain Marlyn from further acts of possible infringement." *Id.* at 879. By the same logic, Plaintiffs' proposed order calling for reinstatement of employees on administrative leave, recission of the RIF notices, and backpay, are close analogs to the prohibited district order mandating a recall (recission of RIF notices and reinstatement of employees) of its products and restitution (backpay) to those who bought the products. It would amount to being "something more than a prohibitory preliminary injunction." *Id.*

More to the point, the relief Plaintiffs are seeking would be the equivalent of final relief—if pre-lapse RIF notices are rescinded and employees are reinstated, it is unclear what other relief the Court could provide regarding Plaintiffs' Section 120(e) claims. And if the Court were to reach

---

[7] Plaintiffs cite this case in their Motion, Pls.' Mot. at 24, but applied its reasoning to facts that are not present in this matter. Specifically, Plaintiffs cite *Marlyn* for the proposition that an injunction prohibiting a party from taking an action has the effect of preserving the status quo. *Id.* But here, Plaintiffs are asking the Court not just to stop doing some action, but to take affirmative actions in order to wind back the clock of the employee RIFs, as well as other steps such as providing backpay. *See* Pls.' Prop. Ord.

a different conclusion regarding the application of Section 120(e) at the end of this litigation—or if the Government were to appeal and an appellate court were to reach a different conclusion, or find that this Court lacks jurisdiction over Plaintiffs' claims such that it should never have granted any relief—the agencies would need to start the reduction-in-force process anew for these employees. That would be especially prejudicial and costly for the Government—for just one example, the Department of Education has been attempting to finalize its RIF at OCR since April, but those actions were paused until the Department received a stay of a preliminary injunction from the First Circuit mere days before the lapse in appropriations.

Plaintiffs' position is also logically inconsistent. If anything, maintaining the status quo back to the "last, uncontested status which preceded the pending controversy" would place affected employees back on administrative leave per their status as of September 30. *Regents of Univ. of Cal. v. Am. Broad. Cos.,* 747 F.2d 511, 514 (9th Cir. 1984). Plaintiffs' requested relief is unclear because it does not align with a "return to the status quo" they ubiquitously invoke. Returning employees to their status as of September 30 would place them back on administrative leave. It would not turn back the clock by nearly eight months to rescind the RIF notices for certain employees. This mismatch underscores that Plaintiffs are in fact seeking an expansive form of relief. Plaintiffs' requested relief of a rescission of RIF notices and reinstatement of employees presents a fundamental mismatch with the affected employees' status as of that time. Indeed, RIF notices for several agencies were still in place, Pls.' Mot. at 6, and employees at various agencies were also placed on administrative leave, *id.*

If Plaintiffs ultimately prevail on the merits, the Court can then address appropriate final relief—including the rescission of RIFs and reinstatement of employees. Ordering rescissions of RIFs and reinstatement of employees at this early stage is inappropriate.

## VI. Any Injunctive Relief Should Be Stayed Pending Appeal and Be Accompanied by A Bond, And No Declarations Should Be Required.

If the Court issues any injunctive relief, the government respectfully requests that such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor General,

1  or at a minimum, administratively stayed for a period of seven days to allow the government to

2  consider whether to seek an emergency, expedited stay from the court of appeals if an appeal is

3  authorized.

4    The government also respectfully requests that any injunctive relief be accompanied by a

5  bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary

6  injunction or a temporary restraining order only if the movant gives security in an amount that the

7  court considers proper to pay the costs and damages sustained by any party found to have been

8  wrongfully enjoined or restrained." Here, an appropriate bond would be commensurate to the

9  salaries and benefits the government must pay to employees it would prefer to separate from

10  service or who have been reinstated. The government is prepared to submit evidence concerning

11  the appropriate amount of a bond.

12  **CONCLUSION**

13    The Court should deny Plaintiffs' motion.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: December 12, 2025

Respectfully Submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

MICHAEL K. VELCHIK
Counsel to the Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Branch Director
BRAD P. ROSENBERG
Special Counsel
STEVEN M. CHASIN
Trial Attorney
Civil Division, Federal Programs Branch

*/s/ Pierce J. Anon*
PIERCE J. ANON
(N.Y. Bar No. 6184303)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 305-7573
Email: pierce.anon@usdoj.gov

*Attorneys for Defendants*

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-08302-SI