Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> Defendants. | Case No. 3:25-cv-08302-SI <br><br> **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND RELIEF PURSUANT TO 5 U.S.C. §705** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................II

DISCUSSION .................................................................................................................................1

    I.    Defendants' Actions Are Unlawful ..........................................................................1

        A.    Section 120(e) Requires Recission of RIFs Implemented During the
              Shutdown ........................................................................................................1

        B.    Section 120(a) Prohibits Further Implementation of RIFs ............................4

    II.    Defendants' Threshold Arguments Also Lack Merit .................................................6

        A.    This Court Has Jurisdiction .............................................................................6

        B.    AFSA Has Standing ......................................................................................11

    III.    Defendants Largely Ignore the Irreparable Harm They Are Causing .....................12

    IV.    Defendants' Desire to Act Unlawfully Does Not Tip the Equities ..........................14

    V.    The Scope of the Proposed Relief is Proper ............................................................14

    VI.    The Court Should Deny the Stay and Bond .............................................................15

1

2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**Federal Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) ...................................................................................................7

*AFGE v. OPM*,
2025 WL 2633791 (N.D. Cal. Sept. 12, 2025) ........................................................7

*AFGE v. OPM*,
771 F.Supp.3d 1127 (N.D. Cal. 2025) .....................................................................7

*AFGE v. Trump*,
139 F.4th 1020 (9th Cir. 2025) ........................................................................*passim*

*AFGE v. Trump*,
2025 WL 2614698 (N.D. Cal. Sept. 9, 2025) ..........................................................7

*AFGE v. Trump*,
784 F.Supp.3d 1316 (N.D. Cal. 2025) ................................................................7, 10

*AFSA v. Trump*,
768 F.Supp.3d 6 (D.D.C. 2025) .............................................................................11

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008) .................................................................................................3

*Alpern v. Ferebee*,
949 F.3d 546 (10th Cir. 2020) .................................................................................6

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
598 U.S. 175 (2023) .................................................................................................9

*California v. Trump*,
963 F.3d 926 (9th Cir. 2020) ...................................................................................7

*Chalk v. U.S. District Court*,
840 F.2d 701 (9th Cir. 1988) .................................................................................13

*City & Cnty. of San Francisco v. Env't Prot. Agency*,
604 U.S. 334 (2025) .................................................................................................2

*Cmty. Legal Servs. in E. Palo Alto v. HHS*,
137 F.4th 932 (9th Cir. 2025) ...............................................................................14

*Dep't of Comm. v. New York*,
    588 U.S. 752 (2019) ..................................................................................8, 10

*Doe #1 v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) ..............................................................14

*EEOC v. Hawaii*,
    764 F.Supp. 158 (D. Haw. 1991)..........................................................13

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) .........................................................................9, 10, 11

*Feds for Med. Freedom v. Biden*,
    63 F.4th 366 (5th Cir. 2023) ....................................................................9

*Fellowship of Christian Athletes v. San Jose Unified School District Board of
    Education*,
    82 F.4th 664 (9th Cir. 2023) ..................................................................15

*Fischer v. United States*,
    603 U.S. 480 (2024) ...............................................................................5, 6

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ...............................................................12

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ...............................................................15

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)....................................................................14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) .............................................................................7, 11

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp*,
    606 U.S. 146 (2025) .................................................................................8

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025) ................................................................11

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012) ..................................................................................7

*Nelson v. Nat'l Aeronautics & Space Admin.*,
    530 F.3d 865 (9th Cir. 2008) .................................................................13

*Nken v. Holder*,
    556 U.S. 418 (2009) ...............................................................................15

*Russell Motor Car Co. v. United States,*
  261 U.S. 514 (1923) .................................................................... 5

*Sampson v. Murray,*
  415 U.S. 61 (1974) ............................................................... 13, 14

*San Carlos Apache Tribe v. United States,*
  417 F.3d 1091 (9th Cir. 2005) ................................................... 7

*Shaughnessy v. Pedreiro,*
  349 U.S. 48 (1955) ..................................................................... 8

*Stanley v. Univ. of S. Cal.,*
  13 F.3d 1313 (9th Cir. 1994) .................................................. 13

*Taniguchi v. Kan Pac. Saipan, Ltd.,*
  566 U.S. 560 (2012) ................................................................... 2

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ........................................................ 8, 9, 11

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.,*
  578 U.S. 590 (2016) ................................................................... 8

*Williams v. Taylor,*
  529 U.S. 362 (2000) ................................................................... 3

*Winter v. Natural Resources Defense Council, Inc.,*
  555 U.S. 7 (2008) ............................................................... 14, 15

**Federal Statutes**

5 U.S.C.
  § 705 ............................................................................ 1, 10, 14
  § 706 ................................................................................... 10
  § 1103 ................................................................................. 10
  § 1105 ................................................................................. 10
  § 1204 ................................................................................. 10
  § 7134 ................................................................................. 10
  § 7512 ................................................................................. 10
  § 7513 ................................................................................. 10
  § 7701 ................................................................................. 10

28 U.S.C.
  § 1331 ................................................................................... 7

Pub. L. No 119-37
  § 120 ............................................................................. *passim*

1    Defendants' Opposition largely fails to respond to Plaintiffs' arguments and evidence, which

2    conclusively demonstrate that Defendants are violating the clear mandates of Section 120 of the

3    Continuing Resolution ("CR") by continuing to implement RIFs and refusing to rescind RIFs

4    implemented and executed during the shutdown, and are thereby causing ongoing irreparable harm to

5    the affected federal employees.[1]  Defendants recycle arguments previously rejected by this Court and

6    the Ninth Circuit, and to the extent they address Section 120 at all, offer a feeble statutory

7    interpretation that defies the law's plain language.  Plaintiffs respectfully request that this Court enter

8    a preliminary injunction and relief pursuant to 5 U.S.C. §705 to prevent further harm.

9                                        **DISCUSSION**

10   **I.    Defendants' Actions Are Unlawful**

11         **A.    Section 120(e) Requires Recission of RIFs Implemented During the Shutdown**

12         Section 120(e) provides that "*any* reduction in force proposed, noticed, initiated, *executed*,

13   *implemented*, or otherwise taken" during the shutdown period "shall have no force or effect."  Pub. L.

14   No 119-37, §120(e) (emphases added).  Defendants' argument that this language does not encompass

15   RIFs that were *initiated* before October 1, 2025 wholly ignores the statutory term "implemented,"

16   misstates the definition of "executed," and is predicated on the unsupported factual assertion that

17   RIFs are "self-executing."  ECF 134 at 16-17.[2]

18         As Plaintiffs have shown, State, Education, GSA, and SBA each took steps to separate

19   employees between October 1 and November 12 that were straightforwardly actions that

20   "implemented" and "executed" RIFs.  ECF 130-1 at 19-20 (detailing State, GSA and SBA's

21   separation of employees during this time period, and State and Education's preparation of and

22   sending to employees documentation relating to pending separations and reissuance of notices with

23   updated separation dates).  Because neither term is defined in the statute, this Court should "give

24

25   _____

         [1] Plaintiffs withdraw their request for relief with respect to the Department of Defense in light of
26   its December 12, 2025 rescission of the RIF at issue in Plaintiffs' motion.  ECF 134-1.
         [2] Defendants also resort to attacking a strawman, invoking at length the "series-qualifier canon"
27   for the proposition that the phrase "between October 1, 2025, and the date of enactment" applies to
     all terms in Section 120(e).  ECF 134 at 16-17.  But Plaintiffs have never disputed this and, in fact,
28   agree.  Section 120(e) applies to RIFs, including those previously noticed, for which any of the listed
     actions (including "implemented" or "executed") were taken *during the shutdown*.  ECF 130-1 at 16.

1    [each] term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012).

2        As to the term "implemented," the Supreme Court recently explained that "[t]he

3    implementation of an objective generally refers to the taking of actions that are designed 'to give

4    practical effect to and ensure of actual fulfillment by concrete measures.'" *City & Cnty. of San*

5    *Francisco v. Env't Prot. Agency*, 604 U.S. 334, 347 (2025) (citing Webster's Third New Int'l Dict., at

6    1134); *see also* ECF 130-1 at 13-14 (quoting definition of "implement").  Agencies that took concrete

7    steps to process paperwork for previously noticed RIFs and those that actually separated employees

8    thus "implemented" RIFs.  Defendants completely ignore Section 120(e)'s use of the term

9    "implemented" and offer no alternative definition of the term; that omission is dispositive, as

10    implementation alone is sufficient to require recission under Section 120(e).

11        Defendants next assert that the term "executed" means "operationalizing an administrative

12    action" and applies only to the "front-end administrative mechanics" that "set[ a] separation in

13    motion," and *not* to separation of employees or some undefined category of "ministerial, downstream

14    administrative actions related to finalizing a RIF."  ECF 134 at 17.  As support, Defendants

15    selectively quote only the *fifth* definition from their cited dictionary, *id.*, while ignoring the *first*: "to

16    carry (something) out fully : to put (something) completely into effect."  *Execute*, Merriam-Webster

17    Dictionary (12th ed. 2025), https://www.merriam-webster.com/dictionary/execute.  Separating

18    employees fully carries out RIFs.  In any event, even Defendants' chosen fifth definition provides no

19    support for their tortured construction.  "To perform what is required to give validity to (something)"

20    makes no distinction between "front-end" and "downstream" actions: if anything, "execution" often

21    refers to *later* steps in a process—to use Defendants' examples, executing a document is the final (not

22    first) step to making it effective, and executing a plan involves all the necessary steps to carry it out.[3]

23    Defendants cite no authority to support their claim that "execute" can reasonably be read to "refer[]"

24    *only* "to the front-end administrative mechanics of a RIF," because none exists.  ECF 134 at 17.

25

26        ―――――――――――――

27        [3] That Defendants themselves understand "execute" to mean final separations under previously
noticed RIFs, and not taking steps to send a notice, is clear from *AFGE v. Trump*, where they argued
that "[a]ny preliminary injunction should be limited to discrete, clear actions that affect individual

28    employees, and that *are easily understood by any enjoined parties*: issuance of new RIF notices or
*execution of existing notices*."  Case 3:25-cv-03698-SI, ECF 117 at 23 (emphases added).

1    Despite Section 120's plain text, Defendants contend that Congress intended it to apply only

2    to "RIFs *initiated* during the lapse" in appropriations.  ECF 134 at 16 (emphasis added).  This

3    unsupported assertion of congressional intent to limit the provision's scope ignores both its text

4    (which contains no such restriction) and the foundational principle that courts "must 'give effect, if

5    possible, to every clause and word of [the] statute.'"  *Williams v. Taylor*, 529 U.S. 362, 404 (2000)

6    (citation omitted).  And the use of "the expansive word 'any'" further demonstrates Congress did not

7    intend to limit the language's broad scope.  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008).

8    In an attempt to avoid the straightforward conclusion that Defendant agencies implemented

9    and executed RIFs during the shutdown, Defendants advance an entirely novel (and wholly

10    unsupported) understanding of RIFs as "effectively self-executing once the notice [is] issued," such

11    that the actions taken after a notice issues are not "the government act[ing] on the RIFs" at all.  ECF

12    134 at 16.  This remarkable assertion is contradicted by OPM's own RIF guidance and uncontested

13    evidence in this case, which detail the extensive agency action necessary to implement the many

14    phases of a RIF between notice and separation.  ECF 130-1 at 4 (citing OPM's RIF manuals).[4]  The

15    record evidence conclusively demonstrates that RIFs are not self-executing: where an agency notices

16    a RIF and then takes no further action, *no separation occurs*; separation requires further agency

17    implementation and documentation.  *See, e.g.*, ECF 130-9 ¶¶9-10; ECF 130-3 ¶9; ECF 123-4 ¶¶8-9.

18    Finally, Defendants' argument that the language of Section 120(e)(1) and (2) "frames the RIF

19    notice as the temporal anchor of Congress's concern" makes no sense.  ECF 134 at 18.  As an initial

20    matter, these provisions are concerned with *both* rescinding notices and reinstating separated

21    employees.  More fundamentally, nothing in Sections 120(e)(1) or (2) changes the meaning of

22    Section 120(e), under which covered RIFs "shall have no force or effect."  Subsections (1) and (2)

23    simply set out the process for unwinding those now-invalid RIFs: "Any employee who received

24    notice of being subject to *such a reduction in force* shall have that notice rescinded …."  Pub. L. No

25    119-37, §120(e)(1) (emphasis added); *see also id.* §120(e)(2) (requiring notice to all affected

26

27    ───────────────
   [4] OPM and OMB's joint memorandum on the President's Workforce Optimization Initiative,
   challenged in *AFGE v. Trump*, includes a "Sample RIF Timeline" that likewise sets out actions

28    agencies take to implement RIFs after the RIF notice.  *See* Case No. 3:25-cv-03698-SI, ECF 37-1 at
   79.  Step Four is titled "RIF *Implementation* & Separation."  *Id.* (emphasis added).

1    employees, as well as members of Congress "of the withdrawal of the reduction in force notice and

2    the affected employee's reinstatement, if applicable").  That the mechanism for reversing a RIF

3    requires rescinding the notice sheds no light on which RIFs Congress made void.  If Congress had

4    intended to narrow this provision to encompass only notices *issued* during the shutdown, it could

5    easily have done so in the text of the subsection, definitions, or by way of an exception, but it did not.

6         Thus, Defendants' refusal to rescind RIFs as required by Section 120(e), and OPM and

7    OMB's memoranda directing a contrary interpretation of the statute, are squarely contrary to law.[5]

8         **B.      Section 120(a) Prohibits Further Implementation of RIFs**

9         Plaintiffs are also likely to succeed in showing violation of Section 120(a).  As this Court

10   correctly found in issuing a TRO, "Section 120(a) prohibits federal agencies from issuing or

11   **implementing** RIFs from November 12, 2025, through January 30, 2026.  Nothing in the plain text

12   of the statute limits Section 120(a) to apply only to those RIFs initiated during the government

13   shutdown."  ECF 125 at 2 (emphasis in original).  Defendants' argument that the statute prohibits

14   only "implementation … of *new* RIF notices," ECF 134 at 18 (emphasis added), upends basic

15   principles of statutory interpretation, for the reasons previously explained.  ECF 123-1 at 13-15.

16        The plain text resolves any dispute.  Section 120(a) prohibits the use of federal funds to

17   "initiate, carry out, implement, or otherwise notice" a RIF going forward.  Pub. L. No 119-37,

18   §120(a).  As Plaintiffs demonstrate, taking concrete steps to complete a RIF falls within the ordinary

19   meaning of "implement."  *See supra* 2-3.  Those actions also "carry out" RIFs by "bring[ing them] to

20   a successful issue."  ECF 130-1 at 14 (quoting definition of "carry out").[6]  Defendants have no real

21   response to Section 120(d)'s expansive definition of RIFs or the express statutory exceptions in

22   Section 120(c), which are textual evidence that Congress did not intend to limit Section 120(a) only

23

---

24        [5] Defendants argue in a footnote that OMB's and OPM's interpretations of the CR "were advisory
     in nature," referring to their unavailing arguments about *different* directives (those authorizing RIFs
25   during the shutdown), which were challenged earlier in this case.  ECF 134 at 16 n.5; *see* ECF 94 at
     4, 24 (rejecting Defendants' arguments).  This repetition of prior arguments entirely fails to address
26   Plaintiffs' specific evidence that OPM and OMB gave direction *regarding Section 120*.  ECF 130-1
     at 3-5.  Moreover, Defendants undercut their assertion that OMB and OPM merely provided advice
27   by affirmatively arguing that the harm to the government includes thwarting OMB's instructions to
     agencies.  ECF 134 at 21.

28        [6] Defendants also do not dispute that the planned actions of State and Education to complete RIFs
     by separating employees require the use of federal funds.  ECF 134 at 18-21.

1   to new RIF notices issued after November 12, 2025.  ECF 130-1 at 14-16.

2         Defendants offer no alternative definitions of "implement" or "carry out," but instead argue

3   that using the ordinary meaning of "implement" "would render the surrounding terms meaningless."

4   ECF 134 at 18.  But Section 120(a)'s use of all these terms ensures that agencies will not continue to

5   implement any RIFs, in any manner, during the defined time period, regardless of which stage the

6   RIF is currently in.  Thus, agencies may not send RIF notices on January 29, 2026, even if those

7   notices would not be implemented or carried out during the covered period, just as they may not

8   implement or carry out any RIFs that were noticed before October 1, 2025.  There is no ambiguity or

9   confusion in the statute requiring further parsing of this plain language.  *Russell Motor Car Co. v.*

10  *United* States, 261 U.S. 514, 519 (1923) ("Rules of statutory construction … have no place, as this

11  court has many times held, except in the domain of ambiguity.").

12        Even if Section 120's text were ambiguous (it is not), the canons of construction do not help

13  Defendants.  Defendants' reading of "implement" and "carry out" to apply only to "new RIF

14  notices," ECF 134 at 18, would render all the statutory terms other than "notice" meaningless, in

15  violation of the basic rule that courts should give meaning to all statutory terms.  *See infra* at 3.

16  Defendants' attempt to assign different pre-notice tasks to each term, *see* ECF 134 at 20, has no basis

17  in the ordinary meanings of the words or their use in RIF-specific guidance, *see* ECF 130-1 at 4, and

18  cannot save Defendants' interpretation.[7]  And Defendants' invocation of *noscitur a sociis* is of no

19  avail.  ECF 134 at 18-19.  Defendants cite no authority to support their invention that in order to

20  "track to the same neighborhood of meanings that surround it," the term "implement" must refer to

21  "the first-order act of carrying the plan into operation (decision and issuance), not the eventual

22  downstream 'effective date' event."  *Id.*  Nor does the argument make any sense: the surrounding

23  terms include "carry out," which does not refer to a "first-order act," but rather bringing an action to a

24  successful conclusion.  *See supra* at 4.  And implementing a RIF by taking steps to finalize and

25  separate employees is entirely consistent with the other actions listed—they all fall within the "same

26

27        [7] Plaintiffs agree that lawmakers often use a "belt-and-suspenders style of drafting."  ECF 134 at
28  20.  But "'surplusage is nonetheless disfavored,' and [a] 'construction that creates substantially less
    of it is better than a construction that creates substantially more.'"  *Fischer v. United States*, 603 U.S.
    480, 496 (2024) (citation omitted).

neighborhood of meanings" by addressing stages of the RIF process. Defendants' complaint that it would be "oddly lopsided" to use three terms to cover planning and notice steps, and just one covering separations, is baseless and, in any event, belied by the four-step OPM/OMB Sample RIF Timeline, of which only one step concerns final separation. *Supra* at n.4.[8]

Defendants' invocation of the series-qualifier canon to argue that "or otherwise notice a reduction in force" should be read as a modifier of the other listed terms fails as a matter of grammar. ECF 134 at 18-19. The use of the word "or" demonstrates that "or otherwise notice" is the final term in a disjunctive list, not a modifier, and "a reduction in force" is the object of all of the listed verbs. *Alpern v. Ferebee*, 949 F.3d 546 (10th Cir. 2020), which Defendants cite (ECF 134 at 19), analyzed a statute prohibiting fees "[s]olely for parking, undesignated parking, or picnicking along roads or trailsides," and concluded that "along roads or trailsides" modified all the terms, similar to the way "reduction in force" is the object of all the Section 120(e) terms. *Id*. at 549-50 (emphasis omitted). But the court did not hold that "or picnicking" determined the content of the prior terms. *Id*.[9]

Finally, Defendants again make the unsubstantiated assertion that Congress intended Section 120(a) to be read narrowly. ECF 134 at 20. But the best evidence of congressional intent is the language of the statute, which is unambiguously broad. *See supra* 4-5.

## II.    Defendants' Threshold Arguments Also Lack Merit

### A.    This Court Has Jurisdiction

Plaintiffs' claims enforcing Section 120 belong in federal court. Defendants recycle implied preclusion arguments based on the Civil Service Reform Act ("CSRA") that the Ninth Circuit and this Court have conclusively rejected, and offer no good reason to reach a different conclusion here. *See AFGE v. Trump*, 139 F.4th 1020, 1033 (9th Cir. 2025), *stayed pending appeal*, 145 S. Ct. 2635;

---

[8] Defendants' cited authority does not support them. In *Fischer*, the Supreme Court applied *noscitur a sociis* and "the related canon of *ejusdem generis*" where a statute included a general term at the end of a list of specific terms to "discern the reach of an 'otherwise' clause [by] look[ing] for guidance from whatever examples come before it," 603 U.S. at 487, not to limit any unambiguous terms listed in the statute.

[9] Defendants argue that the use of "separate" in Plaintiffs' proposed injunction somehow confirms that "implement" does not include separations. ECF 134 at 19. But Plaintiffs' proposed order specifies that it applies to "any action to implement, carry out, or effectuate reductions in force … *including* any actions to separate employees from federal employment," because those are the actions at issue in this case. ECF 130-13 at 2 (emphasis added).

1    *see also* ECF 94 at 18-20; *AFGE v. Trump*, 2025 WL 2614698, at *6 (N.D. Cal. Sept. 9, 2025);

2    *AFGE v. Trump*, 784 F.Supp.3d 1316 (N.D. Cal. 2025), *stayed pending appeal*, 145 S. Ct. 2635,

3    *vacated and remanded on other grounds*, 155 F.4th 1082 (9th Cir. 2025); *AFGE v. OPM*, 2025 WL

4    2633791, at *10 (N.D. Cal. Sept. 12, 2025); *AFGE v. OPM*, 771 F.Supp.3d 1127 (N.D. Cal. 2025).

5         As an initial matter, Defendants ignore that Plaintiffs' supplemental claims challenge

6    Defendants' actions in violation of Section 120, and incorrectly contend that "Plaintiffs challenge the

7    agencies' past RIF decisions." ECF 134 at 10-11. As a result, Defendants do not even attempt to

8    argue that Congress in Section 120 implicitly sent claims enforcing this new appropriations statute to

9    administrative agencies; nor could they, because there is no plausible textual basis for such an

10   argument. Section 120 addresses spending and other requirements for agencies; contains no

11   preclusion provisions, express or otherwise; does not amend the CSRA; and says nothing about

12   administrative enforcement of the new provisions.[10] When Congress enacts a new statute, it does not

13   need to expressly state that judicial enforcement is *not* precluded by some prior statute; the Supreme

14   Court has directly rejected such a "negative implication" argument with respect to implied

15   preclusion. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209,

16   222-23 (2012). As *Patchak* explained further: "We have never held, and see no cause to hold here,

17   that some general similarity of subject matter can alone trigger a remedial statute's preclusive effect."

18   *Id*. Thus, that both the new Section 120 and the prior CSRA involve federal employment does not

19   result in implied preclusion, where the new statute is silent with respect to enforcement. This is the

20   only conclusion consistent both with implied preclusion doctrine generally,[11] and the high bar for

22   [10] Where, as in Section 120, "a statute imposes obligations on a federal agency but the obligations do not give rise to a private right of action against the federal government, an aggrieved party may pursue its remedy under the APA." *California v. Trump,* 963 F.3d 926, 941 (9th Cir. 2020) (cleaned up) (citing *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1099 (9th Cir. 2005)); *see also Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140-41 (1967) ("The APA embodies [a] basic presumption of judicial review to one suffering legal wrong because of agency action") (cleaned up). As Congress explained when enacting the APA: "'To preclude judicial review under [the APA,] a [different] statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.'" *Abbott*, 387 U.S. at 140 n.2 (quoting H.R. Rep. No. 1980, 79th Cong., 2d Sess., 41 (1946), U.S. Code Cong. Serv. 1946, p. 1195).

28   [11] *See, e.g.*, *Patchak*, 567 U.S. at 222-23; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("[J]urisdiction conferred by 28 U.S.C. §1331 should hold firm against 'mere implication flowing from subsequent legislation.'").

preclusion of APA claims in particular.[12]  There is simply no indication in Section 120 that Congress intended enforcement of that statute's spending and other provisions to be handled administratively, rather than in the normal course of federal judicial review.

Rather than address Section 120 itself, Defendants' brief repeats, with minor alterations, the arguments from Defendants' prior TRO opposition, which addressed Plaintiffs' claims challenging unlawful actions by OMB, OPM, and other federal agencies during the shutdown.  *See* ECF 134 at 9-13; *compare* ECF 41 at 11-15.  This section even repeats Defendants' prior error of failing to *cite* or discuss the Ninth Circuit's binding channeling analysis and holding in *AFGE v. Trump*, 139 F.4th at 1030-33, and generally ignores this Court's decision rejecting these arguments (ECF 94 at 18-20). *See* ECF 134 at 9-13.  Defendants' suggestion that this Court should instead follow out-of-circuit law is no more persuasive now than it was two months ago.  ECF 94 at 18-20.

Viewed through the lens of the factors for assessing implied preclusion discussed in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), Plaintiffs' claims enforcing Section 120 (via the APA) and the Appropriations Clause are not the "type" that the CSRA implicitly sent to administrative adjudication.  *Id.* at 212; *AFGE*, 139 F.4th at 1030-33.  Plaintiffs' claims regarding Section 120 are collateral to those heard through the CSRA-created adjudicatory systems; MSPB/FLRA have no expertise as to these statutory and constitutional claims; and agency adjudication provides no avenue for meaningful judicial review of them, for multiple reasons.

First, Defendants generally repeat their broad argument that Plaintiffs' claims are not collateral to the CSRA administrative systems because they involve the "subject" of federal employment.  ECF 134 at 10-13.  But as the Ninth Circuit has recognized, the CSRA does not explicitly or implicitly remove federal jurisdiction and send federal claims to the Merits Systems Protection Board ("MSPB") or Federal Labor Relations Authority ("FLRA") simply because they relate to "terms and conditions of federal employment" or "concern the federal employer-employee

---

[12] *AFGE*, 139 F.4th at 1032; *see also, e.g.*, *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp*, 606 U.S. 146, 155-56 (2025); *Dep't of Comm. v. New York*, 588 U.S. 752, 771-72 (2019); *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 601-02 (2016).  One long recognized "purpose" of the APA "was to remove obstacles to judicial review of agency action under *subsequently enacted statutes*."  *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955) (emphasis added).

1      relationship."  ECF 134 at 9-10; *see AFGE*, 139 F.4th at 1030-33.  Claims that relate to federal

2      employment but are not of the "type" of covered personnel actions that Congress intended to be heard

3      by administrative agencies are not impliedly channeled.  *AFGE*, 139 F.4th at 1030-33; *see also*

4      *Thunder Basin*, 510 U.S. at 212; *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023).

5      Defendants thus overread *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012), as creating a wide band of

6      preclusion for anything related to federal employment, akin to field preemption, but the Ninth Circuit

7      has rejected this reading.  *AFGE*, 139 F.4th at 1031 (citing *Elgin*, 567 U.S. at 13, as "noting that the

8      CSRA is applicable when 'a covered employee challenges a covered action'").

9            Second, as with the previously adjudicated claims in this case, Plaintiffs challenge OMB and

10     OPM's unlawful directions to federal agencies—this time, to violate Section 120.  For the reasons set

11     forth in *AFGE v. Trump* and this Court's prior decisions, claims against these two agencies are not

12     channeled, including because the MSPB and FLRA cannot hear claims against these Defendants

13     regarding government-wide action.  139 F.4th at 1031.

14           Third, Defendants fundamentally mischaracterize the nature of Plaintiffs' claims against the

15     employing agency Defendants.  As in *AFGE v. Trump*, and as previously addressed in this case,

16     Plaintiffs' APA and ultra vires claims challenge agency-level decisions and actions, which are

17     different from any particular personnel action taken with respect any individual federal employee as a

18     result of the application of those decisions.  *See AFGE*, 139 F.4th at 1031 ("Whether or not the

19     federal agencies' 'transformation[s]' and 'large-scale reductions in force' can be characterized as an

20     'agglomeration' of 'individual employment actions,' Plaintiffs are not challenging those employment

21     decisions with respect to individual employees [but] … Defendants' constitutional and statutory

22     authority to direct the federal agencies to take such actions in the first place.").  The decisions at issue

23     by Education, State, GSA, and SBA regarding compliance with Section 120 are not "covered

24     personnel" actions with respect to individual employees—just as the agency- and government-level

25     decisions to impose RIFs during the shutdown in this case, and the RIFs for purposes of agency

26     reorganization in *AFGE*, were not.  *See* ECF 94 at 18-25; *AFGE*, 139 F.4th at 1030-33; *cf. Feds for*

27     *Med. Freedom v. Biden*, 63 F.4th 366, 375 (5th Cir. 2023) (en banc), *judgment vac'd as moot*, 144 S.

28     Ct. 480 (2023) (holding that challenge by employee organizations, including union, to government-

1    wide employee vaccination mandate was not channeled to MSPB or FLRA).[13]

2         Fourth, the "type" of claims Plaintiffs bring to enforce Section 120 through the "command" of

3    judicial review under the APA (*New York*, 588 U.S. at 771), is all the more reason these claims are

4    collateral to the administrative system.  Plaintiffs do not seek to enforce the CSRA or bring individual

5    challenges to adverse employment actions; as previously discussed, this new statute does not

6    reference the CSRA, and the spending prohibition and other requirements Section 120 imposes on

7    agencies are enforceable through the usual mechanism for enforcement of laws governing agency

8    compliance with federal law—the APA.  And with respect to whether Congress intended the CSRA

9    to preclude APA claims addressing unlawful agency action based on statutes other than the CSRA, it

10   is notable that the same Congress that enacted the CSRA referenced the APA no less than three times

11   in that statute, and did not intend to impliedly eviscerate the central enforcement mechanism and

12   remedy provided in that law.  *See* 5 U.S.C. §§1103; 1105 (same), §7134 (same, for FLRA).  In

13   particular, Congress did not give the MSPB authority to hear or resolve APA claims (of which it was

14   aware at the time it enacted the CSRA).  *See* 5 U.S.C. §§1204, 7513, 7701.  Nor did Congress give

15   the MSPB authority to grant APA relief—to "hold unlawful" and set aside an agency-level decision

16   in its entirety (5 U.S.C. §706), or to issue "necessary and appropriate" interim relief (5 U.S.C. §705).

17   And even if an individual plaintiff could rely on the OPM regulations (and not the statute) to

18   challenge the agency decision to implement a RIF that resulted in his or her termination as a violation

19   of Section 120 at the MSPB, "the APA's presumption of judicial review is not overcome merely

20   because Defendants can point to a theoretical alternative path for an aggrieved party to seek review."

21   *AFGE*, 139 F.4th at 1032.  Defendants argue that employees should accept piecemeal, individual

22   relief (ECF 134 at 12-13); but *Congress* intended otherwise.[14]

23

24        [13] As this Court has recognized, the CSRA excluded claims regarding terminations resulting from
     *RIFs* from MSPB jurisdiction.  5 U.S.C. §7512; *see AFGE*, 784 F.Supp.3d at 1338. That OPM's

25   regulations later permitted individual employees to bring some RIF-related matters before the MSPB
     is irrelevant (*see* ECF 134 at 2-3); it is *Congress's* intent, not OPM's, that determines preclusion.

26        [14] Defendants' argument that *Elgin*, 567 U.S. at 22, holds that what matters is "whether the
     subject of Plaintiffs' challenge is a matter covered by the CSRA and FSLMRS, not how Plaintiffs

27   describe their claims" again overstates the holding of that case.  ECF 134 at 13.  *Elgin* addressed the
     question whether individual employees who had challenged terminations in MSPB proceedings could

28   then, rather than appealing to the Federal Circuit, bring a district court case raising constitutional

1         Finally, Defendants argue in a footnote that Plaintiff American Foreign Service Association

2    ("AFSA")'s claims are channeled, through a different statute, the Foreign Service Act ("FSA", for the

3    same reasons why other Plaintiffs' claims are channeled.  ECF 134 at 10 n.2.  This argument fails for

4    the same reasons previously discussed.  The district court decision Defendants cite is not persuasive

5    in light of the Ninth Circuit and this Court's prior decisions rejecting the same arguments.  ECF 134

6    at 10 n.2 (citing *AFSA v. Trump*, 768 F.Supp.3d 6, 22 (D.D.C. 2025)).[15]

7        **B.    AFSA Has Standing**

8         Associational standing requires only that "one or more members of [the organization] may be

9    adversely affected" by the challenged action.  *Mi Familia Vota v. Fontes*, 129 F.4th 691, 709 (9th Cir.

10   2025).  It does not, as Defendants argue, turn on whether an organization "has a collective bargaining

11   agreement" or is the "certified representative" for the purposes of labor relations.  ECF 134 at 14.

12   Defendants ignore the evidence:  "AFSA continues to have dues-paying members in each of the

13   bargaining units where Collective Bargaining Agreements were cancelled by agencies pursuant to

14   Executive Order 14251."  ECF 123-3 ¶8; *see also* Dinkelman Second Supp. Decl. ¶2.  AFSA also

15   provides ongoing services to all bargaining unit employees including, among other things, by offering

16   "assistance to Foreign Service employees (including both members and non-members) with issues,

17   problems, and questions relating to Reductions in Force."  Dinkelman Second Supp. Decl. ¶¶2-5.

18   Because "one or more" members are affected by the challenged actions (ECF 123-2 ¶2; ECF 123-4

19   ¶2), AFSA plainly has associational standing, in addition to its organizational standing.  Defendants'

20   cases regarding the Executive Order or "comity" do not bear on AFSA's standing.  ECF 134 at 14-15.

21

22   challenges seeking the same relief from the same terminations.  567 U.S. at 11-12.  Plaintiffs seek
     APA relief requiring agencies to comply with Section 120, not individual judgments with respect to
23   personnel actions.  Further, *Elgin* did not address APA claims at all.  *Id.*  And the Supreme Court has
     rejected Defendants' argument that overlapping subject matter or remedies are sufficient to preclude
24   APA claims. *Patchak,* 567 U.S. 209, 222–23 (rejecting the argument that "we should look only to the
     kind of relief a plaintiff seeks, rather than the type of grievance he asserts, in deciding whether
25   another statute bars an APA action").  Consistent with both *Patchak* and *Thunder Basin*, the question
     is whether Congress precluded a particular type of *claim*.

26   [15] *AFSA* involved claims comparable to the agency dismantling at issue in *AFGE v. Trump*, and
     concluded that challenges to the dismantling of USAID should be heard in the first instance by
27   administrative agencies.  768 F.Supp.3d at 22. That court relied on out-of-circuit authority that this
     Court and the Ninth Circuit have distinguished.  It also found persuasive the argument that AFSA
28   could raise the disputes at issue through its CBA grievance process. *Id.*  Here, Defendants
     affirmatively argue that the AFSA's right to do so has been canceled.  ECF 134 at 14.

1    **III.    Defendants Largely Ignore the Irreparable Harm They Are Causing**

2            Instead of contending with the substantial and compelling evidence of irreparable harm to the

3    employees Plaintiffs represent, Defendants repeat almost word for word the same arguments they

4    raised, and the Court rejected, during the previous preliminary injunction proceedings.  *Compare*

5    ECF 134 at 8-9 *with* ECF 85 at 7-8.  Thus, for the third time during these proceedings, Defendants

6    ignore binding Ninth Circuit authority and this Court's prior orders recognizing that Plaintiffs'

7    identified harms are irreparable as "it is obvious that 'back pay' is far from an adequate remedy… It

8    cannot account for harms resulting from loss of income in the interim or for gaps in health-and

9    childcare that accompany job loss." *AFGE*, 139 F.4th at 1040; *see also* ECF 94 at 38-39; ECF 56 at

10    4.  This Court has further explained that "a lapse in healthcare coverage" and the resulting negative

11    health outcomes are particularly irreparable and "cannot be remedied by backpay."  ECF 94 at 39; *see*

12    *also Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1125 (9th Cir. 2008)

13    ("Lack of timely access to health care poses serious health risks.").

14            Plaintiffs have submitted myriad evidence that the separated SBA, GSA, and State employees

15    face precisely these irreparable harms, with many experiencing hardships like having to file for

16    bankruptcy, facing potential eviction, or being unable to pay utilities, car expenses, or credit card

17    bills.  ECF 130-4 ¶¶13-15, 17; ECF 130-10 ¶¶12-13; ECF 130-7 ¶¶15-17; ECF 130-3 ¶¶12, 14-16;

18    ECF 130-8 ¶10.  The same is true for the State and OCR employees whose RIFs have been noticed

19    but who have not yet been separated because of this Court's October 28, 2025 preliminary injunction

20    and December 4, 2025 TRO.  ECF 123-2 ¶¶15-16; ECF 123-5 ¶¶14-15, 19; ECF 130-5 ¶22; ECF

21    130-2 ¶¶20-21; ECF 123-3 ¶¶29-30.  And, across both groups, the current or feared lapses in health

22    insurance are causing or will cause individuals to experience irreparable damage to their health.  ECF

23    130-5 ¶22; ECF 130-10 ¶¶14-17; ECF 130-7 ¶¶15, 18-19, 21; ECF 130-4 ¶16; ECF 130-9 ¶¶13-15;

24    ECF 123-2 ¶15; ECF 123-5 ¶¶10, 14; ECF 123-3 ¶30.  Defendants make no attempt to refute this

25    evidence of harm.  Plaintiffs have also submitted substantial evidence that the impacted employees

26    face not just the loss of a job, but the premature end to careers that were years or decades in the

27    making; interruption of those careers is not reparable by later backpay awards.  ECF 130-2 ¶18; ECF

28    130-3 ¶¶3, 13, 16; ECF 130-5 ¶19; ECF 130-6 ¶¶4-6; ECF 130-7 ¶¶2-3; ECF 130-8 ¶¶3, 14; ECF

1    130-10 ¶4; ECF 123-2 ¶¶11-14; ECF 123-4 ¶¶5, 14-18; Dinkelman Second Supp. Decl. ¶¶7-8.

2        Defendants also assert, without support, that the extreme "stress and anxiety" experienced by

3    employees "is not irreparable harm." ECF 134 at 9. As Plaintiffs have previously explained (ECF 88

4    at 8-9), "emotional and psychological" injuries can establish irreparable injury. *Chalk v. U.S. District*

5    *Court*, 840 F.2d 701, 710 (9th Cir. 1988); *see also Nelson v. Nat'l Aeronautics & Space Admin.*, 530

6    F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011); *Stanley v. Univ. of S.*

7    *Cal.*, 13 F.3d 1313, 1324 n.5 (9th Cir. 1994); *EEOC v. Hawaii*, 764 F.Supp. 158, 161 (D. Haw.

8    1991). And, as Plaintiffs have shown, the employees subject to Defendants' illegal actions have

9    faced severe stress and anxiety, which, for some, has even manifested in physical illness. ECF 130-4

10    ¶¶18-19; ECF 130-2 ¶18; ECF 130-5 ¶21; ECF 130-10 ¶¶15-17, 19; ECF 130-7 ¶¶17-20; ECF 130-3

11    ¶¶11, 16; ECF 130-9 ¶11; ECF 130-8 ¶¶11-14; ECF 123-2 ¶16; ECF 123-4 ¶17.

12        Instead of addressing these harms, Defendants again claim that *Sampson v. Murray*, 415 U.S.

13    61 (1974), established a rule that "employment-related harms" are never irreparable. ECF 134 at 8.

14    This Court has already rejected that reading: "[t]he Court [in *Sampson*] also recognized 'that cases

15    may arise in which the circumstances surrounding an employee's discharge, together with the

16    resultant effect on the employee, may so far depart from the normal situation that irreparable injury

17    might be found.'" ECF 94 at 38 (citing 415 U.S. at 92 n.68). Plaintiffs make such a showing here.

18        Moreover, as with the shutdown RIFs that this Court previously enjoined, the agency actions

19    currently at issue present "a departure from the type of 'normal situation' considered in *Sampson*."

20    *Id.* Agencies implemented, carried out, or executed RIFs during the shutdown,[16] and "RIFs during a

21    government shutdown are not 'ordinary' RIFs in any sense of the word." *Id.* Congress then passed a

22    specific statute addressing these agency actions; employees understood that the law protected them;

23    and some were affirmatively told by their agency (SBA) that they were protected, only to have the

24    rug pulled out from under them again the next day. *See, e.g.*, ECF 123-2 ¶11; ECF 123-4 ¶13; ECF

25    123-5 ¶12; ECF 130-7 ¶¶11-13; ECF 130-4 ¶¶10-12; ECF 123-4 ¶¶10-11. Agencies have

---

[16] *See* ECF 123-2 ¶¶5-8; ECF 123-4 ¶¶6-8; ECF 130-3 ¶¶9-10; ECF 130-4 ¶8; ECF 130-10 ¶¶8-9; ECF 130-7 ¶10; ECF 130-9 ¶10; ECF 130-8 ¶9; ECF 130-6 ¶8; ECF 130-5 ¶¶11-14; ECF 130-2 ¶¶12-13; ECF 123-3 ¶¶11-22; ECF 130-11 ¶¶4-6, 8-9, 18, 22-23.

compounded their errors by:  providing conflicting information to employees, as to whether they

would be able to keep their jobs (ECF 130-7 ¶¶5-13; ECF 123-5 ¶12; ECF 130-5 ¶¶9-13; ECF 130-2

¶¶4-15); going weeks after separation without any communication confirming employees' separation

or providing information about benefits (ECF 130-7 ¶10; ECF 130-3 ¶¶9-10; ECF 130-9 ¶10); or

failing to respond to repeated inquiries regarding employment status (ECF 130-4 ¶6; ECF 130-9 ¶9;

ECF 123-4 ¶¶8-9; ECF 130-6 ¶¶9-10; ECF 130-5 ¶¶16-17; ECF 130-2 ¶14; ECF 123-3 ¶19).  Unlike

in *Sampson*, the extremely abnormal circumstances of the actions at issue and the resulting instability

have caused irreparable harm.  ECF 130-2 ¶¶17, 20; ECF 130-5 ¶¶19-21; 130-6 ¶¶18-19; ECF 130-4

¶12; ECF 130-9 ¶¶11, 15; ECF 130-8 ¶¶12-13; ECF 123-2 ¶16; ECF 123-4 ¶13.

## IV.    Defendants' Desire to Act Unlawfully Does Not Tip the Equities

"There is generally no public interest in the perpetuation of unlawful agency action," and

Defendants cannot claim that compliance with the clear requirements of the CR is an irreparable

harm.  *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations

omitted); *see also Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020).[17]  Defendants reassert

almost verbatim the same unsubstantiated theories of harm to the government that this Court has now

twice considered and rejected.  *Compare* ECF 134 at 21-22 *with* ECF 39 at 19-20; *see also* ECF 85 at

14; see ECF 94 at 41 (quoting *AFGE*, 139 F.4th at 1030).  These unsupported allegations are vastly

outweighed by Plaintiffs' well-documented irreparable harms.

## V.    The Scope of the Proposed Relief is Proper

Defendants contest Plaintiffs' proposed preliminary injunction and relief pursuant to §705on

the sole grounds that it: 1) provides "final" relief; and 2) alters the status quo rather than preserves it.

ECF 134 at 22-24.  Neither point is persuasive.  First, no rule of law precludes granting preliminary

relief or relief pursuant to §705 that would have the same scope as final relief, where necessary to

prevent harm and where the plaintiffs meet the *Winter v. NRDC* factors.  555 U.S. 7, 20 (2008).

---

[17] Defendants again contend they will be harmed by paying "salaries and benefits" costing "millions of dollars each week."  ECF 134 at 21-22.  Given the smaller number of employees at issue, this unsupported assertion is even less plausible now.  And, as previously explained (ECF 47 at 15), the government does not suffer an irreparable injury from "spending congressionally appropriated funds" on backpay, salaries, and benefits for employees that Congress has expressly required it to reinstate or retain.  *Cmty. Legal Servs. in E. Palo Alto v. HHS*, 137 F.4th 932, 943 (9th Cir. 2025).

1     *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, did not, as

2     Defendants mischaracterize it, merely address the "standard" for "an injunction enjoining …

3     implementation" of a challenged policy or hold that it would be inappropriate to "unwind" the

4     challenged action.  ECF 134 at 23.[18]  In fact, there, the Ninth Circuit reversed the denial of injunctive

5     relief and ordered reinstatement of the plaintiff student group—relief equivalent to that which the

6     plaintiffs would have obtained at the conclusion of the case.  82 F.4th 664, 696 (9th Cir. 2023).  Nor

7     has the Ninth Circuit prohibited mandatory injunctions when the *Winter* factors support such relief.

8     Defendants ignore Plaintiffs' authority (ECF 130-1 at 24-25), which demonstrates this Court's

9     authority to issue interim relief that prevents irreparable harm even when it alters the status quo.

10        Second, Plaintiffs' relief does preserve the last *uncontested* status between the parties.

11     Defendants do not appear to dispute Plaintiffs' position that halting further RIF implementation

12     preserves the status quo.  ECF 134 at 22-24.  Instead, they aim only at the requested relief that would

13     unwind the separations by State, GSA, and SBA, per Congress' mandate in Section 120(e).  *Id*. As to

14     that relief, Defendants fail to address Plaintiffs' showing that the uncontested status quo is prior to

15     Defendants' unlawful actions disturbing the employment status of the employees Congress sought to

16     protect through Section 120.  ECF 130-1 at 25.  Defendants argue only that Plaintiffs' requested relief

17     is "logically inconsistent" because some of the impacted employees were on administrative leave as

18     of September 30, 2025.  ECF 134 at 24.[19]  But being employed while on leave is not the same as

19     being separated.  And there is no evidence Congress was concerned with whether the employees were

20     on paid leave: Section 120 can be implemented regardless of employees' leave-related status.

21     **VI.    The Court Should Deny the Stay and Bond**

22        Defendants do not meet their burden to establish any stay factor under *Nken v. Holder*, 556

23     U.S. 418, 433-34 (2009).  Given the public interest and lack of harm to Defendants, the Court should

24     waive or impose a de minimis bond.  *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

25

26

27

28

---

[18] Defendants copy-and-paste this mischaracterization of *FCA*, even after Plaintiffs' prior reply identified the erroneous description.  *Compare* ECF 134 at 23 *with* ECF 85 at 21-22; *see* ECF 88 at 14.

[19] Plaintiffs have submitted a revised proposed order that tracks the language of Section 120(e).

Dated: December 15, 2025                    Respectfully submitted,


Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Alice X. Wang
Robin S. Tholin
Talia Stender
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

By: */s/ Danielle Leonard*

*Attorneys for All Plaintiffs*

Elena Goldstein (pro hac vice)
Jennie Kneedler (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 322-1959
egoldstein@democracyforward.org

*Attorneys for All Plaintiffs*

Norman L. Eisen (pro hac vice)
Craig Becker (pro hac vice)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Craig@democracydefenders.org

*Attorneys for All Plaintiffs*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

*Attorneys for Plaintiffs American Federation of
Government Employees, AFL-CIO (AFGE) and
AFGE locals*

Yvette M. Piacsek (pro hac vice)
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, IAM, AFL-CIO
1225 New York Ave. N.W., Suite 450
Washington, D.C. 20005
Tel: (202)216-4428
ypiacsek@nffe.org

*Attorneys for Plaintiff National Federation of
Federal Employees, IAM, AFL-CIO*