Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>Defendants. | Case No. 3:25-cv-08302-SI<br><br>**SECOND SUPPLEMENTAL DECLARATION OF AFSA PRESIDENT JOHN DINKELMAN** |

Second Supp. Decl. of AFSA President John Dinkelman, No. 3:25-cv-08302-SI

## SUPPLEMENTAL DECLARATION OF JOHN DINKELMAN

I, John Dinkelman, declare as follows:

1. I am over 18 years of age and competent to give this supplemental declaration. I am the President of the American Foreign Service Association ("AFSA"), and a member of the Senior Foreign Service at the Department of State. I make this declaration based on my personal knowledge, including information I have obtained and learned in my position as AFSA President through other officers and members. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction, and this supplements the prior Supplemental Declaration and Declaration I previously provided in this case.

2. As I explained in my initial Declaration, AFSA continues to have dues-paying members in each of the bargaining units where Collective Bargaining Agreements were cancelled by agencies pursuant to Executive Order 14251. Since the issuance of that Executive Order, AFSA has continued to provide many services to these members and to represent them with respect to employment at the State Department.

3. Specifically, AFSA continues to provide attorneys and grievance counselors who represent Foreign Service members in disciplinary actions; in investigations conducted by the Department's Office of Civil Rights, Diplomatic Security, and the Office of the Inspector General; and in grievances filed with the Department of State's Grievance Staff and appeals of those grievances to the Foreign Service Grievance Board.

4. Since the issuance of the Executive Order, AFSA has also continued to provide representation to employees in the former bargaining units who are not AFSA members as well as to AFSA members. AFSA also provides assistance to Foreign Service employees (including both members and non-members) with issues, problems, and questions relating to Reductions in Force ("RIFs"), including with respect to unemployment compensation, severance pay, health insurance, and eligibility for a supplemental annuity. AFSA staff also provide guidance relating to medical clearances, assignment and promotion procedures, fitness for duty examinations, overtime pay and Law Enforcement Availability Pay, foreign contact reporting requirements, government ethics, and myriad other issues.

5. In addition, without regard to membership, AFSA advocates for employees with medical issues stemming from Analogous Health Incidents (formally known as the Havana Syndrome). AFSA was instrumental in moving the eligibility date of the Helping American Victims Afflicted by Neurological Attacks Act (HAVANA) Act payments back to Sept. 11, 2001 (currently January 1, 2016) for members of the Foreign Service. This bill is part of the National Defense Authorization Act.

6. I have reviewed the briefs filed by Defendants in this case. Defendants' characterization of RIFed employees' injuries as mere loss of earnings, compensable through back pay, is sorely misplaced. Foreign Service is not just a job. It is a unique career. As the State Department describes:

> The U.S. Foreign Service is a global force for diplomacy, representing the American people and advancing the nation's interests abroad. From negotiating peace to managing international programs, Foreign Service employees serve on the front lines of policy and engagement, working in over 270 embassies, consulates, and missions around the world.

U.S. Department of State website, https://careers.state.gov/career-paths/foreign-service/.

7. The Foreign Service is comprised of career professionals deployed around the world as our country's professional diplomatic corps. Members of the Foreign Service are career professionals who volunteer to live and work abroad for roughly two-thirds of their careers—usually serving abroad with their families. They are intended to be worldwide available, serve repeatedly in overseas assignments, and serve in hardship and dangerous posts. Many Foreign Service employees' spouses have had to relinquish their careers to meet these obligations and travel overseas with their families.

8. Thus, termination through a RIF does not merely interrupt employment or income. It permanently severs employees from a career of service to which re-entry, as a practical matter, is impossible to establish anywhere else. There is no comparable public job at the state or local level, and no comparable job in the private sector. When Foreign Service employees lose these jobs, they lose their entire way of life, and the career of public service they have dedicated themselves to, on behalf of our country.

9. It has also become clear that in recent months, the State Department has been onboarding new employees (at entry-level pay grades) to replace the Foreign Service employees they are eliminating through these RIFs. In September 2025, while RIF notices were pending to approximately 250 members of the Foreign Service, the Department onboarded a new class of diplomats (or "A-100 class"). The Department has already issued invitations for another class beginning in January 2026. Furthermore, the Department has posted LNA and Civil Service openings on USA Jobs that would seem to be replacing former Foreign Service Officers positions, such as Consular Associate Rover positions. Finally, a number of positions formally occupied by RIFed Foreign Service employees remain vacant and on the books and are being advertised to Foreign Service bidders on the NOW or summer 2026 bid list.[1]

10. Foreign Service Officers are generalists by statutory design, assigned on a rotational basis every two to three years, much like military officers. We are not tied to a single billet or location. Maintaining the status quo by retaining experienced, tenured officers pending this litigation imposes no operational inefficiency—particularly where the Department is simultaneously hiring hundreds of new, inexperienced officers to fill the same or similar rotational roles.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on December 15, 2025, in Washington, DC.

_____
John Dinkelman

---

[1] Foreign Service employees rotate assignments every two to three years and bid on open positions. A NOW vacancy is an urgent vacancy and allows a Foreign Service employee to break his or her current assignment to occupy the NOW vacancy.