STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

ELIZABETH T. HEDGES
Counsel to the Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Branch Director

BRAD P. ROSENBERG
Special Counsel

STEVEN M. CHASIN
PIERCE J. ANON
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-7573
E-mail: pierce.anon@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., <br> Defendants. | Case No. 3:25-cv-08302-SI <br><br> **DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED AND SUPPLEMENTAL COMPLAINTS** <br><br> Hearing Date: May 12, 2026 <br> Time: 1:00 p.m. <br> Judge: Hon. Susan Illston <br> Place: San Francisco Courthouse <br> Courtroom 01 |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ISSUES TO BE DECIDED ................................................................................................3

BACKGROUND ................................................................................................................3

I.      STATUTORY AND REGULATORY BACKGROUND ................................................3

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................................3

LEGAL STANDARD .........................................................................................................5

ARGUMENT .....................................................................................................................5

I.      PLAINTIFFS' CLAIMS ARE MOOT..........................................................................5

    a.      PLAINTIFFS' CLAIMS RELATING TO OMB AND OPM GUIDANCE

        DOCUMENTS ARE MOOT ...........................................................................6

    b.      PLAINTIFFS' CLAIMS RELATING TO SECTION 120 OF THE CONTINUING

        RESOLUTION ARE ALSO MOOT ...............................................................10

II.     NO MOOTNESS EXCEPTION APPLIES ................................................................11

    a.      THE "CAPABLE OF REPETITION, YET EVADING REVIEW" EXCEPTION

        IS INAPPLICABLE..........................................................................................11

    b.      THE VOLUNTARY CESSATION EXCEPTION IS INAPPLICABLE.........................15

III.    ANY FUTURE RIF DECISIONS PLAINTIFFS CHALLENGE ARE NOT RIPE....................18

IV.     PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE CSRA AND FSLMRS..........................19

CONCLUSION..................................................................................................................22

1

## TABLE OF AUTHORITIES

2
Page(s)

**Cases**

3

*18 Unnamed John Smith Prisoners v. Meese*,
4     871 F.2d 881 (9th Cir. 1989) ................................................................................. 18

5 *Abbott Lab'ys. v. Gardner,*
    387 U.S. 136 (1967) ................................................................................................ 18
6

7 *ACLU of Nev. v. Lomax*,
    471 F.3d 1010 (9th Cir. 2006) ............................................................................. 6, 7
8

*AFGE AFL-CIO v. Raines*,
9     No. 98-5045, 1998 WL 545417 (D.C. Cir. July 15, 1998) ................................... 13

10 *AFGE v. Trump*,
    929 F.3d 748 (D.C. Cir. 2019) ......................................................................... 20, 21
11

12 *Alaska v. Jewell*,
    No. 4:13-cv-00034-SLG, 2014 WL 3778590 (D. Alaska July 29, 2014) ............. 14
13

14 *Alder v. Tennessee Valley Auth.*,
    43 F. App'x 952 (6th Cir. 2002) ........................................................................... 20

15 *Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ....................................................................... 5, 6, 7, 17
16

17 *Alvarez v. Smith*,
    558 U.S. 87 (2009) ................................................................................................. 7
18

19 *Am. Diabetes Ass'n v. United States Dep't of the Army*,
    938 F.3d 1147 (9th Cir. 2019) ............................................................................. 2, 6

20 *Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force*,
    716 F.3d 633 (D.C. Cir. 2013) ......................................................................... 20, 21
21

22 *Am. Fed'n of State Cnty. & Mun. Emps., AFL-CIO v. OMB*,
    807 F. Supp. 3d 1004 (N.D. Cal. 2025) ................................................................. 18
23

24 *Arizonans for Official Eng. v. Arizona*,
    520 U.S. 43 (1997) ................................................................................................. 6

25 *Atlas Brew Works, LLC v. Barr*,
    820 F. App'x 4 (D.C. Cir. 2020) ........................................................................... 13
26

27

28

*Bell v. City of Boise*,
    709 F.3d 890 (9th Cir. 2013) ........................................................................................ 15

*Board of Trustees of Glazing Health and Welfare Trust v. Chambers*,
    941 F.3d 1195 (9th Cir. 2019) ................................................................................ *passim*

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009) ..................................................................................... 19

*Boyd v. City of San Rafael*,
    No. 23-cv-04085-EMC, 2024 WL 3748334 (N.D. Cal. Aug. 7, 2024) ............................. 11

*Brach v. Newsom*,
    38 F.4th 6 (9th Cir. 2022) ................................................................................. 10, 15, 18

*Burke v. Barnes*,
    479 U.S. 361 (1987) ..................................................................................................... 10

*Califano v. Sanders*,
    430 U.S. 99 (1977) ....................................................................................................... 18

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ....................................................................................................... 9

*Church of Scientology v. United States*,
    506 U.S. 9 (1992) .................................................................................................. 1, 6, 7

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ......................................................................................................... 9

*City of Mesquite v. Aladdin's Castle Inc.*,
    455 U.S. 283 (1982) ..................................................................................................... 10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ....................................................................................................... 9

*Cocina Cultura LLC v. Oregon*,
    No. 3:20-cv-01866-IM, 2021 WL 3836840, (D. Or. Aug. 27, 2021) ............................... 11

*Colwell v. Dep't of Health & Human Servs.*,
    558 F.3d 1112 (9th Cir. 2009) ..................................................................................... 19

*Demery v. Arpaio*,
    378 F.3d 1020 (9th Cir. 2004) ....................................................................................... 5

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012)................................................................................................... 20, 21

*FBI v. Fikre,*
    601 U.S. 240 (2024)............................................................................................... 9, 15, 17

*Foster v. Carson,*
    347 F.3d 742 (9th Cir. 2003) ................................................................................ 14

*Free Enter. Fund v. PCAOB,*
    561 U.S. 477 (2010)............................................................................................... 20

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)............................................................................... 5, 11, 15, 16

*Gator.com Corp. v. L.L. Bean, Inc.,*
    398 F.3d 1125 (9th Cir. 2005) .............................................................................. 5

*Hall v. Beals,*
    396 U.S. 45 (1969)................................................................................................. 1

*Honig v. Students of Cal. Sch. for the Blind,*
    471 U.S. 148 (1985)............................................................................................... 9

*Kremens v. Bartley,*
    431 U.S. 119 (1977)............................................................................................... 10

*Lee v. Oregon,*
    107 F.3d 1382 (9th Cir. 1997) .............................................................................. 18

*Lewis v. Cont'l Bank Corp.,*
    494 U.S. 472 (1990)............................................................................................... 10

*Marshall v. HHS,*
    587 F.3d 1310 (Fed. Cir. 2009)............................................................................. 21

*Mills v. Green,*
    159 U.S. 651 (1895)............................................................................................... 1, 6, 7

*Minn. Humane Soc'y v. Clark,*
    184 F.3d 795 (8th Cir. 1999) ................................................................................ 12

*Mont. Envt. Info. Ctr. v. Stone-Manning,*
    766 F.3d 1184 (9th Cir. 2014) .............................................................................. 19

*Murphy v. Hunt*,
   455 U.S. 478 (1982) .................................................................................................. 12

*M.W. by & Through Hope W. v. U.S. Dep't of Army*,
   2017 WL 10456732 ................................................................................................. 6, 7

*Nat'l Treasury Emps. Union v. U.S.*,
   444 F. Supp. 3d 108 (D.D.C. 2020) ......................................................................... 14

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .................................................................................................... 9

*Portman v. Cnty. of Santa Clara*,
   995 F.2d 898 (9th Cir.1993) ..................................................................................... 18

*Princeton Univ. v. Schmid*,
   455 U.S. 100 (1982) .................................................................................................... 7

*Protectmarriage.com-Yes on 8 v. Bowen*,
   752 F.3d 827 (9th Cir. 2014) .................................................................................... 12

*Protestant Mem'l Med. Ctr., Inc. v. Maram*,
   471 F.3d 724 (7th Cir. 2006) .................................................................................... 12

*Pub. Utilities Comm'n of State of Cal. v. FERC*,
   100 F.3d 1451 (9th Cir. 1996) .................................................................................. 16

*Rentberry, Inc. v. City of Seattle*,
   814 Fed. Appx. 309 (9th Cir. 2020) .......................................................................... 10

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ................................................................................ 2, 16

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................ 2, 6

*Samma v. Dep't of Def.*,
   136 F.4th 1108 (D.C. Cir. 2025) ............................................................................... 16

*Smith v. United States Dep't of Agric.*,
   No. 15-CV-04497-TEH, 2016 WL 4179786 (N.D. Cal. Aug. 8, 2016) ...................... 14

*Spencer v. Kemna*,
   523 U.S. 1 (1998) ...................................................................................................... 11

*Storer v. Brown*,
    415 U.S. 724 (1974).................................................................................................. 12

*Super Tire Eng'g Co. v. McCorkle*,
    416 U.S. 115 (1974)........................................................................................... 11, 12

*Texas v. United States*,
    523 U.S. 296 (1998).................................................................................................. 18

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ................................................................................ 18

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985).................................................................................................. 18

*United States v. Sanchez-Gomez*,
    584 U.S. 381 (2018).................................................................................................... 6

*United States v. Strong*,
    489 F.3d 1055 (9th Cir. 2007) .................................................................................. 5

*United States v. W. T. Grant Co.*,
    345 U.S. 629 (1953).................................................................................................. 16

*Weinstein v. Bradford*,
    423 U.S. 147 (1975)........................................................................................... 11, 12

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ................................................................................ 15

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ........................................................................................... 6

**Statutes**

5 U.S.C. § 7103 ............................................................................................................... 21

5 U.S.C. § 7121 ............................................................................................................... 21

5 U.S.C. § 7123 ............................................................................................................... 21

5 U.S.C. § 7701 ............................................................................................................... 20

22 U.S.C. § 4010a ........................................................................................................... 20

28 U.S.C. § 1295 ............................................................................................................. 21

28 U.S.C. § 1331 ................................................................................................................... 20

Consolidated Appropriations Act, 2026,
    Pub. L. No. 119-75, Div. H, §101, 140 Stat 173 (2026)............................................. 1, 4, 10

Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans
    Affairs, and Extensions Act,
    2026, Pub. L. No 119-37, 139 Stat 495 (2025)........................................................... 1, 4, 10

**Regulations**

5 C.F.R. § 351.901 .............................................................................................................. 20


**Other Authorities**

OPM Guidance for Shutdown Furloughs,
    https://perma.cc/QC9L-WHCP ................................................................................. 17

Special Instructions for Agencies Affected by Possible Lapse in Appropriations,
    https://perma.cc/6LLK-UDGB ................................................................................. 17

# INTRODUCTION

This case no longer presents a live controversy and should be dismissed. Plaintiffs challenge agency actions they claim are barred by a statutory provision, as well as agency guidance concerning reductions in force ("RIFs") during a lapse in appropriations. But the statutory provision at the center of Plaintiffs' claims—Section 120 of the Continuing Resolution ("C.R.")—has expired. Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, Pub. L. No 119-37, 139 Stat 495 (2025); Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, Div. H, §101, 140 Stat 173 (2026) (changing the end date of the provision's effective period to February 13, 2026). And the agency guidance Plaintiffs challenge—the basis for *all* of their claims in the Revised 2d Am. Compl. For Declaratory and Inj. Relief ("SAC"), has been formally rescinded. *See* Exhibit A. Once a challenged law or policy ceases to operate, and "it [is] impossible for the court to grant 'any effectual relief whatever' to a prevailing party," the matter becomes moot. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 655 (1895)).

Just as problematic, the October to November lapse (resolved by the C.R.) that undergirds Plaintiffs' complaint that agencies cannot commence with RIFs during a lapse concluded nearly five months ago, making any ruling opining on the legality of RIFs during a lapse purely advisory. *See Hall v. Beals*, 396 U.S. 45, 48 (1969) ("The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."). Neither the C.R. nor the lapse guidance remains in effect, so there is no ongoing policy or legal framework for this Court to review. And as for their challenged RIF actions—all RIF actions taken during the lapse, and until the expiration of Section 120, were rescinded in full. In other words, there is no prospective relief the Court could meaningfully grant.

No exception to mootness applies either. *First*, the presumption of mootness attaches when the legislation (here, Section 120) used to advance a party's claim expires. *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1197 (9th Cir. 2019). Plaintiffs must show, beyond speculation and with support in the record, that there is a reasonable

expectation that the legislature will reenact the expired legislation. *Id*. at 1197-99. They cannot overcome the presumption here given Section 120's expiration. *Second*, the mootness exception ("capable of repetition yet evading review") does not, for a variety of reasons, save Plaintiffs' nonjusticiable dispute. Any argument for an exception would depend on a highly speculative chain of contingencies: (i) a future government-wide lapse in appropriations, (ii) the issuance of new agency guidance resembling the rescinded policy, and (iii) RIFs affecting Plaintiffs in the same manner that they complain of here. A three-tiered hypothetical set of events alone cannot sustain Article III jurisdiction. *Last*, all of the *Rosebrock* factors (used to determine if another mootness exception, "voluntary cessation" attaches) militate in Defendants' favor. *See generally, Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014). Moreover, once a defendant launches a factual attack on subject matter jurisdiction through a claim of mootness, Plaintiffs "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Mootness alone suffices to dismiss Plaintiffs' Complaints, and Plaintiffs also do not plausibly allege standing for some of the same reasons why the "capable of repetition" exception does not apply—their claims relate to future harm, regarding a hypothesized future lapse in appropriations, and are entirely speculative. No present concrete injury exists because there is no government-wide lapse.

Other jurisdictional grounds favor dismissal as well. Most notably, Plaintiffs cannot plausibly show their claims are ripe. The earliest that a government-wide lapse could occur is October 1, 2026, nearly seven months from now. Any asserted injury therefore rests on conjecture about future events and is not ripe for judicial review. Finally, the Court also lacks jurisdiction because Plaintiffs' claims arise from federal employment disputes that Congress has directed to specialized administrative forums such as the Merit Systems Protection Board ("MSPB") or Federal Labor Relations Authority ("FLRA"). Under those statutory schemes governing those forums, such claims must be channeled through those specialized forums rather than through the

district court.

In sum, for Plaintiffs' claims to proceed, they would have to "clear the board" and win on every jurisdictional hurdle placed before them (mootness, standing, ripeness, and statutory channeling). Defendants, by contrast, need prevail on only one such ground for this case to be dismissed. Because Section 120 has expired, the challenged guidance has been rescinded, and Plaintiffs' claims suffer from yet other substantial jurisdictional defects, the Court lacks jurisdiction to hear their claims. The Court should dismiss the Second Amended and Supplemental Complaints for lack of jurisdiction.

**ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claims based on the OMB and OPM guidance issued in connection with the October - November appropriations lapse are moot, now that those guidance documents have been rescinded.

2. Whether Plaintiffs' claims based on Section 120 of the Continuing Resolution are moot now that the provision has expired and the relevant RIFs were rescinded.

3. Whether Plaintiffs established standing.

4. Whether Plaintiffs' claims are ripe for adjudication.

5. Whether Plaintiffs carried their burden of establishing the Court's jurisdiction over claims arising out of the federal employment relationship.

**BACKGROUND**

**I.    Statutory and Regulatory Background**

The government incorporates its explanation of the legal framework from its briefing in the first PI Opposition Motion, ECF No. 85, as well as the second PI Opposition Motion, ECF No. 134.

**II.    Factual and Procedural Background**

The government incorporates the background provided in its Opposition to Plaintiffs' First PI Motion, ECF No. 85, as well as the second PI Opposition Motion, ECF No. 134.

On December 4, Plaintiffs filed a Supplemental Complaint for Declaratory and Injunctive

Relief (ECF No. 126) (the "Supplemental Complaint"), alleging that the RIFs undertaken by certain defendant agencies violated Section 120(a) and (e) of the Continuing Resolution. Plaintiffs also moved for a temporary restraining order, which the Court granted, and subsequently, the Court entered a preliminary injunction predicated on Section 120. *See* ECF No. 139.

Section 120 of the C.R. expired on February 13, 2026. Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, Pub. L. No 119-37, 139 Stat 495 (2025); Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, Div. H, §101, 140 Stat 173 (2026) (changing the end date of the provision's effective period to February 13, 2026). And in January and March, OPM and OMB rescinded the guidance documents.

As noted, Plaintiffs' operative pleadings are (i) the Revised SAC, and (ii) the Supplemental Complaint. The Revised SAC claims that OMB's and OPM's memoranda encouraging agencies to consider RIFs during the lapse in appropriations (as well as the agency decisions to effectuate those RIFs) violate the APA, the Appropriations Clause, and are *ultra vires*. See ECF No. 92 ¶¶ 206-246. The Supplemental Complaint asserts violations of Section 120(a) and (e) of the C.R., and similarly asserts the RIFs were unlawful under the APA, were *ultra vires*, and contravened the Constitution's Appropriations Clause. *See* ECF No. 121-1 ¶¶ 286-302. The relief sought in both complaints is similar. The Revised SAC seeks an order vacating the OMB and OPM guidance documents, along with the actions taken under that guidance, including the RIFs implemented during the appropriations lapse, and seeks related declaratory relief. *Id*. at 43-44. The Supplemental Complaint similarly seeks an order vacating the OPM and OMB guidance documents "that purport to authorize administration of RIFs in violation of Section 120 of the CR, as well as any and all actions taken by [Defendants] to implement RIFs and to refuse to rescind RIFs in contravention of Section 120 of the CR," under the APA, and also seeks related declaratory relief. *See* ECF No. 121-1, p. 13. As explained below, Plaintiffs have already obtained the relief sought, and it is now impossible for the Court to grant any effectual relief.

1    **LEGAL STANDARD**

2        Article III requires that there be "a live case or controversy . . . at all stages of review.

3    Otherwise, the case is moot and must be dismissed." *United States v. Strong*, 489 F.3d 1055, 1059

4    (9th Cir. 2007) (citations and quotation marks omitted).  "The Constitution's case-or-controversy

5    limitation on federal judicial authority, [U.S. Const.] [a]rt. III, § 2, underpins both [the Court's]

6    standing and [its] mootness jurisprudence." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*

7    *(TOC), Inc.*, 528 U.S. 167, 180 (2000).

8        A case becomes moot if "'changes in the circumstances that prevailed at the beginning of

9    litigation have forestalled any occasion for meaningful relief.'" *Gator.com Corp. v. L.L. Bean,*

10   *Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc).  Where a plaintiff seeks injunctive relief, a

11   case "is normally moot upon the termination of the conduct at issue" unless "there is a likelihood

12   of recurrence." *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir. 2004).  Such a case is "no

13   longer a 'Case' or 'Controversy' for purposes of Article III[,]" "[n]o matter how vehemently the

14   parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit[.]"  *Already,*

15   *LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

16   **ARGUMENT**

17   **I.    Plaintiffs' Claims Are Moot**

18       This case is moot for three independent reasons.  *First*, the OMB and OPM guidance

19   documents—the basis for Plaintiffs' Second Amended Complaint—have been rescinded.

20   Rescinded guidance cannot support a live dispute.  *Second*, Section 120 of the C.R., which

21   underpins Plaintiffs' Supplemental Complaint, has expired.  Because that provision is no longer

22   operative, Plaintiffs can no longer rely on that basis to challenge Defendants' actions.  *Third*, the

23   event that triggered Plaintiffs' claims, specifically the October to November lapse in

24   appropriations, has long been concluded; and Plaintiffs cannot sustain their claims by relying on a

25   lapse that is no longer in effect.  Nor can Plaintiffs sustain their claims by speculating about a

26   future appropriations lapse.  With all of the federal government funded through October 1, 2026

27

28

(aside from DHS), no lapse is imminent, and any assumption that the challenged events would recur as they did in 2025 is purely speculative.

Federal courts only possess jurisdiction to resolve "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review[.]" *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). Whereas standing is evaluated by the facts that existed when the complaint was filed, mootness inquiries "require courts to look to changing circumstances that arise after the complaint is filed." *M.W. by & Through Hope W. v. U.S. Dep't of Army*, 2017 WL 10456732, at *4 (quoting *ACLU of Nev. v. Lomax*, 471 F.3d 1010, 1016) (9th Cir. 2006) (collecting cases).

If some intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party," the matter becomes moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 655 (1895)). Thus, a "case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018) (quoting *Already*, 568 U.S. at 91). And once a defendant launches a factual attack on subject matter jurisdiction through a claim of mootness, Plaintiffs "must furnish affidavits or other evidence necessary to satisfy [their] burden of establishing subject matter jurisdiction." *Am. Diabetes Ass'n*, 938 F.3d at 1151 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

   a.   **Plaintiffs' Claims Relating To OMB And OPM Guidance Documents Are Moot**

Plaintiffs' claims based on the OMB and OPM guidance documents are moot for two related reasons. *First*, the guidance documents at issue have been rescinded. They are no longer in effect, and there is no ongoing policy for the Court to enjoin or declare unlawful. *Second*, the appropriations lapse that prompted the issuance of the OMB and OPM guidance documents occurred months ago and has since ended, and the associated RIFs made during the lapse, and until the expiration of Section 120, were rescinded. That past lapse does not provide a continuing basis

to challenge any RIF that is not tied to an ongoing government-wide lapse in appropriations. Plaintiffs seek relief directed at rescinded guidance arising from a concluded event. Either circumstance independently renders Plaintiffs' claims moot. And taken together—the rescission of the challenged guidance and the end of the underlying appropriations lapse—there is plainly no live controversy remaining for this Court to resolve.

A case becomes moot when an intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal.,* 506 U.S. at 12 (quoting *Mills*, 159 U.S. at 655). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)); *cf. Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (new policy superseding the challenged one made "the issue of the validity of the old regulation [ ] moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law'" (citation omitted)). Said another way, mootness "require[s] courts to look to changing circumstances that arise after the complaint is filed.'" *M.W. by & Through Hope W. v. United States Dep't of Army*, No. 16-CV-04051-LHK, 2017 WL 10456732, at *4 (N.D. Cal. Dec. 15, 2017), *aff'd sub nom. Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019) (quoting *ACLU of Nev.*, 471 F.3d at 1016) (collecting cases).

Plaintiffs center their argument in the Second Amended Complaint around the OMB and OPM guidance documents that contemplate RIFs during the October to November 2025 lapse. Plaintiffs claim that OMB's and OPM's memoranda encouraging agencies to consider RIFs during the lapse in appropriations (as well as the agency decisions to effectuate those RIFs) violate the APA and are *ultra vires*. Plaintiffs seek (1) a declaration that the OMB and OPM guidance documents violate the APA, (2) a declaration that the agencies' decisions to implement RIFs during the lapse in appropriations likewise violates the APA, SAC, Prayer for Relief, ECF No. 92 at 43, and (3) an order vacating the OMB and OPM guidance documents, along with the actions

taken under that guidance, including the RIFs implemented during the appropriations lapse. *Id*. at 44.

But any controversy concerning those guidance documents is now moot because the documents have been rescinded. *See* OPM Guidance for Shutdown Furloughs, https://perma.cc/QC9L-WHCP (last visited Mar. 5, 2026) (Section R, which Plaintiffs argue is the impermissible portion of the guidance, SAC at 30 n.30, ¶ 176, has been removed since January); *see also* Special Instructions for Agencies Affected by Possible Lapse in Appropriations, https://perma.cc/6LLK-UDGB (last visited Mar. 5, 2026) (Plaintiffs also take issue with the OPM guidance, SAC ¶ 176, but the webpage notes that "[t]hese Special instructions have been rescinded and are no longer in effect as of November 13, 2025). As for OMB, the e-mail sent by OMB to federal agencies that Plaintiffs claim is unlawful (which Plaintiffs dub "OMB's Lapse Memorandum"), SAC ¶¶ 160-75, has been "rescinded in full and [is] no longer operative." A copy confirming this is attached hereto as Exhibit A. Indeed, Plaintiffs' position acknowledges the link between the existence of the OMB and OPM documents and mootness. Joint Case Management Statement, ECF No. 157 at 2 (complaining that the case is in part not mooted "as Defendants never rescinded the unlawful Memorandum or Guidance documents").

As for the RIF actions that had taken place during the appropriations lapse, Plaintiffs have already obtained the relief sought through this Court's temporary restraining and preliminary injunction orders. All RIF actions taken during the lapse, and until the expiration of Section 120, were rescinded in full. *See* Temp. Restraining Ord. Agency Declarations, ECF No. 62-1–34 (affirming that the agencies have not issued RIF notices implicated by the Court's Orders); Preliminary Inj. Agency Declarations, ECF No. 112-1–39 (same); Status Report, ECF No. 117-1–7 (same); Dec. 17, 2026, Preliminary Inj. Agency Declarations, ECF No. 146-1–6 (same). And even if their claims were somehow not just limited to the October to November 2025 lapse, but extended to future appropriations lapses, no government-wide lapse is currently in effect, and none could occur until October 1, 2026. Even then, the prospect of a lapse—and of Plaintiffs being affected in the same manner—is speculative.

Defendants' Motion to Dismiss the Second Amended and Supplemental Complaints
3:25-cv-08302-SI

It is now "impossible for a court to grant any effectual relief whatever" to Plaintiffs. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). The stated injuries that serve as the foundation of Plaintiffs' claims no longer exist, and Plaintiffs have received all the relief they could have won in this suit. When a complaining party secures "all the relief he might have won in [the litigation]," "a federal court must dismiss the case as moot" to prevent courts from "tak[ing] up hypothetical questions that pique a party's curiosity or their own." *FBI v. Fikre*, 601 U.S. 240-41 (2024). Plaintiffs cannot obtain relief from the Court due to factual developments that happened in the interim, and the case is moot. *See Honig v. Students of Cal. Sch. for the Blind*, 471 U.S. 148, 149 (1985) ("No order of this Court could affect the parties' rights with respect to the injunction we are called upon to review."). Plaintiffs' claims based on the OMB and OPM guidance documents should be dismissed as moot, as no live controversy remains, and Plaintiffs have already received the relief they sought.

Plaintiffs' lack of standing also merits dismissal of the Amended Complaint. Plaintiffs challenge discrete governmental acts that have ceased and that past exposure to allegedly unlawful conduct does not, by itself, establish Article III standing to seek prospective injunctive relief absent a real and immediate threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102-06 (1983). A plaintiff must show a "real and immediate" threat of future injury as opposed to a "conjectural" or "hypothetical" possibility of recurrence. *Id*. at 101-02 (citations omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (to establish injury in fact under Article III, the "threatened injury must be 'certainly impending'" (citation omitted)); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (holding that the threatened injury is "too remote" and "conjectural" to satisfy Article III if the "prospect of future injury rests on the likelihood" of hypothetical future prosecutions). To the extent Plaintiffs predicate their claims on future RIFs, any future RIF during a lapse in appropriations would depend on new factual predicates and new statutory findings and would require Plaintiffs to file a new complaint. Because Plaintiffs lack Article III standing to seek prospective relief directed at hypothetical future conduct, that request does not prevent this case from becoming moot.

### b.    Plaintiffs' Claims Relating To Section 120 Of The Continuing Resolution Are Also Moot

Turning to Plaintiffs' other claims, their Supplemental Complaint focuses on Section 120 of the C.R., which prohibited certain RIF actions.  Every claim Plaintiffs assert in the Supplemental Complaint depends on the continued force of Section 120; however, since Section 120 expired on February 13, 2026, the legal foundation for those claims no longer exists.  Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, Pub. L. No 119-37, 139 Stat 495 (2025); Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, Div. H, §101, 140 Stat 173 (2026) (changing the effective period of the provision to February 13, 2026).  "[T]he repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal." *Bd. of Trs. of Glazing Health & Welfare Tr.*, 941 F.3d at 1198; *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) (legislature's passage of amendments rendered case moot); *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (expiration of legislation rendered case moot); *Kremens v. Bartley*, 431 U.S. 119, 127–28 (1977) (legislature's repeal and replacement of legislation rendered case moot).

In this Circuit, a case is presumed to be moot when there is repeal, amendment, or expiration of legislation, unless there is a "reasonable expectation" that the legislative body is likely to enact the same or similar legislation in the future.  *Bd. of Trs. of Glazing Health & Welfare Tr.*, 941 F.3d at 1197.  Reasonable expectation has been interpreted to mean something more than a mere possibility or theoretical possibility.  *Brach v. Newsom*, 38 F.4th 6, 14 (9th Cir. 2022) (mere possibility of an activity occurring is too remote to evade mootness).  Instead, the party challenging the presumption of mootness must demonstrate there is a reasonable expectation that the law will be reenacted; although the plaintiff need not show that the enactment of identical or similar legislation is "virtually certain," more than a mere speculation is required.  *City of Mesquite v. Aladdin's Castle Inc.*, 455 U.S. 283, 289 (1982); *see also Rentberry, Inc. v. City of Seattle*, 814 F. App'x 309, 309 (9th Cir. 2020) (appellants failed to show a reasonable expectation that Seattle will enact an identical or similar ordinance in the future); *see also Cocina Cultura LLC v. Oregon*,

No. 3:20-cv-01866-IM, 2021 WL 3836840 at *6, (D. Or. Aug. 27, 2021) (enactment of a one-time emergency fund is insufficient to show reasonable expectation). Plaintiff bears the burden to show a reasonable expectation that the government will reenact its regulation, as demonstrated with support that "must be founded in the record." *See Boyd v. City of San Rafael*, No. 23-cv-04085-EMC, 2024 WL 3748334 at *3 (N.D. Cal. Aug. 7, 2024); *Board of Trustees of Glazing Health and Welfare Trust*, 941 F.3d at 1199.

Because the law that Plaintiffs center their Supplemental Complaint around has expired, Plaintiffs' claims are therefore moot unless they can show in the record, beyond speculation, that the law will be reenacted. Without such a showing, the presumption remains, and Plaintiffs' claims relating to Section 120 should also be dismissed as moot.

## II.    No Mootness Exception Applies

There are two exceptions to mootness: (1) when the challenged conduct is "capable of repetition, yet evading review"; and (2) when a defendant voluntarily ceases its conduct and the challenged conduct can reasonably be expected to recur. *See Friends of the Earth*, 528 U.S. at 190 (citation omitted). Neither exception applies.

### a.    The "Capable Of Repetition, Yet Evading Review" Exception Is Inapplicable

The "capable of repetition, yet evading review" exception applies only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citation omitted), and only when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Here, neither requirement is met.[1]

*First*, this exception applies in limited circumstances—such as a labor strike or election campaign, *see Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126-27 (1974) (labor strike),

---

[1] As for whether Section 120 is capable of repetition, that is not the correct mootness exception as applied to expired statutes. The correct exception—whether there is a reasonable expectation of reenactment—does not apply for the reasons stated more fully above.

*Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (election campaign)—that are too transient to receive judicial review.  The Ninth Circuit has recognized that this exception does not apply where a plaintiff is able to seek judicial review through a request for emergency injunctive relief.  *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014) ("[n]evertheless, the fact that preliminary relief is technically *available* to maintain a live controversy will also deprive federal courts of jurisdiction to consider the action as one that is "capable of repetition, yet evading review."); *see also Minn. Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999) (exception does not apply when a party chose not to appeal a denial of its preliminary injunction or seek an expedited appeal); *see also Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 730 (7th Cir. 2006) (refusing to apply the exception when "judicial review well might have been possible" if the plaintiff "sought a preliminary injunction").  And here, the challenged act was not too short such that it could evade judicial review.  Indeed, this Court has now *twice* considered the issues raised in this case—albeit on an expedited basis—such that they immediately addressed Plaintiffs' alleged injury.

*Second*, there is no "reasonable expectation" that Plaintiffs will be "subjected to the same action again."  *Weinstein*, 423 U.S. at 149.  A reasonable expectation is more than a "mere physical or theoretical possibility."  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (citation omitted).  There must be a "demonstrated probability that the same controversy will recur involving the same complaining party."  *Id.* (quoting *Weinstein*, 423 U.S. at 149).  Here, there is no reasonable expectation that the same controversy will recur.  Plaintiffs challenge completed governmental acts that happened during a time-limited lapse in appropriations, as opposed to any ongoing policy or regulation or lapse in appropriations that continues to govern future conduct.  *Super Tire*, 416 U.S. at 124-25 (to maintain a live case in challenging a government policy, plaintiffs must challenge a "fixed and definite" policy that is "immediately and directly injurious" to their interests and "not contingent upon executive discretion").  The agency RIF actions pursuant to the OMB and OPM guidance documents were discrete, fact-specific responses to then-existing conditions and application of

those lapse specific guidance documents ceased entirely once the lapse ended. All of Plaintiffs'

alleged harm relates to those past actions, *see* SAC ¶¶ 206-46, which have now ended.

Third, speculating that a future lapse might involve similar policies also fails to qualify for

a mootness exception. Predicting that a policy will be repeated during some future lapse in appro-

priations is too speculative for the exception to attach.

In *Atlas Brew Works, LLC v. Barr*, a local brewery brought action against the Attorney

General contending that they were harmed because during a lapse in appropriations, they could

not obtain regulatory approval of labels, and as a result their business suffered. *See generally* 820

F. App'x 4 (D.C. Cir. 2020). When the lapse ended, the plaintiff promptly thereafter obtained its

requested regulatory approvals but argued that the case was not mooted because government ap-

propriations will inevitably lapse again and the agency would revive its policy of not approving

regulatory applications during a lapse. *Id.* at 7. The D.C. Circuit rejected the applicability of the

mootness exception "because the likelihood of a future government shutdown is 'too speculative'

and "deciding Atlas's claims would require the court to evaluate an alleged enforcement policy by

assuming a series of hypothetical decisions by government agencies as well as Atlas." *Atlas Brew*

Works, 820 F. App'x at 7; *see, e.g.*, *AFGE AFL-CIO v. Raines*, No. 98-5045, 1998 WL 545417

(D.C. Cir. July 15, 1998) (affirming dismissal of lapse-related claims as moot and incapable of

repetition). "Such speculative decisionmaking would take us outside the boundaries of the judicial

power." *Id.* So too here.

Aside from assuming the future enactment of similar policies, Plaintiffs' theory of a moot-

ness exception assumes a chain of speculative events. For Defendants' challenged conduct and

Plaintiffs' alleged harms to occur in the future, there would (1) need to be a lapse in appropriations;

(2) the lapse in appropriations would need to encompass all of the Defendant agencies here, unlike

the limited lapse that is currently in effect with DHS; (3) OMB and OPM issue guidance memo-

randa instructing agencies to evaluate RIFs during said lapse in funding; (4) agencies choose to

initiate RIFs pursuant to such guidance; and (5) the RIFs would affect each of the Plaintiff Organ-

izations in the same way that they have alleged here. No government-wide lapse can occur before

October 1.  And, even if one did occur, the kinds of injuries Plaintiffs complain about here would then also depend on a series of contingent decisions by multiple hypothetical actors and agencies. Such a sequence of speculative assumptions does not establish a "reasonable expectation" that Plaintiffs will be subject to the same conduct again.

Finally, a mootness dismissal here corresponds to similar cases that involve a lapse in appropriations.  In another lapse-related challenge in which plaintiffs invoked the capable of repetition argument, the Ninth Circuit held that plaintiffs' challenge to a judicial order suspending appointment of indigent defense counsel during a lapse in appropriations *did not* fall within the capable of repetition exception because the only fact that supported plaintiffs' claim that a similar order might be issued again in the future "is that it happened once."  *See Foster v. Carson,* 347 F.3d 742, 748 (9th Cir. 2003).  "The mere fact that a similar order from the Chief Justice *might* someday issue does not establish a "reasonable expectation" that such an order *will* issue" and the "mere possibility that something *might* happen is too remote to keep alive a case as an active controversy."  *Id.* at 748; *see also Nat'l Treasury Emps. Union v. U.S.*, 444 F. Supp. 3d 108, 116 (D.D.C. 2020) (granting motion to dismiss on mootness grounds because as the D.C. Circuit has twice affirmed—"claims arising from past government shutdowns are too speculative to satisfy the capable-of-repetition exception to mootness."); *see also Alaska v. Jewell*, No. 4:13-cv-00034-SLG, 2014 WL 3778590, at *3 (D. Alaska July 29, 2014) (dismissing lawsuit as moot once government lapse ended because "even if the history of government funding gaps makes it reasonable to expect that another shutdown will occur at some point in the future, it does not make it reasonable to expect that Defendants' response to a future shutdown would be the same as the response to the 2013 shutdown"); *Smith v. United States Dep't of Agric.*, No. 15-CV-04497-TEH, 2016 WL 4179786 at *4 (N.D. Cal. Aug. 8, 2016) (rejecting argument for mootness exception related to inability to disburse SNAP benefits during a lapse in appropriations as involving "speculative series of events," and "chain of events necessary to bring about the same injury and the same action is simply too speculative for the Court to conclude that this is one of those 'exceptional situations'

where the mootness exception should apply") (citing *Wolfson v. Brammer*, 616 F.3d 1045, 1053-54 (9th Cir. 2010)).

Here, it is not reasonable to think that 2025's discrete actions would recur under the same factual and legal conditions precipitating the OMB and OPM guidance memoranda and the October and November RIF actions, particularly given the necessarily speculative nature of future factual conditions that would warrant any RIF authority that the Executive may invoke. *See Brach*, 38 F.4th at 9, 12-15 (rejecting capable of repetition exception where challenged executive orders were rescinded, intervening factual and legal developments "fundamentally altered" the dispute, and any future recurrence was "too remote"). Because the prospect of recurrence in this case rests on "a chain of speculation" rather than a reasonable expectation of recurrence, any alleged repetition is too remote to establish Article III case or controversy.

### b.    The Voluntary Cessation Exception Is Inapplicable

The voluntary cessation exception to the mootness doctrine likewise does not apply. The exception prevents defendants from mooting a case through temporary suspension of the challenged conduct, while remaining free to "return to [their] old ways." *Friends of the Earth*, 528 U.S. at 189-90 (citation omitted). That is, it targets defendants who "might suspend [the] challenged conduct after being sued, win dismissal, and later pick up where [the defendant] left off[.]" *Fikre*, 601 U.S. at 241.

The Ninth Circuit has made clear, however, that "[a]lthough we hold the government to the same burden as private litigants in making this determination," *see Brach*, 38 F.4th at 12-13 (citing *Bell v. City of Boise*, 709 F.3d 890, 898–99 & n.13 (9th Cir. 2013)), we nonetheless "treat the voluntary cessation of challenged conduct by government officials with more solicitude . . . than similar action by private parties," *Bd. of Trs. of Glazing Health & Welfare Tr.*, 941 F.3d at 1198 (internal quotation marks omitted) ("[W]e presume the government is acting in good faith."); *Brach*, 38 F.4th at 12-13. In any event, the exception is inapplicable when "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*,

528 U.S. at 190; *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (stating case is moot when "there is no reasonable expectation that the wrong will be repeated" (citation omitted)).

For starters, the voluntary cessation exception "has no application here" because there is no evidence that the lapse in appropriations ended so as to "manipulate the court's jurisdiction" and "to strategically avoid judicial review by ceasing [the] challenged activity." *Samma v. Dep't of Def.*, 136 F.4th 1108, 1114 (D.C. Cir. 2025).

Nor do their claims qualify for the voluntary cessation exception to the mootness doctrine because "in order for this exception to apply, the defendant's voluntary cessation must have arisen *because of* the litigation. *Pub. Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996). Here, the situation has changed because the lapse that sustained Plaintiffs' claims has ended and the relevant C.R. expired. Voluntary cessation does not apply because the lapse ended by operation of Congress's funding actions. Thus, to the extent Plaintiffs argue that the lapse-related RIF activity ceased because of Defendant agencies, it did so because the lapse itself concluded, not as a result of voluntary cessation by the agencies.

These factors already support a finding that the voluntary cessation exception does not apply. In addition, the five-factor framework that the Ninth Circuit articulated in *Rosebrock v. Mathis*—which identifies circumstances in which voluntary cessation is more likely to moot a claim—also weigh in Defendants' favor. *See Rosebrock*, 745 F.3d at 972. In *Rosebrock*, the Ninth Circuit stated, in the context of voluntary cessation, that mootness is more likely when: (1) the policy change is evidenced by language that is broad in scope and unequivocal in tone; (2) the policy change fully addresses all of the objectionable measures that the Government took against the plaintiffs in the case; (3) the case in question was the catalyst for the agency's adoption of the new policy; (4) the policy has been in place for a long time when we consider mootness; and (5) since the policy's implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff. *Id.*

Applied here—the policy change for both the OMB and OPM document rescissions is broad in scope and unequivocal in tone and fully addresses all objectionable measures that Plaintiffs complain of regarding OMB and OPM's guidance. *See* OPM Guidance for Shutdown Furloughs, https://perma.cc/QC9L-WHCP (last visited Mar. 5, 2026) (Section R, which Plaintiffs argue is the impermissible portion of the guidance, SAC at 30 n.30, ¶ 176, has been removed since January); *see also* Special Instructions for Agencies Affected by Possible Lapse in Appropriations, https://perma.cc/6LLK-UDGB (last visited Mar. 5, 2026) (nothing that "[t]hese Special instructions have been rescinded and are no longer in effect as of November 13, 2025); *see also* Rescission of OMB Guidance, Exhibit A (noting that the "OMB Lapse Memorandum" and attached guidance have been "rescinded in full and [is] no longer operative."). Next, the case in question *was* the catalyst for the rescission of these guidance documents, as is evident by the timing of their rescission statements. Further, to the extent there was a policy of not commencing with RIFs during a lapse, as Plaintiffs assert, such a policy had been in place for a long time before the guidance was effectuated. *See* SAC ¶¶ 129-54. Last, since the rescission of the challenged OMB and OPM guidance documents, they have not been reinstated and remain rescinded. For these reasons, the factors identified in *Rosebrock v. Mathis* confirm that the voluntary cessation exception does not apply. They likewise reinforce that the challenged conduct is not reasonably expected to recur as well.

As explained more fully above, "it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur." *Already*, 568 U.S. at 94-95. Any future challenge to RIFs during a lapse in appropriations would necessarily involve different factual scenarios that would raise new questions about whether those discrete actions comply with the Antideficiency Act and the APA. And any future challenge to RIFs during a lapse in appropriations would require a different statutory analysis and could not proceed with the same facts as presented in this case. Accordingly, there is no possibility of recurrence of the same controversy. *See id*. at 91 (holding the case moot where subsequent developments made it "absolutely clear" that the allegedly wrongful conduct "could not reasonably be expected to recur"); *Fikre*, 601 U.S. at 241 (stating a case is

moot when intervening circumstances make clear that there is "no reasonable expectation" that the defendant will "return to its old ways"); *Brach*, 38 F.4th at 14 (case moot when factual circumstances changed relating to COVID-19 recommendations after the state ordered schools to reopen). The possibility of such a hypothetical future RIF during a lapse in appropriations is a far cry from a reasonable expectation of recurrence of the current controversy, which is inextricably intertwined with events that occurred in October and November of 2025.

## III.    Any Future RIF Decisions Plaintiffs Challenge Are Not Ripe

"While standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addresses when that litigation may occur." *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997). "[I]n many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). In fact, the ripeness inquiry is often "characterized as standing on a timeline." *Id.* "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). The injury must be "*certainly* impending[.]" *18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989) (quoting *Thomas*, 473 U.S. at 581). The ripeness doctrine is designed "to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action," *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 902 (9th Cir.1993) (citation omitted). "[T]hrough avoidance of premature adjudication," the ripeness doctrine prevents courts from becoming entangled in "abstract disagreements." *Abbott Lab'ys. v. Gardner,* 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977).

Previously in this case, the Court had found that the issue was ripe for review because "OMB and OPM have already 'directed' all federal agencies to use the 'opportunity' of the lapse 'to consider Reduction in Force (RIF) notices for all employees' in PPAs that satisfy the criteria OMB has outlined." *Am. Fed'n of State Cnty. & Mun. Emps., AFL-CIO v. OMB*, 807 F. Supp. 3d

1004, 1042-43 (N.D. Cal. 2025), *appeal filed*, No. 25-7998 (9th Cir. Dec. 22, 2025). However, as the lapse in appropriations has now ended, and the relevant OMB and OPM guidance documents have been rescinded, to the extent Plaintiffs suggest that they may be harmed in the future because there may be another lapse and that there might, someday in the future, exist an OMB or OPM guidance instructing agencies to promulgate RIFs during that lapse—such claims are not ripe for review.

To the extent Plaintiffs' claims are not specific to the October to November 2025 lapse in appropriations, but rather, relate to future speculative harms during future lapses in appropriations—those claims are not ripe because their theories, as discussed at length above, "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (citation omitted). Specifically, they seek to forestall hypothetical agency actions—"RIFs during the government shutdown," SAC ¶ 210. If Plaintiffs contend that their harm will happen again during a future in appropriations, that allegation cannot suffice because if "the supposed injury has not materialized and may never materialize," as the "dispute is more of an abstraction than an actual case" and cannot "survive the standing/ripeness inquiry." *Mont. Envt. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1190 (9th Cir. 2014) (citation modified). Plaintiffs carry the burden of proving that their claims are ripe. *See Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). Under these circumstances, where the maturation of Plaintiffs' claims would require stacking inference upon inference, Plaintiffs cannot plausibly allege that their claims are ready for adjudication. Accordingly, Plaintiffs' claims are not ripe as they rest on a speculative chain of future events.

## IV.    Plaintiffs' Claims Are Precluded By The CSRA And FSLMRS

Plaintiffs' effort to avoid mootness and establish standing encounters an additional barrier: their claims are precluded by the CSRA and the FSLMRS. Plaintiffs' claims are centered on the terms and conditions of federal employment and thus must be channeled to agency adjudication in the MSPB and FLRA under the CSRA and the FSLMRS, respectively, not in district court. Under

either scheme, Plaintiffs may seek judicial review of adverse decisions by the MSPB or FLRA in the courts of appeals.  But they cannot avoid these comprehensive statutory schemes simply because they prefer to litigate before this Court.  Plaintiffs seek to enjoin the Defendant agencies from "taking any action to implement, carry out, or effectuate reductions in force ("RIFs")." Proposed Order at 2, ECF No. 130-13.  No matter how Plaintiffs style their claims, they concern the federal employer-employee relationship and thus must be channeled through the avenues created by Congress under the CSRA and the FSLMRS under a longstanding and mounting body of precedent.

Congress has "established a comprehensive system" as the "exclusive means" for reviewing the federal agency employment decisions challenged by Plaintiffs here.  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 8 (2012) (citation omitted).  The CSRA, together with the FSLMRS, "creates an integrated scheme of administrative and judicial review, wherein the Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims."  *Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) ("*Air Force*") (cleaned up).  Congress allowed certain employees to challenge agency personnel decisions "by litigating their claims through the statutory scheme in the context of [a] concrete" dispute, limited to the claims and remedies provided by Congress.  *See AFGE v. Trump*, 929 F.3d 748, 757(D.C. Cir. 2019).   Such an exclusive alternative scheme displaces district-court jurisdiction under 28 U.S.C. § 1331 if "the claims at issue are of the type Congress intended to be reviewed within the statutory structure."  *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 489 (2010) (cleaned up).

Plaintiffs' claims are of the type Congress intended to be reviewed in the first instance by agency adjudicators—not federal district courts.  *See AFGE*, 929 F.3d at 755. Plaintiffs challenge the agencies' past RIF decisions.  But federal employees (such as Plaintiffs' members) who believe a RIF has violated a statute or regulation may seek redress only through the MSPB, *see* 5 U.S.C. § 7701(a); 5 C.F.R. § 351.901, or another specialized scheme for administrative review.  *See, e.g.*, 22 U.S.C. § 4010a(c); *see also Alder v. Tennessee Valley Auth.*, 43 F. App'x 952, 956 (6th Cir.

2002) ("[A] challenge to [a] reduction-in-force decision" is "a fundamental employment claim subject to MSPB review.").

Plaintiffs' union status cannot "circumvent the CSRA's strictures." *See Air Force*, 716 F.3d at 639. The FSLMRS "establishes a comprehensive scheme to deal with labor relations in federal employment," which channels adjudication to the FLRA followed by direct review in the courts of appeals. *Id.* at 636 (citation omitted). A union may file a grievance under preexisting collective bargaining agreements "concerning any matter relating to the employment of any employee," "the effect or interpretation, or a claim of breach, of a collective bargaining agreement," or "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. §§ 7103(a)(9), 7121(a)(1). These comprehensive provisions foreclose Plaintiffs' attempt to raise their labor dispute in district court. *See, e.g.*, *AFGE*, 929 F.3d at 753, 761 (applying the same preclusion principles in a challenge to three executive orders governing collective bargaining and grievance processes).

As *Elgin* and *AFGE* show, it is well-settled that claims like Plaintiffs' are channeled to agency adjudication. As in the 2019 *AFGE* case, parties can bring certain claims through the administrative process "in the context of concrete . . . disputes." 929 F.3d at 757. If any Plaintiff thinks particular RIFs conflict with any federal rule, guidance, or statute, they may assert such a claim within one of the review schemes. *See, e.g., Marshall v. HHS*, 587 F.3d 1310, 1318 (Fed. Cir. 2009) (reversing based on an erroneous statutory interpretation). If dissatisfied with a ruling of the MSPB or FLRA, Plaintiffs or their members may obtain judicial review in the courts of appeals. 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7123. Nor are Plaintiffs' claims "wholly collateral" to the CSRA and FLRA scheme. What matters for this inquiry is whether the subject of Plaintiffs' challenge is a matter covered by the CSRA and FSLMRS, not how Plaintiffs describe their claims. *See Elgin*, 567 U.S. at 22. Here, the subject of Plaintiffs' claims is RIFs and related federal employment and labor matters; their contention that the OMB and OPM guidance are unlawful is simply the "vehicle" by which they seek to stop RIFs from taking place.

1

**CONCLUSION**

2       For the reasons stated, Defendants' Motion to Dismiss should be granted, the Second

3  Amended Complaint and Supplemental Complaint should be dismissed with prejudice, and these

4  suits should be dismissed in full.

5

6   Dated: March 6, 2026              Respectfully Submitted,

7

8                        STANLEY E. WOODWARD, JR.
                        Associate Attorney General

9                        BRETT A. SHUMATE

10                     Assistant Attorney General
                     Civil Division

11                     ERIC J. HAMILTON

12                     Deputy Assistant Attorney General

13                     ELIZABETH T. HEDGES

14                     Counsel to the Assistant Attorney General
                     Civil Division

15                     CHRISTOPHER R. HALL

16                     Assistant Branch Director

17                     BRAD P. ROSENBERG

18                     Special Counsel

19                     */s/ Pierce J. Anon*
                     STEVEN M. CHASIN

20                     PIERCE J. ANON

21                     Trial Attorneys
                     Civil Division, Federal Programs Branch

22                     U.S. Department of Justice
                     1100 L Street NW

23                     Washington, DC 20005
                     Phone: (202) 305-7573

24                     E-mail: pierce.anon@usdoj.gov

25                     *Attorneys for Defendants*

26

27

28

# EXHIBIT A



**From:** ███████████████████████ @omb.eop.gov>
**Sent:** Wednesday, March 4, 2026 10:56 AM
**To:** ████████████████████████████

**Subject:** 10/24/25 email rescission

Good morning—

I am writing to follow up on this email.  This email and the guidance contained therein was specific to the lapse that occurred starting in October 2025.  Therefore, the email and guidance are rescinded in full and no longer operative.

My best,
███



Good evening, colleagues--

Thank you for your agency's efforts to prepare for an orderly shutdown in the event of a lapse in appropriations. As required by Section 124 of OMB Circular A-11, OMB held its first lapse planning call with your agencies earlier this week, and we will continue to provide lapse updates as we approach the end of the fiscal year.

Over the past 10 fiscal years, Congress has consistently passed Continuing Resolutions (CRs) on or by September 30 on a bipartisan basis. Unfortunately, congressional Democrats are signaling that they intend to break this bipartisan trend and shut down the government in the coming days over a series of insane demands, including $1 trillion in new spending.

Last week, the House of Representatives passed H.R. 5371, a clean CR that would fund the government at current levels through November 21. The Administration supports Senate passage of H.R. 5371, but congressional Democrats are currently blocking this clean CR due to their partisan demands.

As such, it has never been more important for the Administration to be prepared for a shutdown if the Democrats choose to pursue one. Thankfully, H.R. 1 provided ample resources to ensure many core Trump Administration priorities will continue uninterrupted.

Programs that did not benefit from an infusion of mandatory appropriations will bear the brunt of a shutdown, and we must continue our planning efforts in the event Democrats decide to shut down the government. If Congress successfully passes a clean CR prior to September 30, the additional steps outlined in this email will not be necessary.

With respect to those Federal programs whose funding would lapse and which are otherwise unfunded, such programs are no longer statutorily required to be carried out. Therefore, consistent with applicable law, including the requirements of 5 C.F.R. part 351, agencies are directed to use this opportunity to consider Reduction in Force (RIF) notices for all employees in programs, projects, or activities (PPAs) that satisfy all three of the following conditions: (1) discretionary funding lapses on October 1, 2025; (2) another source of funding, such as H.R. 1 (Public Law 119-21) is not currently available; and (3) the PPA is not consistent with the President's priorities.

RIF notices will be in addition to any furlough notices provided due to the lapse in appropriation. RIF notices should be issued to all employees working on the relevant PPA, regardless of whether the employee is excepted or furloughed during the lapse in appropriations.

Once fiscal year 2026 appropriations are enacted, agencies should revise their RIFs as needed to retain the minimal number of employees necessary to carry out statutory functions. Any proposed RIF plan must be submitted to OMB.

As a reminder, updated agency lapse plans were due to OMB on August 1. OMB has received many, but not all, of your submissions. Please send us your updated lapse plans ASAP. As previously communicated, we want to reiterate what we are expecting to see in these plans:

- Agency plans should not "repurpose" balances or assume use of transfer authorities. Any exceptions must be requested of OMB, and will be considered on a case-by-case basis.

- In cases where agencies received appropriations under H.R. 1, agencies' lapse plans should assume this funding is obligated consistent with OMB-approved spend plans. If you have already submitted your lapse plan to OMB for review, we will be reaching out to you the coming days to update your plans in line with this guidance as needed.

We remain hopeful that Democrats in Congress will not trigger a shutdown and the steps outlined above will not be necessary. The President supports enactment of a clean CR to ensure no discretionary spending lapse after September 30, 2025, and OMB hopes the Democrats will agree.

OMB will be communicating further information as September 30, 2025, draws closer, and will be a resource to you.   Please don't hesitate to reach out in the event Democrats for a discretionary spending lapse after September 30, 2025.

My best,

