Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Alice X. Wang (SBN 335224)
Robin S. Tholin (SBN 344845)
Talia Stender (SBN 341654)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
awang@altber.com
rtholin@altber.com
tstender@altber.com

*Attorneys for Plaintiffs*

[Additional Plaintiffs' counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> Defendants. | Case No. 3:25-cv-08302-SI <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINTS** <br><br> Hearing Date: May 19, 2026 <br> Time: 11:00 AM <br> Judge: Hon. Susan Illston <br> Place: San Francisco Courthouse, Courtroom 1 |

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................3

LEGAL STANDARD ...................................................................................................................5

ARGUMENT .................................................................................................................................6

    I.    Plaintiffs' Claims Are Not Moot ...............................................................................6

        A.    Plaintiffs' SAC Claims Challenging the OMB Lapse Memorandum and OPM Guidance Related to RIFs During Government Shutdowns Are Not Moot .......................................................................................................7

            1.    Defendants cannot show mootness based on the end of the full federal government shutdown. .......................................................7

            2.    Defendants cannot show mootness based on OMB and OPM's voluntary actions purportedly rescinding the challenged directives. .............................................................................9

            3.    Plaintiffs' claims are capable of repetition, yet evading review. ..............................................................................................13

        B.    Plaintiffs' Claims in the Supplemental Complaint Under Section 120 of the Continuing Resolution Are Not Moot .................................................18

            1.    Section 120(e) has not expired, and effective relief is still available to Plaintiffs. ..............................................................19

            2.    There is a reasonable expectation that Section 120(a) will be reenacted. ...............................................................................21

        C.    Defendants' Attempt to Reargue Standing Misunderstands the Doctrine and Plaintiffs' Claims ...................................................................22

    II.    Plaintiffs' Claims Are Ripe .....................................................................................23

    III.    This Court Has Jurisdiction Over Plaintiffs' Claims .............................................24

CONCLUSION ............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*350 Mont. v. Haaland*,
  50 F.4th 1254 (9th Cir. 2022) ..................................................................................................... 6, 8

*AFGE v. OPM*,
  771 F.Supp.3d 1127 (N.D. Cal. 2025) ............................................................................................ 25

*AFGE v. OPM*,
  799 F. Supp. 3d 967 (N.D. Cal. 2025) ............................................................................... 10, 20, 25

*AFGE v. Rivlin*,
  995 F. Supp. 165 (D.D.C. 1998) .................................................................................................... 17

*AFGE v. Trump*,
  139 F.4th 1020 (9th Cir. 2025) ........................................................................................... 3, 24, 25

*AFGE v. Trump*,
  No. 25-cv-03698-SI, 2025 WL 2614698 (N.D. Cal. Sept. 9, 2025) ............................................... 25

*AFGE v. Trump*,
  784 F.Supp.3d 1316 (N.D. Cal. 2025) ........................................................................................... 25

*Alaska Ctr. for Env't v. U.S. Forest Serv.*,
  189 F.3d 851 (9th Cir. 1999) ................................................................................................... 15, 16

*Alaska v. Jewell*,
  No. 4:13-CV-00034-SLG, 2014 WL 3778590 (D. Alaska July 29, 2014) ....................................... 17

*Alcoa, Inc. v. Bonneville Power Admin.*,
  698 F.3d 774 (9th Cir. 2012) ................................................................................................... 14, 15

*Atlas Brew Works, LLC v. Barr*,
  820 F. App'x 4 (D.C. Cir. 2020) .................................................................................................... 16

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ........................................................................................................... 6

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
  941 F.3d 1195 (9th Cir. 2019) ................................................................................................. 21, 22

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) ......................................................................................................... 11

*Bernhardt v. County of Los Angeles*,
 279 F.3d 862 (9th Cir. 2002) ....................................................................................23

*City of Los Angeles v. Barr*,
 929 F.3d 1163 (9th Cir. 2019) ..................................................................................15

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ....................................................................................................23

*City of Mesquite v. Aladdin's Castle Inc.*,
 455 U.S. 283 (1982) ..................................................................................................22

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ..................................................................................................23

*Doe No. 1 v. Reed*,
 697 F.3d 1235 (9th Cir. 2012) ..................................................................................14

*F.B.I. v. Fikre*,
 601 U.S. 234 (2024) .................................................................................................6, 9

*Fed. Educ. Ass'n v. Trump*,
 795 F. Supp. 3d 74 (D.D.C. 2025)............................................................................10

*Fed. Election Comm'n v. Wis. Right to Life, Inc.*,
 551 U.S. 449 (2007) ...............................................................................................6, 14

*Fikre v. Fed. Bureau of Investigation*,
 904 F.3d 1033 (9th Cir. 2018) ...............................................................................1, 10

*First Nat. Bank of Bos. v. Bellotti*,
 435 U.S. 765 (1978) ..................................................................................................14

*Flaxman v. Ferguson*,
 151 F.4th 1178 (9th Cir. 2025)............................................................................23, 24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
 528 U.S. 167 (2000) ...........................................................................................6, 9, 23

*Health Freedom Def. Fund, Inc. v. Carvalho*,
 148 F.4th 1020 (9th Cir. 2025) (en banc)...........................................................2, 9, 19

*Kingdomware Techs., Inc. v. United States*,
 579 U.S. 162 (2016) ..................................................................................................14

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
 567 U.S. 298 (2012) ....................................................................................................9

*Leonard v. U.S. Dep't of Def.*,
 598 F. App'x 9 (D.C. Cir. 2015) ...............................................................................16

*Los Angeles County v. Davis*,
   440 U.S. 625 (1979) ................................................................................................6

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..............................................................................................22

*McCormack v. Herzog*,
   788 F.3d 1017 (9th Cir. 2015) ..............................................................................10

*Minn. Humane Soc'y v. Clark*,
   184 F.3d 795 (8th Cir. 1999) ................................................................................15

*Moore v. Urquhart*,
   899 F.3d 1094 (9th Cir. 2018) ..............................................................................18

*Nat. Desert Ass'n v. United States Forest Serv.*,
   957 F.3d 1024 (9th Cir. 2020) ................................................................................9

*National Treasury Emps. Union v. United States*,
   444 F. Supp. 3d 108 (D.D.C. 2020) ......................................................................17

*Neighbors of Cuddy Mountain v. Alexander*,
   303 F.3d 1059 (9th Cir. 2002) ................................................................................9

*Nielsen v. Preap*,
   586 U.S. 392 (2019) ..............................................................................................21

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*,
   135 F.3d 1260 (9th Cir. 1998) ..............................................................................13

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*,
   122 F.4th 825 (9th Cir. 2024)...........................................................................10, 11

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
   946 F.3d 1100 (9th Cir. 2020) ..............................................................................23

*Pratt v. Wilson*,
   770 F. Supp. 539 (E.D. Cal. 1991) ........................................................................17

*Protectmarriage.com-Yes on 8 v. Bowen*,
   752 F.3d 827 (9th Cir. 2014) ...........................................................................14, 15

*Protestant Mem'l Med. Ctr., Inc. v. Maram*,
   471 F.3d 724 (7th Cir. 2006) ................................................................................15

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ...........................................................................12, 13

*Sample v. Johnson*,
771 F.2d 1335 (9th Cir. 1985) ............................................................................................... 18

*Singh v. Gonzales*,
502 F.3d 1128 (9th Cir. 2007) ............................................................................................... 25

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ................................................................................................. 22

*Smith v. United States Dep't of Agric.*,
No. 15-CV-04497-TEH, 2016 WL 4179786 (N.D. Cal. Aug. 8, 2016) ................................. 16

*Suter v. Goedert*,
504 F.3d 982 (9th Cir. 2007) ................................................................................................... 6

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ............................................................................................... 23

*United States v. Brandau*,
578 F.3d 1064 (9th Cir. 2009) ................................................................................................. 9

*United States v. Oregon*,
No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ...................................... 10

*Village of Gambell v. Babbitt*,
999 F.2d 403 (9th Cir. 1993) ................................................................................................... 6

*Weinstein v. Bradford*,
423 U.S. 147 (1975) ............................................................................................................... 18

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ............................................................................................... 13

**Federal Statutes**

5 U.S.C. § 706 ............................................................................................................................. 4

Pub. L. No 119-37 ............................................................................................................... *passim*
§ 106 ........................................................................................................................... 5, 21, 22
§ 120 ........................................................................................................................... *passim*

Pub. L. No. 119-74 ...................................................................................................................... 4

Pub. L. No. 119-75 ................................................................................................................. 5, 21

**Other Authorities**

H.R. 7147, 119th Congress (2026), Senate Engrossed Amendment
https://www.congress.gov/bill/119th-congress/house-bill/7147/text/eas ........................... 5, 22

H.R. 7147, 119th Congress (2026), House Engrossed Amendment
https://www.congress.gov/bill/119th-congress/house-bill/7147/text/eah ..........................5, 22

History, Art & Archives, U.S. House of Representatives, *Funding Gaps and Shutdowns in the Federal Government*,
https://history.house. gov/Institution/Shutdown/Government-Shutdowns/ ............................17

Matza, Max, *Partial government shutdown becomes the longest in US history*, BBC
(Mar. 29, 2026), https://www.bbc.com/news/articles/cyv1qpzq5v7o.....................................14

Schapitl, Lexie, *What to know about the partial government shutdown*, NPR (Jan. 31, 2026),
https://www.npr.org/2026/01/31/nx-s1-5694716/partial-government-shutdown ...................14

Summary: H.R.7148 — 119th Congress (2025-2026),
https://www.congress.gov/bill/119th-congress/house-bill/7148 ...............................................5

Yilek, Caitlin, *DHS shutdown begins as funding expires without a deal in Congress*,
CBS (Feb. 14, 2026), https://www.cbsnews.com/news/government-shutdown-dhs-funding/........................................................................................................................5

**INTRODUCTION**

Defendants have not met their burden to show that Plaintiffs' claims are moot.  To the contrary, multiple live controversies for which relief can be granted remain in this case, as well as claims for which mootness exceptions apply.

As an initial matter, Defendants barely acknowledge the fact that the federal government is currently in a partial shutdown, due to a lapse in appropriations for Defendant Department of Homeland Security ("DHS").  This partial shutdown *alone* belies Defendants' claim that "any ruling opining on the legality of RIFs during a lapse [is] purely advisory."  Motion to Dismiss, ECF 166 ("Mot.") at 1.  The legal interpretations advanced by Defendants Office of Management and Budget ("OMB") and Office of Personnel Management ("OPM") purporting to authorize both RIFs on the basis of a lapse in appropriations and the administration of the RIF process during a shutdown—squarely challenged in Plaintiffs' operative Revised Second Amended Complaint ("SAC")—were not limited to the October–November shutdown nor to a shutdown affecting the entire government.

Nor should the claims in Plaintiffs' SAC be dismissed as moot based on Defendants' voluntary rescission of the challenged OMB Lapse Memorandum and associated OPM Guidance and Instructions.  The government's voluntary change in position "moots an action only when it is 'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur," and where it has "completely and irrevocably eradicated the effects of the alleged violation." *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1037, 1039 (9th Cir. 2018) ("*Fikre I*").  The actions Defendants rely on here—1) OMB's "rescission" of the Lapse Memorandum by email two days before the filing of Defendants' brief, stating that the prior directive was "specific to the lapse that occurred starting in October 2025" and was "rescinded in full"; and 2) OPM's unannounced changes to two documents on its website—fall far short of that standard.  Mot. at 8, Ex. A.  Defendants did not affirmatively disavow their previous directives and guidance, nor state that the interpretation of law in any of those documents was erroneous, and there is no procedural barrier preventing Defendants from reissuing the very same

directives following a dismissal of this case.  Finally, Defendants have not completely eradicated the effects of their unlawful directives; for example, DHS's operative lapse plan incorporates OMB and OPM's erroneous statement of law that processing RIF notices is an excepted function that can be performed during a shutdown.  *See infra* at 8.  Accordingly, OMB and OPM's voluntary and incomplete cessation of the challenged conduct cannot moot Plaintiffs' claims.

Finally, even if the government were to be fully funded, Plaintiffs' claims would not be moot because of the "capable of repetition, yet evading review" exception.  The length of any particular shutdown is too short for litigation of Plaintiffs' claims to final judgment, and there is a reasonable expectation that Plaintiffs will be subject to the same actions again, given the current frequency of shutdowns and Defendants' unwillingness to disavow any of the challenged legal interpretations.

Separately, the claims in Plaintiffs' Supplemental Complaint are also not moot.  While the Continuing Resolution that provides the basis for those claims has expired, there is still effective final relief available to members of Plaintiff unions who were not reinstated to their positions as required by Section 120(e) until this Court's preliminary injunction.  For example, employees of the Small Business Administration ("SBA") are still awaiting full backpay, as well as other relief needed to fully "'undo' the effects of the alleged illegal action," precluding mootness.  *Infra* at 19-20; *Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1026 (9th Cir. 2025) (en banc).  And Plaintiffs' claims predicated on violations of Section 120(a) are likewise not moot, because there is a reasonable expectation that Congress will once again extend Section 120(a): as of this filing, both the House and the Senate have passed bills pertaining to the current DHS shutdown that include an extension of the Continuing Resolution, easily satisfying Plaintiffs' burden to show with more than mere speculation that the expired legislation will be reenacted.

Finally, Defendants raise three other jurisdictional arguments that have each been previously rejected by this Court: standing, ripeness, and statutory channeling.  Plaintiffs have already cleared these "jurisdictional hurdle[s]."  Mot. at 3; *see* ECF 94 at 18-25, 41-42; ECF 139 at 10.  Defendants' new arguments confuse the doctrines of standing, ripeness, and mootness, as once Plaintiffs have shown standing and ripeness, arguments about changed circumstances must be

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    2

addressed under the mootness doctrine (and exceptions). Defendants' channeling arguments improperly seek to relitigate issues this Court has previously decided, repeating prior briefing nearly verbatim without acknowledging either this Court's prior decisions or binding Ninth Circuit authority directly on point in *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025). Mot. at 19-21. This Court's and the Ninth Circuit's prior conclusions with respect to jurisdiction were correct and apply to all of Plaintiffs' claims because Congress did not remove express federal jurisdiction from this Court. None of these arguments supports dismissal of Plaintiffs' claims.

## BACKGROUND

The statutory and factual background of this case is extensively addressed in Plaintiffs' preliminary injunction motions and this Court's orders resolving those motions, *see* ECF 79-1, 94, 130-1, 139, so Plaintiffs only briefly address it here.

On September 30, 2025, Plaintiffs filed suit challenging several actions OMB and OPM had taken in the days before federal appropriations lapsed on October 1, 2025, which directed and purported to authorize federal agencies to carry out RIFs during the forthcoming shutdown. As relevant here, the OMB Lapse Memorandum and OPM Guidance provided that "[w]ith respect to those Federal programs whose funding would lapse and which are otherwise unfunded, such programs are no longer statutorily required to be carried out"; directed agencies to "consider Reduction in Force (RIF) notices for all employees in programs, projects, or activities" satisfying specific conditions; and stated that "OMB has determined that agencies are authorized to direct employees to perform work necessary to administer the RIF process during the lapse in appropriations as excepted activities"—all of which Plaintiffs contend are contrary to law. ECF 92 ¶¶161-169, 176-177.

Plaintiffs filed the operative SAC on October 28, 2025, which also included claims against the Federal Agency Defendants.[1] ECF 1, 92. Plaintiffs pled four claims: (1) that the OMB's Memorandum, OPM's associated Guidance and Instructions, and Federal Agency Defendants'

---

[1] "Federal Agency Defendants" refers to all Defendants except OMB, OPM, and their respective agency heads. They were sued for their own conduct and "pursuant to Rule 19 for purposes of effectuating complete relief as to Claims against OMB, OPM, and their agency heads." ECF 92 ¶28.

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    3

decisions to implement RIFs were contrary to law and exceeded statutory authority, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2)(A), (C); (2) that those actions were *ultra vires*, exceeding any statutory or constitutional authority; (3) that those actions were arbitrary and capricious, in violation of the APA, *id.* §706(2)(A); and (4) that those actions violated the Appropriations Clause, U.S. Const. Art. I, §9, cl. 7.

This Court issued a temporary restraining order ("TRO") on October 15, 2025 and a preliminary injunction on October 28, 2025.  ECF 56, 94.  In issuing the preliminary injunction, the Court concluded that Plaintiffs were likely to succeed on their APA claims (Claims I and III) and *ultra vires* claim (Claim II), and did not separately analyze Plaintiffs' Appropriations Clause claim. ECF 94 at 37.

On November 12, 2025, Congress ended the lapse in appropriations by passing a Continuing Resolution, which the President signed into law that day, Pub. L. No 119-37, 139 Stat 495 (2025).  That legislation paused further RIFs through January 30, 2026 under Section 120(a), and "ordered that those federal agency employees who had been laid off during the shutdown be reinstated" under Section 120(e).  ECF No. 139 at 1.  On December 4, 2025, Plaintiffs filed a Supplemental Complaint challenging additional OPM and OMB memoranda and guidance as well as the actions of five Federal Agency Defendants as contrary to the Continuing Resolution, and thus in violation of the APA, *ultra vires*, and unconstitutional under the Appropriations Clause. *See* ECF 126.  This Court issued an immediate TRO as to pending RIFs at the State Department, ECF 125, and issued a preliminary injunction on December 17, 2025 after full briefing and argument.  ECF 139.

Defendants appealed the preliminary injunctions and sought an immediate administrative stay and stay pending appeal.  Dkt. 6.1, Case No. 25-7998 (9th Cir.).  The Ninth Circuit granted the administrative stay in part, denied it in part, and ordered expediting merits briefing.  Order, Case No. 25-7998 (9th Cir. Dec. 23, 2025).  A week later, Defendants withdrew their appeal.  Dkt. 12.

On January 30, 2026, when the funding provided under the Continuing Resolution lapsed, Congress had passed only six of twelve Fiscal Year 2026 appropriations bills.  *See* Pub. L. No 119-37, divs. B-D; Pub. L. No 119-74, divs. A-C.  The agencies without funding included the

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                                        4

Departments of Defense, Labor, Education, Health and Human Services, Transportation, Housing and Urban Development, State, and Homeland Security.[2]  These agencies were shut down from January 31 until February 3, when Congress passed the Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat 173 (2026).  That Appropriations Act funded all agencies except for DHS, and provided continuing appropriations for DHS by extending the Continuing Resolution (including Section 120) through February 13, 2026.  *Id.*, div. H, §101.[3]  On February 14, 2026, without either a full appropriations act or another extension of the Continuing Resolution, appropriations for DHS again lapsed and the agency entered another shutdown.[4]

On March 27, 2026, the House and Senate each passed a different version of legislation that would have funded DHS and extended the Continuing Resolution.  The Senate-passed version of the bill, along with providing funds for certain functions of DHS, would replace the operative date in section 106(3) of the Continuing Resolution with "the date of enactment of this Act," and deem the time covered by the Continuing Resolution "to include the period which began on or about February 14, 2026, during which there occurred a lapse in appropriations."  H.R. 7147, 119th Congress (2026), Senate Engrossed Amendment, div. B §§101-102.[5]  The House-passed bill would extend the Continuing Resolution without full FY2026 Appropriations, replacing operative date with "May 22, 2026," and also deeming it to include the period since February 14, 2026.  H.R. 7147, 119th Congress (2026), House Engrossed Amendment §§2-3.[6]  As of the filing of this brief, neither version of the bill has passed both houses of Congress, and DHS remains shut down.

## LEGAL STANDARD

"A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  The basic question is whether there exists a present

---

[2] *See* Lexie Schapitl, *What to know about the partial government shutdown*, NPR (Jan. 31, 2026, 12:01 AM), https://www.npr.org/2026/01/31/nx-s1-5694716/partial-government-shutdown.

[3] *See also* Summary: H.R.7148 — 119th Congress (2025-2026), https://www.congress.gov/bill/119th-congress/house-bill/7148.

[4] Caitlin Yilek, *DHS shutdown begins as funding expires without a deal in Congress*, CBS (Feb. 14, 2026, 7:23 PM), https://www.cbsnews.com/news/government-shutdown-dhs-funding/.

[5] https://www.congress.gov/bill/119th-congress/house-bill/7147/text/eas.

[6] https://www.congress.gov/bill/119th-congress/house-bill/7147/text/eah.

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    5

controversy as to which effective relief can be granted." *Village of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993) (internal quotation marks and citations omitted). The Ninth Circuit has repeatedly explained that an action "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *350 Mont. v. Haaland*, 50 F.4th 1254, 1264 (9th Cir. 2022) (quoting *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017)).

"The burden of establishing mootness is on the party advocating its application." *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007). When the basis for mootness is a defendant's voluntary action, this is "a 'formidable burden.'" *F.B.I. v. Fikre*, 601 U.S. 234, 241 (2024) ("*Fikre II*") (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Voluntary cessation will moot a case only where "it can be said with assurance that 'there is no reasonable expectation…' that the alleged violation will recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).

Even where a case has become moot, courts will not dismiss the case if it falls within the "capable of repetition, yet evading review" exception. An otherwise moot action satisfies the exception where: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wis. Right to Life, Inc.,* 551 U.S. 449, 462 (2007).

## ARGUMENT

### I.     Plaintiffs' Claims Are Not Moot

Defendants fail to establish mootness as to the claims in either Plaintiffs' SAC, ECF 92, or the Supplemental Complaint, ECF 126, although for different reasons.

First, Plaintiffs' claims in the SAC challenging the OMB Lapse Memorandum and OPM associated Guidance and Instructions to Federal Agency Defendants, which purport to authorize and direct RIFs during a government shutdown, are not moot because there is currently a lapse in appropriations at DHS, which has incorporated OMB and OPM's unlawful directives into its lapse

plan. There is thus a present controversy between the parties for which effective relief can be granted.

Defendants' voluntary rescission of the challenged OMB and OPM directives does not end the live controversy in this case. OMB and OPM have offered absolutely no basis to conclude that their actions purporting to void the Lapse Memorandum, Guidance, and Instructions are entrenched or permanent, nor have they taken any steps to completely and irrevocably eradicate the effects of those directives, as the DHS lapse plan demonstrates. Further, although the Court need not reach this issue now, even if the current partial lapse in appropriations were to end, Plaintiffs' claims would fall under the "capable of repetition, yet evading review" exception to mootness.

Second, the expiration of Section 120 of the Continuing Resolution does not moot Plaintiffs' claims in the Supplemental Complaint, both because there is still effective relief available to Plaintiffs and because there is a current reasonable expectation that Section 120 will be extended.

### A.    Plaintiffs' SAC Claims Challenging the OMB Lapse Memorandum and OPM Guidance Related to RIFs During Government Shutdowns Are Not Moot

1. *Defendants cannot show mootness based on the end of the full federal government shutdown.*

As an initial matter, Defendants cannot demonstrate that the claims in Plaintiffs' SAC are moot based on their claims that the lapse in appropriations that "triggered Plaintiffs' claims, specifically the October to November lapse in appropriations," Mot. at 5, has ended, and "no lapse is imminent," *id.* at 6. Defendants' mootness arguments mischaracterize both Plaintiffs' claims and the current factual situation. There is still a present lapse in appropriations and a present controversy for which relief can be granted.

Although Defendants repeatedly characterize Plaintiffs' claims as limited to the 2025 shutdown, neither the claims nor the effective relief are so limited. Plaintiffs challenged OMB and OPM's issuance of the Lapse Memorandum and Guidance, which purported "to provide the legal authority for agencies to RIF employees during a shutdown, direct[ed] that the agencies shall consider issuing RIF notices, and dispose[d] of any legal distinction between excepted versus

furloughed employees." ECF 94 at 27. Although the relevant documents were issued in the context of preparations for the October 2025 shutdown, none of the statements of law in those documents were specific to that shutdown. Nor does the declaratory and injunctive relief Plaintiffs seek depend on the timing of the shutdown: Plaintiffs' complaint seeks an order vacating and enjoining the Lapse Memorandum, all associated "OPM Guidance and Instructions that purport to authorize administration of RIFs during a shutdown," and "any and all action taken pursuant" to the Memorandum and Guidance, including but not limited to the RIFs planned and executed during the October to November shutdown. ECF 92 at 43-44 (Prayer for Relief).

Further, as Defendants only passingly acknowledge, the government is *not* fully funded in the current fiscal year. Appropriations for DHS lapsed on February 14, 2026, and have not restarted. *Supra* at 5. And although Defendants now assert that the challenged guidance has been rescinded, *but see infra* at 9-13, OMB and OPM's purported interpretation of law has been incorporated into DHS's lapse plan. *See 350 Mont.*, 50 F.4th at 1264 (holding that court could still order relief where relevant portions of challenged environmental assessment were "incorporated into" a currently operative version). The currently applicable DHS "lapse plan," which agencies must prepare in advance of shutdowns, *see* ECF 94 at 7-8, is dated five days after the OMB Lapse Memorandum and the day after OPM issued its Guidance and Instructions. U.S. Dep't of Homeland Sec., Procedures Relating to a Lapse in Appropriations (Sept. 29, 2025).[7] That plan includes language reflecting the challenged Memorandum and Guidance, specifically stating that excepted functions during a shutdown include "Personnel functions to process furlough/reduction in force notices." *Id.* at 7; *see* ECF 92 ¶¶176-177 (OPM Guidance stating that "OMB has determined that agencies are authorized to direct employees to perform work necessary to administer the RIF process during the lapse in appropriations as excepted activities").

There is thus still a present controversy as to the lawfulness of this directive, and effective relief can be granted in this case to enjoin any use of federal funds to process RIFs during the current partial federal government shutdown and to order Defendants to fully unwind the unlawful

---

[7] https://www.dhs.gov/sites/default/files/2025-09/2025_0930_dhs_procedures_related_to_a_lapse_in_appropriations.pdf (last visited April 21, 2026)

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                                    8

language in this lapse plan and any other document relying on OMB and OPM's directives.  *See Health Freedom Def. Fund*, 148 F.4th at 1026 ("In the context of injunctive relief, a case is not moot if the court is able to 'undo' the effects of the alleged illegal action.").[8]  Defendants' mootness argument fails on that basis alone.

> 2. *Defendants cannot show mootness based on OMB and OPM's voluntary actions purportedly rescinding the challenged directives.*

Defendants also cannot meet their "formidable burden" to show that their voluntary rescission of the challenged OMB and OPM documents moots Plaintiffs' request for relief declaring that Memorandum and associated guidance documents unlawful and enjoining any future implementation.  *Friends of the Earth*, 528 U.S. at 190.  "When a party abandons a challenged practice freely, the case will be moot only 'if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *United States v. Brandau*, 578 F.3d 1064, 1068 (9th Cir. 2009) (quoting *Friends of the Earth*, 528 U.S. at 189) (emphasis in original).  "The '*heavy burden* of persuading' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."  *Id.* (emphasis in original).  As multiple courts have explained, this burden is designed to prevent defendants from using mootness to strategically avoid final judgment.  "Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off."  *Fikre II*, 601 U.S. at 241; *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) ("[V]oluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").

Defendants admit that OMB and OPM voluntarily withdrew the challenged Lapse Memorandum and the Guidance issued pursuant to it because of the litigation in this case, Mot. at 17, and argue that Plaintiffs' claims are moot on that basis alone, Mot. at 6, 8.  As the Ninth Circuit

---

[8] As Plaintiffs' complaint requests "such other relief as this Court may deem proper," ECF 92 at 44, the Court may "consider further injunctive relief in deciding whether [the case] is moot." *Or. Nat. Desert Ass'n v. United States Forest Serv.*, 957 F.3d 1024, 1032 (9th Cir. 2020) (citing *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1066 (9th Cir. 2002))

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    9

recently reiterated, "[t]he voluntary cessation rule 'holds for governmental defendants no less than for private ones.'" *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 841 (9th Cir. 2024) (quoting *Fikre I*, 904 F.3d at 1037). While "[t]he government is entitled to a presumption of good faith when it asserts mootness, … it 'must still demonstrate that the change in its behavior is entrenched or permanent.'" *Id.*[9] Defendants have not done so.

When governmental defendants voluntarily cease challenged conduct, the form of that action is crucial to understanding whether the change is entrenched and the case is moot. "[A] voluntary change in official stance or behavior moots an action only when it is absolutely clear to the court, considering the procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Planned Parenthood*, 122 F.4th at 841 (quoting *Fikre I*, 904 F.3d at 1039) (alteration in original). "Thus, 'an executive action that is not governed by any clear or codified procedure cannot moot a claim.'" *Id.* (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015)).

Defendants' purported rescission does not come close to meeting the required standard. Their mootness argument is premised on three actions, none of which is governed by any procedural safeguards that would prevent reenactment. First, OPM removed the section titled "R. Reductions in Force," from OPM's online Guidance for Shutdown Furloughs. Mot. at 8. Absent final relief in this case, nothing would prevent OPM from adding that same section back at any

[9] Because Defendants cannot meet this burden even if the presumption of good faith is applied, the Court need not address whether they are entitled to the presumption that ordinarily applies to the federal government. But Plaintiffs note that the presumption of good faith has been eroded by this administration's conduct in litigation across the country, including in other cases addressing federal employee terminations, as well as by actions in this case. *See, e.g.*, ECF 56 at 2 ("It is also far from normal for an administration to fire line-level civilian employees during a government shutdown as a way to punish the opposing political party. But this is precisely what President Trump has announced he is doing…."); *id.* at 4 (highlighting at the TRO stage that "counsel for defendants refused to answer the question of whether or not defendants' action are legal, instead saying that defendants were 'not prepared' to address the merits today"); *AFGE v. OPM*, 799 F. Supp. 3d 967, 979 (N.D. Cal. 2025) ("The 'administrative record' submitted by the government is a sham."). *Cf. Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 92 (D.D.C. 2025) ("In just six months, the President of the United States may have forfeited the right to such a presumption of regularity.") (collecting cases); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026) ("The presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds.").

time, just as it did on September 28, 2025.  *See* ECF 92 ¶176 & n.30.  Second, OPM added language to the Special Instructions stating "[t]hese Special instructions have been rescinded and are no longer in effect as of November 13, 2025," with no further explanation.  Mot. at 8.  Again, without injunctive relief, OPM would be free to reinstate those instructions.  Third, OMB sent a March 4, 2026 email to the same recipients who were sent the Lapse Memorandum on September 24, 2025, stating, "This email and the guidance contained therein was specific to the lapse that occurred starting in October 2025.  Therefore, the email and guidance are rescinded in full and no longer operative."  Mot. Ex. A.  Again, nothing prevents the reissuance of either the Memorandum or Special Instructions.  The form of this voluntary rescission, which is non-binding and leaves wide open the opportunity for Defendants to resume their unlawful actions, is itself sufficient to reject Defendants' mootness argument.  *See also Bell v. City of Boise*, 709 F.3d 890, 900–01 (9th Cir. 2013) (declining to dismiss case as moot based on a change in policy where "the new policy … could be easily abandoned or altered in the future").

Further, OMB and OPM's failure to state any substantive basis for the rescission—such as by repudiating the rescinded documents or expressing their agreement that the prior documents were unlawfully issued—also dooms their mootness argument.  The Ninth Circuit addressed a very similar situation in *Planned Parenthood v. Labrador*, 122 F.4th 825.  There, the Idaho Attorney General sought to withdraw a challenged opinion letter purporting to interpret a statute.  *Id.* at 834.  The Ninth Circuit held that the withdrawal did not moot the case, explaining that there was no showing of entrenched or permanent change where the Attorney General "characterized [the prior letter] as void solely on procedural grounds," and did not "repudiate" his legal reasoning or conclusion, or "provide[] an alternative interpretation" of the statute.  *Id.* at 841.  All of those circumstances are present here.  The only explanation given by OMB for its purported recission was procedural: "the email and the guidance contained therein was specific to the lapse that occurred starting in October 2025," Mot. Ex. A.  OPM provided no reason at all for the changes it made.  Neither OMB nor OPM repudiated their prior legal analysis and conclusions as to the validity of RIFs conducted during and because of a shutdown or addressed the substance of the challenged directives and guidance at all.

Defendants' reliance on *Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014), to argue that the government can moot a case through a policy change merely highlights the insufficiency of OMB and OPM's actions. Mot. at 16-17. In *Rosebrock*, the plaintiff challenged as unconstitutional viewpoint discrimination the Veterans Administration's ("VA") inconsistent enforcement of a regulation restricting the posting of materials on VA property. 745 F.3d at 966. But during the course of the litigation, Defendants provided express instructions by email to the police who enforced the regulation to do so "precisely and consistently," laid out the specific conduct that was prohibited and that was permitted, and directed that "this information [be] disseminated to all officers who patrol the VA grounds and to the rest of your department." *Id.* at 969 ("NO outside pamphlets, handbills, flyers, flags or banners, or other similar materials may be posted anywhere on VA Property… [P]rotests and/or demonstrations (including flags in any position) that take place off VA Property (on the public sidewalk) should not be interfered with."). The Ninth Circuit held that although it would be possible for Defendants to revert to their prior challenged behavior, this directive was sufficient to moot plaintiff's claim for injunctive relief because it was "a clear statement, broad in scope, and unequivocal in tone"; it fully addressed the viewpoint discrimination claim and the specific conduct at issue in the case; and by the time the Court considered the issue, three years had passed since the email without a reversion to the prior inconsistent enforcement.

Defendants baldly assert that their rescission is "broad in scope and unequivocal in tone and fully addresses all objectionable measures that Plaintiffs complain of regarding OMB and OPM's guidance," Mot. at 17, without identifying any of the characteristics *Rosebrock* relied on for that showing. OMB and OPM failed to provide *any* interpretation as to the authority of federal agencies to carry out RIFs during a shutdown, let alone one with the detail and specificity of the email in *Rosebrock*. They also failed to take meaningful steps to disseminate even the bare rescission of the challenged documents. OPM simply made changes to documents on its website without *any* announcement. OMB's rescission email was not sent to officials at all 29 Federal Agency Defendants in this case, let alone more broadly to Plaintiff unions, to federal employees, or to the public, despite the extensive media coverage of the initial directive. Instead, OMB emailed

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    12

only the 22 specific individuals who had directly received the Lapse Memorandum in September 2025, several of whom are no longer even at those agencies.[10] *See also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (holding that challenge to HUD's investigation practices was mooted by new policy that specified in detail what conduct was permitted and prohibited, and that was widely circulated internally to HUD officials and publicly announced in a press release). Finally, Defendants' purported recission is extremely recent, in contrast to the three years the new policy was in place without reversion in *Rosebrock*, and thus the passage of time cannot show that recurrence is unlikely.

Further, voluntary cessation must not only provide assurances that unlawful conduct will not recur, but must "completely and irrevocably eradicate[] the effects of the alleged violation." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998). Here, neither OMB nor OPM instructed agencies to withdraw or amend lapse plans or any other documents that they had developed based on the interpretations of law OMB and OPM set out in the challenged Memorandum and Guidance. As a result, for example, DHS's operative lapse plan still provides that employees may be excepted from furlough during a lapse to process RIF notices, *supra* at 8.

Defendants thus cannot meet their burden to show that their purported rescission moots any of the claims in Plaintiffs' SAC.

3.   *Plaintiffs' claims are capable of repetition, yet evading review.*

Finally, even if there were not a present partial shutdown, dismissal of the claims in Plaintiffs' SAC would not be appropriate, as those claims satisfy the "capable of repetition, yet evading review" exception to mootness. Under this exception, Courts "will decline to dismiss an otherwise moot action if we find that: '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Protectmarriage.com-Yes on 8*

---

[10] The recipients from GSA and NASA both appear to have left their positions in December 2025. The recipient from HHS is unclear from even the unredacted version of the email Defendants filed under seal, but a Deputy Secretary whose initials appear to match that email address left the agency in February 2026.

*v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (quoting *Wis. Right to Life*, 551 U.S. at 462).  Both prongs are satisfied here.

First, a lapse in appropriations is of an "inherently limited duration," and one that is too short for claims about conduct during a shutdown to be fully litigated to final judgment before the shutdown ends.  *See id.* (quoting *Doe No. 1 v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012)).  The current lapse in appropriations for DHS, which began on February 14, 2026, is the longest in United States history.[11]  The full government shutdown that led OMB and OPM to issue the directives and guidance giving rise to this lawsuit lasted for 43 days (previously the longest in history), from October 1 through November 12, 2025.  During the pendency of this case, funding also lapsed for multiple defendant agencies from January 31 to February 3, 2026.  *Supra* at 5.  These periods are inherently limited, as they end when Congress passes either a Continuing Resolution or a regular appropriations bill.  Periods of days, weeks, or even several months are significantly shorter than those the Supreme Court and Ninth Circuit have held evade review.  *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) ("[A] period of two years is too short to complete judicial review of the lawfulness of the procurement."); *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 774 (1978) (18-months was "too short a period of time for appellants to obtain complete judicial review"); *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 787 (9th Cir. 2012) ("[A]s a practical matter a transaction set for a term of 17 months … would be likely to expire before our review (let alone the Supreme Court's) could be completed.").

Defendants do not argue that a full shutdown lasting 43 days or a partial shutdown of over two months "allow[s] full judicial review" of Plaintiffs' claims before the lapse in funding ends. *Kingdomware Techs*, 579 U.S. at 170.  Instead, Defendants baldly assert that "that this exception does not apply where a plaintiff is able to seek judicial review through a request for emergency injunctive relief."  Mot. at 12.  But as support, Defendants cite several cases standing for the entirely different proposition that when mootness is *caused* by the failure of a party to seek available preliminary relief, that party cannot avoid dismissal of the case by invoking the "capable

---

[11] Max Matza, *Partial government shutdown becomes the longest in US history*, BBC (Mar. 29, 2026), https://www.bbc.com/news/articles/cyv1qpzq5v7o.

of repetition, yet evading review" exception. *Id.* In *Protectmarriage.com-Yes on 8 v. Bowen*, for example, the Ninth Circuit held that a challenge to public disclosure requirements was moot where "the information that Appellants seek to keep private had been publicly available for nearly five years," and the exception could not be invoked, in part because the appellants had disclosed the information themselves rather than seeking preliminary relief that would have stayed the disclosure. 752 F.3d at 837 ("A party may not profit from the 'capable of repetition, yet evading review' exception where through his own failure to seek and obtain prompt relief he has prevented an appellate court from reviewing the trial court's decision.") (cleaned up); *see also Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 731 (7th Cir. 2006) ("We have declined to determine that a controversy falls under the 'capable of repetition, yet evading review' exception when it is the plaintiff's procedural missteps that prevent judicial review."); *Minn. Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999) (similar).

Here, of course, Plaintiffs did seek and obtain preliminary injunctive relief, and Defendants do not and cannot argue that the case is moot because of any action of Plaintiffs. Nor does the consideration of a case in a preliminary or emergency posture show that the case can be "fully litigated prior to cessation or expiration," *Protectmarriage.com-Yes on 8*, 752 F.3d at 836, as Defendants suggest. Mot. at 12. To the contrary, "fully litigated" includes the time necessary for both final judgment and any appeal. As the Ninth Circuit explained, "'evading review' means that the underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration." *Alcoa*, 698 F.3d at 787 (quoting *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999)).

Turning to the second prong of the test, there is a reasonable expectation that Plaintiffs will be subject to the same actions again. Most straightforwardly, the same analysis that supports the voluntary cessation exception demonstrates that it is reasonable to expect OMB and OPM to reissue the same directives and interpretation of governing law, as neither has disavowed their prior interpretation or provided an alternative position. In *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019), the plaintiffs challenged the government's use of certain factors in awarding grants. The Ninth Circuit explained that where "DOJ states it has not yet determined 'how [the

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    15

challenged] factors will be handled'" in the next grant cycle, and "has not agreed to stop giving bonus points for such factors in the future," that established a reasonable expectation that DOJ would continue the challenged but then-inoperative practice. *Id.* at 1172-73 (noting the relationship of this analysis to voluntary cessation).

Defendants assert that the possibility that Plaintiffs will be subject to the same actions in the future is "too speculative for the exception to attach," Mot. at 13, relying in large part on out-of-circuit and unpublished decisions addressing other claims brought the context of a lapse in appropriations. But these cases involved challenges to specific discretionary decisions made by individual agencies about how to respond to a lapse in appropriations, not a challenge to a policy or directive issued to all federal agencies affected by a shutdown purporting to interpret applicable law. That distinction is meaningful, as the existence of a policy makes it far more likely that Plaintiffs will be subject to the same harms alleged here in the future. *See Alaska Ctr. For Env't*, 189 F.3d at 856 ("Issues of mootness often involve 'highly individualistic ... appraisal of the facts of each case' to determine if the doctrine applies.") (alteration in original) (quoting Wright & Miller, 13A Federal Practice and Procedure § 3533 at 211–12 (2d ed. 1984)).

Defendants' own cited cases emphasize the difference between challenges to purely discretionary conduct and challenges to broader policy during a shutdown. In *Atlas Brew Works, LLC v. Barr*, 820 F. App'x 4 (D.C. Cir. 2020), for example, the Court noted that Plaintiff did not challenge any regulations or the administration of regulations, but only the Treasury Department's failure to process specific approvals during a government shutdown. *Id.* at 6. In that case, the Court did not apply the "capable of repetition, yet evading review" exception to mootness, as repetition would require all of the following to occur: a lapse in funding for the Treasury, a shutdown of that agency, Treasury's discretionary decision to stop processing those approvals, and Plaintiff to have an approval pending. *Id.* at 7; *see also, e.g.*, *Leonard v. U.S. Dep't of Def.*, 598 F. App'x 9, 10 (D.C. Cir. 2015) (single employee challenging his furlough by the Department of Defense could not invoke the exception); *Smith v. United States Dep't of Agric.*, No. 15-CV-04497-TEH, 2016 WL 4179786, at *1, 3 (N.D. Cal. Aug. 8, 2016) (holding possibility of future injury too remote for mootness exception for single SNAP recipient challenging the possible

termination of SNAP benefits in a future shutdown, "a series of events [that had] never occurred in the past").  In *National Treasury Emps. Union v. United States*, the Court held that the plaintiffs' challenge to multiple agencies' discretionary decisions about which employees would be required to work during a shutdown was likewise not capable of repetition because future decisions would not constitute the same action, explaining that "Courts have 'interpreted "same action" to refer to particular agency policies, regulations, guidelines, or recurrent identical agency actions.'"  444 F. Supp. 3d 108, 114 (D.D.C. 2020).  By contrast, the reissuance of OMB and OPM's challenged directives and guidance and agency actions to comply with and implement those directives *would* be the same action.

Plaintiffs thus need to show only a reasonable expectation that there will be any lapse in appropriations covering the Federal Agency Defendants and that they would be harmed by the likely reinstatement of the challenged OPM and OMB directives and guidance.  First, the expectation of future shutdowns is substantially more reasonable here than it was in any of Defendants' cited cases, as there have already been two partial and one full government shutdowns affecting Defendant agencies since this case was filed, and DHS is *currently* not funded.  *Supra* at 5.  When the D.C. District Court held in *AFGE v. Rivlin* that challenges to furloughs during the 1996 shutdown were moot and incapable of repetition, it emphasized that "it is significant that no lapse in appropriations occurred for either federal fiscal years 1997 or 1998."  995 F. Supp. 165, 166 (D.D.C. 1998) *aff'd sub nom. AFGE v. Raines*, No. 98-5045, 1998 WL 545417 (D.C. Cir. July 15, 1998).  But that has changed more recently: there have now been five shutdowns over the last eight years, further supporting the expectation of another in the future.[12]  *See Pratt v. Wilson*, 770 F. Supp. 539, 543 (E.D. Cal. 1991) (invoking "capable of repetition, yet evading review" exception where "the state has not timely adopted a budget in five of the last eight years"); *Alaska v. Jewell*, No. 4:13-CV-00034-SLG, 2014 WL 3778590, at *3 (D. Alaska July 29, 2014) (holding that "the history of government funding gaps"—totaling eighteen between 1976 and 2013—could "make[] it

---

[12] *See supra* at 5; History, Art & Archives, U.S. House of Representatives, *Funding Gaps and Shutdowns in the Federal Government*, https://history.house.gov/Institution/Shutdown/Government-Shutdowns/ (listing funding gaps through February 3, 2026).

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    17

reasonable to expect that another shutdown will occur at some point in the future," but finding a challenge to a single agency's choice to close national wildlife refuges during a shutdown moot).

Finally, Plaintiffs do not need to show that reissuance of the challenged directive and guidance in the event of a future lapse in appropriations would cause the same agencies to issue the same RIFs to the same employees. Instead, Plaintiffs are required to show "a 'demonstrated probability' that plaintiff will again be among those injured." *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). As this Court found, Plaintiffs were harmed by the issuance of the Lapse Memorandum and Guidance not only as representatives of employees subject to RIFs, but also directly, including by the need to devote significant resources to address the threat of impending RIFs. *See* ECF 94 at 23 (explaining that RIFs and the threat of RIFs in a shutdown particularly stymie the unions' "core mission of representing workers," given the difficulties of accessing information and human resource staff who may be furloughed). Moreover, Plaintiffs' experience in this case demonstrates that Federal Agency Defendants *did* follow the OMB and OPM directives to RIF employees; as Plaintiffs represent employees at *each* Federal Agency Defendant here, there is also a "demonstrated probability" that Plaintiff Unions will again be harmed in their representative capacity. "As the Supreme Court has acknowledged, the likelihood of future harm required to avoid mootness is not as high as that required to establish standing in the first instance." *Moore v. Urquhart*, 899 F.3d 1094, 1100 (9th Cir. 2018).

Thus, even if the government were to be fully funded, Plaintiffs' claims against OMB and OPM under the SAC would not be moot.

**B.     Plaintiffs' Claims in the Supplemental Complaint Under Section 120 of the Continuing Resolution Are Not Moot**

The claims in Plaintiffs' Supplemental Complaint are also not moot, both because there is still effective relief available to Plaintiffs under Section 120(e) and because pending legislation creates a reasonable expectation that Section 120(a) will be extended. Of note, although Defendants refer broadly to Section 120 in making their arguments, there are meaningful

differences between the provisions of the Continuing Resolution that affect the mootness analysis, and so Plaintiffs discuss them separately herein.

1. *Section 120(e) has not expired, and effective relief is still available to Plaintiffs.*

As an initial matter, the expiration of the funding provided by the Continuing Resolution has no legal effect on the force of Section 120(e), which by its terms has no expiration date. *See* Pub. L. No 119-37, §120(e), 139 Stat 495, 501. Under Section 120(e), "any reduction in force proposed, noticed, initiated, executed, implemented, or otherwise taken by an Executive Agency between October 1, 2025, and the date of enactment [November 12, 2025], shall have no force or effect." *Id.* While that provision applies only to actions taken during the October–November 2025 shutdown, it does not expire, nor does it require Plaintiffs to bring claims during the period covered by Section 120(a). Plaintiffs' Supplemental Complaint alleged violations of the APA and *ultra vires* action by Defendants OPM, OMB, the Departments of Education, and State, GSA, and SBA based on the refusal to rescind RIFs covered by that provision. Defendants do not address Section 120(e) at all, but instead incorrectly assert that Section 120 in its entirety has expired. *See* Mot. at 1, 10. To the contrary, nothing in the text or applicability of Section 120(e) has changed since Plaintiffs filed the Supplemental Complaint.

Defendants also have not shown and cannot show that *no* effective relief remains available to Plaintiffs. "In the context of injunctive relief, a case is not moot if the court is able to 'undo' the effects of the alleged illegal action." *Health Freedom Def. Fund, Inc.*, 148 F.4th at 1026. Although this Court issued preliminary injunctive relief, ECF 139, final relief is needed for two reasons. First, as to Plaintiffs' claims that Defendants acted contrary to Section 120(e), not all the required backpay has yet been paid, and not all of the effects of the unlawful actions have been undone. Decl. of George Niklas Gustafsson ("Gustafsson Decl.) ¶¶12-15. This Court ordered that "[a]ny employee who was separated from federal employment by State, GSA, or SBA pursuant to a RIF on any date between October 1, 2025 and November 12, 2025 shall 'be returned to employment status as of September 30, 2025, without interruption,' and 'shall receive all pay to which they otherwise would have been entitled in the absence of receiving such notice, including backpay in accordance with section 116 of' Public Law No. 119-37," ECF 139 at 26, but the timing

of the actual payment of backpay was not dictated by that order.  SBA filed a declaration on December 29 stating that it provided notices to impacted employees "that they are entitled to back pay for the period in question," ECF 146-6, but those payments have not yet been made. Gustafsson Decl. ¶12.  SBA has also failed to provide employees who were terminated during the October–November 2025 shutdown and reinstated on December 29, 2025 with annual performance reviews for 2025, affecting those employees' bonuses, step and grade increases, and risk of termination in future RIFs.  *Id.* ¶13-15.  These employees, represented by Plaintiff AFGE, could still receive effective final relief undoing these effects of Defendants' illegal refusal to reinstate them as required by 120(e).

Second, final relief is needed to ensure that all the RIF notices that the preliminary injunction deemed to have "no force and effect" under Section 120(e) are permanently void, and that Defendants cannot attempt to re-terminate employees under the previously issued and challenged notices.  ECF 139 at 26.  This is not merely a hypothetical concern.  In other cases involving challenges to federal employee terminations, Federal Agency Defendants have attempted to retroactively terminate employees when interim relief was no longer in place.  For example, the Department of Commerce terminated probationary employees on February 27, 2025 and reinstated them on March 17 pursuant to a TRO in *Maryland, et al. v. U.S. Dep't of Agriculture, et al.*, D. Md. Case No. 25-00748.  *See* Plaintiffs' Memorandum in Support of Motion for Summary Adjudication at 22-23, ECF 222, *AFGE v. OPM*, N.D. Cal. Case No. 25-cv-017580-WHA (citing employee declarations).  When that TRO was stayed by an appellate court, the Department of Commerce re-terminated employees retroactively to February 27, including terminating benefits that had been provided during that period.  *Id.*; *see AFGE v. OPM*, 799 F. Supp. 3d at 995 (ordering as permanent relief for employees "terminated by a relief defendant agency, rehired pursuant to Court order, then terminated again upon a stay of that order" that "the second termination cannot be made retroactive to the date of the first.").

Relief can thus still be granted on Plaintiffs' claims predicated on acts contrary to Section 120(e), both to undo the effects of the challenged actions and to ensure that employee members will not be re-terminated under the previously issued RIF notices.  *Cf. Nielsen v. Preap*, 586 U.S.

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    20

392, 403 (2019) (plurality) (holding in the habeas context that claims of plaintiffs who had obtained relief following a preliminary injunction were not moot, as "[u]nless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention."). These claims are not moot.

　　2.　*There is a reasonable expectation that Section 120(a) will be reenacted.*

Plaintiffs' APA, *ultra vires*, and Appropriations Clause claims predicated on actions taken contrary to Section 120(a) are also not moot, but for different reasons than those predicated on violations of Section 120(e). Although Section 120(a) has expired, there is still a present controversy over the meaning and application of the provision, as there is a reasonable expectation that the government will reenact the law. New legislation extending the operative expiration date has passed both Houses of Congress in the context of the current DHS shutdown, albeit with different proposed extension dates.

Unlike Section 120(e), Section 120(a) does have a statutory expiration date: by its terms, it applies "during the period between the date of enactment of this Act and the date specified in section 106(3) of this Act," and prevents the use of federal funds "to initiate, carry out, implement, or otherwise notice a reduction in force to reduce the number of employees within any department, agency, or office of the Federal Government." Pub. L. No 119-37, §120(a). That date was originally January 30, 2026. Pub. L. No 119-37, §106(3). On February 3, 2026, Congress passed a further Continuing Appropriations Act that amended the Continuing Resolution "by striking the date specified in section 106(3) and inserting 'February 13, 2026,'" and provided that the Continuing Resolution would also "include the period which began on or about January 31, 2026, during which there occurred a lapse in appropriations." Pub. L. No. 119-75, div. H, §101-102. There is no dispute that Section 120(a) expired on February 13, 2026.

Plaintiffs also do not dispute that, as set out in Defendants' brief, such expiration presumptively moots a claim predicated on the existence of that statute, "unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); Mot. at 10. Here, there is such a reasonable expectation: not only did Congress

extend the date of application of the Continuing Resolution once, but both Houses have passed legislation that would extend it again. Specifically, on March 27, 2026, the House and Senate each passed a different version of H.R. 7147, which would provide continuing appropriations to DHS and also extend Section 120(a). The Senate-passed bill would replace the date in section 106(3) of the Continuing Resolution with "the date of enactment of this Act," H.R. 7147, 119th Congress (2026), Senate Engrossed Amendment, div. B §101, while the House-passed bill would replace the date with "May 22, 2026," *id.*, House Engrossed Amendment §2. *Supra* at 5 & nn. 5-6. Both versions provide that the time covered by the Continuing Resolution "shall be considered to include the period which began on or about February 14, 2026." *Id.*

This pending legislation is more than sufficient to meet Plaintiffs' burden to show a reasonable expectation of reenactment. As Defendants explain, "the plaintiff need not show that the enactment of identical or similar legislation is 'virtually certain,' [but] more than a mere speculation is required." Mot. at 10 (citing *City of Mesquite v. Aladdin's Castle Inc.*, 455 U.S. 283, 289 (1982)). Here, the legislation is not merely similar; the pending legislation would replace the expiration date of the very Resolution at issue in this case. Nor is the expectation of reenactment speculative, as each house of Congress has demonstrated intent to extend the Continuing Resolution. To require more would impose the "virtual certainty" requirement the Ninth Circuit expressly rejected in *Board of Trustees of Glazing Health & Welfare Trust*. 941 F.3d at 1199.

### C. Defendants' Attempt to Reargue Standing Misunderstands the Doctrine and Plaintiffs' Claims

Finally, Defendants briefly argue that the circumstances that they contend support mootness also demonstrate that Plaintiffs lack standing to seek prospective relief in this case. Mot. at 9. But this argument fundamentally misunderstands the relationship between standing and mootness. "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (per curiam) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)). Plaintiffs had standing to bring their claims and to seek injunctive relief, as this Court already found. ECF 94 at 20-25; *id.* at

22 ("The Court finds the types of harms plaintiffs claim are both concrete and imminent, and therefore sufficient to establish injury."); ECF 139 at 11-12.

Defendants' arguments about Article III jurisdiction are all questions of mootness, not standing. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) ("We examine whether Bernhardt had standing at the time the lawsuit was filed, and separately consider whether her case has become moot."); *see also Friends of the Earth*, 528 U.S. at 189 (reversing where "the Court of Appeals confused mootness with standing"). The difference between the two doctrines is meaningful. As the Ninth Circuit has explained: "Mootness is related to standing, but the exceptions to mootness suggest that it is more than 'standing set in a time frame.' In other words, sometimes a case may not be moot even if the plaintiff would not have standing to bring it today." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1109 (9th Cir. 2020) (quoting *Friends of the Earth*, 528 U.S. at 190). The standing cases on which Defendants purport to rely, including *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013), relate to the circumstances at the outset of a case and are inapposite to the question of the Court's continued jurisdiction at issue in the mootness inquiry. In fact, the Supreme Court has specifically rejected the application of *Lyons* where the challenged "unlawful conduct … was occurring at the time the complaint was filed," as it was here. *Friends of the Earth*, 528 U.S. at 184.

Defendants' contentions, properly analyzed under mootness, fail for the reasons discussed *supra*. Defendants cannot transform those mootness arguments into an independent "jurisdictional hurdle" for Plaintiffs to clear, *see* Mot. at 3, by simply repeating them under the guise of standing.

## II.    Plaintiffs' Claims Are Ripe

Defendants' ripeness argument largely mirrors their inapposite standing argument, and fails for the same reasons. "Ripeness is 'peculiarly a question of timing,' designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (citations omitted). "Constitutional ripeness equates with Article III's injury-in-fact requirement for standing." *Flaxman v. Ferguson*, 151 F.4th 1178, 1184–85 (9th Cir. 2025).

Plaintiffs' claims were not prematurely brought, and Defendants cannot transform mootness arguments into ripeness any more than they can do so with standing.

Defendants acknowledge that this Court previously found Plaintiffs' claims to be ripe for review. Mot. at 18; ECF 94 at 41-42. Defendants do not dispute that conclusion, instead contending that the claims in Plaintiffs' SAC are no longer ripe because of the end in the lapse in appropriations and OMB and OPM's withdrawal of the challenged directives and guidance. Mot. at 19. But again, this is a mootness argument, not a ripeness challenge. Ripeness is not the appropriate analysis where Plaintiffs have already experienced harm from the challenged conduct. *See Flaxman*, 151 F.4th at 1186 ("There is nothing abstract, hypothetical, or premature about events that have already happened."); *see* ECF 94 at 11-14 (listing actual and imminent RIFs that were enjoined by the initial TRO on October 15, 2026).

Moreover, Defendants' attempt to relitigate ripeness repeats their fundamental misunderstanding of Plaintiffs' claims. Defendants reduce their characterization of Plaintiffs' claims to only a challenge to "RIFs during the government shutdown," Mot. at 19, again ignoring that Plaintiffs' challenge OMB and OPM's directives and guidance purporting to broadly authorize RIFs because of and during a lapse in appropriations. Those claims are not moot for the reasons discussed *supra*.

**III.    This Court Has Jurisdiction Over Plaintiffs' Claims**

This Court has previously resolved the issue of subject matter jurisdiction and rejected Defendants' arguments that Congress implicitly precluded judicial review of Plaintiffs' claims. ECF 94 at 18-20; ECF 139 at 10 ("The parties, and this Court, have been down this road before."). Defendants' attempt to revisit jurisdiction once again misses the mark on many levels.

Defendants' brief repeats, nearly verbatim, arguments from Defendants' prior briefing, which this Court has already considered and rejected. *Compare* Mot. at 19-21 *with* ECF 134 at 9-13 *and* ECF 41 at 11-15. Remarkably, Defendants do not acknowledge those holdings, and persist in their refusal to discuss or even cite the Ninth Circuit's binding authority and holding in the related case of *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025), *stayed pending appeal on other grounds*, 145 S. Ct. 2635. That decision entirely forecloses Defendants' sweeping argument that

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                                    24

federal courts lack jurisdiction over any claims that "concern the federal employer-employee relationship." Mot. at 20.[13] *AFGE v. Trump* held that neither the CSRA nor its labor-management component, the FLSMRS, impliedly removed federal courts' express jurisdiction to hear APA challenges to, inter alia, OMB and OPM's government-wide directives to federal agencies regarding agency reorganization and reductions in force. 139 F.4th at 1028, 1030-33.[14] Defendants' apparent suggestion that this Court should ignore binding authority and instead follow out-of-circuit law is no more persuasive now than it was before.

AFGE v. Trump is directly applicable to the question of jurisdiction over Plaintiffs' claims, "the heart of" which likewise "lies not with the individual termination decisions themselves but with OMB and OPM's legal positions that purport to authorize and/or direct mass terminations at the federal agency level." ECF 139 at 10. As Defendants have simply repeated their prior arguments with only minimal alterations, Plaintiffs incorporate the arguments set forth in their Reply in Support of the Second Motion for Preliminary Injunction, ECF 137 at 6-11, and their Reply in Support of the First Motion for Temporary Restraining Order, ECF 47 at 7-8.

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' motion to dismiss in its entirety.

DATED: April 21, 2025                    Respectfully submitted,

                                         Stacey M. Leyton
                                         Barbara J. Chisholm
                                         Danielle E. Leonard
                                         Alice X. Wang
                                         Robin S. Tholin
                                         Talia Stender

---

[13] "While it is acceptable to make a rejected argument for purposes of preserving it for en banc or Supreme Court consideration while acknowledging that it has been rejected by the court, it is not acceptable to repeat an argument already rejected without acknowledging the case that rejected it, particularly where it is the Department of Justice itself that was involved in earlier case." *Singh v. Gonzales*, 502 F.3d 1128, 1129 (9th Cir. 2007).

[14] *See also AFGE v. Trump*, No. 25-cv-03698-SI, 2025 WL 2614698, at *6 (N.D. Cal. Sept. 9, 2025); *AFGE v. Trump*, 784 F.Supp.3d 1316 (N.D. Cal. 2025), *stayed pending appeal*, 145 S. Ct. 2635, *vacated and remanded on other grounds*, 155 F.4th 1082 (9th Cir. 2025); *AFGE v. OPM*, 799 F. Supp. 3d at 982-83; *AFGE v. OPM*, 771 F.Supp.3d 1127 (N.D. Cal. 2025).

ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
Fax: (415) 362-8064
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com
awang@altshulerberzon.com
rtholin@altshulerberzon.com
tstender@altshulerberzon.com

By: */s/ Robin S. Tholin*

*Attorneys for All Plaintiffs*


Elena Goldstein (pro hac vice)
Jennie L. Kneedler (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 322-1959
egoldstein@democracyforward.org
jkneedler@democracyforward.org

*Attorneys for All Plaintiffs*


Norman L. Eisen (pro hac vice)
Craig Becker (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Craig@democracydefenders.org

*Attorneys for All Plaintiffs*


Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

Plaintiffs' Opposition to Motion to Dismiss, No. 3:25-cv-03698-SI                    26

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Yvette M. Piacsek
NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO
1225 New York Ave. N.W., Suite 450
Washington, D.C. 20005
Tel: (202)216-4428
ypiacsek@nffe.org

*Attorneys for Plaintiff National Federation of Federal Employees, IAM, AFL-CIO*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

Sarah E. Suszczyk
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.
159 Thomas Burgin Parkway
Quincy, MA 02169
Tel: (617) 376-7239
ssuszczyk@nage.org

*Attorneys For Plaintiff National Association of Government Employees, Inc.  (NAGE)*